UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **BAHIA AMAWI** | Case No.   **1:18-CV-1091** |
| Plaintiff, | **COMPLAINT AND JURY DEMAND** |
| vs. | |
| **PFLUGERVILLE INDEPENDENT SCHOOL DISTRICT**; and | |
| **KEN PAXTON,** in his official capacity as Attorney General of Texas | |
| Defendants. | |

## INTRODUCTION

1.      The First Amendment protects the rights of all speakers to advocate for all viewpoints on issues of public concern.  "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

2.      The conflict between Israel and Palestine is a longstanding issue of considerable public concern, both in the United States and internationally, to which politicians, professionals, and the press dedicate considerable energy and resources.

3.      In 2017, the State of Texas chose to categorically take Israel's side in this international conflict by adopting Tex. Gov't Code § 2270.001 *et. seq*.  This Act bars the State of Texas from entering into government contracts with companies which boycott Israel.

4.      On August 13, 2018, Pflugerville Independent School District sent Bahia Amawi a contract to provide the school district with Arabic assessment services. Ms. Amawi had been

1

contracting with the school district for nine years. On September 10, 2018, the school district provided Ms. Amawi with an addendum to the contract, which states that Ms. Amawi affirms that she does not currently boycott Israel and will not boycott Israel during the term of the contract. On September 17, Ms. Amawi informed the school district that she would be unable to sign the addendum, citing moral issues. Pflugerville Independent School District informed Ms. Amawi that it would not be able to provide her with payment if she refused to sign the addendum. Ms. Amawi refused to sign and was forced to terminate her contractual relationship with the school district.

5.      Texas's ban on contracting with any boycotter of Israel constitutes viewpoint discrimination that chills constitutionally-protected political advocacy in support of Palestine.  This Court should enjoin enforcement of Tex. Gov. Code § 2270.001 *et. seq.* and the "No Boycott of Israel" clause under the First Amendment, thereby permitting Plaintiff to retain her employment with PFISD.

## PARTIES

6.      Plaintiff Ms. Bahia Amawi is a speech language pathologist residing in Round Rock, Texas. Ms. Amawi has been contracting with Pflugerville Independent School District for nine years. Ms. Amawi conducts bilingual Arabic evaluations and early childhood evaluations for Arabic-speaking children. Ms. Amawi has a master's degree in speech language pathology from Nova Southeastern University in Broward County, Florida.

7.      Defendant Pflugerville Independent School District ("PFISD") is a public school district with its district offices located at 1401 W. Pecan St., Pflugerville, Texas 78660.

8.      Defendant Ken Paxton is the Attorney General of Texas.  The Attorney General's principal office is located at 300 W. 15th Street, Austin, TX 78701.   He is responsible for enforcing and defending the constitutionality of Texas law.  Defendant Paxton is sued in his official capacity, only.

2

## JURISDICTION & VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, namely the First and Fourteenth Amendments to the U.S. Constitution.

10.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

11.      This Court has personal jurisdiction over the Defendants because they reside in this district.

12.      A substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this Judicial District.  Venue therefore lies in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

### The Israel – Palestine Conflict is a Fraught Issue of International Importance

13.      The relationship between Israel and Palestine is a significant international political conflict.  One of the core disputes within that conflict concerns Israel's continuing occupation and settlement of Palestinian territories, including the West Bank and Golan Heights.

14.      On December 23, 2016, the United Nations Security Council unanimously (with the United States abstaining) adopted Resolution 2334.  The Resolution condemned Israeli settlements in the Occupied Palestinian Territories, and reaffirmed that continuing settlements "constitute[e] a flagrant violation under international law and a major obstacle to the achievement of the two-State solution and a just, lasting and comprehensive peace."  The Resolution additionally condemned Israeli violence and human rights abuses against Palestinians.

15.      A robust international movement seeks to impose economic pressure on Israel to cease its settlement activity in Palestinian Territory.  Calling itself "Boycott, Divestment, and Sanctions" or "BDS," the movement seeks the peaceful end of Israeli discrimination against and maltreatment of Palestinians.  The BDS movement specifically encourages economic divestment from

3

institutions that are not in compliance with established international law related to the Israeli occupation of Palestine.

16.    The United States has historically discouraged Israeli settlements as "inconsistent with international law." Overall, however, U.S. policy strongly supports Israel, and the U.S. and Israel enjoy close political and economic relationships. These friendly relations have tended to soften or mute the United States' criticism of Israeli settlements. The United States abstained from Resolution 2334 due to its political support of Israel, and previously vetoed a similar U.N. Resolution in February 2011.

17.    The merits of all perspectives in the Israel-Palestinian conflict and the U.S.'s respective political positions are robustly and publicly debated by leading politicians, academics, universities, non-profit organizations, businesses, and media organizations in the United States and around the world.

**Texas Passes Anti-Boycott, Divestment, and Sanctions Legislation**

18.    Because the prevailing political sentiment in the United States favors Israel, many U.S. states, private organizations, and public officials view the Palestinian-led Boycott, Divestment, and Sanctions movement as a threat to U.S.-Israel economic relations and Israel's sovereignty.

19.    This political climate has, in recent years, prompted local and state legislatures to consider more than a hundred bills and resolutions aimed at hindering the Boycott, Divestment, and Sanctions movement. At least twenty-four states have enacted "anti-BDS" legislation.

20.    Texas is one state to have enacted measures opposed to the Boycott, Divestment, and Sanctions movement. On May 2, 2017, Texas enacted House Bill 89, codified at Tex. Gov. Code § 2270.001 *et. seq*. The bill's author, State Representative Phil King, informed the legislature, "the intent of the bill, speaking a little more broadly, is to prohibit someone trying to cause economic harm to the nation of Israel or to the Jews or anyone within the nation of Israel by boycotting, by not doing business with them, by punishing others who do business with them."

4

21.     Texas law now prohibits all government entities from contracting with any company that boycotts Israel.

22.     Specifically, Tex. Gov. Code § 2270.002 *et. seq.* provides:

    A.     "A governmental entity may not enter into a contract with a company for goods or services unless the contract contains a written verification from the company that it:

        i.   does not boycott Israel; and

        ii.  will not boycott Israel during the term of the contract."

23.     The Act defines "boycott Israel" to include, "refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict harm on, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory." Tex. Gov. Code § 808.001 *et. seq.*

24.     The Act defines "company" to include, "a for-profit sole proprietorship, organization, association, corporation, partnership, joint venture, limited partnership, limited liability partnership, or any limited liability company, including a wholly owned subsidiary, majority-owned subsidiary, parent company or affiliate of those entities or business associations that exist to make a profit." Tex. Gov. Code § 808.001 *et. seq.*

25.     To comply with this statutory provision, Texas agencies and public entities including school districts have started including language in their boilerplate contracts which bars boycotts of Israel.

**Childrens' Speech Language Pathologist Forced to Resign Contract**

26.     Ms. Bahia Amawi is a speech language pathologist residing in Round Rock, Texas. She has a master's degree in speech language pathology from Nova Southeastern University in Broward County, Florida.

27.     Ms. Amawi has been contracting with PFISD to conduct bilingual Arabic evaluations and early childhood evaluations for Arabic-speaking children for the past nine years.

28.     On August 13, 2018, PFISD extended a contract to Ms. Amawi, as they do every year. However, on this particular year, PFISD required Ms. Amawi to sign an additional document along with her contract.  The new addendum is included as **Exhibit A** within this Complaint.

29.     The document was created sometime after passage of Tex. Gov. Code § 2270.01 *et. seq.* in May 2017.  Paragraph I of the agreement now reads, in full: "Pursuant to Section 2270.001 of Texas Government Code, the Contractor affirms that it: (1) Does not currently boycott Israel; and (2) Will not boycott Israel during the term of the contract."

30.     On September 11, 2018, Ms. Amawi informed PFISD that she could not sign the addendum, asking why her personal political stances impacted her work as a speech language pathologist with PFISD.

31.     PFISD informed Ms. Amawi that she could cross out that particular section, initial, and sign it and provide the remaining required documentation.

32.     Shortly after, Ms. Amawi received a call from PFISD informing her that it could not contract with Ms. Amawi if she did not initial the "No Boycott of Israel Clause" within the addendum.

33.     Thus, Ms. Amawi was forced to terminate her contractual relationship with PFISD.

34.     Ms. Amawi advocates for boycotts of Israel due to Israel's continuing violations of international law in its treatment of Palestinians.  Specifically, Ms. Amawi boycotts products created in Israel in support of the peaceful Palestinian Boycott, Divestment, and Sanctions movement.

35.     Ms. Amawi cannot and will not sign the contract with the "No Boycott of Israel" provision, which is required by state law.  As an advocate for Palestinian rights and justice, she cannot in good faith certify or state that she does not boycott Israel, and will not engage in a boycott of Israel.

36.     Ms. Amawi would sign a contract to continue providing language pathology services to PFISD if the "No Boycott of Israel" clause were stricken.  She agrees to all other contractual terms. The "No Boycott of Israel" provision of the PFISD vendor agreement is, to Plaintiff's knowledge, the only barrier to her resuming a contractual relationship with PFISD.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE U.S CONSTITUTION

37.     Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

38.     The First Amendment provides: "Congress shall make no law … abridging the freedom of speech, or of the press."  U.S. CONST. Amend. I.

39.     The First Amendment binds the State of Texas pursuant to the incorporation doctrine of the Fourteenth Amendment.

40.     Political speech on issues of great national and international importance is central to the purposes of the First Amendment.  Speech and advocacy related to the Israel – Palestine conflict is core political speech on a matter of public concern entitled to the highest levels of constitutional protection.

41.      Economic boycotts for the purposes of bringing about political change are entrenched in American history, beginning with colonial boycotts on British tea.  Later, the Civil Rights Movement relied heavily on boycotts to combat racism and spur societal change.  The Supreme Court has recognized that non-violent boycotts intended to advance civil rights constitute "form[s] of speech or conduct that [are] ordinarily entitled to protection under the First and Fourteenth Amendments." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).

42.     The First Amendment protects the rights of speakers to call for and participate in economic boycotts as a means of amplifying their message.  Joining voices together to participate in and call for political boycotts is protected association under the First Amendment.

43.     Tex. Gov. Code § 2270.001 *et. seq.* and the "No Boycott of Israel" clause each constitute viewpoint discrimination, because they only bar speech and expression against Israel, and not speech or expression in favor of Israel or against Palestine.

44.     Tex. Gov. Code § 2270.001 *et. seq.* and the "No Boycott of Israel" clause each constitute content-specific restrictions on speech, because they single out boycotts of Israel for disfavored treatment.

45.     Tex. Gov. Code § 2270.001 *et. seq.* and the "No Boycott of Israel" clause each constitute speaker-specific restrictions on speech, because they single out government contractors who advocate for Palestine and against Israel as specific speakers who warrant disfavored treatment.

46.     Tex. Gov. Code § 2270.001 *et. seq.* and the "No Boycott of Israel" clause each impose a prior restraint on speech, by requiring speakers to certify in advance that they do not and will not engage in a boycott of Israel.

47.     Tex. Gov. Code § 2270.001 *et. seq.* and the "No Boycott of Israel" clause each constitute impermissible State attempts to impose conditions on an independent contractor on a basis that infringes constitutionally protected freedom of speech.

48.     Tex. Gov. Code § 2270.001 *et. seq.* and the "No Boycott of Israel" clause each constitute impermissible State attempts to impose an ideological litmus test or compel speech related to government contractors' political beliefs, associations, and expressions.

49.     Tex. Gov. Code § 2270.001 *et. seq.* and the "No Boycott of Israel" clause are each substantially overbroad.

50.     Tex. Gov. Code § 2270.001 *et. seq.* and the "No Boycott of Israel" clause are each void for vagueness.

51.     Tex. Gov. Code § 2270.001 *et. seq.* and the "No Boycott of Israel" clause operate to chill the exercise of constitutionally protected speech and associations.

52.     The Texas Attorney General and PFISD each lack a compelling or legitimate governmental interest in the enforcement of Tex. Gov. Code § 2270.001 *et. seq.* and the "No Boycott of Israel" clause.

53.     Enforcement of Tex. Gov. Code § 2270.001 *et. seq.* and the "No Boycott of Israel" clause does not constitute the least-restrictive means of fulfilling any state interest.

54.     Tex. Gov. Code § 2270.001 *et. seq.* is facially unconstitutional under the First Amendment and cannot be enforced against anyone by the Texas Attorney General.

55.     Tex. Gov. Code §2270.001 *et. seq.*, as implemented through the "No Boycott of Israel" clause in the "Acknowledgement of State, Local, & Federal Certifications" contract promulgated by PFISD, is unconstitutional as applied to Plaintiff and her work providing Arabic assessment services to children in PFISD.

56.     Absent an injunction, Plaintiff will suffer irreparable harm because she will be barred by state law and contract from engaging in protected First Amendment speech and association on a matter of public concern.  Plaintiff will be chilled in her personal capacity to advocate for Palestinian rights, and unable to provide speech language pathology services for children in PFISD.

57.     If Defendants are not enjoined from enforcing Tex. Gov. Code §2270.001 *et. seq.* and from including the "No Boycott of Israel" clause in state contracts, Plaintiff and all advocates for Palestine will be effectively prohibited from entering into any agreement with the State of Texas unless they give up their constitutionally-protected views.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter the following relief:

A.     Declare Tex. Gov. Code §2270.001 *et. seq.* unconstitutional and unenforceable;

B.     Issue judgment in Plaintiff's favor and against Defendants on all causes of action alleged herein;

C.    Grant Plaintiff a preliminary and permanent injunction striking the "No Boycott of Israel" clause from any contract with Pflugerville Independent School District,

D.    Order Pflugerville Independent School District to offer Plaintiff a new contract without the "No Boycott of Israel" clause, thereby permitting her to sign it and resume providing speech language pathology services for children in the school district.

E.    Enter a preliminary and permanent injunction against Defendants' inclusion of boycott provisions under Tex. Gov. Code § 2270.001 *et. seq.* in any state contract, and against Defendant Attorney General's continuing enforcement of Tex. Gov. Code § 2270.001 *et. seq.*

F.    Declare void any "No Boycott of Israel" clause pursuant to Tex. Gov. Code § 2270.001 *et. seq.* that now exists in any and all contracts between Texas public entities and private companies or persons.

G.    Award Plaintiff her reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988; and,

H.    Grant such other and further relief as the Court may deem to be just and proper.

## JURY DEMAND

NOW COME Plaintiff, by and through her undersigned counsel, and hereby demands trial by jury of the above-referenced causes of actions.

Dated:  December 16, 2018          **JOHN T. FLOYD LAW FIRM**

                                         /s/ John T. Floyd
                                         John T. Floyd (TX Bar No. 00790700)
            jfloyd@johntfloyd.com
          Christopher M. Choate (TX Bar No. 24045655)
            choate@johntfloyd.com
          4900 Woodway Dr., Ste. 725
          Houston, TX 77056
          Phone: (713) 224-0101
          Fax:    (713) 237-1511

          **CAIR LEGAL DEFENSE FUND**

          Lena F. Masri (D.C. Bar No. 1000019) α
            lmasri@cair.com
          Gadeir I. Abbas (VA Bar No. 81161) α *
            gabbas@cair.com
          Carolyn M. Homer (D.C. Bar No. 1049145) §
            chomer@cair.com
          453 New Jersey Ave., SE
          Washington, DC 20003
          Phone: (202) 742-6420
          Fax:    (202) 488-0833

          α *WDTX admission application forthcoming*
          § *WDTX admission pending*

          * *Licensed in VA, not in D.C.*
           *Practice limited to federal matters*

**EXHIBIT A**

## ACKNOWLEDGEMENT  OF STATE,  LOCAL  &  FEDERAL CERTIFICATIONS

Please read all certification and notification statements below. Each statement should  be initialed by an authorized representative to indicate compliance. Failure to comply may result in disqualification. Exceptions should be noted separately.

A.  Felony Conviction Notification:  State of Texas  Legislative Senate Bill No. 1, Section 44.034,   Notification of Criminal History, Subsection (a), states: "a person or business entity that enters into a contract with  a school district must give advance notice to the district if the Person or an owner or operator of the business entity has been convicted of a felony. The  notice must include a general description  of the   conduct  resulting in the conviction of a felony." Subsection  (b) states "a school district  may terminate  a   contract with a person or business entity if the district determines that the person or business entity failed to  give notice as required by Subsection (a) or misrepresented the conduct resulting in the conviction. The  District must compensate the person or business entity for services performed before the termination of  the  contract." This notice is not required of a publicly held corporation.

Please check the appropriate line below:

_____My firm is a publicly-held corporation; therefore, this reporting requirement is not applicable.

_____My firm is not owned or operated by anyone who has been convicted of a felony.

_____My firm is owned or operated by the following individual(s) who has/have been convicted of a felony:

Name of Felon(s):_____

Details of Conviction(s)_____

**Initial_____**

B.  Criminal  History Notification:  Texas  Education Code Chapter 22 requires entities that contract    with school districts to obtain criminal history records on covered employees. Covered employees with  disqualifying criminal histories are prohibited from serving at a school district.  Contractors must certify   to the district that they have complied and must obtain similar certifications from their subcontractors.  Certification forms, found on the PfISD Purchasing Department web page located at  http://cms.pfisd.neUPage/262, must be completed and submitted to the PfISD Purchasing Department prior to commencement of the  contract.
*Covered Employees* is defined as: Employees of a contractor who have or will have continuing duties related to the service to be performed at the District and have or will have direct contact with students. The District will be the final arbiter of what constitutes continuing duties or direct contact with students.

*Disqualifying  Criminal History*  is defined as:

(1) a conviction or other criminal history information designated by the  District;
(2) a felony or misdemeanor offense that would prevent a person from obtaining certification as  an educator under Texas Education Code 21.060, including an offense listed at 19 Tex. Admin. Code 249.16; or
(3) one of the following offenses, if at the time of the offense, the victim was under 18 or enrolled  in a public school:
    (a) a felony offense under Title 5, Texas Penal  Code;
    (b) an offense for which a defendant is required to register as a sex offender under Chapter 62, Texas Code of Criminal  Procedure;
    (c) an equivalent offense under federal law or the laws of another  state.

**Initial_____**

11

C.  Certificate of Residency: The 1985 Texas Legislature passed House Bill 620 (now Chapter 2252 of Texas Government Code) relative to the award of contracts to nonresident bidders (out-of-state bidders whose corporate offices or principal place of business are outside the State of Texas). This law provides that, in order to be awarded a contract as low bidder, a nonresident bidder's response for construction, improvements, supplies or services in Texas be bid in amount lower than the lowest Texas resident bidder by the same amount that a Texas resident bidder would be required to underbid a nonresident bidder in order to obtain a comparable contract in the state in which the nonresident's principal place of business is located.

_____ I certify that my company is a "resident bidder" meaning a vendor whose principal place of business is in Texas, including a vendor whose ultimate parent company or majority owner has its principal place of business in Texas.

_____ I certify that my firm is a "nonresident bidder" meaning a vendor whose principal place of business is not in Texas, but excludes a vendor whose ultimate parent company or majority owner has its principal place of business in Texas. My company's principal place of business is in:
_____   _____
City                                     State

Initial_____

D.  Non-Collusion, Non-Conflict of Interest, Anti-Lobbying Affidavit:

By submission of this response, the undersigned certifies that:

1.  Neither the Respondent nor any of its officers, partner, owners, agents, representatives, employees, or parties in interest, has in any way colluded, conspired, or agreed, directly or indirectly with any person, firm, corporation or other Respondent or potential Respondent or given any money or other valuable consideration for assistance in procuring or attempting to procure a contract or fix the prices in the attached response or the response of any other Respondent, and further states that no such money or other reward will be hereinafter paid.

2.  No attempt has been or will be made by this firm's officers, employees, or agents to lobby, directly or indirectly, the District's Board of Trustees between response submission date and award by the District's Board of Trustees.

3.  No officer, or stockholder of Respondent is a member of the staff, or related to any employee of the Pflugerville Independent School District except as noted below:

4.  The bidder or proposer has not offered, conferred, or agreed to confer any pecuniary benefit, as defined by Penal Code, Chapter 36, or any other thing of value, as consideration for the receipt of information or any special treatment or advantage relating to this bid or proposal;

5.  The bidder or proposer has not offered, conferred, or agreed to confer any pecuniary benefit or other thing of value as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion concerning this bid or proposal;

6.  The bidder or proposer has not violated any state, federal, or local law, regulation, or ordinance relating to bribery, improper influence, collusion, or the like, and that the bidder or proposer will not in the future offer, confer, or agree to confer any pecuniary benefit or other thing of value to any officer, Trustee, agent, or employee of the Pflugerville Independent School District in return for the person's having exercised official discretion, power, or duty with respect for this bid or proposal;

7.  The bidder or proposer has not and will not in the future offer, confer, or agree to confer a pecuniary benefit or other thing of value to any officer, Trustee, agent, or employee of the Pflugerville Independent School District in connection with information regarding this bid or proposal, the submission of this bid or proposal, the award of this bid or proposal, or the performance, delivery, or sale pursuant to this bid or proposal.

Initial_____

12

E. <u>Non-Discriminatory Employment</u>:  Vendor agrees to refrain from discrimination  in terms and    conditions of employment on the basis of race, color, religion, sex, national origin, or handicap and agrees to take affirmative action as required by Federal Statutes and rules and regulations issued pursuant thereto in order to maintain and insure non-discriminatory employment  practices.

Initial_____

F. <u>Suspension and Debarment</u>:  Federal Law prohibits non-federal entities from contracting with or making sub-awards under covered transactions to parties that are suspended or debarred or whose principals  are suspended or debarred. Covered transaction include procurement of goods of $50,000 or more as covered by state law or professional services equal to or in excess of $100,000. Contractors receiving individual awards of $100,000 or more and all sub-recipients must certify that the organizations and its principals are not suspended or debarred. **Pflugerville ISD does not do business with parties that have  been suspended or debarred.**  The prospective vendor certifies, by submission of this proposal, that neither it nor its principals is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by a Federal department or  agency.

**Initial_____**

G. <u>Clean Air and Water Act</u>:  I, the Vendor, am in compliance with all applicable standards, orders or regulations issued pursuant to the Clean Air Act of 1970, as Amended (42 U.S. C. 1857 (h)), Section 508 of the  Clean Water Act, as amended (33 U.S.C. 1368), Executive Order 117389 and Environmental Protection Agency Regulation, 40 CFR Part 15 as required under 0MB Circular  A-102.

Attachment 0, Paragraph 14 (1) regarding reporting violations to the granter agency and to the United States Environmental Protection Agency Assistant Administrator for the Enforcement.

**Initial_____**

H. <u>Hold Harmless Agreement</u>:  The Contractor shall defend, indemnify, and hold harmless, Pflugerville ISO and all of its trustees, officers, agents, and employees from and against all suits, actions, or claims of any character brought for or on account of any injuries or damages (including death) received or sustained by any person or property on account of, arising out of, or in connection with, any negligent act or omission of Contractor or any agent, employee, subcontractor, or supplier of Contractor in the execution or performance of the  Contract. The Contractor shall also defend, indemnify and hold harmless, Pflugerville ISO and all of its trustees, officers, agents, and employees, from and against claims by any subcontractor, supplier, laborer, materials, or mechanic for payment for work or materials provided on behalf of the Contractor in the performance of the Contract and all such claimants shall look solely to Contractor and not to Pflugerville ISO for satisfaction of such claims.  This Hold Harmless Agreement shall be binding upon the undersigned, and its successors, legal representatives, heirs and  assigns.

Initial_____

I. Pursuant to Section 2270.001 of Texas Government Code, the Contractor affirms that  it:
   1. Does not currently boycott Israel; and
   2. Will not boycott Israel during the term of the contract

Pursuant to Section 2270.001 of Texas Government Code:

   1. "Boycott Israel" means refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict economic harm on, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory, but does not include an action made for ordinary business purposes; and
   2. "Company" means a for-profit sole proprietorship, organization, association, corporation, partnership, joint venture, limited partnership, limited liability partnership, or any limited liability company, including a wholly owned subsidiary, majority-owned subsidiary, parent company or affiliate of those entities or business associations that exist to make a profit.

Initial_____

J . Pursuant to Texas SB 252, the contractor affirms that it is not identified on the Comptroller's list of companies known to have contacts with or provide supplies or services to a foreign organization designated as a Foreign Terrorist Organization by the US Secretary of State

Initial_____

---

### REQUIRED  CONTRACT  PROVISIONS  FOR  FEDERALLY  FUNDED  PURCHASES

---

The following provisions apply when federal funds are used to make district purchases. Please read all certification and notification statements below. Each statement should be initialed by an authorized representative to indicate compliance.  Failure to comply may result in disqualification.  Exceptions should be noted separately.

K. Pursuant to federal Jaw, when federal funds are expended by the district, Pflugerville ISO reserves all rights and privileges under the applicable Jaws and regulations with respect to this procurement in the event of breach of contract by either party.

Initial_____

L. Pursuant to Federal law, when federal funds are expended by the district, Pflugerville ISO reserves the right to immediately terminate any agreement in excess of $10,000 resulting from this procurement process in the event of a breach or default of the agreement by Vendor, in the event vendor fails to: (1) meet schedules, deadlines, and/or delivery dates within the time specified in the procurement solicitation, contract, and/or a purchase order; (2) make any payments owed; or (3) otherwise perform in accordance with the contract and/or the procurement solicitation. Pflugerville ISO also reserves the right to terminate the contract immediately, with written notice to vendor, for convenience, if Pflugerville ISO believes, in its sole discretion that it is in the best interest of the district to do so. The vendor will be compensated for work performed and accepted and goods accepted by Pflugerville ISO as of the termination date if the contract is terminated for convenience by the district. Any award under this procurement process is not exclusive and Pflugerville ISO reserves the right to purchase goods and services from other vendors when it is in the best interest of the district.

Initial_____

M. Equal Employment  Opportunity. (A) Except as otherwise provided under 41 CFR Part 60, all  contracts that meet the definition of "federally assisted construction contract" in 41 CFR Part 60- 1.3 must include the equal opportunity clause provided under 41 CFR 60-1.4(b), in accordance with Executive Order 11246, "Equal Employment Opportunity" (30 FR 12319, 12935, 3 CFR Part, 1964-1965 Comp., p. 339), as amended by Executive Order 11375, "Amending Executive Order 11246 Relating to Equal Employment Opportunity," and implementing regulations at 41 CFR part 60, "Office of Federal Contract Compliance  Programs, Equal Employment Opportunity, Department of Labor."

Pursuant to Federal Rule (A) above, when federal funds are expended by Pflugerville ISO on any federally assisted construction contract, the equal opportunity clause is incorporated by reference herein.

Initial_____

N. <u>Davis-Bacon Act, as amended (40 U.S.C. 3141-3148).</u> When required by Federal program legislation, all prime construction contracts in excess of $2,000 awarded by non-Federal entities must include a provision for compliance with the Davis-Bacon Act (40 U.S.C. 3141-3144, and 3146- 3148) as supplemented by Department of Labor regulations (29 CFR Part 5, "Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction"). In accordance with the statute, contractors must be required to pay wages to laborers and mechanics at a rate not less than the prevailing wages specified in a wage determination made by the Secretary of Labor. In addition, contractors must be required to pay wages not less than once a week. The non- Federal entity must place a copy of the current prevailing wage determination issued by the Department of Labor in each solicitation. The decision to award a contract or subcontract must be conditioned upon the acceptance of the wage determination. The non-Federal entity must report all suspected or reported violations to the Federal awarding agency. The contracts must also include a provision for compliance with the Copeland "Anti-Kickback" Act (40 U.S.C. 3145), as supplemented by Department of Labor regulations (29 CFR Part 3, "Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States"). The Act provides that each contractor or sub recipient must be prohibited from inducing, by any means, any person employed in the construction, completion, or repair of public work, to give up any part of the compensation to which he or she is otherwise entitled. The non-Federal entity must report all suspected or reported violations to the Federal awarding agency.

Pursuant to Federal Rule (B) above, when federal funds are expended by Pflugerville ISO, during the term of an award for all contracts and sub grants for construction or repair, the vendor will be in compliance with all applicable Davis-Bacon Act provisions.

Initial_____

O. <u>(C) Contract Work Hours and Safety Standards Act (40 U.S.C. 3701-3708).</u> Where applicable, all contracts awarded by the non-Federal entity in excess of $100,000 that involve the employment of mechanics or laborers must include a provision for compliance with 40 U.S.C. 3702 and 3704, as supplemented by Department of Labor regulations (29 CFR Part 5). Under 40 U.S.C. 3702 of the Act, each contractor must be required to compute the wages of every mechanic and laborer on the basis of a standard work week of 40 hours. Work in excess of the standard work week is permissible provided that the worker is compensated at a rate of not less than one and a half times the basic rate of pay for all hours worked in excess of 40 hours in the work week. The requirements of 40 U.S.C. 3704 are applicable to construction work and provide that no laborer or mechanic must be required to work in surroundings or under working conditions which are unsanitary, hazardous or dangerous. These requirements do not apply to the purchases of supplies or materials or articles ordinarily available on the open market, or contracts for transportation or transmission of intelligence.

Pursuant to Federal Rule {C) above, when federal funds are expended by Pflugerville ISO, the vendor certifies that during the term of an award for all contracts by Pflugerville ISO resulting from this procurement process, the vendor will be in compliance with all applicable provisions of the Contract Work Hours and Safety Standards Act.

Initial_____

P. <u>(D) Rights to Inventions Made Under a Contract or Agreement.</u> If the Federal award meets the definition of "funding agreement" under 37 CFR §401.2 (a) and the recipient or sub recipient wishes to enter into a contract with a small business firm or nonprofit organization regarding the substitution of parties, assignment or performance of experimental, developmental, or research work under that "funding agreement," the recipient or sub recipient must comply with the requirements of 37 CFR Part 401, "Rights to Inventions Made by Nonprofit Organizations and Small Business Firms Under Government Grants, Contracts and Cooperative Agreements," and any implementing regulations issued by the awarding agency.
Pursuant to Federal Rule (D) above, when federal funds are expended by Pflugerville ISO, the vendor certifies that during the term of an award for all contracts by Pflugerville ISO resulting from this procurement process, the vendor agrees to comply with all applicable requirements as referenced in Federal Rule (D) above.

Initial._____

Q.   (E)  Buy American  Provision  (Federal  Requirement). Vendor  certifies that vendor  is in compliance   with all applicable provisions of the Buy America Act.  Purchases made in accordance with the Buy America Act must still follow the applicable procurement rules calling for free and open competition.

Initial_____

R.   (F) Clean Air Act (42 U.S.C. 7401-76719.) and the Federal Water Pollution Control Act (33 U.S.C. 1251-1387), as amended-Contracts and sub grants of amounts in excess of $150,000 must contain a provision  that requires the non-Federal award to agree to comply with all applicable standards, orders or regulations issued pursuant to the Clean Air Act (42 U.S.C. 7401-7671q) and the Federal Water Pollution Control Act as amended (33 U.S.C. 1251- 1387). Violations must be reported to the Federal awarding agency and the Regional Office of the Environmental Protection Agency  (EPA).

Pursuant to Federal Rule (F) above, when federal funds are expended by Pflugerville ISO, the vendor certifies that during the term of an award for all contracts by Pflugerville ISO resulting from this procurement process, the vendor agrees to comply with all applicable requirements as referenced in Federal Rule (F) above.

Initial_____

S.    (G) Byrd Anti-Lobbying Amendment (31 U.S.C. 1352)-Contractors that apply or bid for an award exceeding $100,000 must file the required certification.  Each tier certifies to the tier above that it will not and has not used Federal appropriated funds to pay any person or organization for influencing or attempting to influence  an officer or employee of any agency, a member of Congress, officer or employee of Congress, or an employee of a member of Congress in connection with obtaining any Federal contract, grant or any other award covered by 31 U.S.C. 1352. Each tier must also disclose any lobbying with non-Federal funds that takes place in connection with obtaining any Federal award. Such disclosures are forwarded from tier to tier up to the non-Federal award.

Pursuant to Federal Rule (G) above, when federal funds are expended by Pflugerville ISO, the vendor certifies that during the term and after the awarded term of an award for all contracts by Pflugerville ISO resulting from this procurement process, the vendor certifies that it is in compliance with all applicable provisions of the Byrd Anti-Lobbying Amendment (31 U.S.C. 1352). The undersigned further certifies that:

(1)  No Federal appropriated funds have been paid or will be paid for on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of congress, or an employee of a Member of Congress in connection with the awarding of a Federal contract, the making of a Federal grant, the making of a Federal loan, the entering into a cooperative agreement, and the extension, continuation, renewal, amendment,  or modification of a Federal contract, grant, loan, or cooperative agreement.

(2)  If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of congress, or an employee of a Member of Congress in connection with this Federal grant or cooperative  agreement, the undersigned shall complete and submit Standard  Form-LLL, "Disclosure Form to Report Lobbying", in accordance with its instructions.

(3)  The undersigned shall require that the language of this certification be included in the award documents for all covered sub-awards exceeding $100,000 in Federal funds at all appropriate tiers and that all sub recipients shall certify and disclose  accordingly.

Initial_____

16

T.   <u>Record Retention Requirements.</u> When federal funds are expended by Pflugerville ISO for any contract resulting from this procurement process, the vendor certifies that it will comply with the record retention requirements detailed in 2 CFR § 200.333. The vendor further certifies that vendor will retain all records as required by 2 CFR § 200.333 for a period of three years after grantees or sub grantees submit final expenditure reports or quarterly or annual financial reports, as applicable, and all other pending matters are closed.

Initial._____

U.   <u>Compliance with the Energy Policy and Conservation Ac</u>t. When federal funds are expended by Pflugerville ISO for any contract resulting from this procurement process, the vendor certifies that the vendor will be in compliance with mandatory standards and policies relating to energy efficiency which are contained in the state energy conservation plan issued in compliance with the Energy Policy and Conservation Act (42 U.S.C. 6321, et seq.; 49 C.F.R. Part 18; Pub. L. 94- 163, 89 Stat. 871).

Initial_____

V.   Vendor certifies under penalty of perjury that its response to this procurement solicitation is in all respects bona fide, fair, and made without collusion or fraud with any person, joint venture, partnership, corporation or other business or legal entity.

Initial_____

Vendor agrees to comply with all federal, state, and local laws, rules, regulations and ordinances, as applicable. It is further acknowledged that vendor certifies compliance with all provisions, laws, acts, regulations, etc. as specifically noted above.

Name of Company: ———————————————————————————————

Printed Name and Title of Representative: ——————————————————————

_____          _____
                 Signature                                                          Date