**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**BAHIA AMAWI**

Plaintiff,

vs.

**PFLUGERVILLE INDEPENDENT SCHOOL DISTRICT**; and

**KEN PAXTON**, in his official capacity as Attorney General of Texas,

Defendants.

Case No. 1:18-cv-01091-RP

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

ORAL HEARING REQUESTED

**TABLE OF CONTENTS**

TABLE OF CONTENTS .......... ii

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 2

A. The Political Climate Surrounding the Peaceful Palestinian Boycott, Divestment and Sanctions Movement .......... 2

B. Texas Enacts Anti-Boycott, Divestment, and Sanctions Legislation Requiring Government Contracts to Prohibit Boycotts of Israel .......... 3

C. Speech Language Pathologist Bahia Amawi Loses Contract with Pflugerville Independent School District Due to a "No Boycott of Israel" Clause .......... 4

D. Texas Officials Reiterate their Political Support for Israel .......... 5

ARGUMENT .......... 5

I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS THAT TEXAS'S ANTI-BDS ACT VIOLATES THE FIRST AMENDMENT .......... 6

A. Participation in Boycotts of Israel Constitutes Protected Speech and Expressive Conduct .......... 6

B. The Texas Anti-BDS Act Imposes a Content-Based Restriction on Speech .......... 8

C. The Texas Anti-BDS Act Imposes Unconstitutional Conditions on Government Contractors .......... 10

D. The Texas Anti-BDS Act Violates Additional First Amendment Doctrines .......... 12

E. The Texas Anti-BDS Act Is Not Narrowly Tailored to Fulfill Compelling Governmental Interests .......... 13

II. THE REMAINING PRELIMINARY INJUNCTION FACTORS WEIGH IN FAVOR OF ENJOINING ENFORCEMENT OF THE TEXAS ANTI-BDS ACT .......... 14

RELIEF REQUESTED .......... 15

## TABLE OF AUTHORITIES

### Cases

*Agency for International Development v. Alliance for Open Society International, Inc.*,
133 S. Ct. 2321 (2013) .................... 10

*Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*,
518 U.S. 668 (1996) .................... 6, 10

*Boos v. Barry*,
485 U.S. 312 (1988) .................... 8

*Chiu v. Plano Indep. Sch. Dist.*,
339 F.3d 273 (5th Cir. 2003) .................... 12

*Coates v. Cincinnati*,
402 U.S. 611 (1971) .................... 12

*Elrod v. Burns*,
427 U.S. 347 (1976) .................... 14

*Farris v. Seabrook*,
677 F.3d 858 (9th Cir. 2012) .................... 15

*Forsyth Cty., Ga. v. Nationalist Movement*,
505 U.S. 123 (1992) .................... 9, 12

*Jordahl v. Brnovich*,
336 F. Supp. 3d 1016 (D. Ariz. 2018) .................... 1, 3, 7, 11

*Klein v. City of San Clemente*,
584 F.3d 1196 (9th Cir. 2008) .................... 14

*Koontz v. Watson*,
F. Supp. 3d 1007 (D. Kan. 2018) .................... 1, 7, 9, 11

*Legal Servs. Corp. v. Velazquez*,
531 U.S. 533 (2001) .................... 11

*NAACP v. Claiborne Hardware Co.*,
458 U.S. 886 (1982) .................... 6, 7

*O'Hare Truck Serv. v. City of Northlake*,
518 U.S. 712 (1996) .................... 10

*Police Dep't of City of Chicago v. Mosley*,
408 U.S. 92 (1972) .................... 8

*Reed v. Town of Gilbert*,
135 S. Ct. 2218 (2015) .......... 6, 8, 9, 13

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
515 U.S. 819 (1995) .......... 6

*Texans for Free Enter. v. Texas Ethics Comm'n*,
732 F.3d 535 (5th Cir. 2013) .......... 6, 14, 15

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) .......... 8

**Constitutional & Statutory Provisions**

U.S. CONST. Amend. I .......... *passim*

42 U.S.C. § 1983 .......... 11, 15

H.B. 89, "State Contracts with and Investments in Companies that Boycott Israel." .......... *passim*

Tex. Gov't Code § 2270.001 .......... 1, 3

Tex. Gov't Code § 2270.002 .......... 3, 8, 12

Tex. Gov't Code § 808.001 .......... 3, 4, 12, 13

Tex. Gov't Code § 808.004 .......... 11

Tex. Gov't Code § 808.051 .......... 9

# INTRODUCTION

Bahia Amawi lost her job helping Texas children because she supports Palestine. For nine years, Amawi provided speech language pathology services through annual contracts with the Pflugerville Independent School District. But in September 2018, Amawi could not renew her contract because Texas law now mandates support for Israel.

In May 2017 Texas enacted H.B. 89, codified at Tex. Gov't Code § 2270.001 *et. seq.*, "State Contracts with and Investments in Companies that Boycott Israel." This Act aims to suppress Palestinian activism within the state by prohibiting government contractors from boycotting Israel. The First Amendment bars Texas from using government contracts as a vehicle for content-based discrimination. Plaintiff Bahia Amawi now brings this action to enjoin enforcement of the Act as a violation of her fundamental First Amendment rights.

Twice this year, federal courts have enjoined substantively identical state laws as facially unconstitutional under the First Amendment. In Arizona, a federal district court found that "the [Arizona] Act's history instead suggests that the goal of the Act is to penalize the efforts of those engaged in political boycotts of Israel," then held that "such an interest is constitutionally impermissible." *Jordahl v. Brnovich*, 336 F. Supp. 3d 1016, 2018 WL 4732493 * 17 (D. Ariz. 2018). And in Kansas, another federal court concluded that those who band together through boycotts to express solidarity with Palestinians "seek to amplify their voices to influence change" and "are engaged in protected activity." *Koontz v. Watson*, F. Supp. 3d 1007, 1022 (D. Kan. 2018). The court enjoined the Kansas law because "forcing plaintiff to disown her boycott is akin to forcing plaintiff to accommodate Kansas's message of support for Israel." *Id.* at 1024.

The same First Amendment principles dictate an identical outcome here. Texas's ban on government contracts with those who boycott Israel must be enjoined, and the "No Boycott of Israel"

clause stricken from Texas and PFISD contracts. Only then will Bahia Amawi be able to resume providing speech language pathology services to Texas school children.

## FACTUAL BACKGROUND

### A. The Political Climate Surrounding the Peaceful Palestinian Boycott, Divestment and Sanctions Movement

The relationship between Israel and Palestine is an internationally significant political conflict. In the wake of World War II, Israel was established as an independent Jewish state in 1948. *See* Declaration of Gadeir Abbas, ¶ 3, Exhibit B (1948 *Declaration of the Establishment of the State of Israel*). During the Six-Day War in June 1967, Israel seized control over parts of Palestine. *See generally* Abbas Decl. ¶ 7 Ex. F (2018 United Nations report on Israel/Palestine). Israeli occupation and political control over Palestinian territory, including the West Bank and Golan Heights, continues to be the subject of intense international debate. *See id.*

On July 9, 2005, a group of Palestinian civil society organizations called for the "Boycott, Divestment, and Sanctions" of activities that support the ongoing Israeli occupation of Palestine – thus launching the "BDS" movement that continues to this day. *See* Abbas Decl. ¶ 4, Ex. C (BDS Call). On December 23, 2016, the United Nations Security Council unanimously adopted U.N. Resolution 2334. *See* Abbas Decl. ¶ 5, Ex. D (Resolution 2334). Resolution 2334 condemned Israeli settlements in Palestinian territory, and reaffirmed that continuing settlements "constitute[e] a flagrant violation under international law and a major obstacle to the achievement of the two-State solution and a just, lasting and comprehensive peace." *Id.* The United States abstained from voting on the Resolution. *See* Abbas Decl. ¶ 6, Ex. E (index of U.N. actions on Israel/Palestine).

The merits of all perspectives on Israel and Palestine, including the United States' related political actions, are robustly and publicly debated by governments, politicians, academics, non-profit organizations, businesses, and media institutions in the United States and around the world. The conflict between Israel and Palestine is a longstanding issue of considerable public concern. *See*

*generally Jordahl*, 2018 WL 4732493 * 16 ("[A]ctions taken by Israel in relation to Palestine are matters of much political and public debate.").

### B. Texas Enacts Anti-Boycott, Divestment, and Sanctions Legislation Requiring Government Contracts to Prohibit Boycotts of Israel

In recent years, public officials throughout the United States have advanced measures to penalize and suppress boycott, divestment, and sanctions activity. *See generally* Abbas Decl. ¶ 8, Ex. G (Palestine Legal map of anti-BDS legislative activity). In May 2017, Texas enacted H.B. 89, codified at Tex. Gov't Code § 2270.001 *et. seq*. (the "Act" or the "Texas Anti-BDS Act"). *See* Abbas Decl. ¶ 2, Ex. A (Westlaw version of H.B. 89 as enacted). The Act contains a "Prohibition on Contracts with Companies Boycotting Israel." Tex. Gov't Code § 2270.002.

Specifically, Tex. Gov't Code § 2270.002 provides:

> A governmental entity may not enter into a contract with a company for goods or services unless the contract contains a written verification from the company that it:
> (1) does not boycott Israel; and
> (2) will not boycott Israel during the term of the contract.

The Act defines "boycott Israel" to mean, "refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict harm on, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory." Tex. Gov't Code § 808.001.

The Act defines "company" to include, "a for-profit sole proprietorship, organization, association, corporation, partnership, joint venture, limited partnership, limited liability partnership, or any limited liability company, including a wholly owned subsidiary, majority-owned subsidiary, parent company or affiliate of those entities or business associations that exist to make a profit." Tex. Gov't Code § 808.001.

H.B. 89's author, Texas State Representative Phil King, told a Texas media outlet that he introduced the bill because "You can't have Christianity without having a literal, historical and spiritual

Israel," and "[t]he BDS movement is directed at harming and destroying Israel, pure and simple." *See* Abbas Decl. ¶ 9, Ex. H ("Texas Rep to File Anti-BDS Bill"). Representative King personally referred to the bill as an "anti-BDS" measure. *See id.* In signing H.B. 89, Texas Governor Greg Abbott proclaimed "Anti-Israel policies are anti-Texas policies, and we will not tolerate [boycott] actions against an important ally." *See* Abbas Decl. ¶ 10, Ex. I (Governor press release).

The Act took effect on September 1, 2017. *See* Abbas Decl. ¶ 2, Ex. A. To comply with its statutory mandate, Texas agencies and public entities, including school districts, started including "No Boycott of Israel" language in their boilerplate contracts. *See generally* Abbas Decl. ¶ 11, Ex. J (October 22, 2017 article entitled "Dickinson demands Hurricane Harvey victims agree to not boycott Israel.").

The Attorney General of Texas is tasked with enforcing the Act. Tex. Gov't Code § 808.001.

### C. Speech Language Pathologist Bahia Amawi Loses Contract with Pflugerville Independent School District Due to a "No Boycott of Israel" Clause

Plaintiff Bahia Amawi is a United States citizen who lives with her family in Round Rock, Texas. Declaration of Bahia Amawi ¶ 1. Amawi is a speech language pathologist who is fluent in English and Arabic. Amawi Decl. ¶ 2. For the last nine years Amawi has contracted with Pflugerville Independent School District ("PFISD") to conduct speech therapy and early childhood evaluations, including for Arabic-speaking children. Amawi Decl. ¶ 2. As an independent contractor who receives income in exchange for services, Amawi is by definition a sole proprietor. *See* Abbas Decl. ¶ 12, Ex. K (IRS guidance defining "a sole proprietor [a]s someone who owns an unincorporated business by himself or herself."). In September 2018, PFISD informed Amawi that in order to continue working she must sign a new addendum to certify that she "(1) [d]oes not currently boycott Israel; and (2) [w]ill not boycott Israel during the term of the contract." Amawi Decl. ¶¶ 4-6, Ex. B ¶ I.

Amawi refused to sign this "No Boycott of Israel" clause. Amawi Decl. ¶¶ 5, 7. Amawi is a Muslim of Palestinian origin with family who lives in Palestine. Amawi Decl. ¶ 8. Amawi "support[s] peaceful efforts to impose economic pressure on Israel, with the goal of making Israel recognize

Palestinians' dignity and human rights." Amawi Decl. ¶ 9. To that end, Amawi "frequently make[s] economic decisions on the basis of my support for Palestine and my ethical objections to Israel's mistreatment of Palestinians." *Id.* This includes decisions about which brands of olive oil and hummus she buys while grocery shopping. *See id.*

Amawi believes she is "exercising her First Amendment right to advocate for human rights in Palestine," and does not understand "why my political protest against Israeli oppression has anything to do with my work as a speech language pathologist for a Texas school district." Amawi Decl. ¶¶ 7, 10. Because she will not sign the mandatory "No Boycott of Israel" clause, Amawi has not provided any speech language pathology services to PFISD since September 24, 2018. Amawi Decl. ¶ 7.

### D. Texas Officials Reiterate their Political Support for Israel

Amawi filed her Complaint last Sunday night, December 16, 2018. *See* Dkt. 1. Texas officials promptly issued statements regarding this lawsuit and the Act. In response to a Monday morning news story about this lawsuit, Governor Greg Abbott tweeted "Texas stands with Israel. Period." Abbas Decl. ¶ 13, Ex. L. Later that day, the Attorney General's communications office released a statement, emphasizing that private citizens and companies in Texas do not "have a right to use money they obtain from government contracts" to engage in boycotts of Israel. *See* Abbas Decl. ¶ 14, Ex. M (*Statesman* article).

Meanwhile, PFISD issued a statement that "Unfortunately, Pflugerville ISD and all Texas school districts are at the mercy of the state and the regulations printed into law … Although Pflugerville ISD is the focus of the lawsuit, this is a state issue that affects all Texas public school districts and should be addressed at the state level." Abbas Decl. ¶ 15, Ex. N (PFISD Facebook post).

## ARGUMENT

A plaintiff seeking a preliminary injunction must establish "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3)

that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 537 (5th Cir. 2013) (cleaned up). When a "challenged law is incompatible with the First Amendment," judicial intervention to protect First Amendment liberties is "always in the public interest." *Id.* at 538, 539.

## I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS THAT TEXAS'S ANTI-BDS ACT VIOLATES THE FIRST AMENDMENT

The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. CONST. Amend. I. The First Amendment equally binds the State of Texas through the incorporation doctrine of the Fourteenth Amendment. *See, e.g.*, *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 822 (1995). State governments have "no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015). Government contractors "are constitutionally protected from dismissal for refusing to take an oath regarding their political affiliation." *See Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674–75 (1996).

### A. Participation in Boycotts of Israel Constitutes Protected Speech and Expressive Conduct

The founding story of America, taught to elementary school students nationwide, begins with colonial boycotts protesting British taxes on tea. *See, e.g.*, Abbas Decl. ¶ 16, Ex. O (1768 Boston Non-Importation Agreement). Boycotts have served critical expressive purposes at other times in American history. During the Civil Rights Movement, black citizens in Mississippi "presented white elected officials with a list of particular demands for racial equality and integration." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 889 (1982). When those demands were not satisfied, the NAACP called for a complete boycott of the area's white merchants. *Id.* "The boycott was supported by speeches and nonviolent picketing. Participants repeatedly encouraged others to join in its cause." *Id.*

at 907. In response, white merchants sued boycott participants to enjoin future boycotts and recover business losses. *Id.* at 889-893.

The Supreme Court in *Claiborne* recognized that non-violent boycotts constitute "form[s] of speech or conduct that [are] ordinarily entitled to protection under the First and Fourteenth Amendments." *Id.* at 907, 915. The Supreme Court held that a State's "broad power to regulate economic activity" simply does not extend to "prohibit[ing] peaceful political activity such as that found in [a] boycott" which expresses concern on critical public issues and showcases a desire for self-government. *Id.* at 913. Such activity "rest[s] on the highest rung of the hierarchy of First Amendment values." *Id.* (internal citation omitted).

In the last year, two different federal courts have relied on *Claiborne* to conclude that politically-motivated boycotts of Israel are fully protected expressive activity. "Collective boycotting activities undertaken to achieve social, political or economic ends is conduct that is protected by the First Amendment." *Jordahl*, 2018 WL 4732493 * 12 (enjoining Arizona anti-BDS law). Such protests seek to band individuals together "to express, collectively, their dissatisfaction with Israel and to influence governmental action…[They] and others participating in this boycott of Israel seek to amplify their voices to influence change, as did the boycotters in *Claiborne*." *Koontz,* 283 F. Supp. 3d at 1022 (enjoining Kansas anti-BDS law).

Plaintiff Bahia Amawi engages in protected First Amendment activity when she makes economic decisions in support of "peaceful efforts to impose economic pressure on Israel, with the goal of making Israel recognize Palestinians' dignity and human rights." Amawi Decl. ¶¶ 9-10. The Texas requirement that state contracts must include a "No Boycott of Israel" clause, as enforced by the Texas Attorney General and implemented by PFISD, eviscerates Amawi's right to engage in protected speech and expressive conduct.

**B. The Texas Anti-BDS Act Imposes a Content-Based Restriction on Speech**

A law is content-based, and presumptively unconstitutional, if "the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "A speech regulation is content-based if the law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 S. Ct. at 2231. "Any restriction on expressive activity because of its content would completely undercut the profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972) (ordinance distinguishing between labor and non-labor picketing facially unconstitutional).

The Texas Anti-BDS Act is content-based because it singles out those who participate in boycotts *against Israel* for disfavored treatment. *See* Tex. Gov't Code § 2270.002 (requiring certifications that contractors do not and will not boycott Israel). Texas's specification of Israel is akin to the Supreme Court's invalidation of a D.C. protest ordinance as unconstitutionally content-based: "Whether individuals may picket in front of a foreign embassy depends entirely upon whether their picket signs are critical of the foreign government or not." *Boos v. Barry*, 485 U.S. 312, 319 (1988). Likewise in Texas, whether contractors may protest actions in the Middle East depends entirely upon whether their boycott is critical *of Israel*, as opposed to any other government, company, or cause. Texas contractors remain free, for example, to economically boycott Palestine – or Syria, Saudi Arabia, Iraq, or Iran. They also remain free to boycott any U.S. state, company, or cause. Texas only targets *anti-Israel* boycotts. Such a content distinction triggers First Amendment strict scrutiny.

In addition, the Act imposes an impermissible speaker-based restriction on speech, which the Supreme Court has recognized as a form of content discrimination. "Because speech restrictions based on the identity of the speaker are all too often simply a means to control content," the Supreme

Court has "insisted that laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Reed*, 135 S. Ct. at 2230 (cleaned up).

The Texas Anti-BDS Act is speaker-based because it only bars Texas *contractors* from boycotting Israel, while leaving unregulated all other private speakers in Texas who boycott Israel. Residents and businesses who do not contract with the State of Texas may still boycott Israel, without censure, and regardless of their boycotts' effects on the Texas economy. Meanwhile, the Act instructs the Texas comptroller to subjectively survey "publicly available information" in order to "prepare and maintain, and provide to each state governmental entity, a list of all companies that boycott Israel." Tex. Gov't Code § 808.051. Texas is thus singling out a specific list of speakers for government censure based solely on a bureaucrat's discretionary determination that the speaker boycotts Israel. "The First Amendment prohibits the vesting of such unbridled discretion in a government official." *Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 133 (1992). It is plain that Texas's "speaker preference reflects a content preference" – i.e. official state support for Israel – and is therefore facially invalid. *See Reed*, 135 S. Ct. at 2230 (citations omitted). Governor Abbott proudly tweeting "Texas stands with Israel. Period." within hours of this lawsuit's announcement crystallizes the fact that an Israeli content preference exists. *See* Abbas Decl. ¶ 13, Ex. L.

The District of Kansas recently enjoined a near-identical anti-BDS statute as intruding on the First Amendment. Examining comparable legislative history, the court there concluded that Kansas's "goal is to undermine the message of those participating in a boycott of Israel. This is either viewpoint discrimination against the opinion that Israel mistreats Palestinians or subject matter discrimination on the topic of Israel. Both are impermissible goals under the First Amendment." *Koontz*, 283 F. Supp. 3d at 1022. The same analysis governs Texas's proclaimed intent that "Anti-Israel policies are anti-Texas policies, and we will not tolerate [boycotts] against an important ally." Abbas

Decl. ¶ 10, Ex. I. As a facially content-based and speaker-based restriction on Texas contractors who support anti-Israel boycotts, the Texas Anti-BDS Act must be enjoined.

### C. The Texas Anti-BDS Act Imposes Unconstitutional Conditions on Government Contractors

The Supreme Court's "modern unconstitutional conditions doctrine holds that the government may not deny a benefit to a person on a basis that infringes his constitutionally protected freedom of speech even if he has no entitlement to that benefit." *Umbehr*, 518 U.S. at 674-75 (cleaned up). A state government cannot "coerce support" for its preferred "political association[s] by subjecting government contractors to "direct and specific abridgement[s] of First Amendment rights." *O'Hare Truck Serv. v. City of Northlake*, 518 U.S. 712, 720 (1996). Although "governmental entities make a wide range of decisions in the course of contracting for goods and services," "it does not follow that this discretion can be exercised to impose conditions on expressing, or not expressing, specific political views." *Id.* at 724-26. The Texas Anti-BDS Act and its implementation through mandatory "No Boycott of Israel" clauses each impose unconstitutional conditions. They require government contractors to cease their protected political boycotts of Israel in order to engage in utterly unrelated transactions with Texas. *See Agency for International Development v. Alliance for Open Society International, Inc.,* 133 S. Ct. 2321, 2328 (2013) (holding that unconstitutional conditions "seek to leverage [state] funding to regulate speech outside the contours of the program itself").

For nine years, Plaintiff Bahia Amawi has contracted with PFISD to provide speech language pathology services. Amawi Decl. ¶ 2. The *only* reason Amawi is no longer providing those services is because of her ethical refusal to sign a Texas-mandated "No Boycott of Israel" clause. *See* Amawi Decl. ¶¶ 4-7. She refused to sign the anti-boycott provision "because I do not understand why my political protest against Israeli oppression has anything to do with my work as a speech language pathologist for a Texas school district." Amawi Decl. ¶ 8.

PFISD cannot identify a connection between speech language pathology and restricting political speech, either. *See* Abbas Decl. ¶ 15, Ex. N. Instead, PFISD bemoans the fact that the Texas Act has "forced [the district] to spend time on state political issues and not on our core mission – educating students." *See id.* PFISD thus acknowledges that a contractor boycotting Israel bears no relationship to the district's payments for educational services. Texas's anti-BDS Act expressly seeks to leverage state funding in order to stifle anti-Israel speech; this is unconstitutional.[1]

Federal courts in Arizona and Kansas agree. The court in *Jordahl* noted the State's heavy "burden in justifying a restriction of speech or expressive conduct" that has "widespread prophylactic impact" across all employees or contractors. *Jordahl*, 2018 WL 4732493 at *15. Such universal restrictions have a high risk of "chill[ing] potential speech before it happens." *See id.* In Arizona, the court concluded that speech regarding the Israel – Palestine conflict is a matter of public concern, for which "[t]here is no plausible relationship" between the execution of state contracts and a company's "avowal to refrain from engaging in a boycott of Israel." *Jordahl*, 2018 WL 4732493 at *16.

Similarly, the District of Kansas has "enjoin[ed] defendant from requiring any independent contractor to sign a certification that they are not participating in a boycott of Israel as a condition of contracting with the State of Kansas." *Koontz*, 283 F. Supp. 3d at 1027. "States cannot retaliate or impose conditions on an independent contractor on a basis that infringes his constitutionally protected freedom of speech." *Id.* at 1020 (cleaned up).

[1] The Act further imposes an unconstitutional condition when it attempts to bar those affected by the Act from suing any state entity or official for violations of their constitutional rights. *See* Tex. Gov't Code § 808.004. Such an attempt is preempted by 42 U.S.C. § 1983 and superseded by the First Amendment to the U.S. Constitution. *See, e.g., Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548–49 (2001). "Where private speech is involved, even [a legislature's] antecedent funding decision cannot be aimed at the suppression of ideas thought inimical to the Government's own interest." *Id.* (striking law which prohibited recipients of federal funds from challenging the constitutionality of welfare laws).

Texas's version of the enjoined Kansas and Arizona anti-BDS laws should suffer the same fate. The Attorney General contends contractors do not "have a right to use money they obtain from government contracts" to "marginalize and attack a key ally and trading partner of Texas." Abbas Decl. ¶ 14, Ex. M (*Statesman* article). But the First Amendment does not tolerate Texas's blacklist of government contractors who boycott Israel. H.B 89 must be enjoined as facially unconstitutional.

**D. The Texas Anti-BDS Act Violates Additional First Amendment Doctrines**

Texas's official discrimination against protected advocacy and expression is so egregious, it violates numerous other First Amendment doctrines beyond the content-based, speaker-based, and unconstitutional condition restrictions detailed above. Plaintiff briefly sets forth the basis for two additional violations below, regarding prior restraints and void for vagueness.

***Prior Restraint.*** The Texas Anti-BDS Act and its mandatory "No Boycott of Israel" clauses constitute prior restraints on protected First Amendment activity. Contractors must vow that they "will not boycott Israel during the term of the contract." Tex. Gov't Code § 2270.002. This forward-looking promise reveals that the purpose and effect of Texas's "No Boycott of Israel" provisions is to "weed out disfavored expression before it occurs" by preemptively limiting government contractors' advocacy and speech. *See Forsyth*, 505 U.S. at 130. A prior restraint, "while not *per se* unconstitutional, bears a heavy presumption against its constitutional validity." *E.g., Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 280–81 (5th Cir. 2003).

***Void for Vagueness***. Laws are unconstitutionally vague where "men of common intelligence must necessarily guess at [their] meaning." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) (internal citation omitted). It is by no means clear what exact activities the State of Texas intends to prohibit through its anti-boycott-of-Israel provisions. Texas's definition of "boycott" encompasses more than just economic conduct "refusing to deal" with Israel. *See* Tex. Gov't Code § 808.001. The definition also contains a catch-all against "otherwise taking any action that is intended to penalize, inflict economic

harm on, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory." Tex. Gov't Code § 808.001. Such other actions "intended to penalize" or "inflict economic harm on" Israel easily encompasses pure political speech about Israel's maltreatment of Palestinians, if done with the intent to persuade others to economically boycott Israel. They readily extend to *any* activity done in response to the Boycott, Divestment, and Sanctions call. The vagueness of the Anti-BDS Act and its mandated "No Boycott of Israel" clause operates to chills free speech, expression, and association. It must be enjoined.

**E. The Texas Anti-BDS Act Is Not Narrowly Tailored to Fulfill Compelling Governmental Interests**

The multitude of First Amendment ills inflicted by the Texas Anti-BDS Act and its mandatory "No Boycott of Israel" clause can only be overcome if Texas satisfies strict scrutiny. *See, e.g.*, *Reed*, 135 S. Ct. at 2226. Strict scrutiny requires Texas to prove that its speech restrictions "are narrowly tailored to serve compelling state interests." *Id.* The Attorney General and PFISD cannot meet that standard.

It is black-letter First Amendment doctrine that a "law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on [protected] speech, when it leaves appreciable damage to that supposedly vital interest unprohibited." *Reed*, 135 S. Ct. at 2232 (internal citations omitted). Whatever interest the Attorney General may come up with to justify this Act – such as promoting the Texas economy, prohibiting discrimination against a United States ally, or the ilk – it is clear the Act's efforts to achieve that interest are woefully aligned with its stated goals. No *post hoc* interest will be able to overcome the disconnect in Texas's political decision to single out *only* government contractors for mandatory support of a *single* foreign country. The Act's author proudly dubbed H.B. 89 as "anti-BDS legislation." *See* Abbas Decl. ¶ 9, Ex. H. Governor Abbott trumpeted this week that "Texas stands with Israel. Period." *See* Abbas Decl. ¶ 13, Ex. L. Texas's unconstitutional purpose to support Israel and silence advocacy for Palestine cannot be written around.

* * *

Plaintiff Bahia Amawi is likely to succeed on the merits that the Texas Anti-BDS Act facially violates the First Amendment.

## II. THE REMAINING PRELIMINARY INJUNCTION FACTORS WEIGH IN FAVOR OF ENJOINING ENFORCEMENT OF THE TEXAS ANTI-BDS ACT

After demonstrating a likelihood of success on the merits, a party seeking a preliminary injunction must show "(a) a substantial threat of irreparable injury if the injunction is not issued, (b) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (c) that the grant of an injunction will not disserve the public interest." *Texans for Free Enter.*, 732 F.3d at 537. Because each factor clearly supports Plaintiff Bahia Amawi, an injunction against enforcement of the Texas Anti-BDS Act and its mandated "No Boycott of Israel" clause is appropriate.

***Irreparable Harm.*** The Fifth Circuit has repeatedly held that "the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Texans for Free Enter.*, 732 F.3d at 539 (collecting cases and relying on *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). Plaintiff is "an advocate for Palestinian human rights and justice." Amawi Decl. ¶ 8. Solely because of the Texas Anti-BDS Act and PFISD's inclusion of the mandatory "No Boycott of Israel" term in her speech language pathology contract, Plaintiff lost the ability to help Texas schoolchildren. *See* Amawi Decl. ¶¶ 5-8. Absent relief from this Court, Plaintiff will continue to be barred from resuming her longstanding contractual arrangement with PFISD. This constitutes irreparable harm, and warrants an injunction striking the "No Boycott of Israel" clause and declaring the Act void.

***Balance of the Equities***. The scales of equity sharply tip in favor of upholding fundamental First Amendment values. *See, e.g., Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2008). Texas is thus unlikely to be able "to articulate the harm it will suffer if enjoined from enforcing the

relevant code provisions." *Texans for Free Enter.*, 732 F.3d at 539. Meanwhile, Plaintiff and all government contractors affected by the Act are suffering lost income due to the State's restrictions on their constitutionally-protected speech. Abandoning enforcement of the "No Boycott of Israel" clause cannot impose a constitutionally cognizable burden on Defendants because it is an impermissible government action in the first place.

***Public Interest.*** "Injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter.*, 732 F.3d at 539 (citation omitted). Permitting Plaintiff Amawi to sign PFISD's speech language pathology contract with the "No Boycott of Israel" paragraph stricken serves the "public interest in upholding free speech and association rights." *E.g. Farris v. Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012).

**RELIEF REQUESTED**

Pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution, the Court should declare H.B. 89, as codified at Tex. Gov't Code § 2270.001 *et. seq.*, unconstitutional. The Court should enjoin the Attorney General from enforcing the Act, or any "No Boycott of Israel" terms that now exist in any state contract. The Court should further strike the "No Boycott of Israel" clause from Plaintiff Bahia Amawi's proffered speech language pathology contract with the Pflugerville Independent School District, thereby permitting her to sign it and resume providing speech therapy and assessments for children.

Dated: December 21, 2018

**JOHN T. FLOYD LAW FIRM**

/s/ John T. Floyd
John T. Floyd (TX Bar No. 00790700)
jfloyd@johntfloyd.com
Christopher M. Choate (TX Bar No. 24045655)
choate@johntfloyd.com
4900 Woodway Dr., Ste. 725
Houston, TX 77056
Phone: (713) 224-0101
Fax: (713) 237-1511

**CAIR LEGAL DEFENSE FUND**

Lena F. Masri (D.C. Bar No. 1000019) α
lmasri@cair.com
Gadeir I. Abbas (VA Bar No. 81161) α *
gabbas@cair.com
Carolyn M. Homer (D.C. Bar No. 1049145) α
chomer@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 488-0833

α *Pro hac vice admission pending*

* *Licensed in VA, not in D.C.*
*Practice limited to federal matters*