# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| **BAHIA AMAWI** | Case No. 1:18-cv-01091-RP |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| vs. | |
| **PFLUGERVILLE INDEPENDENT SCHOOL DISTRICT**; and | ORAL HEARING REQUESTED |
| **KEN PAXTON**, in his official capacity as Attorney General of Texas, | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................................ii

TABLE OF AUTHORITIES..........................................................................................................iii

INTRODUCTION ...........................................................................................................................1

REPLY ARGUMENT......................................................................................................................2

I.  *CLAIBORNE* COMPELS THE CONCLUSION THAT AMAWI's BOYCOTT IS PROTECTED BY THE FIRST AMENDMENT......................................................................2

II.  THE TEXAS ANTI-BDS ACT FACIALLY TARGETS SPEECH AND NOT CONDUCT...................................................................................................................3

    A.  Texas's Mandatory Loyalty Oath Unconstitutionally Compels Speech....................4

    B.  Texas's Economic Restriction On Boycotting Israel Exists Only By Reference To The Content Of Contractors' Speech ...................................................................................5

    C.  The Anti-BDS Act Singles Out Content Against Israel...............................................8

III.  AMAWI BOYCOTTS ISRAELI PRODUCTS IN BOTH HER PERSONAL AND PROFESSIONAL CAPACITIES................................................................................................9

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
    570 U.S. 205 (2013) .................................................................................................................... 4

*Arkansas Times v. Waltrip*,
    No. 4:18-cv-00914-BSM (E.D. Ark., Jan. 23, 2019) ................................................................. 7

*Boos v. Barry*,
    485 U.S. 312 (1988) .................................................................................................................... 2

*Briggs & Stratton Corp. v. Baldrige*,
    728 F.2d 915 (7th Cir. 1984) ..................................................................................................... 8

*Brown v. Entm't Merchants Ass'n*,
    564 U.S. 786 (2011) .................................................................................................................. 10

*City of Ladue v. Gilleo*,
    512 U.S. 43 (1994) ...................................................................................................................... 6

*Cole v. Richardson*,
    405 U.S. 676 (1972) ............................................................................................................ 4, 10

*CU Lloyd's of Texas v. Hatfield*,
    126 S.W.3d 679 (2004) .............................................................................................................. 9

*Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*,
    138 S. Ct. 2448 (2018) ............................................................................................................... 7

*Jordahl v. Brnovich*,
    336 F. Supp. 3d 1016 (D. Ariz. 2018) ........................................................................... 3, 9, 10

*Koontz v. Watson*,
    283 F. Supp. 3d 1007 (D. Kan. 2018) ................................................................................. 3, 6

*Matal v. Tam*,
    137 S. Ct. 1744, 1765 (2017) ..................................................................................................... 8

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ........................................................................................................ passim

*Police Dep't of City of Chicago v. Mosley*,
    408 U.S. 92 (1972) ...................................................................................................................... 8

*R.A.V. v. City of St. Paul, Minn*,

505 U.S. 377 (1992) ..................................................................................................................9

*Reed v. Town of Gilbert, Ariz.*,
 135 S. Ct. 2218 (2015) ...........................................................................................................7

*Rumsfeld v. FAIR*,
 547 U.S. 47 (2006) ............................................................................................................ 6, 7

*Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*,
 502 U.S. 105 (1991) ...............................................................................................................8

*W. Virginia State Bd. of Educ. v. Barnette*,
 319 U.S. 624 (1943) ...............................................................................................................4

*Wooley v. Maynard*,
 430 U.S. 705 (1977) ...............................................................................................................4

**Statutes**

U.S. CONST. Amend. I ............................................................................................................*passim*

Tex. Gov't Code § 2270.002 ................................................................................................. 3, 6

Tex. Gov't Code § 808.001 ................................................................................................ 3, 5, 8

Tex. Labor Code § 21.051 *et. seq.* ................................................................................................9

**INTRODUCTION**

The First Amendment protects Bahia Amawi's right to boycott a foreign country. It forbids Texas from compelling a speech pathologist to sign a loyalty oath to Israel. As a result, this case raises a fundamental question: will Bahia Amawi's right to express herself through her pocketbook, irrespective of the political orthodoxy Texas seeks to impose, survive Texas's attempt to eliminate it?

Amawi is not the first person to raise this question. In the midst of the civil rights movement, as activists discovered the vitality and efficacy of mass boycotts in combatting racism, opponents struck back. The litigation that ensued culminated in the unanimous Supreme Court decision that dictates the outcome of this case. *Claiborne* controls, and it means that Bahia Amawi's right to boycott must endure.

The obvious must be stated: this case is not about what Bahia Amawi work as a speech pathologist. Her decision to boycott Israeli products is irrelevant to her supporting Texas schoolchildren. In fact, Pflugerville Independent School District has already conditionally stipulated to offer Amawi another contract if this Court enjoins enforcement of the Texas Anti-BDS Act. The school would like its speech pathologist back, but is blocked by a shortsighted Texas Act that trespasses all over the First Amendment.

This Texas Anti-BDS Act is among the greatest threats to the First Amendment's free speech clause in a generation. In resolving this motion and this case, the Court's decision ought to reflect the enduring power of the First Amendment, long applied by courts nationwide to protect unpopular speech in the face of majoritarian attempts to punish and suppress plaintiffs like Bahia Amawi.

## REPLY ARGUMENT

### I.   *CLAIBORNE* COMPELS THE CONCLUSION THAT AMAWI'S BOYCOTT IS PROTECTED BY THE FIRST AMENDMENT

*Claiborne* dictates the outcome of this case.[1]  *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982); Dkt. 8-2, PI Memo at 6-7.  In *Claiborne*, a group of black activists in Mississippi voted to boycott white merchants in opposition to those businesses' racist practices.  *See id.* at 889, 907.  The activists then monitored their community's patronage of the stores, picketing the storefronts and urging them to shop elsewhere.  *See id.* at 894, 907.  The Supreme Court's decision was not ambiguous: *Claiborne* unanimously held that each "elemen[t] of the boycott is a form of speech or conduct" entitled to protection under the First Amendment.  *Id.* at 907.  "The black citizens … in this action banded together and collectively expressed their dissatisfaction with a social structure that had denied them rights to equal treatment and respect."  *Id.*  Texas cannot wiggle away from *Claiborne.*

Amawi uses the same right to boycott in Texas that civil rights activists employed decades ago in Mississippi.  Because Amawi has "seen and experienced the brutality of the Israeli government against Palestinians," she has become "an advocate for Palestinian human rights and justice." *Id.* ¶ 8.  Amawi, like the civil rights activists in *Claiborne*, seeks through her boycott to express her commitment to ensuring that Palestinians are accorded fundamental human rights.  *See Claiborne*, 458 U.S. at 907.

The Attorney General's blithe minimization of *Claiborne* – that it *only* protects boycotts and speech "focused on vindication of a Fourteenth Amendment individual right" (Dkt. 25, Opp. at 17) – is wishful thinking.  Amawi's boycott targets an overseas cause, but that does not diminish her constitutionally protected right to refuse to buy, for example, certain brands of hummus here in Texas. *See Boos v. Barry*, 485 U.S. 312, 318-322 (1988) (holding that foreign officials cannot be insulated from criticism).  As *Claiborne* itself spells out, the right to boycott includes any collective action which

---

[1] The Fifth Circuit endorsed *Claiborne's* holding as recently as last year.  *Seals v. McBee*, 898 F.3d 587, 598 (5th Cir. 2018).

peacefully seeks "to bring about political, social, and economic change" or "influence governmental action." 458 U.S. at 911-912, 914. Amawi's refusal to purchase Israeli goods, and refusal to sign an oath foreswearing Israeli boycotts, exist at the core of her right to boycott.

As other federal district courts have concluded, "*Claiborne* stands for the proposition that collective boycotting activities undertaken to achieve social, political or economic ends is conduct that is protected by the First Amendment." *Jordahl v. Brnovich*, 336 F. Supp. 3d 1016, 1041 (D. Ariz. 2018). "The type of collective action targeted by the Act specifically implicates the rights of assembly and association that Americans … use to bring about political, social, and economic change." *Id*. at 1043 (citing *Claiborne*, 458 U.S. at 911). "The conduct [a state Anti-BDS law] aims to regulate is inherently expressive." *Koontz v. Watson*, 283 F. Supp. 3d 1007, 1024 (D. Kan. 2018) (citing *Claiborne*, 458 U.S. at 907-08).

## II. THE TEXAS ANTI-BDS ACT FACIALLY TARGETS SPEECH AND NOT CONDUCT

Close examination of the Anti-BDS Act reveals the pervasiveness of how it targets speech. The Anti-BDS Act contains at least three provisions which separately violate the First Amendment. First, the Anti-BDS Act compels Amawi to say something she does not want to say. It compels contractors to swear a loyalty oath to a foreign country that they do not and will not boycott Israel. *See* Tex. Gov't Code § 2270.002. This signature requirement violates longstanding precedent against compelled speech. Second, the Anti-BDS Act requires all contractors to not engage in "boycott" activity against Israel, while permitting them to engage in "ordinary" business activity which avoids Israel. *See* Tex. Gov't Code § 808.001. This makes an impermissible distinction between identical economic conduct. Third, the Anti-BDS Act singles out Israel, and only Israel, for favored treatment. This imposes an unjustified content-based limitation on speech and reveals that Texas is concerned, not about national origin discrimination, but about the policy preferences of a foreign country.

### A. Texas's Mandatory Loyalty Oath Unconstitutionally Compels Speech

The Anti-BDS Act violates what the Supreme Court has called a "fixed star in our constitutional constellation." *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). It does so by "prescrib[ing] what shall be orthodox in politics" and forcing Amawi to sign a loyalty oath that would compel her "to confess by word or act [her] faith" in that pro-Israel orthodoxy. *See id.* But decades of Supreme Court decisions do not allow Texas to coerce a signature from Bahia Amawi.

The government is constitutionally prohibited from requiring contractors to pledge allegiance to its preferred policies. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 220–21 (2013). The Supreme Court has long recognized that the First Amendment forbids a mandatory pledge of allegiance even to the United States. *Barnette*, 319 U.S. at 642. The same principle applies with even greater force to Texas's mandatory "No Boycott of Israel" clause, which amounts to a loyalty oath to a foreign nation. *See id.* State governments cannot condition employment "on an oath that one has not engaged, or will not engage, in protected speech activities." *Cole v. Richardson*, 405 U.S. 676, 680 (1972) (collecting cases). Amawi has a constitutional right to protest governments – whether they be Texas, the United States, or Israel. Defendants cannot pressure Amawi to abandon that right.

All parties agree that Texas law requires Amawi to physically sign the "No Boycott of Israel" pledge before performing contract services for public entities. *See* Dkt. 25, AG Opp. at 10; Dkt. 18, PFISD Stipulation. By signing the clause, Amawi would necessarily signal her agreement with Texas policy aligning itself with Israel (*see* Dkt. 25, AG Opp. at 19) – a policy to which Amawi voices strong moral objections. *See* Dkt. 8-3, Amawi Decl. ¶¶ 5-10; Amawi Reply Decl. ¶¶ 3-4. Amawi will not sign the oath under any circumstances. Amawi Reply Decl. ¶ 4. "The First Amendment protects the right of individuals to hold a point of view different from the majority and to refuse to foster … an idea they find morally objectionable." *Wooley v. Maynard*, 430 U.S. 705, 715 (1977) (striking down New Hampshire requirement that license places must display the "Live Free or Die" state motto). Unless

4

and until this Court strikes down the Texas Anti-BDS Act, the mandatory "No Boycott of Israel" clause unconstitutionally compels Bahia Amawi to abandon her support of Palestine and avow her support for Israel.

### B. Texas's Economic Restriction On Boycotting Israel Exists Only By Reference To The Content Of Contractors' Speech

Texas aims to suppress criticism of Israel, as expressed by Amawi and others, through their pocketbooks. The Anti-BDS Act is calibrated to financially punish contractors based on the viewpoints they express, rather than their actual economic conduct. The First Amendment forbids this coercion.

*Claiborne* recognizes that "the right of the States to regulate economic activity [can] not justify a complete prohibition against a nonviolent, politically motivated boycott designed to force governmental and economic change." 458 U.S. at 914. To that end, *Claiborne* requires states to narrowly define unlawful conduct and prohibits states from "employ[ing] means that broadly stifle fundamental personal liberties." *Id.* at 921, 933-934 (cleaned up). The Attorney General's opposition fails to wrestle with the exact conduct the Texas Anti-BDS Act regulates. On close examination, it is clear the Anti-BDS Act espouses no state interest in the actual economic conduct of purchases or non-purchases from Israel; its only aim is to prohibit speech criticizing Israel.

This is because the Texas Anti-BDS Act requires the state to question the speech and motivations underlying Amawi's, or any contractor's, economic conduct. As the Attorney General recognizes (Dkt. 25, AG Opp. at 4, 23), Texas does not consider economic actions which avoid Israel to constitute a "boycott" if they are taken "for ordinary business purposes." Tex. Gov't Code § 808.001. The Anti-BDS Act does not define "ordinary business purpose." *See id.* But the thrust is apparent: avoiding economic transactions with Israel is permissible, *unless* the transaction is avoided to express a political viewpoint. As a Kansas federal court recognized last year, such carve-outs "diminish the credibility of the government's rationale for restricting speech in the first place." *Koontz*,

5

283 F. Supp. 3d at 1023 (citing *City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994)).

The Attorney General concedes this point when he argues that "a general boycott of companies whose practices [Amawi] disagrees with" would be permitted under the Anti-BDS Act, even if it resulted in her same refusal to purchase from the same Israeli-connected companies. *See* Dkt. 25, AG Opp. at 15. Thus, Amawi's economic conduct is not what concerns the Attorney General. Rather, it is the unique combination of economic conduct and speech undertaken to make a point. It is precisely *because* impermissible and permissible economic decisions look identical to an outside observer that Texas has chosen to enforce it with the compelled speech "No Boycott of Israel" pledge. *See* Tex. Gov't Code § 2270.002. Pledges are easy for Texas to audit; the *absence* of economic transactions with Israel, coupled with Israel-protesting speech, is not.

The Attorney General relies on *Rumsfeld v. FAIR*, 547 U.S. 47 (2006) to contend that Texas's "No Boycott of Israel" provision regulates economic conduct and not expression. *See* Dkt. 25, AG Opp. at 13-15. But crucial to the *FAIR* decision was narrowly-defined conduct: law schools must provide physical access for military recruiters. *See id.* Once law schools supplied that access, "[t]he Solomon Amendment neither limits what law schools may say nor requires them to say anything." *Id.* The Supreme Court specifically acknowledged that law schools remained free to engage in other protest activities, including distribute dissenting bulletins, or picketing outside the military recruiters' doors. *See id.* By limiting the issue to a binary yes-or-no regarding physical access, the Supreme Court averted any legal dissection of the schools' speech or viewpoints on LGBT discrimination in the military.

The Anti-BDS Act creates a different situation. The law, by its terms, requires the state to scrutinize "ordinary" versus "anti-Israel" economic transactions. Texas objects to conduct only when the conduct expresses a viewpoint with which it disagrees.

Overlooking this critical constitutional infirmity accounts for why the Arkansas district court's

recent decision was incorrectly decided. There the court relied on *FAIR* to dismiss a comparable challenge to the Arkansas Anti-BDS Law. *Arkansas Times v. Waltrip*, No. 4:18-cv-00914-BSM (E.D. Ark., Jan. 23, 2019); *see also* Dkt. 31, AG's Notice of Supplemental Authority. But the Arkansas court, surprisingly, acknowledged that most forms of boycott activity and economic conduct could only be distinguished by speech. The court noted that it was "highly unlikely" that an outside observer would, for instance, be able to discern from an "absence of certain goods from a contractor's office" that the contractor was engaged in a boycott in the absence of speech. *Id.*, slip op. at 11 (relying on *FAIR*, 547 U.S. at 66).

This observation, however, does not weigh in favor of a state's interest in Anti-BDS legislation; it cuts against it. It is because identical economic conduct is indistinguishable to an outside observer that the Texas Anti-BDS Act deems it necessary to both require a "No Boycott of Israel" pledge and conduct a secondary inquiry into contractors' speech. The only Texas contractors singled out for disfavored treatment are those who do not purchase Israeli goods, *and* who express their political disagreements with Israel. Conduct is prohibited only when it is accompanied by speech Texas dislikes. *See, e.g., Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015) (invalidating ordinance where "The restrictions … that apply to any given sign thus depend entirely on the communicative content of the sign.").

The Attorney General separately relies on the 1980s Supreme Court case *Longshoremen* for his economic conduct vs. speech distinction. *See* Dkt. 25, AG Opp. at 15-16. But *Longshoremen* is distinguishable for a basic reason: its analysis is limited by the unique effects labor union edicts impose upon dissenting third parties. *Claiborne* itself, unanimously decided mere months after *Longshoremen*, cabined in *Longshoremen's* holding to the labor union context. *Claiborne* 458 U.S. at 912; *cf. Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2486 (2018) ("States and public-sector unions may no longer extract [union] fees from nonconsenting employees.").

Finally, the Attorney General cites the Seventh Circuit's 1980s decision in *Briggs*. *See* Dkt. 25, AG Opp. at 16. *Briggs* held that U.S. corporations could not cooperate with the Arab League Boycott by providing foreign countries with economic information forbidden by the Export Administration Act. *Briggs & Stratton Corp. v. Baldrige*, 728 F.2d 915, 918 (7th Cir. 1984). Ms. Amawi's consumer purchasing decisions in the United States are categorically different than international corporate negotiations in defiance of federal trade regulations.[2]

### C.   The Anti-BDS Act Singles Out Content Against Israel

Content control is the "essence of … forbidden censorship." *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 95–96 (1972) (cleaned up). Any content-based restriction on speech "raises the specter that the government may effectively drive certain ideas or viewpoints from the marketplace." *Simon & Schuster, Inc. v. New York State Crime Victims Bd.*, 502 U.S. 105, 116 (1991) (cleaned up).

The Attorney General attempts to defend the Anti-BDS Act as only "concern[ing] economic boycotts that target *all* Israelis *on the basis of nationality or national origin*." *See* Dkt. 25, AG Opp at 3, 8, 18. But this belies the plain text of the Act. *See* Tex. Gov't. Code § 808.001. The Anti-BDS Act defines "boycott" to include not only a general refusal to deal with Israel, but also more specified refusals to engage in one-off economic transaction with any single "person or entity doing business in Israel or in an Israeli-controlled territory." *See id.* The Act does not bar universal Israeli boycotts, it bars any (ill-defined) boycott activity against any single Israeli entity, including boycotts limited to companies operating in the West Bank.[3] *Accord Jordahl*, 336 F. Supp. 3d at 1037.

---

[2] *Briggs'* reasoning has since been abrogated. *Claiborne* was decided after the district court opinion which *Briggs* adopted, and *Claiborne* was neither cited to nor examined by the Seventh Circuit. Furthermore, the bedrock "commercial speech" distinction *Briggs* rests on has steadily fallen out of favor at the Supreme Court. *See generally Matal v. Tam*, 137 S. Ct. 1744, 1765 (2017).

[3] Texas is inconsistent in applying the definition it now proffers. Texas's own BDS blacklist lists a grocery store that only refuses to import produce from Israeli-occupied territories, not Israel generally. *See* Abbas Reply Decl., Ex. B-C.

8

The Anti-BDS Act does not impose a broad prohibition on discrimination on the basis of national origin – Texas law already does that. *See generally* Tex. Labor Code § 21.051 *et. seq.* Rather, the Anti-BDS Act singles out speakers (government contractors), content (Israel alone) and a viewpoint (anti-Israel) for unique opprobrium applied to no other Texas employer, company, country, or cause. "The First Amendment does not permit [state governments] to impose special prohibitions on those speakers who express views on disfavored subjects." *R.A.V. v. City of St. Paul, Minn*, 505 U.S. 377, 391 (1992). Even within categories of "unprotected" speech and activity, governments are barred from imposing content distinctions unless they satisfy strict scrutiny. *See id.* As Justice Scalia explained: "The government may proscribe libel; but it may not make the further content discrimination of proscribing *only* libel critical of the government." *Id.* So too here. Texas may proscribe discrimination on the basis of national origin, but it may not make the further content distinction of proscribing *only* anti-Israel viewpoints. "The only interest distinctively served by the content limitation is that of displaying the [government's] special hostility towards the particular biases thus singled out. That is precisely what the First Amendment forbids." *R.A.V.*, 505 U.S. at 395–96.

### III. AMAWI BOYCOTTS ISRAELI PRODUCTS IN BOTH HER PERSONAL AND PROFESSIONAL CAPACITIES

No legal distinction exists between Bahia Amawi, the speech language pathologist, and Bahia Amawi, the individual who grocery shops for her family. *See, e.g., CU Lloyd's of Texas v. Hatfield,* 126 S.W.3d 679, 684 (2004). The Attorney General's strained attempts to insert such a distinction fall flat. *Compare* Attorney General Opposition, Dkt. 25 at 9-11 *with* Tex. Gov't Code § 808.001 (defining "company" to include a "sole proprietorship"). A sole proprietor is, by definition, an individual or independent contractor who earns income through an unincorporated business entity. *See* Dkt. 8-4, Abbas Decl. ¶ 12, Ex. K. Recognizing this, the original sponsor of the Texas Anti-BDS Act proposed an amendment on January 11, 2019 to the definition of "company" to exclude "a sole proprietorship." *See* Abbas Reply Decl., Ex. A. No further legislative action has yet been taken.

Amawi's protest of Israeli occupation extends to both her personal and professional roles. *See* Amawi Reply Decl. ¶ 3. The Attorney General never argues that Amawi need not sign the "No Boycott of Israel" pledge at all – he only argues that the signature would not bind her "personal" decisions. *See* Dkt. 25, AG Opp. at 9-11. But as *Jordahl* recognizes, the difficulty in parsing individual versus professional conduct imposes a chilling effect across all aspects of Plaintiff's life and work. *Jordahl*, 336 F. Supp. 3d at 1033. That risk is particularly acute here, where the only arbiter of the line-drawing is the State of Texas itself. *See* Opp. at 10-11 (Attorney General proposal to limit construction to avoid the First Amendment problem).[4] Amawi refuses to sign Texas's mandatory "No Boycott of Israel" clause under any circumstances. Amawi Reply Decl. ¶ 4. Unless the Anti-BDS Act and its mandated "No Boycott of Israel" clause are stricken, she cannot resume work for the Pflugerville Independent School District. *See* Dkt. 18, PFISD Conditional Stipulation.

## CONCLUSION

For the reasons briefed, Bahia Amawi respectfully requests that the Court grant her motion for a preliminary injunction.

Dated: January 30, 2018

**CAIR LEGAL DEFENSE FUND**

/s/ Lena F. Masri
 Lena F. Masri (D.C. Bar No. 1000019) α
  lmasri@cair.com
 Gadeir I. Abbas (VA Bar No. 81161) α *
  gabbas@cair.com
 Carolyn M. Homer (D.C. Bar No. 1049145) α
  chomer@cair.com
 453 New Jersey Ave., SE
 Washington, DC 20003
 Phone: (202) 742-6420

---

[4] Every attempt the Attorney General makes to narrow the application of the Anti-BDS Act in contravention of its plain text only amplifies Plaintiff's vagueness concerns. *See* Dkt. 8-2, PI Memo. at 12-13. Vagueness as to what conduct and speech is prohibited imposes severe chilling effects on protected speech. *Cole*, 405 U.S. at 681 (collecting cases); *accord Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 807 (2011).

    Fax:   (202) 488-0833

α *Admitted pro hac vice*

\* *Licensed in VA, not in D.C.*
  *Practice limited to federal matters*

**JOHN T. FLOYD LAW FIRM**

John T. Floyd (TX Bar No. 00790700)
   jfloyd@johntfloyd.com
Christopher M. Choate (TX Bar No. 24045655)
   choate@johntfloyd.com
4900 Woodway Dr., Ste. 725
Houston, TX 77056
Phone: (713) 224-0101
Fax: (713) 237-1511