UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **BAHIA AMAWI**<br><br>    Plaintiff,<br><br>vs.<br><br>**PFLUGERVILLE INDEPENDENT SCHOOL DISTRICT**; and<br><br>**KEN PAXTON**, in his official capacity as Attorney General of Texas,<br><br>    Defendants. | Case No. 1:18-cv-01091-RP<br><br>*consolidated with*<br><br>Case No. 1:18-cv-01100-RP<br><br>**PLAINTIFF BAHIA AMAWI'S OPPOSITION TO KEN PAXTON'S MOTION TO DISMISS** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 3

    I.    *ARKANSAS TIMES* WAS WRONGLY DECIDED. ........................................ 3

        A.    The First Amendment protects political boycotts. ........................................ 3

        B.    Requiring Amawi to certify that she does not politically boycott Israel violates her First Amendment rights. ................................................................. 6

    II.    *ARKANSAS TIMES* IS CONTRARY TO FIFTH CIRCUIT PRECEDENT ... 8

    III.    THE TEXAS ANTI-BDS ACT IS UNCONSTITUTIONAL BECAUSE IT MAKES EXPRESSIVE CONTENT A NECESSARY COMPONENT OF PROHIBITED CONDUCT. ..................................................................................... 9

CONCLUSION ....................................................................................................................... 10

CERTIFICATE OF SERVICE ............................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Arkansas Times v. Waldrip*,
  --- F. Supp. 3d ----, No. 18-CV-914,
  2019 WL 580669 (E.D. Ark. Jan. 23, 2019) .................................................. passim

*Boos v. Barry*,
  485 U.S. 312 (1988) ........................................................................................ 4

*Cole v. Richardson*,
  405 U.S. 676 (1972) ........................................................................................ 7

*FAIR v. Rumsfeld*,
  547 U.S. 47 (2006). ................................................................................... passim

*FTC v. Superior Court Trial Lawyers Association*,
  493 U.S. 411 (1990) ........................................................................... 4, 5, 6, 10

*Henry v. First National Bank of Clarksdale*,
  595 F.2d 291 (5th Cir. 1979) ......................................................................... 3

*International Longshoreman's Association v. Allied International, Inc.*,
  456 U.S. 212 (1982) .................................................................................. 4, 6, 10

*Jordahl v. Brnovich*,
  336 F. Supp. 3d 1016 (D. Ariz. 2018) ....................................................... 2, 5, 6, 8

*Koontz v. Watson*,
  283 F. Supp. 3d 1007 (D. Kan. 2018) ........................................................... 2, 5, 6

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982) .................................................................................. passim

*RAV v. St. Paul*,
  505 U.S. 377 (1992) ........................................................................................ 10

*Seals v. McBee*,
  898 F.3d 587 (5th Cir. 2018). ....................................................................... 8, 9

*Texas v. Johnson*,
  491 U.S. 397 (1989) ........................................................................................ 10

*Thomas v. Collins*,
  323 U.S. 516 (1945) ........................................................................................ 3

*United States v. Albertini,*
    472 U.S. 675 (1985) .................................................................................................. 5

*United States v. O'Brien,*
    391 U.S. 367 (1968) .................................................................................................. 5

*United States v. Sindel,*
    53 F.3d 874 (8th Cir. 1995) ...................................................................................... 7

**Statutes**

U.S. Const. Amend. I ................................................................................................ passim

Ark. Code § 25-1-502 ........................................................................................................ 9

Tex Gov't Code § 808.001 ................................................................................................. 9

## INTRODUCTION

The Texas Attorney General's Motion to Dismiss (Dkt. 55) mostly rehashes the legal arguments made in his Opposition to Amawi's Motion for a Preliminary Injunction. *See* Dkt. 25. These arguments fall short. The Texas Anti-BDS Act facially violates the First Amendment. Far from failing to state a "plausible" First Amendment claim, Amawi is likely to succeed on one.

In order to avoid duplicative briefing, Amawi incorporates the arguments made in her Motion for a Preliminary Injunction (Dkt. 8-2) and Reply in Support (Dkt. 39). As those briefs explained:

- Participation in a boycott of Israel is protected under the First Amendment, PI Mot. at 6-7; PI Reply 2-3;

- The challenged Anti-BDS Act is an unlawful content-based speech restriction, PI Mot. at 8-10; PI Reply at 8-9;

- The challenged Anti-BDS Act is an unconstitutional speech compulsion, PI Reply at 3-5;

- The challenged Anti-BDS Act is an unconstitutional condition on government benefits, PI Mot. at 10-12;

- The challenged Anti-BDS Act is not narrowly tailored to fulfill a compelling government interest, PI Mot. at 13-14;

- The challenged Anti-BDS Act is an unlawful prior restraint, PI Mot. at 12;

- The challenged Anti-BDS Act is unconstitutionally vague, PI Mot. at 12-13[1]; and

---

[1] Further showing vagueness, last week the Comptroller added AirBnB to its blacklist, *see* https://comptroller.texas.gov/purchasing/publications/divestment.php, even though Airbnb merely declines to list properties in Israeli settlements in West Bank Settlements as "part of a larger policy with regard to conflict zones." Tovah Lazaroff, Texas Blacklists AirBnB over West Bank Settlement Boycott, JERUSALEM POST (Mar. 3, 2019), *available at* https://www.jpost.com/Israel-News/Texas-

- The challenged Anti-BDS Act cannot be saved because of some distinction between Amawi acting in her personal and "sole proprietorship" capacity, PI Reply at 9-10.

The only addition to the Attorney General's arguments is his extensive reliance on *Arkansas Times v. Waldrip*, --- F. Supp. 3d ----, No. 18-CV-914, 2019 WL 580669 (E.D. Ark. Jan. 23, 2019). The Eastern District of Arkansas issued this decision on January 23rd, eight days after the Attorney General filed his opposition to the Motion for Preliminary Injunction. *See* MTD at 1, 12-14; *see also* AG Notice of Supplemental Authority (Dkt. 31). *Arkansas Times* is the third federal decision to address the constitutionality of anti-BDS laws, but only the first to deny a preliminary injunction. *See Koontz v. Watson*, 283 F. Supp. 3d 1007 (D. Kan. 2018) (invalidating anti-BDS law); *Jordahl v. Brnovich*, 336 F. Supp. 3d 1016 (D. Ariz. 2018) (same).

*Arkansas Times* was wrongly decided. The court incorrectly concluded that neither boycotts of Israel nor forced declarations that one will not engage in boycotts of Israel has any protectable speech value. *Arkansas Times* lacks persuasive force in light of binding Supreme Court and Fifth Circuit precedent. Moreover, *Arkansas Times* is distinguishable based on material differences in the two states' anti-BDS laws. Thus, in addition to the incorporated arguments made in Amawi's Preliminary Injunction Motion and Reply, Plaintiff will use this opposition to explain why the Court should refuse to apply *Arkansas Times*.

---

blacklists-Airbnb-over-West-Bank-settlement-boycott-582253. *See also* PI Mot. at 12 ("It is by no means clear what exact activities the State of Texas intends to prohibit…."); PI Reply at 8 ("Texas is inconsistent in applying the definition it now proffers…").

# ARGUMENT

## I. *ARKANSAS TIMES* WAS WRONGLY DECIDED.

### A. The First Amendment protects political boycotts.

As Plaintiff has repeatedly emphasized, *Claiborne* controls this case. PI Mot. at 6-7; PI Reply at 2-3, 5. The principal holding of *Arkansas Times*, however, rejects *Claiborne* as binding precedent. 2019 WL 580669 at *6. The Arkansas district court held that because the act of *not* purchasing something is not "inherently expressive," political boycotts themselves are unprotected by the First Amendment. *Id.* at *5-7; *see also* AG MTD at 6-12.

In *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), the Supreme Court explained that a political boycott, "differentiate[d] … from a boycott organized for economic ends," is expressive. *Id.* at 915. *Arkansas Times* tries something different. The *Arkansas Times* decision attempts to distinguish speech in support of a boycott, which *Claiborne* explicitly protects, from the physical act of boycotting itself. *See Arkansas Times*, 2019 WL 580669 at *6; *see also* AG MTD at 10-12.

But *Claiborne* did not make this distinction. *Claiborne* declared that the "boycott clearly involved constitutionally protected activity," and its speech elements, "though not identical, are inseparable." *Id* at 911 (quoting in part *Thomas v. Collins*, 323 U.S. 516, 530 (1945)). *Claiborne* would have had no reason to clarify that "[s]econdary boycotts and picketing by labor unions may be prohibited," *id.* at 912, as could "a boycott organized for economic ends," *id.* at 915 (quoting *Henry v. First National Bank of Clarksdale*, 595 F.2d 291, 303 (5th Cir. 1979)), if it were not holding that participation in a boycott for political reasons constitutes protected conduct.

3

*Arkansas Times* attempts to support its misreading of *Claiborne* by citing *International Longshoreman's Association v. Allied International, Inc.*, 456 U.S. 212 (1982). 2019 WL 580669 at *6-7; *see also* AG MTD at 9-10.  But *Longshoreman* did not hold that the First Amendment does not protect political boycotts. *Longshoreman*, instead, recognized that boycotting is constitutionally equivalent to "picketing," which is unquestionably expressive conduct. 456 U.S. at 226; *see also Boos v. Barry*, 485 U.S. 312, 318 (1988) (picketing is "classically political speech"). *Longshoreman* reflected the Supreme Court's judgment that the admittedly expressive nature of a labor-union boycott was overridden in that instance by the general, viewpoint-neutral labor law prohibition against secondary boycotts. *Id.* at 225-26. That prohibition against secondary boycotts was grounded in labor laws' interests in protecting dissenting third parties from coerced participation in the union boycott. *Id.* at 225-26.  Thus, as *Claiborne* itself explained, the result in *Longshoreman* was not because of a lack of First Amendment "protected activity," but because a viewpoint-neutral labor regulation having only an "incidental" effect on protected activity may be "justified in certain narrowly defined instances." 458 U.S. at 912 (citations omitted).  The Texas Anti-BDS Act, by contrast, directly targets protected political activity in a viewpoint-discriminatory manner.  *See* PI Mot. at 8-10; PI Reply at 8-9.

*Arkansas Times* also relies on *FTC v. Superior Court Trial Lawyers Association*, 493 U.S. 411, 415-16 (1990), a Supreme Court case which held that a public defender boycott seeking to increase pay was an unlawful restraint of trade.

4

2019 WL 580669 at *6. But *SCTLA* found that the "decisive" difference between the boycott there and the one in *Claiborne* was that the *Claiborne* boycotters did not seek "special advantage for themselves" but instead sought "to change a social order." *SCTLA*, 493 U.S. at 426; *see also Claiborne*, 458 U.S. at 915. In contrast, the *SCTLA* boycotters were simply seeking "economic advantage." 493 U.S. at 426. This is the opposite of how the Texas Anti-BDS Act operates, which punishes those who forego economic transactions while attempting to change social policy. *See* § III, below.

Finally, *Arkansas Times* seeks refuge in the Supreme Court's decision in *FAIR v. Rumsfeld*, 547 U.S. 47 (2006). 2019 WL 580669 at *5-6; *see also* AG MTD at 6-8. But as explained by Amawi in prior briefing as well as by two federal courts, *FAIR* does not take this case out of *Claiborne*'s ambit. *See* PI Reply at 6; *Koontz*, 283 F. Supp. 3d at 1023-204, and *Jordahl*, 336 F. Supp. 3d at 1042-43.

*First, FAIR* involved an "incidental" burden on speech, which triggers at most intermediate scrutiny. *See* 57 U.S. at 67 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). Under the test relied on by *FAIR*, an incidental burden on speech will be upheld if "the governmental interest is unrelated to the suppression of free expression," *see United States v. O'Brien,* 391 U.S. 367 (1968)*, FAIR,* 57 U.S. at 65-67. But in both Arkansas and Texas, as well as in other states' Anti-BDS provisions, the suppression is intentional. *See Koontz*, 283 F. Supp. 3d at 1023 ("conduct the Kansas Law aims to regulate is inherently expressive" under *Claiborne*); PI Mot. at 3-4, 8-10; PI Reply at 3, 8-9. Texas's suppression intention is obvious from the Anti BDS-Act's legislative history. *See* PI Mot. at 3-4 (showing House sponsor and

Governor specifically proclaiming that the bill was targeting the BDS movement). It is obvious from Governor Greg Abbott's response to this lawsuit: "Texas stands with Israel. Period." *See* PI Mot. at 5. Moreover, as explained in more detail in Section III, below, the Texas Anti-BDS Act only applies if a contractor accompanies their refusal to purchase Israeli products with an expressive element. This case is the inverse of *FAIR*.

*Second*, *FAIR* conspicuously does not refer to the law schools' actions as a boycott anywhere in the opinion. Instead, the Supreme Court states that the conduct involved was simply "treating military recruiters differently from other recruiters." *Id.* at 66. *FAIR* does not mention *Claiborne*, *SCTLA*, or *Longshoreman* at all. When the Supreme Court overrules, abrogates, or distinguishes prior decisions, it does so expressly. The Supreme Court's unanimous, narrow decision in *FAIR* cannot be read to have upset decades of prior boycott caselaw covertly and without dissent. *See Koontz*, 283 F. Supp. 3d at 1023 ("boycotts—like parades—have an expressive quality") (citing *Claiborne*). *Arkansas Times* fails to recognize that balance, and thus misreads *FAIR*. *See Koontz*, 283 F. Supp. 3d at 1023-204; *Jordahl*, 336 F. Supp. 3d at 1042-43 (distinguishing *FAIR*).

### B. Requiring Amawi to certify that she does not politically boycott Israel violates her First Amendment rights.

*Arkansas Times* separately held that Arkansas's certification requirement, akin to the one challenged here, did not violate the First Amendment because it was simply "elicit[ing] information" that the individual would comply with the law. 2019 WL 580669 at *4 (relying on *United States v. Sindel*, 53 F.3d 874, 878 (8th Cir. 1995),

6

and *Cole v. Richardson*, 405 U.S. 676, 680 (1972)); *see also* AG MTD at 13-14. The federal court in *Arkansas Times* concluded that no certification requirement implicates the First Amendment unless the underlying certification conduct (the boycott) is itself constitutionally protected speech. 2019 WL 580669 at *4.

This conclusion is wrong for two reasons. *First*, as explained in Section I-A above, Amawi's boycott is constitutionally protected speech. *Second*, unlike the tax information required in *Sindel*, the certification here is not eliciting ministerial information in Amawi's possession. Instead, under *Sindel's* own reasoning, the certification requires Amawi to "disseminate" a political position on Israel "with which [s]he disagrees." 53 F.3d at 878 (explaining what type of certification would violate the First Amendment). Moreover, unlike the generic defend-the-Constitution-and-oppose-treason oath in *Cole*, 405 U.S. at 678,[2] the certification here is directed at one specific type of activity – boycotting Israel – which is not otherwise unlawful. *See also* PI Reply at 4 & 10 n.4 (discussing *Cole*).

*Arkansas Times's* critical error comes when, relying on *FAIR*, the court reasons that "[it] is highly unlikely that, absent any explanatory speech, an external observer would ever notice that a contractor is engaging in a primary or secondary boycott of Israel." 2019 WL 580669 at *5; *see also FAIR*, 547 U.S. at 66. This is a Catch-22. The Eastern District of Arkansas held that, because prohibiting boycotts is legal (a

---

[2] "I do solemnly swear (or affirm) that I will uphold and defend the Constitution of the United States of America and the Constitution of the Commonwealth of Massachusetts and that I will oppose the overthrow of the government of the United States of America or of this Commonwealth by force, violence or by any illegal or unconstitutional method."

7

premise at odds with the jurisprudence), the state is allowed to compel a promise not to boycott Israel. *Id.* at *4. But this means the state is thus compelling the very conduct-adjacent speech that *FAIR* acknowledged would implicate the First Amendment. *FAIR*, 547 U.S. at 66; *see also Jordahl*, 336 F. Supp. 3d at 1042 (requiring a "promise to refrain from engaging in certain actions that are taken in response to larger calls to action that the state opposes" is "infringing on the very kind of expressive conduct at issue in *Claiborne*").

The error in *Arkansas Times's* reasoning is evident by applying its holding to the facts of *Claiborne* itself. According to *Arkansas Times*, the NAACP could advocate for a boycott of white merchants, but had no right to refuse to visit their stores or purchase their merchandise. *Id.* at *5-6. Under the logic of *Arkansas Times*, Mississippi could have required the NAACP to certify that it would not boycott racially discriminatory businesses. Since any result blocking that NAACP activism must be wrong, *Arkansas Times* must be wrong as well.

## II.   *ARKANSAS TIMES* IS CONTRARY TO FIFTH CIRCUIT PRECEDENT.

Even if *Arkansas Times* were correct as a matter of law in its own circuit, it is contrary to the Fifth Circuit's recent, binding analysis in *Seals v. McBee*, 898 F.3d 587 (5th Cir. 2018). In *Seals*, the Fifth Circuit held that "threats to take wholly lawful actions" are protected by the First Amendment. *Id.* at 595. *Seals* further explained that *Claiborne* held that NAACP protected both threats to engage in "boycotts of private businesses" and the boycotts themselves. *Id.* at 597 (citing *Claiborne*, 458 U.S. at 899-900). *Seals* recognizes that a statute which prohibits "constitutionally

8

protected threats, such as to boycott," is unconstitutional. *Id*. *Seals* thus forecloses *Arkansas Times's* position that the government may punish either participation in a political boycott or the threat to do so. (Such a threat is inherent in refusing to sign the certification that one will not boycott Israel). In the absence of some legally-meaningful distinction between political boycotts and boycotts against Israel, which neither the Attorney General nor *Arkansas Times* provides, the Texas Anti-BDS Act is unconstitutional.

### III. THE TEXAS ANTI-BDS ACT IS UNCONSTITUTIONAL BECAUSE IT MAKES EXPRESSIVE CONTENT A NECESSARY COMPONENT OF PROHIBITED CONDUCT.

The Texas Anti-BDS Act specifically prohibits conduct "intended to penalize, inflict economic harm on, or limit commercial relations specifically with Israel," but exempts from the definition of boycott "an action made for ordinary business purposes." Tex Gov't Code § 808.001(1). The Arkansas statute does not make the same distinction. Arkansas's Anti-BDS provision instead applies to the "engaging in refusals to deal, terminating business activities, or other actions that are intended to limit commercial relations with Israel, or persons or entities doing business in Israel or in Israeli-controlled territories, in a discriminatory manner," Ark. Code § 25-1-502(1)(A)(i). Arkansas's Anti-BDS provision does not regard whether those activities are done for "ordinary business purposes."[3]

---

[3] The Arkansas statute does require that the refusal be done "in a discriminatory manner" but this language is neither discussed in nor relevant to the *Arkansas Times* opinion.

9

In Texas, the Anti-BDS Act does not affect all those who refuse to engage in commerce with Israel; the law only disfavors those who do so for political reasons, as opposed to business reasons. Thus, contrary to the content-neutral regulations upheld in *FAIR*, *SCTLA*, and *Longshoreman*, the Anti-BDS Act makes distinctions based on speech content. *See also* PI Reply Br. at 6 (distinguishing *FAIR*).

The Supreme Court has held that even when the government may proscribe speech based on a "noncontent element," it cannot proscribe the same speech if it does so based on a content element. *RAV v. St. Paul*, 505 U.S. 377, 386 (1992); *see also* PI Reply at 9. It is for this reason that flag burning may be punishable as part of "an ordinance against outdoor fires" but not as part "of an ordinance against dishonoring the flag." *Id.* at 385 (citing *Texas v. Johnson*, 491 U.S. 397 (1989)). Thus, even if this Court adopted *Arkansas Times's* reasoning here, the Anti-BDS Act would still be unconstitutional because of Texas's unique "ordinary business purposes" carve-out. It is not permissible to, as the Texas Anti-BDS Act does, make a statutory violation dependent on whether it is accompanied by politically protected speech.

## CONCLUSION

The Court should deny the Attorney General's Motion to Dismiss and grant Amawi's Motion for a Preliminary Injunction. Amawi expressly incorporates her Memorandum in Support (Dkt. 8-2) and Reply in Support (Dkt. 39) of the Motion for a Preliminary Injunction in opposition to this Motion.

Dated: March 5, 2019                    **CAIR LEGAL DEFENSE FUND**

/s/ *Lena F. Masri*
Lena F. Masri (D.C. Bar No. 1000019) α
  lmasri@cair.com
Gadeir I. Abbas (VA Bar No. 81161) α *
  gabbas@cair.com
Carolyn M. Homer (D.C. Bar No. 1049145) α
  chomer@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax:    (202) 488-0833

α *Admitted pro hac vice*

\* *Licensed in VA, not in D.C.*
  *Practice limited to federal matters*

**JOHN T. FLOYD LAW FIRM**

John T. Floyd (TX Bar No. 00790700)
  jfloyd@johntfloyd.com
Christopher M. Choate
  (TX Bar No. 24045655)
  choate@johntfloyd.com
4900 Woodway Dr., Ste. 725
Houston, TX 77056
Phone: (713) 224-0101
Fax:        (713) 237-1511

11

## CERTIFICATE OF SERVICE

I certify that on March 5, 2019 the foregoing document was filed via the Court's CM/ECF system. I further certify that all counsel of record will receive automated service through that system.

/s/ Lena F. Masri