IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Bahia Amawi, § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | | Civil Action No. 1:18-CV-1091-RP |
| § | | |
| Pflugerville Independent School District; and § | | *consolidated with:* |
| Ken Paxton, in his official capacity as § | | |
| Attorney General of Texas, § | | Civil Action No. 1:18-CV-1100-RP |
| *Defendants.* § | | |

### DEFENDANT KEN PAXTON'S REPLY IN SUPPORT OF OMNIBUS MOTION TO DISMISS

Plaintiffs fail to show that Chapter 2270 infringes on any protected conduct, and consequently, their claims should be dismissed because they have failed to state a claim for which relief can be granted. The Eastern District of Arkansas recently applied *Rumsfeld v. FAIR, Inc.*, 547 U.S. 47 (2006) to uphold an Arkansas law much like Chapter 2270, and the court explained that "the decision to engage in a primary or secondary boycott of Israel is 'expressive only if it is accompanied by explanatory speech.'" *Arkansas Times LP v. Waldrip*, 2019 WL 580669, at *5 (E.D. Ark. Jan. 23, 2019) (citation omitted). The Arkansas court further rejected the plaintiff's argument that the Supreme Court has created an "unfettered, black-letter right to engage in political boycotts." *Id.* at *6. Plaintiffs attempt to discredit the reasoning in *Arkansas Times*, but they fail to show that the court was wrong. Their claims should be dismissed.

### ARGUMENT

**A.   Plaintiffs' conduct at issue is not subject to independent constitutional protection.**

In their response briefs, Plaintiffs contend that their individual decision to boycott Israel is protected conduct. *Amawi* Response at 7; *Pluecker* Response at 5. It is not.

The First Amendment only protects speech or "conduct that is inherently expressive." *Rumsfeld v. FAIR, Inc.*, 547 U.S. 47, 66 (2006). To prevail on their First Amendment claims, Plaintiffs must show that boycotting Israeli products is either speech or inherently expressive conduct. They cannot meet this threshold requirement. Choosing not to purchase certain products because of their connection to Israel is not the same as delivering a speech about one's objection to Israeli policy. Refusing to do business with a company because of its connection to Israel is not the same as marching in a parade that supports the BDS Movement. While protected conduct *may accompany* a boycott, the act of engaging in a boycott by refusing to purchase a product or refusing to deal with a certain company does not constitute speech or inherently expressive conduct meriting constitutional protection.

Because explanatory speech is needed to convey a boycott's message, the act of boycotting does not qualify as speech or inherently expressive conduct. As a result, Chapter 2270 does not infringe on any First Amendment right. While Plaintiffs may disagree with the law, they fail to show how Chapter 2270 violates their constitutional rights.

**B.    The Texas Law is Neither a Content- Nor Viewpoint-Based Regulation of Speech.**

Chapter 2270 is not a content- or viewpoint-based regulation of speech as Plaintiffs claim. *Pluecker* Response at 12–13; *Amawi* Response at 10.

First, Chapter 2270 does not target political boycotts any more so than Congress did in *FAIR*. And despite Congress's self-evident targeting in that case, the Solomon Amendment was deemed a "neutral regulation." *FAIR*, 547 U.S. at 67; *accord Burt v. Gates*, 502 F.3d 183, 187 (2d Cir. 2007). Likewise, Chapter 2270 is a neutral law.

Second, it is well-established that anti-discrimination statutes "make[] no distinctions on the basis of the organization's viewpoint.'" *Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S.

537, 549 (1987). Instead, "federal and state antidiscrimination laws … [are] *permissible content- neutral regulation[s]* of conduct." *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993) (emphasis added). It is doubtful any anti-discrimination act can survive if Plaintiffs' "targeting" position is accepted and applied faithfully. *Pluecker* Response at 12–13; *Amawi* Response at 4. The legislative histories of the Civil Rights Act of 1964 and Fair Housing Act of 1968, for example, are replete with condemnation of particular types of discrimination—principally discrimination against African-Americans in the Jim Crow South. *See, e.g., Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 608–11 (2004) (Thomas, J., dissenting) (Congressional "motivation" was to "prevent invidious discrimination against racial minorities, especially blacks."). Yet, these laws passed constitutional muster even though they targeted a specific type of discrimination.

Third, anti-discrimination laws are not constitutionally suspect because they ban only a subset of discrimination. Congress may, for example, ban age discrimination only against the old but not the young in the Age Discrimination in Employment Act (ADEA). *See* 29 U.S.C. § 621. And the ADEA has repeatedly survived constitutional challenge. *See, e.g., EEOC v. Wyoming*, 460 U.S. 226 (1983). Similarly, Chapter 2270 may also ban discrimination aimed at a certain nation without including all of the other countries that face various forms of discrimination.

Any anti-discrimination law must state what type of discrimination it intends to prevent. Chapter 2270 reflects the State's desire to not fund discriminatory conduct aimed at Israel—namely, boycotts—through state contracts. This clarity is not detrimental to the law's validity. Instead, this tailoring follows the foundational elements of non-discrimination measures and only applies in the specific field of government contracts. As a result, Chapter 2270 remains a valid anti-discrimination measure.

**C.   Texas can choose not to do business with companies that boycott Israel.**

Texas has not criminalized boycotting. Texas has not banned anti-Israel speeches or inherently expressive conduct that criticizes Israel. Rather, Texas has chosen to forego contracts with companies that boycott Israel. Texas is well within its constitutional authority to choose not to contract with companies that discriminate against an ally.

Plaintiffs continue to discount *International Longshoremen's Ass'n v. Allied International, Inc.*, 456 U.S. 212 (1982), as merely a labor case without any meaningful relevance outside that context. *Pluecker* Response at 7–8; *Amawi* Response at 4. That distinction fails. Indeed, as the Supreme Court explained, the boycott in *Longshoremen* was "*not a labor dispute* with a primary employer *but a political dispute* with a foreign nation." 456 U.S. at 224 (emphasis added). That is precisely the situation that we have here.

It is proper for Texas to pass laws in accordance with its policies when doing so does not unlawfully infringe on a constitutional right of the affected people. Chapter 2270 applies in a much more limited context than the law at issue in *Longshoremen*. Rather than outright banning boycotts of Israel, Texas has chosen only to forego contracts with companies that boycott Israel during the term of the state contract. Chapter 2270 is both limited and constitutional.

**D.   Chapter 2270 is Presumed Valid and Remains Valid.**

Plaintiffs claim that Chapter 2270 is impermissibly vague and thus unconstitutional. *Pluecker* Response at 14–15; *Amawi* Response at 1. This facial attack poses a scenario where Chapter 2270 could potentially be vague, but this argument fails to account for the presumption of validity. "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 482 U.S. 568, 575 (1988). "The elementary rule is that every reasonable construction must be resorted to,

in order to save a statute from unconstitutionality." *Id.* (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). This same rule of construction applies to Texas statutes, such as Chapter 2270. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex. 1998) ("We should, if possible, interpret the statute in a manner that avoids constitutional infirmities.").

The presumption of validity disfavors interpretations that would cause the statute to be unconstitutional when valid interpretations of the text exist. As discussed *supra*, Chapter 2270 is reasonably construed as an anti-discrimination measure that applies in a limited context. As a result, Chapter 2270 is not vulnerable to Plaintiffs' claim of vagueness.

## CONCLUSION

Because the Chapter 2270 is a valid anti-discrimination law, Plaintiffs' conduct is not protected under the First Amendment, and Plaintiffs have not asserted a claim for which relief can be granted, Plaintiffs claims should be dismissed with prejudice.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

AMANDA J. COCHRAN-MCCALL
Chief for General Litigation Division

*/s/ Michael R. Abrams*
MICHAEL R. ABRAMS
Texas Bar No. 24087072
Assistant Attorney General
RANDALL W. MILLER
Texas Bar No. 24092838
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512-463-2120
Fax: 512-320-0667
Michael.Abrams@oag.texas.gov
Randall.Miller@oag.texas.gov

**Counsel for Defendant Ken Paxton**

## CERTIFICATE OF SERVICE

  I certify that a true and correct copy of the foregoing document was served upon all counsel of record through the Court's electronic filing system on March 12, 2019.

*/s/ Michael R. Abrams*
MICHAEL R. ABRAMS
