IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BAHIA AMAWI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-1091-RP |
| | § | |
| PFLUGERVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, et al., | § | *Consolidated with:* |
| | § | 1:18-CV-1100-RP |
| Defendants. | § | |

**ORDER**

On May 2, 2019, Defendants the Trustees of the Klein Independent School District and the Trustees of the Lewisville Independent School District gave notice that they have appealed the Court's Order, dated April 25, 2019 (the "Order"), enjoining the enforcement of House Bill 89, codified at Tex. Gov. Code §2270.001 *et seq.* ("H.B. 89"). (Not., Dkt. 87, at 1). Now before the Court is Defendant Ken Paxton's (the "State") motion for a stay of this matter pending appeal of the Order, (Mot., Dkt. 83), and responsive briefing, (Dkts. 88, 89). For the reasons that follow, the Court will deny the motion.

**I. LEGAL STANDARD**

Federal Rule of Civil Procedure 62(d) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction." In determining whether to grant a stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably harmed absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013) (citation

omitted). "A stay is not a matter of right," however, "even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. U.S.*, 272 U.S. 658, 672 (1926)). Rather, the decision to grant a stay pending appeal is "an exercise of judicial discretion," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.*

## II. DISCUSSION

There is substantial overlap between the four factors courts must consider in determining whether to stay an action and the four factors governing preliminary injunctions. *Id.* (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008)). The Court has therefore already largely addressed the four factors for a stay in determining that Plaintiffs were entitled to a preliminary injunction enjoining the enforcement of H.B. 89. To the extent the State merely repeats arguments the Court has already considered and rejected, it has failed to meet its burden of showing that the Court should exercise its discretion to stay this case. *See Kahara Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 264 F. Supp. 2d 484, 487 (S.D. Tex. 2002) (rejecting motion to stay raising the same arguments considered and rejected in determining that a preliminary injunction was warranted). The Court addresses below additional support now offered by the State with respect to its reasserted arguments, as well as arguments now made by the State for the first time.

As an initial matter, however, it is unclear what standard the State attempts to satisfy in meeting its burden under the four-factor test for a stay. It asserts that it "has made a strong showing that [it] is likely to succeed on the merits," thus invoking the standard articulated in *Planned Parenthood*, 734 F.3d at 410. (Reply, Dkt. 89, at 1). But by citing to *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981), the State appears to invoke the alternative standard provided in that case. (*Id.*). *Ruiz* held that "on motions for stay pending appeal the movant need not *always* show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a

serious legal question is involved and show that the balance of the equities weighs *heavily* in favor of granting the stay." 650 F.2d at 565 (emphases added). This alternative standard is applicable in cases "where relative harm and the uncertainty of final disposition justify it." *Id.*

Giving the State the benefit of the doubt, the Court considers its motion under both standards. However, the Court finds that under either standard, the State has failed to show that the Court should exercise its discretion to stay its injunction.

### A. Likelihood of Success on the Merits

First, the State recycles its argument that *Rumsfeld v. FAIR*, 547 U.S. 47 (2006), governs this case, and that under it, Plaintiffs boycotts are not speech. (Mot., Dkt. 83, at 2). The Court has addressed and rejected this argument. (*See* Order, Dkt. 82, at 23–26). Part of the Court's analysis involved (but did not depend on) the fact that *FAIR* does not once mention *Claiborne*, boycotts, or even the decision to withhold patronage. (*See id.* at 24). Rather, *FAIR* was about providing the military equal access to law students for recruitment purposes. 547 U.S. at 51 ("[The Solomon Amendment] specifies that if any part of an institution of higher education denies military recruiters access equal to that provided other recruiters, the entire institution would lose certain federal funds."). Now the State argues that in their briefing, the *FAIR* plaintiffs referred to their own activities as a boycott and cited to *Claiborne* four times. (Mot., Dkt. 83, at 3). In the State's view, this means that "the conduct at issue in *FAIR* . . . was unambiguously boycotting conduct." (*Id.* at 2). That the *FAIR* plaintiffs chose to characterize their conduct as a boycott does not change the fact that the Supreme Court did not do so, however. If anything, the State has made it all the more clear that because the Supreme Court was invited to consider the *FAIR* plaintiffs' activities as a boycott, its decision not to do so was deliberate. To read *FAIR*, as the State does, to hold that political boycotts are not protected speech, without citing to or discussing the foundational *Claiborne* decision

(despite the fact that it was thoroughly briefed and presented) and notwithstanding the Court's conspicuous avoidance of any discussion of boycotts, strains credulity.

The Court therefore reaffirms its conclusion that the case directly applicable here is *Claiborne*. *Claiborne* expressly interprets the scope of First Amendment protection for political boycotts. *FAIR* does not; it *avoids* doing so. Moreover, as previously noted, to the extent that there is any tension between *Claiborne*'s and *FAIR*'s holdings, this Court—and the Fifth Circuit—is bound to follow *Claiborne. See Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989)) ("If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.").

Second, the State repeats its argument that H.B. 89 does not restrict speech, and therefore it "cannot constitute content or viewpoint discrimination" and "does not compel speech." (Mot., Dkt. 83, at 3). As explained at length in the Order, political boycotts are protected speech. (*See* Dkt. 82, at 23–29). To the extent the State now argues that H.B. 89 does not restrict speech because "Plaintiffs remain free to speak about any issue surrounding the Israeli-Palestinian conflict," (Mot., Dkt. 83, at 3), this argument is a non-sequitur. Plaintiffs need not be *silenced* for their speech to be impermissibly *chilled.*

Third, the State takes issue with the Court's "reli[ance] on statements surrounding the passage of [H.B. 89], and even those surrounding this litigation," to conclude that H.B. 89 was not intended to serve the compelling state interest of preventing national origin discrimination but was intended to "silence speech with which Texas disagrees." (Mot., Dkt. 83, at 4 (citing Order, Dkt. 82, at 32)). The State neglects to mention the Court's conclusion that the *plain text* of the statute makes clear that it is severely underinclusive with respect to its purported goal of preventing national origin

discrimination. (Order, Dkt. 82, at 32–35). H.B. 89 does not prohibit any company from boycotting any person or entity of Israeli national origin—and on that basis—so long as the person or entity is anywhere in the world outside Israel or its controlled territories, and is not doing business *in* Israel or those territories. (*Id.* at 33). This "[u]nderinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." (*Id.* (quoting *Nat'l Inst. Of Family & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2376 (2018))). This result follows even if the statements the Court cited in the Order do not reflect the motivations of the entire Texas Legislature—an assertion the State now makes, (*see* Mot., Dkt. 83, at 4), but for which it points to no evidence.

Moreover, the State's newly asserted justification that because "Israel is overwhelmingly populated by Israelis," "[t]o boycott Israel is necessarily to discriminate on the basis of Israeli national origin," (*id.*), is both illogical on its face and does not cure the statute's underinclusiveness problem. The State offers this justification for the first time in the instant motion to stay and cites no evidence that it played any part in the Legislature's decision to pass H.B. 89. It is an illogical justification because boycotting the nation of Israel to protest the Israeli government's actions is not "necessarily" the same as, or even remotely related to, boycotting an Israeli person or entity because that person or entity is Israeli. As described in the Order, Plaintiffs allege that they boycott Israel because of the Israeli government's treatment of the Palestinian people, not on the basis of Israeli national origin. (*See* Dkt. 82, at 4–11). They boycott HP on this basis, for example, even though HP is not an entity of Israeli national origin. And notwithstanding its logical infirmity, the State's newly asserted justification for H.B. 89 would not cure the statute's underinclusiveness problem. A company wishing to boycott an Israeli person or entity on the basis of Israeli national origin may continue to do so as long as the person or entity is not located within or does not do business from within Israel or its controlled territories.

Fourth, the State argues for the first time that *United States v. O'Brien*, 391 U.S. 367 (1968), not the modified *Pickering v. Bd. of Edu.*, 391 U.S. 593 (1969) analysis, provides the appropriate level of scrutiny to which H.B. 89 should be subjected. But *O'Brien* is inapplicable. That case announces a "relatively lenient standard" appropriate in "those cases in which the governmental interest is unrelated to the suppression of free expression." *Texas v. Johnson*, 491 U.S. 397, 407 (1989). The Court has found, however, that the State's interest in promulgating H.B. 89 was to suppress speech with which it disagrees. (*See* Order, Dkt. 82, at 32–36). Such viewpoint discrimination is "particularly pernicious," (*id.* at 29 (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 430 (1992) (Stevens, J., concurring))), and a regulation discriminating on the basis of viewpoint is "presumptively unconstitutional and may be justified only if [the State] proves that [it] [is] narrowly tailored to serve compelling state interests," (*id.* at 32 (quoting *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2231 (2015))). H.B. 89 does not pass this scrutiny.

Fifth, the State repeats its argument that H.B. 89 is not unconstitutionally vague because the phrase "any action" should be construed to mean only "economic" action. (Mot., Dkt. 83, at 5). This argument is identical to the State's arguments made in its opposition to Plaintiffs' motions for a preliminary injunction and in its motion to dismiss. (*See* Dkt. 25, at 16 n.5; Dkt. 55, at 14). For the reasons already explained in the Order, the Court rejects this argument. (*See* Dkt. 82, at 43–46). The State now argues separately in a footnote, however, that the Court should have considered severing parts of H.B. 89 to render it constitutional. (Mot., Dkt. 83, at 5 n.1). But the Court found that (1) the "any action" catch-all provision is vague, (2) the "ordinary business purposes" carve-out provision is vague, and (3) the statute's vagueness is compounded when these two provisions are read together because, under the State's construction of the statute, the same conduct could fall under both provisions. (*See* Order, Dkt. 82, at 43–45). Were the Court to sever the catch-all provision, the statute would continue to both permit and prohibit the same conduct, such as boycotts of HP. (*See*

*id.* at 45). Were the Court to sever the carve-out provision, it would be rewriting the statute to cover activities the Texas Legislature intended to exempt from its reach. *R.R. Ret. Bd. v. Alton R. Co.*, 295 U.S. 330, 362 (1935) ("[W]e cannot rewrite a statute and give it an effect altogether different from that sought by the measure viewed as a whole."). No amount of severing, moreover, would add to H.B. 89 what it lacks: "explicit standards for those applying [it] to avoid arbitrary and discriminatory applications." (Order, Dkt. 82, at 46 (quoting *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008))). And in any event, the Court's conclusion that the statute is unconstitutionally vague is but one of several, independent grounds for finding that Plaintiffs are likely to succeed on the merits of their claims that the statute violates the First Amendment. (*Id.*).

## B. The Remaining Factors

The State also argues that the Court should stay its injunction because enjoining the enforcement of a "duly enacted" law irreparably injures the State. (Mot., Dkt. 83, at 2). But the Court has determined that Plaintiffs are likely to succeed in showing that H.B. 89 is unconstitutional (on several grounds), and the State "can never have a legitimate interest in administering" a statute that violates federal law. (Order, Dkt. 82, at 48 (quoting *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 471 (5th Cir. 2017))). This factor does not weigh in the State's favor, let alone "heavily" so. *Ruiz*, 650 F.2d at 566.

Next, the State argues that a stay would be in the public interest because H.B. 89 "promotes the State's long-held interest in preventing invidious discrimination." (Mot., Dkt. 83, at 2). It does not. Preventing invidious discrimination was not the State's interest in passing H.B. 89, and even if it were, H.B. 89 is not sufficiently tailored to promote that purpose. (*See* Order, Dkt. 82, at 32–37).

Finally, the State argues that "imminent" revisions to H.B. 89 will moot this case, and therefore a stay is justified in order "to prevent confusion in the formation of state contracts in the few weeks prior to the likely mooting of this action." (Mot., Dkt. 83, at 5–6). The State does not

elaborate in any way what "confusion" will result if this action is not stayed, what burden if any this hypothetical confusion imposes on the State, or why this confusion is itself sufficient reason for the Court to exercise its discretion to stay the injunction. On the other hand, the Court found that H.B. 89 inflicts irreparable harm on Plaintiffs. (Order, Dkt. 82, at 46). The Court is not persuaded that a nebulous risk of "confusion" in forming state contracts justifies staying the injunction of a statute the Court has found to likely cause irreparable First Amendment injury when enforced "for even minimal periods of time." (*Id.* (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976))).

### III. CONCLUSION

For the reasons given above, the Court finds that the State has failed to meet its burden to show that the Court should exercise its discretion to stay its injunction prohibiting the enforcement of H.B. 89. Accordingly, **IT IS ORDERED** that the State's motion to stay this case, (Dkt. 83), is **DENIED**.

**SIGNED** on May 8, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE