IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BAHIA AMAWI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-1091-RP |
| | § | |
| PFLUGERVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, et al., | § | *Consolidated with:* |
| | § | 1:18-CV-1100-RP |
| Defendants. | § | |

## ORDER

Before the Court in this consolidated action are two motions to dismiss filed by Defendants Ken Paxton, in his official capacity as Attorney General of the State of Texas ("Texas"), (Dkt. 92), and the Trustees of the Klein Independent School District and the Lewisville Independent School District (the "School Districts") (collectively, "Defendants"), (Dkt. 95). Plaintiffs Bahia Amawi ("Amawi") and John Pluecker, Zachary Abdelhadi, Obinna Dennar, and George Hale (the "Pluecker Plaintiffs") (collectively, "Plaintiffs") responded, (Dkts. 103, 104), and Defendants replied, (Dkts. 105, 106). Having considered the parties' arguments, the evidence, and relevant law, the Court will deny Defendants' motions to dismiss.

## I. BACKGROUND

In 2017, the Texas Legislature enacted House Bill 89, codified at Tex. Gov. Code § 2270.001 *et seq.* ("H.B. 89"). H.B. 89—which the bill's sponsor and the governor have referred to as the "anti-BDS bill," (*see* Clay Decl., 1:18-CV-1100-RP, Dkt. 14-2, at 16–19)—prohibited state entities from contracting with companies that "boycott Israel." It provided:

> A governmental entity may not enter into a contract with a company for goods or services unless the contract contains a written verification from the company that it:
>
> (1) does not boycott Israel; and

1

    (2) will not boycott Israel during the term of the contract.

Tex. Gov. Code § 2270.002.

  H.B. 89 defined the term "boycott Israel" to mean "refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict harm on, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory." Tex. Gov. Code § 808.001. It defined the term "company" to include "a for-profit sole proprietorship, organization, association, corporation, partnership, joint venture, limited partnership, limited liability partnership, or any limited liability company, including a wholly owned subsidiary, majority-owned subsidiary, parent company or affiliate of those entities or business associations that exist to make a profit." Tex. Gov. Code § 808.001.

  Plaintiffs in this consolidated action are five sole proprietors who sought to enjoin H.B. 89 because it allegedly violated their First and Fourteenth Amendment rights. Plaintiffs are all participants in or supporters of the "BDS" movement—calling for boycotts, divestments, and sanctions of Israel—which arose in response to Israel's occupation of Palestinian territory and its treatment of Palestinian citizens and refugees. (Abbas Decl., Dkt. 14-2, at 16–18; Clay Decl., 1:18-CV-1100-RP, Dkt. 14-2, at 6). On April 25, 2019, this Court preliminarily enjoined Defendants from enforcing H.B. 89 because, in part, Plaintiffs demonstrated that they would likely succeed on the merits of their claims that the statute violated the First Amendment. Twelve days later, the Texas Legislature amended H.B. 89. The new version of the bill, H.B. 793, makes three changes. First, it provides that "[c]ompany has the meaning assigned by Section 808.001, except that the term does not include a sole proprietorship." (H.B. 793, Dkt. 92-1, at 1). Second and third, it provides that it only applies to a contract (1) that "is between a governmental entity and a company with 10 or more full-time employees; and" (2) with "a value of $100,000 or more that is to be paid wholly or partly

from public funds of the governmental entity." (*Id.*). No other changes to H.B. 89 were made. (*See id.*).

The day after H.B. 793 was passed, Texas moved to dismiss this case. The School Districts filed their motion to dismiss the next day. Defendants move to dismiss this case because, they argue, the amended statute no longer applies to Plaintiffs—who are all sole proprietors—and so this case is now moot because Plaintiffs lack standing.[1] For the reasons below, the Court finds that this case is not moot.

## II. DISCUSSION

Article III of the Constitution restricts the jurisdiction of federal courts to "cases" and "controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). This case-or-controversy requirement "subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Generally, a case becomes moot when, after litigation has commenced, "any set of circumstances . . . eliminates [the] actual controversy" between the parties. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). But an exception to this general rule exists when a case is rendered moot by the voluntary cessation of allegedly unlawful conduct. In these circumstances, another general rule applies: "voluntary cessation of allegedly illegal conduct . . . does not make the case moot." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)). This is because "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). "Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter

---

[1] To the extent that the School Districts also argue that Plaintiffs Abdelhadi and Dennar lack standing because "KISD and LISD do not have, and have never had, policies prohibiting contracts with sole proprietors based on whether they boycott Israel," (Sch. Dist. Defs.' Mot. Dismiss, Dkt. 95, at 9; *see also* Sch. Dist. Defs.' Reply, Dkt. 106, at 4), the Court has already rejected this argument, (*see* Prelim. Inj. Order, Dkt. 82, at 20–22, 52–55).

3

relating to the exercise rather than the existence of judicial power." *Id.* Were it otherwise, "courts would be compelled to leave '[t]he defendant free . . . to return to his old ways.'" *Id.* n.10 (quoting *W. T. Grant Co.*, 345 U.S. at 632).

Defendants are therefore incorrect when they argue that this case is moot because "Plaintiffs would not be able to bring suit today." (Tex. Mot. Dismiss, Dkt. 92, at 4; *see also* Sch. Dist. Defs.' Mot. Dismiss, Dkt. 95, at 10). Standing is not the same thing as mootness, and "the description of mootness as 'standing in a time frame' is not comprehensive." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Thus, the Texas Legislature's voluntary amendment to H.B. 89 does not "automatically" deprive the Court of jurisdiction over a challenge to the constitutionality of that legislation. *Habetz v. La. High Sch. Athletic Ass'n*, 842 F.2d 136, 137 (5th Cir. 1988). The Fifth Circuit, moreover, has specifically rejected the argument that repealing an ordinance means there is "no longer a live controversy with respect to the constitutionality of the repealed ordinance." *Cooper v. McBeath*, 11 F.3d 547, 550 (5th Cir. 1994). Instead, the court instructed that *Aladdin's Castle*, 455 U.S. 283 (1982), is the precedent "squarely applicable" to determining whether an amendment to a law renders a challenge to that law moot. *Cooper*, 11 F.3d at 550.

In *Aladdin's Castle*, the City of Mesquite, Texas, had passed an ordinance governing coin-operated amusement establishments. 455 U.S. at 286. Section 5 of the ordinance prohibited licensees from allowing children younger than 17 years of age to use the coin-operated devices unless accompanied by a parent or legal guardian. *Id.* Section 6 directed the City's chief of police to consider whether licensees had "connections to criminal elements." *Id.* Aladdin's Castle sought to open a coin-operated amusement establishment in a shopping mall but proposed to permit unattended children under the age of seven to use its devices. *Id.* The City accommodated this proposal; it exempted Aladdin's Castle from Section 5 of the ordinance. *Id.* However, after Aladdin's entered into a long-term lease to open its establishment, the chief of police determined that its

4

parent corporation had ties to criminal elements. *Id.* Aladdin's license application was therefore denied under Section 6. *Id.* Aladdin's then brought suit in Texas state court. *Id.* The state court enjoined the ordinance, finding that it was unconstitutionally vague, and ordered the City to issue Aladdin's Castle a license. *Id.*

Less than a month after the City issued the license, it amended the ordinance by reinstating the 17-year age requirement and defining the term "connections with criminal elements" in greater detail. *Id.* Aladdin's Castle brought suit in the Northern District of Texas to enjoin the new ordinance. *Id.* at 288. The court enjoined the "connections with criminal elements" restriction but upheld the age restriction; the Fifth Circuit affirmed the former holding and reversed the latter. *Id.* On appeal to the Supreme Court, the Court was faced with "[a] question of mootness . . . raised by the revision of the ordinance that became effective while the case was pending in the Court of Appeals. When the court decided that the term 'connections with criminal elements' was unconstitutionally vague, that language was no longer a part of the ordinance." *Id.*

The Supreme Court held that the case was not moot. *Id.* at 289. It began by recognizing that the "well[-]settled" principle "that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id.* The Court further reasoned that the City's "repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated." *Id.* The City had already "followed that course"—it reenacted the age restriction requirement, which it had "reduced for Aladdin," "in obvious response to the state court's judgment." *Id.* Because "there w[as] no certainty that a similar course would not be pursued if" the more recent amendments "were effective to defeat federal jurisdiction," the Court held that it "must confront the merits of the vagueness holding." *Id.*

As an initial matter, Texas argues that *Aladdin's Castle* does not apply to this case. (Tex. Reply, Dkt. 105, at 2–5). It relies on a Fourth Circuit case for the proposition that *Aladdin's Castle* is "generally limited to the circumstance, and like circumstances, in which a defendant openly announces its intention to reenact precisely the same provision held unconstitutional below." (Tex. Reply, Dkt. 105, at 3 (internal quotation marks omitted) (quoting *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir. 2000) (citing *Aladdin's Castle*, 455 U.S. at 289 n.11))). The Court disagrees. Although the Court in *Aladdin's Castle* noted that the City of Mesquite had announced its intent to reenact the challenged ordinance if the district court's judgment was vacated, it did so in a footnote and nowhere indicated that such an express announcement is a necessary condition to invoke the voluntary cessation exception to mootness. *See Aladdin's Castle*, 455 U.S. at 289 n.11. The City's announcement was one of several factors considered by the Court but the only one relegated to a footnote. *Id.* That footnote, moreover, is prefaced by the word "indeed." *Id.* If anything, this context suggests that the Supreme Court did not place much weight on the City's statement—at least lesser weight than the factors enumerated in the body of the Court's opinion, and certainly not the dispositive weight given to it by the Fourth Circuit. This Court does not read *Aladdin's Castle* to establish a precondition to the voluntary cessation exception to mootness through this footnote. Accordingly, following the Fifth Circuit's guidance in *Cooper* that *Aladdin's Castle* is the "squarely applicable" precedent to determine whether an amendment to a law renders a challenge to that law moot, 11 F.3d at 550, the Court will determine whether Defendants have satisfied the test for mootness applied in *Aladdin's Castle*.

The test is a "stringent" one. *Friends of the Earth*, 528 U.S. at 189. A case may (but not must) become moot by voluntary cessation *if* (1) it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur, and (2) any "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631; *see also Aladdin's*

*Castle*, 455 U.S. at 289 n.10. "When both conditions are satisfied, it *may* be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Davis*, 440 U.S. at 631. Defendants bear a "formidable burden" in meeting this standard. *Friends of the Earth*, 528 U.S. at 190. Defendants have not satisfied either condition.

### A. Condition 1: Absolutely Clear that the Alleged Harm Will Not Recur

First, it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 189. On this point, the Court agrees with the Southern District of Texas's decision in *Pro-Life Cougars v. University of Houston,* 259 F. Supp. 2d 575 (S.D. Tex. Mar. 13, 2003). That case also involved a First Amendment challenge purportedly mooted by voluntary cessation. The plaintiffs claimed that the University of Houston's speech policy ("the First Policy") was an unconstitutional discrimination against student expression on campus deemed "potentially disruptive." *Id.* at 577. Plaintiffs "applied for a permit to display their pro-life 'Justice For All Exhibit'" on Butler Plaza, but their request was denied. *Id.* at 578. Plaintiffs sued the University, arguing in part that the speech policy was a prior restraint, and the court enjoined the enforcement of the policy. *Id.* at 579. The day after the court issued its injunction, the University formally approved a "Second Policy," which "had been under study and in preparation for some months before it was adopted." *Id.* at 579–80.[2] The Second Policy banned *all* student expressive activity from Butler Plaza. *Id.* at 580. The University argued that the Second Policy therefore did not

---

[2] In response to Amawi's argument that Texas passed H.B. 793 "solely to avoid the Court's" injunction of H.B. 89, (Amawi Resp., Dkt. 104, at 5), Texas emphasizes that H.B. 793 was filed in the Texas House of Representatives well before the Court issued its injunction, (Tex. Reply, Dkt. 105, at 4). This fact is immaterial to the question of mootness; it is relevant to whether vacatur is an appropriate remedy *after* mootness has been found. *Nat'l Black Police Ass'n v. D.C.*, 108 F.3d 346, 351 (D.C. Cir. 1997) (finding that the presumption against vacatur is inappropriate "if there is no evidence indicating that the legislation was enacted in order to overturn an unfavorable precedent"); (*see* Amawi Resp., Dkt. 104, at 5 (citing *id.*)). In any event, the Court notes that *Pro-Life Cougars* also considered an amended policy that was considered for months before it was adopted following the court's injunction, and that court found that the case before it was not moot.

discriminate against the plaintiffs' expression, and accordingly, their "constitutional challenge to the First Policy [was] moot." *Id.*

The *Pro-Life Cougars* court recognized that this mootness issue mirrored the one addressed by the Supreme Court in *Aladdin's Castle*. *Id.* The court pointed to the "well-settled rule" articulated by the Fifth Circuit in *Cooper* that "a constitutional challenge to a policy does not become moot when the policy is amended or when the policy is repealed." *Id.* at 581 (citing *Cooper*, 11 F.3d at 550). The purpose of this rule, the court further recognized, "is to prevent a defendant from later re-adopting an unconstitutional policy that had been rendered moot by an amendment." *Id.* Accordingly, the court concluded that *Cooper* and *Aladdin's Castle* applied to the mootness issue presented for reasons substantially similar to those presented by this case:

> On the one hand, Defendants argue that the challenge to the First Policy is moot, but on the other, they continue vigorously to defend the constitutionality of the First Policy. As they have stated in the past and continue to argue . . . Defendants did not and do not concede the unconstitutionality of the [First Policy]. Moreover, following the Court's Order of Preliminary Injunction, Defendants filed an appeal to the Fifth Circuit Court of Appeals challenging the Court's prior ruling and defending the constitutionality of the First Policy Defendants now contend they will not re-adopt. Defendants' persistent defense of the constitutionality of the First Policy, and the power of the University to re-enact it, prevents the Court from finding that the constitutional question is moot.

*Id.*;[3] *accord McCorvey v. Hill*, 385 F.3d 846, 849 n.3 (5th Cir. 2004) ("[A]n exception to mootness exists where there is evidence, or a legitimate reason to believe, that the state will reenact the statute or one that is substantially similar.").

Defendants' actions in this case mirror the University's in *Pro-Life Cougars*. They continue to defend the constitutionality of H.B. 89 and have appealed this Court's injunction to the Fifth Circuit. (*See* Mot. Stay, Dkt. 83 (arguing that the Court erred in concluding that Plaintiffs were likely to

---

[3] The Fifth Circuit, in a *per curiam* opinion, acknowledged and did not contravene these findings on appeal. *See Pro-Life Cougars v. Univ. of Houst.*, 67 F. App'x 251, at *1 (5th Cir. 2003).

succeed on the merits of their constitutional challenges to H.B. 89); Not. of Appeal, Dkt. 84). Plaintiffs also argue that H.B. 793 "neither eliminates the Anti-BDS Act altogether," "remove[s] or alter[s] any of the offending provisions of the law" identified by the Court in its order enjoining H.B. 89, nor "cease[s] Texas's punishment of protected speech." (Amawi Resp., Dkt. 104, at 3–4; Pluecker Pls.' Resp., Dkt. 103, at 4).[4] The Court finds that Texas's persistent defense of H.B. 89's constitutionality, and the Texas Legislature's reenactment of its likely unconstitutional requirements in H.B. 793, means it is not "absolutely clear" that, if this case is mooted, the Texas Legislature will not amend the anti-BDS law to once again include Plaintiffs. *See Friends of the Earth*, 528 U.S. at 189; *accord Aladdin's Castle*, 455 U.S. at 289 (considering that "[t]here is no certainty that" the city would not "reenact[ ] precisely the same" objectionable provision if the "most recent amendment[s]" to its ordinance "were effective to defeat federal jurisdiction").

Texas argues that this case is nevertheless moot because the Attorney General, not the Texas Legislature, is a party to this case, and the Attorney General does not have the power to reenact H.B. 89. (Tex. Reply, Dkt. 105, at 4). It is true that in *Pro-Life Cougars*, the defendant itself had the power to re-adopt the policy it continued to defend. *See* 259 F. Supp. 2d at 581. But the test for mootness does not turn on whether the party defending the constitutionality of a repealed policy is the same party holding the power to re-adopt that policy. The inquiry is whether it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Davis*, 440 U.S. at 631. That the Attorney General has no power to reenact H.B. 89 is immaterial to this inquiry.

Texas's argument, moreover, incorrectly conflates the determination of whether a case is moot with the proper remedy *after* a case has become moot. Texas relies on *Hall v. Louisiana* for the proposition that a case should be mooted when the party responsible for mootness is not a party to

---

[4] These allegations, particularly in light of *Pro-Life Cougars*, contradict Defendants' argument that Plaintiffs "offer[ ] no support" for the argument that the Texas Legislature will reinstate H.B. 89. (*See* Tex. Reply, Dkt. 105, at 5; Sch. Dist. Defs.' Reply, Dkt. 106, at 3–4). In any event, it is Defendants' burden, not Plaintiffs', to show that it is "absolutely clear" that the complained-of conduct will not recur. *Friends of the Earth*, 528 U.S. at 190.

the case. (*See* Tex. Mot. Dismiss, Dkt. 92, at 5 (citing *Hall v. Louisiana.*, 884 F.3d 546, 553 (5th Cir. 2018)); Tex. Reply, Dkt. 105, at 4 (same)). But *Hall* is not about whether a case is moot. Instead, the issue presented in that case was whether vacatur was the appropriate remedy for mootness; the mootness issue itself was not before the court. *See* 884 F.3d at 548. When the Fifth Circuit acknowledged that "the appeal was mooted by action of the Louisiana legislature, which is not a party to th[e] suit," it did so in the context of determining whether the "equitable tradition of vacatur" counseled in favor of using that remedy so as best to dispose of a moot case "in [a] manner most consonant with justice." *Id.* at 552–53 (internal quotation marks and citations omitted). *Hall*, therefore, offers no guidance about when a case becomes moot; it is about what to do after that determination has been made. Indeed, the other case Texas cites, *Staley v. Harris County, Texas*, 485 F.3d 305 (5th Cir. 2007), makes this distinction explicit. There, the court recognized that "the Supreme Court [has] stepped back from the 'automatic' vacatur that almost invariably had *followed* a finding of mootness on appeal," and so a party seeking vacatur after a case has been found moot must still demonstrate an "equitable entitlement to the extraordinary remedy of vacatur." *Id.* at 310–11 (emphasis added) (citing *U.S. Bancorp Mortg. Co. v. Bonner Mail P'ship*, 513 U.S. 18, 26 (1994)).

Thus, it does not matter at this stage, as Texas argues, that the Attorney General had no "fault" in amending H.B. 89. (*See* Tex. Reply, Dkt. 105, at 4 (citing *Hall*, 884 F.3d at 553)). The inquiry is whether it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189. Whether anyone is at fault for the voluntary amendment of an allegedly unconstitutional law has nothing to do with this inquiry.

Finally, Defendants rely on *Fantasy Ranch Inc. v. City of Arlington, Texas*, for the general proposition that "statutory changes that discontinue a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." 459 F.3d 546, 564 (5th Cir. 2006) (quoting *Valero*, 211 F.3d at 116). But Defendants

10

take this statement out of context. The Fifth Circuit, in making this statement, was addressing the fact that Fantasy Ranch's only argument that its claims were not moot was that the City of Arlington "might one day amend the ordinance to reenact the offending provisions." *Id.* Standing alone, this argument was insufficient to support Fantasy Ranch's position because "the *mere* power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists." *Id.* (quoting *Nat'l Black Police Ass'n v. D.C.*, 108 F.3d 346, 349 (D.C. Cir. 1997) (emphasis added)). Here, by contrast, Texas continues to defend H.B. 89's constitutionality both in this Court and in the Fifth Circuit, despite its amendment by H.B. 793. These facts go farther than a bald assertion that Texas *merely* has the power to reenact a challenged law; they suggest at least that it is not "absolutely clear" Texas will not re-adopt the law. *Pro-Life Cougars*, 259 F. Supp. 2d at 381.

In sum, the Court agrees with the reasoning in *Pro-Life Cougars*. Defendants continue to defend the constitutionality of H.B. 89, in this Court and on appeal to the Fifth Circuit, and the Texas Legislature has in H.B. 793 reenacted all the requirements this Court found likely to be constitutionally defective in H.B. 89. Texas has argued that (1) the Texas Legislature, not the Attorney General, is the entity that would reenact H.B. 89, and (2) challenges to laws amended by legislative action are generally moot. With respect to the former argument, that difference, without more, is irrelevant to the test for mootness by voluntary cessation. And with respect to the latter argument, the general statement Texas cites addresses an argument that the mere power to reenact legislation is insufficient to defeat a mootness challenge. But here, Texas has continued to defend the constitutionality of a law it says no longer exists. (*See* Tex. Reply, Dkt. 92, at 6 (citing *Sw. Ctr. for Biological Diversity v. Bartel*, 409 F. App'x 143, 145 (9th Cir. 2011))).

For these reasons, the Court finds that Defendants have not met their "formidable burden" to show it is not "absolutely clear" that, if this case is mooted, the Texas Legislature will not amend

the anti-BDS law to once again include Plaintiffs. *See Friends of the Earth*, 528 U.S. at 189. Texas has therefore failed to satisfy the first condition for mootness by voluntary cessation.

### B. Condition 2: Complete and Irrevocable Eradication of the Alleged Harm

Because a case *may* be moot by voluntary cessation only if Texas satisfies *both* conditions for mootness, the Court's inquiry could end here. *Davis*, 440 U.S. at 631. Nevertheless, in an abundance of caution, the Court will address the second requisite condition to moot a case by voluntary cessation—whether any "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.*

Defendants also fail to satisfy this condition. Plaintiffs have argued that H.B. 89 "punishes the exercise of free speech rights protected by the First Amendment, chilling those rights." (Amawi Resp., Dkt. 104, at 4). It does not matter, as Defendants contend, that the statute no longer applies to Plaintiffs. (*See* Tex. Reply, Dkt. 105, at 1; Sch. Dist. Defs.' Mot. Dismiss, Dkt. 95, at 9). The Supreme Court has "long . . . recognized" an exception to general mootness principles in the First Amendment area because "the First Amendment needs breathing space and . . . statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma*, 413 U.S. 601, 611–12 (1973) (citations omitted). Thus:

> As a corollary, the Court has altered its traditional rules of standing to permit . . . in the First Amendment area . . . challenge[s] [to] a statute not because [litigants'] own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression. . . . The consequence of [this] departure from traditional rules of standing in the First Amendment area is that any enforcement of a statute thus placed at issue is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.

*Id.* at 612–13.

H.B. 793 does not ameliorate the constitutional defects the Court identified in its order granting Plaintiffs preliminary injunctive relief. All it does is limit its reach to fewer companies. Accordingly, Defendants have neither argued nor produced evidence showing that the amendments to H.B. 89 "completely and irrevocably eradicated the effects of the" constitutional violations Plaintiffs allege: that H.B. 89 (1) is an impermissible content- and viewpoint-based restriction on protected expression; (2) imposes unconstitutional conditions on public employment; (3) compels speech for an impermissible purpose; and (4) is void for vagueness. *Davis*, 440 U.S. at 631; (s*ee* Prelim. Inj. Order, Dkt. 82, at 22–46). Those harms remain in H.B. 793.[5] Plaintiffs still have standing to challenge the statute, at the very least, "not because [Plaintiffs'] own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression," *Broadrick*, 413 U.S. at 612. And in any event, Plaintiffs *own* rights of free expression are still allegedly violated. The Court has found that Defendants have failed to show that it is "absolutely clear" that Texas's anti-BDS law will not apply expressly to Plaintiffs in the future. (*See* Part II(A), *supra*). This means that Plaintiffs' speech remains chilled. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (constitutional right to freedom of expression is "penalized and inhibited" if the government "*could* deny a benefit to a person because of his constitutionally protected speech or associations") (emphasis added).

Defendants have thus failed to satisfy the second condition for mootness by voluntary cessation. *Davis*, 440 U.S. at 631. Accordingly, Defendants have not shown that either condition of the applicable test for mootness is satisfied here. The Court therefore finds that Defendants have

---

[5] Defendants' reliance on *Fantasy Ranch* is also misplaced for this reason. That case involved an amendment that "addresse[d] all the issues raised by Fantasy Ranch's pre-amendment complaint." 459 F.3d at 564. Here, however, H.B. 793 addresses none of the grounds on which Plaintiffs have argued H.B. 89 is unconstitutional.

13

failed to meet their "formidable burden" to show that Plaintiffs lack a "cognizable interest in the final determination of" this litigation. *Id.* The Court will deny Defendants' motions to dismiss.

### III. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Texas's motion to dismiss, (Dkt. 92), and the School Districts' motion to dismiss, (Dkt. 95), are **DENIED**.

**SIGNED** on July 23, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE