No. 19-50384

# In the United States Court of Appeals for the Fifth Circuit

BAHIA AMAWI,

*Plaintiff-Appellee,*

*v.*

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF
TEXAS,

*Defendants-Appellants.*

JOHN PLUECKER; OBINNA DENNAR; ZACHARY ABDELHADI;
GEORGE HALE,

*Plaintiffs-Appellees,*

*v.*

BOARD OF REGENTS OF THE UNIVERSITY OF HOUSTON SYSTEM;
TRUSTEES OF THE KLEIN INDEPENDENT SCHOOL DISTRICT;
TRUSTEES OF THE LEWISVILLE INDEPENDENT SCHOOL DISTRICT;
BOARD OF REGENTS OF THE TEXAS A&M UNIVERSITY SYSTEM,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## APPELLANTS ATTORNEY GENERAL KEN PAXTON, BOARD OF REGENTS OF THE UNIVERSITY OF HOUSTON SYSTEM, AND BOARD OF REGENTS OF THE TEXAS A&M UNIVERSITY SYSTEM'S UNOPPOSED MOTION TO SUPPLEMENT RECORD

*Counsel listed on inside cover*

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

KYLE D. HAWKINS
Solicitor General
kyle.hawkins@oag.texas.gov

MATTHEW H. FREDERICK
Deputy Solicitor General

MICHAEL R. ABRAMS
Assistant Attorney General

Counsel for Defendants-Appellants
Attorney General Ken Paxton, Board of
Regents of the University of Houston
System, and Board of Regents of the
Texas A&M University System

## Motion to Supplement Record

Defendants-Appellants Attorney General Ken Paxton, Board of Regents of the University of Houston System, and Board of Regents of the Texas A&M University System ("Appellants") respectfully request that the Court supplement the record.

1. The district court issued a preliminary injunction on April 25, 2019, and Appellants timely appealed from that order. On May 8, 2019, Attorney General Paxton filed a motion to dismiss in the district court. Appellants Lewisville Independent School District and Klein Independent School District filed a motion to dismiss on May 9, 2019. Both motions asserted that Plaintiffs-Appellees' claims should be dismissed because the Plaintiffs' claims are moot.

2. The record on appeal was certified on May 23, 2019.

3. After the appeal was certified, Plaintiffs John Pluecker, Obinna Dennar, Zachary Abdelhadi, and George Hale responded to the motions to dismiss, ECF No. 103, and Plaintiff Bahia Amawi responded to Attorney General Paxton's motion, ECF No. 104. Attorney General Paxton and the School District Appellants filed reply briefs. ECF Nos. 105, 106. On July 23, 2019, the district court denied the motions to dismiss in a 14-page order. ECF No. 109.

4. Federal Rule of Civil Procedure 10(e) provides that "[i]f anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded" by the court of appeals. Fed. R. App. P.

10(e)(2)(C).

5.    The briefing and order on the motions to dismiss are material to all parties. The issue of mootness that the district court addressed in its order denying the motions is relevant to the parties' briefing on the preliminary injunction that is the subject of this appeal. The related response and reply briefing and order would have been included in the certified record, but were omitted because they were filed in the district court after the record had been certified. Accordingly, the record should be supplemented so that these filings (ECF Nos. 103, 104, 105, 106 & 109) may be included in the record on appeal.

6.    Counsel to Appellants conferred with the counsels of record for the other parties. No counsel indicated opposition.

## Conclusion and Prayer

The Court should supplement the record with the briefing and orders attached to this motion.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Jeffrey C. Mateer
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700

Fax: (512) 474-2697

/s/ Kyle D. Hawkins

Kyle D. Hawkins

Solicitor General
kyle.hawkins@oag.texas.gov

Matthew H. Frederick
Deputy Solicitor General

Michael R. Abrams
Assistant Attorney
General

Counsel for Defendants-Appellants
Attorney General Ken Paxton, Board of
Regents of the University of Houston
System, and Board of Regents of the Texas
A&M University System

3

## CERTIFICATE OF CONFERENCE

On August 19, 2019, counsel for Appellants conferred with counsel for Plaintiffs-Appellees and the School District-Appellants, who advised that Plaintiffs-Appellees and School District-Appellants do not oppose this motion to supplement the record.

/s/ Kyle D. Hawkins
KYLE D. HAWKINS

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 384 words, excluding the parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the program used for the word count).

/s/ Kyle D. Hawkins
KYLE D. HAWKINS

## Certificate of Service

On August 20, 2019, this motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Kyle D. Hawkins
Kyle D. Hawkins

**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| Amawi, | § | Civil Action No.: 1:18-CV-1091-RP |
| *Plaintiff,* | § | [Lead Case] |
| | § | |
| v. | § | |
| | § | |
| Pflugerville I.S.D., et al., | § | |
| *Defendants,* | § | |
| | § | |
| | § | |
| Pluecker, et al., | § | Civil Action No. 1:18-CV-1100-RP |
| *Plaintiff,* | § | [Consolidated Case] |
| | § | |
| v. | § | |
| | § | |
| Paxton, et al., | § | |
| *Defendants.* | § | |

**_PLUECKER_ PLAINTIFFS' RESPONSE TO ATTORNEY GENERAL**
**PAXTON'S AND SCHOOL DISTRICTS' MOTIONS TO DISMISS**

**TABLE OF AUTHORITIES**

## Cases

*Fantasy Ranch Inc. v. City of Arlington, Tex.*,
　459 F.3d 546 (5th Cir. 2006).................................................................2

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*,
　528 U.S. 167 (2000) .............................................................................2

*Gegenheimer v. Stevenson*,
　1:16-CV-1270-RP, 2017 WL 2880867 (W.D. Tex. July 5, 2017).........3

*Lauren C. by & through Tracey K. v. Lewisville Indep. Sch. Dist.*,
　904 F.3d 363 (5th Cir. 2018)................................................................3

*McCorvey v. Hill*,
　385 F.3d 846 (5th Cir. 2004)................................................................2

*Murphy v. Fort Worth Indep. Sch. Dist.*,
　334 F.3d 470 (5th Cir. 2003)................................................................3

## Texas Statutes

Texas Government Code § 2270.................................................................1

In its April 25, 2019 Order, this Court declared unconstitutional House Bill 89 (Texas Government Code § 2270 *et seq*.) ("the Act"), which requires contractors who want to work for any political subdivisions or agencies of the State to sign a statement certifying that they are not participating in boycotts of Israel and will not engage in those boycotts for the life of the contract.

Specifically, the Court held that the Act was unconstitutional because it (1) forces companies that wish to contract with the State to sacrifice their First Amendment right to engage in political boycotts; (2) suppresses political expression based on content and viewpoint; (3) compels speech by forcing contractors to publicly disavow boycotts; and (4) is so vague that a person of ordinary intelligence cannot ascertain what the law means.  The Court also held that "because H.B. 89 is not supported by a permissible aim of government, no amount of narrowing its application will cure its constitutional infirmity."  ECF 82 at 37.

Following this Court's injunction, the Texas legislature passed HB 793, which amends Tex. Gov. Code § 2270.01.  HB 793 does not ameliorate any of the constitutional defects with forcing companies to sign a No Boycott certification. Instead, HB 793 only narrows the types of companies and the types of contracts that are subject to the unconstitutional "No Boycott of Israel" requirement.  Among

other things, pursuant to HB 793, sole proprietors, including the *Pluecker*

Plaintiffs, are no longer required to certify that they do not boycott Israel.

Defendant Paxton and the School District defendants[1] have moved to

dismiss the *Pluecker* Plaintiffs' claims on the basis that they are moot. Where, as

here, a defendant's claim of mootness relies on the alleged cessation of the

offending activity, the defendant bears a "heavy burden of persuading the court

that the challenged conduct cannot reasonably be expected to start up again."

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167,

170 (2000) (citation and quotation omitted). Further, an exception to the general

mootness rule "exists where there is evidence, or a legitimate reason to believe,

that the state will reenact the statute or one that is substantially similar." *McCorvey*

*v. Hill*, 385 F.3d 846, 849 n.3 (5th Cir. 2004).

Here, it is certain that a "substantially similar" statute will remain intact and

that the unconstitutional requirement that companies certify that they do not

Boycott Israel will continue to occur. The Legislature's actions have not removed

or altered any of the offending provisions of the law. In this respect, this case

differs from those relied on by Defendants, such as *Fantasy Ranch Inc. v. City of*

*Arlington, Tex.*, 459 F.3d 546 (5th Cir. 2006), where the statutory change

"discontinue[d] a challenged practice." *Id.* at 564; *see also Gegenheimer v.*

---

[1] Much of the School Districts' briefing improperly attempts to relitigate the issues decided in this Court's Order. To the extent necessary, the *Pluecker* Plaintiffs hereby incorporate their response to the School District's previously filed motion to dismiss, ECF No. 49.

*Stevenson*, 1:16-CV-1270-RP, 2017 WL 2880867, at *1 (W.D. Tex. July 5, 2017) (challenged law repealed).  Indeed, Defendants have not pointed this Court to a case similar to the one at issue here, where, rather than discontinuing a challenged practice, the Legislature has only narrowed its scope to exclude application to the plaintiff group.

The *Pluecker* Plaintiffs recognize that the removal of sole proprietors from the statute may ultimately require this Court to dismiss Plaintiffs' claims, but note that the Legislature's tactics here raise serious concerns about the ability of government bodies to evade judicial review of unconstitutional laws by amending them just to exclude the plaintiffs challenging it.  Indeed, if this tactic is successful, the Legislature could continue to enact unconstitutional legislation, wait and see if the statute is challenged, and then narrowly refine the law to exclude only the particular plaintiffs challenging the law, thereby frustrating judicial review and wasting judicial and party resources.

Finally, even if this Court determines that it must dismiss the *Pluecker* Plaintiffs' claims based on mootness, it should retain ancillary jurisdiction to determine Plaintiffs' request for attorneys' fees. *Lauren C. by & through Tracey K. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 373 (5th Cir. 2018); *Murphy v. Fort Worth Indep. Sch. Dist.*, 334 F.3d 470, 470–71 (5th Cir. 2003).  Further, the Court should reject the School Districts' unsupported and unwarranted request that costs be taxed against Plaintiffs.  There is no basis for such a request; indeed, as

Plaintiffs will demonstrate at the appropriate time, they are prevailing parties

entitled to attorneys' fees.

Respectfully submitted,

*/s/ Edgar Saldivar*
Edgar Saldivar, TX Bar No. 24038188
Thomas Buser-Clancy, TX Bar No. 24078344
Andre Segura, TX Bar No. 24107112**
Adriana Piñon, TX Bar No. 24089768
ACLU Foundation of Texas, Inc.
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 325-7011
Fax: (713) 942-8966
esaldivar@aclutx.org
tbuser-clancy@aclutx.org
asegura@aclutx.org
apinon@aclutx.org

Brian Hauss**
Vera Eidelman**
American Civil Liberties Union Foundation
Speech, Privacy & Technology Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
Fax: (212) 549-2654
bhauss@aclu.org
veidelman@aclu.org

Kevin Dubose**
Alexander, Dubose, Jefferson & Townsend
1844 Harvard Street
Houston, TX 77008
Telephone: (713) 522-2358
Fax: (713) 522-4553
kdubose@adjtlaw.com

ATTORNEYS FOR PLAINTIFFS
**Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I certify that on June 3, 2019, this document will be filed via the Court's ECF system,

which will serve electronic notice on all counsel of record.

/s/ Edgar Saldivar

Edgar Saldivar

Case 1:18-cv-01091-RP  Document 104  Filed 08/22/19  Page 15 of 53

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **BAHIA AMAWI** | Case No. 1:18-cv-01091-RP |
| Plaintiff, | *consolidated with* |
| vs. | Case No. 1:18-cv-01100-RP |
| **PFLUGERVILLE INDEPENDENT SCHOOL DISTRICT**; and | |
| **KEN PAXTON**, in his official capacity as Attorney General of Texas, | |
| Defendants. | |

## BAHIA AMAWI'S OPPOSITION TO KEN PAXTON'S MOTION TO DISMISS

Amawi opposes the Texas Attorney General's Motion to Dismiss (Dkt. 92). The State of Texas continues to unconstitutionally punish speech, and merely exempting Amawi from the law is insufficient to moot the case under the voluntary cessation exception to mootness. Even if the case is otherwise moot, the Court must still maintain jurisdiction over the case in order to award Amawi attorneys' fees as a successful plaintiff.

## ARGUMENT

### I.    Texas's Ongoing Illegal Conduct Prevents it from Mooting this Case

Texas cannot carry its burden to demonstrate mootness by simply pointing to HB 793. That is because a legislative change does not automatically moot a legislative challenge. This Court must go further and assess the character of Texas's legislative change to determine whether it is a viable basis for a mootness finding.

In *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 2889 (1982), the Supreme Court similarly confronted a moving-target legislative body. And there, the Supreme Court commended a lower court for striking down language that "was no longer a part of the ordinance" challenged. *Id.* The Court in *Aladdin's Castle* even made a determination as to whether the legislative change was part of an effort to avoid judicial intervention, concluding that the change at issue was an "obvious response to the state court's judgment." *Id.* at 289. Adjudicating a challenge against a statutory provision no longer affecting the litigant, the Supreme Court was undeterred, declaring that it "must confront the merits." *Id.*

This Court should follow suit. The Attorney General's Motion (Dkt. 92) presents the same situation as *Aladdin's Castle*. The Attorney General's Motion asks the following question: Is a case moot when (1) the Government violates the First Amendment, (2) in a manner which,as the Court already has found,chills speech and causes irreparable injury, and (3) the Government continues the unlawful conduct, but (4) the Government attempts to avoid judicial review by piecemeal exempting small classes of individuals who have expended significant resources challenging the Government's action?

The answer is no. This case is not moot.

Under *Aladdin's Castle*, a defendant must do more than merely repeal objectionable language from a statute to meet its mootness burden. Rather, the Government must show "there is no reasonable expectation that the challenged activity will recur, an inquiry similar to whether a plaintiff lacks standing because

there is no 'credible threat of prosecution.'" *United Food and Commercial Workers International Union, et al. v. IBP, Inc.*, 857 F.2d 422, 429 (8th Cir. 1988) (quoting *Babbitt v. UFW National Union*, 442 U.S. 289, 302 (1979)).  As a result, this Court cannot dismiss on mootness because "it is not certain that changes in leadership or philosophy might not result in reinstitution of the [challenged] policy." *Philips v. Pennsylvania Higher Education Assistance Agency*, 657 F.2d 554, 569–70 (3rd Cir. 1981); *see also Cooper v. McBeath*, 11 F.3d 547, 551 (5th Cir. 1994) (no mootness unless "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur") (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) (cleaned up)). Voluntary cessation is particularly appropriate when the Government makes a "persistent defense of the constitutionality of the" challenged conduct that has been repealed. *Pro-Life Cougars v. Univ. of Houston*, 259 F. Supp. 2d 575, 581 (S.D. Tex. 2003); *see also Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 903 F.3d 829, 845 (9th Cir. 2018) ("provisions revive some of the challenged aspects of the now-repealed law is prima facie evidence that Nevada has not met its burden of demonstrating mootness"), *reh'g en banc granted and decision pending*, No. 16-15588, 2019 WL 2202983 (9th Cir. May 22, 2019).

As these cases, and *Philips* and *Pro-Life Cougars* in particular, show, *Aladdin's Castle* requires courts to examine whether the Government's unlawful conduct is likely to reoccur, and not just whether the future harm to a particular plaintiff is likely to reoccur.  Here, the answer to that can be solved without mind-reading.

The enactment of HB 793 to amend the Texas Anti-BDS Act neither eliminates the Anti-BDS Act altogether nor ceases Texas's punishment of protected speech. None of the substantive First Amendment-violating language has changed under Texas law; rather, the amendment merely exempts sole proprietors and other small contractors from the compelled speech "No Boycott of Israel" certifications. The Attorney General's unconstitutional free-speech-suppression efforts, the very same ones this Court previously enjoined, continue unabated against others.

The Attorney General's mootness argument is further weakened by the fact that this case involves a challenge to a law that punishes the exercise of free speech rights protected by the First Amendment, chilling those rights. As explained by the Supreme Court, "the First Amendment needs breathing space." *Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973). Standing may thus arise "not because [the plaintiff's] own rights of free expression are violated, but because of a judicial prediction or assumption that the [challenged statute's] very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* at 612. "[I]n First Amendment cases," the judiciary has "relaxed our rules of standing without regard to the relationship between the litigant and those whose rights he seeks to assert precisely because application of those rules would have an intolerable, inhibitory effect on freedom of speech." *Eisenstadt v. Baird*, 405 U.S. 438, 446 (1972); *see also Grossberg v. Deusebio*, 380 F. Supp. 285, 292 (E.D. Va. 1974) (applying *Eisenstadt* and declining to find a First Amendment challenge moot). Bahia Amawi faced a "No Boycott of Israel" clause that still exists and still chills

speech across Texas; this persistent threat to the First Amendment justifies continuance of the case.

To be sure, sometimes a legislative change does moot a case. Voluntary cessation does not apply to every legislative enactment that affects litigation. But the elements of legislation which courts have found distinguishes other cases from *Aladdin's Castle* are not present here.  So, for example, a case is moot when "there is no evidence indicating that the legislation was enacted in order to overturn an unfavorable precedent." *Nat'l Black Police Ass'n v. D.C.*, 108 F.3d 346, 351 (D.C. Cir. 1997); *see also Martin v. Houston,* 226 F. Supp. 3d 1283, 1297 (M.D. Ala. 2016) ("none of the cited opinions confronted a repeal or amendment obtained with the purpose of avoiding an adverse judgment, greatly reducing their persuasive value in this case").

But that is not this case. In contrast to *National Black Police Association*, the evidence that the state legislature here acted solely to avoid the Court's adverse ruling is overwhelming.  The Texas Anti-BDS law was passed in 2017 by a legislature of largely the same political makeup, and it was signed by the same governor as today. During that time, Texas affirmatively considered amending the law to exclude sole proprietorships but declined to do so.  Including sole proprietorships within the reach of the "No Boycott of Israel" language was intentional, not a mere oversight.  Two years later, the legislature passed HB 793, containing the same narrowing amendment it had previously rejected.  The amendment cleared the legislature, was signed by the Governor, and took effect in the two weeks immediately following this Court's issuance of a preliminary injunction.  *See* "History", Texas Legislature Online,

Texas House Bill 793, https://capitol.texas.gov/BillLookup/History.aspx?LegSess=86R&Bill=HB793. The timing shows the legislative change was nothing more than a strategic way to shield this illegal law from this Court.

Likewise, none of the cases cited by the Attorney General (Dkt. 92 at 4-5), support a finding of mootness here. *Fantasy Ranch Inc. v. Arlington*, 459 F.3d 546, 565 (5th Cir. 2006), found challenges to a pre-amendment ordinance moot because the amendment fixed the constitutional problem to the statute outright, which the Government did not do here.[1] *Gegenheimer v. Stevenson*, 16-cv-1270, 2017 WL 2880867, at *1 (W.D. Tex. July 5, 2017), relying on *Fantasy Ranch*, also found mootness based on the complete discontinuing of the challenged conduct. In *Hall v. Louisiana*, 884 F.3d 546, 553 (5th Cir. 2018), like in *National Black Police Association*, the legislative action mooting the case was completely unrelated to the litigation. And *in Staley v. Harris Cty., Tex.*, 485 F.3d 305, 313 (5th Cir. 2007), the Court only found the appeal moot, leaving in place the Court's permanent injunction, due to the risk of the Government repeating its unlawful conduct.

The Attorney General's string cite asserting that the case is moot and that the preliminary injunction should be dissolved misses the point. (Dkt. 92 at 5-6). The viability of an injunction regards the "exercise rather than the existence of judicial power." *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289, 102 S. Ct.

---

[1] *Fantasy Ranch* found a separate challenge to the post-amendment ordinance moot based on a problematic interplay between the pre and post amendment ordinance because the Government specifically promised not to apply the ordinance in the manner that was challenged. 459 F.3d at 565. This form of mootness is not relevant here.

1070, 1074 (1982). Amawi has a declaratory judgment claim against the Attorney General, which is distinct from her claims for injunctive relief. That declaratory judgment claim does not depend on Amawi showing irreparable harm and otherwise demonstrating a need for injunctive relief. Instead, Amawi has already proven the elements of her declaratory judgment claim based on the legal findings of the Court and the undisputed facts of this case. *See* Dkt. 82.

The Court should not allow the unconstitutional Anti-BDS law to stand while the legislature forces those whose speech it disfavors to play a game of litigation whack-a-mole. The enactment of the HB 793 amendment does nothing to fix the obvious constitutional defects of the law this Court enjoined. Instead, HB 793 is transparent litigation posturing aimed at sidelining this Court so Texas can continue to suppress the exact same speech at issue in this case. Bahia Amawi lost a year of her professional life due to the Government's intransigence. What will the next plaintiff lose? And the plaintiff after that? These are the questions that, under the voluntary cessation exception to mootness, the Court may resolve with a definite judgment of unconstitutionality.

## II.    The Court Must Still Award Amawi Attorneys' Fees

In the event the Court sides with the defendants on mootness, it should still not dismiss[2] this case until it grants Amawi fees under 28 U.S.C. § 1988. *See generally Dearmore v. City of Garland,* 519 F.3d 517 (5th Cir. 2008) (plaintiff was prevailing party when government amended statute after grant of preliminary

---

[2] Plaintiff respectfully requests that, if the Court does dismiss, it does so without prejudice and with leave to amend.

injunction). Under *Dearmore,* Amawi is entitled to fees as a prevailing party when she "win[s] a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits." *Id.* at 524. Amawi meets all three prongs here and is entitled to fees. Should this Court otherwise deem this case moot, a fee application will promptly follow.

## CONCLUSION

The Attorney General's Motion to Dismiss (Dkt. 92) should be denied.

Dated: June 3, 2019       **CAIR LEGAL DEFENSE FUND**

/s/ Lena F. Masri
  Lena F. Masri (D.C. Bar No. 1000019)
     lmasri@cair.com
  Gadeir I. Abbas (VA Bar No. 81161)*
     gabbas@cair.com
  Carolyn M. Homer (D.C. Bar No. 1049145)
     chomer@cair.com
  453 New Jersey Ave., SE
  Washington, DC 20003
  Phone: (202) 742-6420
  Fax:    (202) 488-0833

  * *Licensed in VA, not in D.C.*
   *Practice limited to federal matters*

**JOHN T. FLOYD LAW FIRM**

John T. Floyd (TX Bar No. 00790700)
   jfloyd@johntfloyd.com
Christopher M. Choate
   (TX Bar No. 24045655)
   choate@johntfloyd.com
4900 Woodway Dr., Ste. 725
Houston, TX 77056
Phone: (713) 224-0101
Fax:   (713) 237-1511

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Bahia Amawi, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 1:18-CV-1091-RP |
| | § | |
| Pflugerville Independent School District; and | § | *consolidated with:* |
| Ken Paxton, in his official capacity as | § | |
| Attorney General of Texas, | § | Civil Action No. 1:18-CV-1100-RP |
| *Defendants.* | § | |

### DEFENDANT KEN PAXTON'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(H)(3)

Article III's case-or-controversy requirement "subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). The "parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Id.* at 478 (citation omitted). Plaintiffs have effectively conceded, in both this Court and the Fifth Circuit, that they lack this requisite "personal stake" to press forward with their claims. *Pluecker* Plaintiffs acknowledge that "sole proprietors, including *Pluecker* Plaintiffs, are no longer required to certify that they do not boycott Israel." Doc. 103 at 2. They made the same concession in response to General Paxton's motion for stay in the Fifth Circuit, in a brief that Amawi then adopted by reference. *See* Doc. 101-1 at 4 (*Pluecker* Plaintiffs' Fifth Circuit brief stating that "the narrowed scope of the law means that it no longer applies to the *Pluecker* Plaintiffs); Doc. 101-2 at 3 (Amawi response brief "adopt[ing] the responsive position of the *Pluecker* Plaintiffs' opposition").

In their response to General Paxton's motion to dismiss, *Pluecker* Plaintiffs recognize that "the removal of sole proprietors from the statute may ultimately require this Court to dismiss Plaintiffs' claims," and offer no case law explaining how they maintain standing to pursue this litigation any further. Doc. 103 at 3. Amawi, by contrast, relies almost exclusively on *City of Mesquite v. Aladdin's*

*Castle, Inc.*, 455 U.S. 283 (1982), which is inapposite and has been cabined by multiple courts—including the Fifth Circuit—to its egregious set of facts.

In *Aladdin's Castle*, the city of Mesquite passed an ordinance related to coin-operated amusement establishments. In relevant part, it (1) directed the chief of police to consider whether a license applicant had any "connections with criminal elements," and (2) prohibited a licensee from allowing children under 17 from operating a device unless accompanied by a parent or legal guardian. *Id.* at 285–86. When Aladdin's Castle, Inc. proposed to open an amusement center in a shopping mall, the city made an exception to the 17-and-under prohibition so long as children under the age of seven were accompanied by an adult. *Id.* at 286. But Aladdin's application for a license was denied because the police chief determined that Aladdin's parent company had "connections with criminal elements." *Id.* at 287. Aladdin sued the city in a Texas state court and obtained an injunction requiring the city to issue it a license. *Id.* Less than a month after complying with the injunction, the city repealed Aladdin's 7-and-under exemption and reinstated the 17-and-under requirement. *Id.* The city also attempted to refine its definition of "connections with criminal elements." *Id.* Aladdin filed suit in federal court to enjoin the revised ordinance. On appeal, the Fifth Circuit found both the 17-and-under requirement and the "criminal elements" provision unconstitutional. *Id.* at 288. While the case was pending in the Supreme Court, the city eliminated the "criminal elements" provision altogether, without informing the Fifth Circuit, but conceded at oral argument in the Supreme Court that it intended to reinstate that provision. *Id.* at 288, 289 n.11.

The Supreme Court held that the challenge to the "criminal elements" provision was not moot, observing that the city's "repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated. The city followed that course with respect to the age restriction, which was first reduced for Aladdin from 17 to 7 and then, in obvious response to the state court's judgment, the exemption was eliminated." *Id.* at 289. On those

unique facts, there was "no certainty that a similar course would not be pursued if its most recent amendment were effective to defeat federal jurisdiction." *Id.*

Amawi's reading of *Aladdin's Castle* to "require[] courts to examine whether the Government's unlawful conduct is likely to reoccur, and not just whether the future harm to a particular plaintiff is likely to reoccur," Doc. 104 at 3, is unsupported by the cases that have interpreted it. Instead, as the Fourth Circuit has reasoned, *Aladdin's Castle* "is generally limited to the circumstance, and like circumstances, in which a defendant openly announces its intention to reenact 'precisely the same provision' held unconstitutional below."[1] *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir. 2000) (citing *Aladdin's Castle*, 455 U.S. at 289 n.11). The Fifth Circuit cited *Valero* favorably when it held that statutory changes that discontinue a challenged practice are "usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Fantasy Ranch Inc. v. City of Arlington, Tex.*, 459 F.3d 546, 564 (5th Cir. 2006) (citing *Valero*, 211 F.3d at 116).

Moreover, the Fifth Circuit has rejected a different plaintiff's attempt to fall within *Aladdin's Castle*'s narrow purview. *See Habetz v. La. High School Athletic Ass'n*, 842 F.2d 136, 137–38 (5th Cir. 1988). In *Habetz*, a female athlete sued to enjoin a high school athletic association's by-laws, which prevented her from trying out for a boys' baseball team. *Id.* at 137. While the case was on appeal, the association amended its by-laws to allow female athletes to try out for male sports teams when a school lacks a female team in that sport. *Id.* The Fifth Circuit found the challenge moot and noted that in *Aladdin's Castle*, "the defendant city's past conduct indicated a likelihood that it would return to its challenged practices once the threat of litigation had passed." *Id.* at 137. Without those circumstances

---

[1] Even one of the cases that Amawi cites, *Martin v. Houston*, 226 F. Supp. 3d 1283, 1295 (M.D. Ala. 2016), concludes that *Aladdin's Castle* "presents a high bar" and that absent an "open admission of intent to reenact" or "a history of gamesmanship from which such intent could be inferred," *Aladdin's Castle* does not apply.

present, the district court's judgment was vacated with instructions to dismiss. *Id.* at 138; *see also United States Fleet Servs. v. City of Fort Worth, Tex.*, 33 F. App'x 704, 2002 WL 432606, at *1 (5th Cir. Mar. 1, 2002) (finding *Aladdin's Castle* inapplicable because "[t]here is no indication in the pending case that the enactment of the new ordinance was a ruse or that the city intends to reenact the repealed ordinance."); *Brazos Valley Coalition for Life, Inc. v. City of Bryan, Tex.*, 421 F.3d 314, 321–22 (5th Cir. 2005) (distinguishing *Aladdin's Castle* on the basis that the city "openly conceded that it intended to reenact the disputed ordinance as soon as the Supreme Court vacated the judgment for mootness").

Amawi cannot come close to showing that *Aladdin's Castle* overcomes the obvious mootness of her claims. As an initial matter, Amawi is suing the Attorney General of Texas, who has no power to reenact the prior version of Chapter 2270. *See Hall v. La.*, 884 F.3d 546, 553 (5th Cir. 2018) ("In the present case, the appeal was mooted by actions of the Louisiana legislature, which is not a party to this suit. No 'fault' in mooting the appeal is attributable to any of the defendants, even though some of them are officials of the State of Louisiana."). *Aladdin's Castle* is distinguishable on that basis alone, because it was not in dispute that the city of Mesquite had the direct power (and intent) to reinstate the challenged policies. And, of course, there has been no "open announce[ment]" that General Paxton or the Texas Legislature intends to reenact the prior version of Chapter 2270. *Valero*, 211 F.3d at 116. To the contrary—House Bill 793 passed by a vote of 105-0 in the House of Representatives and 28-3 in the Senate. Doc. 92 at 2. This broad support for House Bill 793 provides no indicia of any intent to reintroduce old language from House Bill 89.

House Bill 793's legislative history indicates that it was not passed, as Amawi claims, "solely to avoid the Court's adverse ruling." Doc. 104 at 5. Representative Phil King filed House Bill 793 in the Texas House of Representatives on January 11, 2019, *see* Doc. 92 at 2, months before the Court issued its preliminary injunction. It unanimously passed the House of Representatives on April 11, 2019, still several weeks before the Court's injunction. *See id.* Amawi and *Pluecker* Plaintiffs also ignore

salient features of House Bill 793, which goes well beyond "merely exempting Amawi from the law." *Contra* Doc. 104 at 1. House Bill 793 not only clarifies that sole proprietors are no longer subject to the certification requirement: it also makes clear that the certification requirement applies only to companies with 10 or more full-time employees who contract with the State, and only when the value of those contracts is $100,000 or more. Doc. 92-1. None of the contracts at issue had a value of more than approximately $5,000. *See* Doc. 92 at 2–3. In effect, Amawi asks the Court to assume that the Texas Legislature, whose legislative session just ended and which will not meet again for a regular session until January 2021, will at that time not only reinstate sole proprietors as "companies" subject to Chapter 2270 but will also repeal the 10-or-more-employees and $100,000 thresholds. She offers no support, in any form, for this tenuous grasp at the Court's continued jurisdiction, which would only be relevant under her flawed reading of *Aladdin's Castle*. The Court should follow the Fifth Circuit's general rule that a legislative change to a challenged statute is "usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Fantasy Ranch Inc.*, 459 F.3d at 564. And under that rule, Amawi's claims, and *Pluecker* Plaintiffs' claims, are moot.

The Court should likewise reject Amawi's remaining arguments. She once again asserts that the facial nature of her claim for relief, and the fact that it arises in the First Amendment context, allows for a looser jurisdictional analysis. Doc. 104 at 4–5; *see also* Doc. 90 at 2. This ignores that "[s]tanding is an 'irreducible constitutional minimum' that must be established in each case," and that "[t]his is no less true in the context of a facial challenge." *See Kennedy v. Pablos*, 2017 WL 2223056, at *8 (W.D. Tex. May 18, 2017) (citation omitted) (rejecting plaintiffs' standing argument in context of First Amendment challenge to provisions in the Texas Election Code). Nor can Amawi rely on the Declaratory Judgment Act as her jurisdictional hook. The Declaratory Judgment Act is procedural in nature, rather than substantive, and cannot sustain a federal suit without an independent basis for

jurisdiction. *See* 10B Fed. Prac. & Proc. Civ. § 2766 (4th ed.) ("The operation of the Declaratory Judgment Act is procedural only. By passage of the Act, Congress enlarged the range of remedies available in the federal courts but it did not extend their subject-matter jurisdiction. . . . There must be an independent basis of jurisdiction, under statutes equally applicable to actions for coercive relief, before a federal court may entertain a declaratory-judgment action."); s*ee also Texas v. Ysleta del Sur Pueblo*, 367 F. Supp. 3d 596, 602 (W.D. Tex. 2019) ("The Declaratory Judgment Act provides no independent cause of action."). Amawi must therefore still have live, pending claims to assert a viable declaratory judgment claim, and she does not dispute that she is no longer subject to Chapter 2270. She is not entitled to a declaratory judgment as to a law that does not apply to her, as that judgment would not be between "parties having adverse legal interests." *See United States Servicemen's Fund v. Killeen Indep. Sch. Dist.*, 489 F.2d 693, 694 (5th Cir.1974) ("Whether in actions for declaratory judgment or other relief, federal courts established under Article III of the Constitution do not render advisory opinions.").

This case is moot and the Court's preliminary injunction must be vacated. Neither response brief addresses the overwhelming case law requiring a preliminary injunction to be vacated in a moot case. Doc. 92 at 5–6. Instead, Plaintiffs prematurely shift the discussion to attorney's fees. Doc. 103 at 4; Doc. 104 at 7–8. Aside from being substantively incorrect—ultimately, General Paxton will demonstrate, if necessary, that Plaintiffs are not prevailing parties—that issue is not before the Court on the pending motion to dismiss. The only two issues raised in the motion are: (1) whether this case is moot, and (2) whether the preliminary injunction should be vacated. The answer is yes to both.[2]

---

[2] Amawi's request that the Court dismiss her claims without prejudice is redundant, because "federal courts lack jurisdiction over the merits of a moot claim, and such a claim should be dismissed without prejudice to its merits." *Martinez v. Kerry*, 2014 WL 12673703, at *3 (S.D. Tex. May 27, 2014). But the Court should deny Amawi's alternative request for leave to amend. Doc. 104 at 7 n.2. Any amendment would be futile because Amawi lacks standing to challenge Chapter 2270 in its current form. *See Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (stating that leave to amend can be denied if amendments would be futile).

## Conclusion

The Court should dismiss Plaintiffs' claims and vacate its preliminary injunction order.[3]

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Michael R. Abrams*
MICHAEL R. ABRAMS
Texas Bar No. 24087072
Assistant Attorney General
RANDALL W. MILLER
Texas Bar No. 24092838
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512-463-2120
Fax: 512-320-0667
Michael.Abrams@oag.texas.gov
Randall.Miller@oag.texas.gov

***Counsel for Defendant Ken Paxton***

---

[3] Even after an appeal has been filed, a district court retains authority to modify a preliminary injunction order. *See Frye v. Anadarko Petroleum Corp.*, 2018 WL 5921016, at *2 (S.D. Tex. Nov. 13, 2018).

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon Plaintiffs' counsel of record through the Court's electronic filing system on June 5, 2019.

/s/ Michael R. Abrams
MICHAEL R. ABRAMS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Bahia Amawi, | § | |
| | § | |
| Plaintiff | § | Case No. 1:18-cv-1091-RP |
| | § | |
| v. | § | *consolidated with:* |
| | § | |
| Pflugerville Independent School District; | § | Case No. 1:18-cv-1100-RP |
| and Ken Paxton, in his official capacity | § | |
| as Attorney General of Texas, | § | |
| | § | |
| Defendants | § | |

**DEFENDANTS LEWISVILLE ISD AND KLEIN ISD'S REPLY TO PLAINTIFFS'
RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF
JURISDICTION**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Defendants Lewisville Independent School District ("Lewisville ISD") and

Klein Independent School District ("Klein ISD") (collectively the "School Districts") and file

their Reply to Plaintiffs' Response to Defendants' Motion to Dismiss for Lack of Jurisdiction

[Dkt. 95], and would respectfully show the Court as follows.

**A.    Abdelhadi and Dennar Concede That Their Claims Are Moot, they Lack Standing,
and this Court Lacks Jurisdiction.**

**1.    Plaintiffs Are Not Adversely Affected by the Statute.**

Abdelhadi and Dennar ("Plaintiffs") do not dispute the School Districts' argument that,

because they are sole proprietors, Abdelhadi and Dennar do not fall within the purview of Texas

Government Code Chapter 2270, as amended. *Cf.* Dkt. 95, pp. 7-10; Dkt. 103. In fact, Plaintiffs

admit that they are no longer required to certify that they do not boycott Israel. Dkt. 103, p. 4.

By failing to dispute that they are no longer adversely affected by the state statute, Plaintiffs have

conceded the School Districts' argument that Plaintiffs' claims are moot, they lack standing, and

**KISD and LISD's Reply to Plaintiffs' Response to Motion to Dismiss**                    Page **1** of **7**
**for Lack of Jurisdiction**
29057/29058/612260-3

this Court lacks jurisdiction.  Dkt. 95, pp. 7-10.  Indeed, Plaintiffs admit that the statutory amendment "may ultimately require this Court to dismiss Plaintiffs' claims."  Dkt. 103, p. 5.

    2.    **<u>Plaintiffs Lack Standing to Assert Vague Claims On Behalf of Third Parties</u>.**

Abdelhadi and Dennar argue that Chapter 2270, as amended, will continue to allegedly impose unconstitutional restrictions on unidentified third parties.  Dkt. 103, pp. 3-5.  However, Plaintiffs lack standing to assert claims on behalf of other parties, and their general disagreement with Chapter 2270, as amended, does not provide this court with jurisdiction over their claims against the School Districts.

"Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation."  *Singleton v. Wulff*, <u>428 U.S. 106, 113</u> (1976).  The Supreme Court in *Singleton* pointed out two reasons why federal courts should hesitate before resolving a controversy based on the rights of third persons not parties to the litigation.  "First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not."  *Id*. at 113-114.  "Second, third parties themselves usually will be the best proponents of their own rights."  *Id*. at 114.  The Supreme Court in *Singleton* set forth the Court's general rule that "ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party."  *Id*. at 114.  See also *Barrows v. Jackson*, <u>346 U.S. 249, 255</u> (1953); *Flast v. Cohen*, <u>392 U.S. 83, 99</u> n. 20 (1968); and *McGowan v Maryland*, <u>366 U.S. 420, 429</u> (1961).

Litigants may bring actions on behalf of third parties, "provided three important criteria are satisfied: The litigant must have suffered an "injury in fact," thus giving him or her a

**KISD and LISD's Reply to Plaintiffs' Response to Motion to Dismiss**
**for Lack of Jurisdiction**
29057/29058/612260-3

Page **2** of **7**

Case 1:18-cv-00091-RP   Document 106   Filed 08/22/19   Page 34 of 53

'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410-411 (1991) (citing *Singleton*, 428 U.S. at 112, 113-114, 115-116 and *Craig v. Boren*, 429 U.S. 190 (1976). "Even where the relationship is close, the reasons for requiring persons to assert their own rights will generally still apply." *Singleton*, 428 U.S. at 116.[1]

None of these conditions are present here, so Plaintiffs' vague assertion that unidentified third parties may be injured by the amended state statute is not sufficient to defeat the School Districts' motion. Plaintiffs' claims against the School Districts for alleged harm to themselves are moot, Plaintiffs lack standing to assert vague claims on behalf of unidentified third parties, and this Court lacks jurisdiction over Plaintiffs' claims. For these reasons, the Court must dismiss Plaintiffs claims against the School Districts.

### 3.  Plaintiffs Provided No Reason to Believe That the State Will Reenact a Statute Requiring Certifications From Sole Proprietorships.

Although Plaintiffs admit that Chapter 2270 no longer applies to them, they imply that the Court should not dismiss their claims against the School Districts because, supposedly, an exception to the general mootness rule applies in this case. Dkt. 103, p. 2. The Plaintiffs cite to *McCorvey v. Hill*, 385 F.3d 846, 849 n. 3 (5th Cir. 2004) for the proposition that "an exception to the general mootness rule exists where there is evidence or a legitimate reason to believe that the state will reenact the statute or one that is substantially similar." *Id*. Plaintiff's argument is without merit for several reasons.

First, there is no evidence that the State will reenact the original statute. Indeed, even if

---

[1] Dennar and Abdelhadi would also lack standing to file a claim against the School Districts based on a general disagreement with the content of the amended Act. *Gill v. Whitford*, 138 S.Ct. 1916, 1929 (2018) (citations omitted); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (citations omitted).

**KISD and LISD's Reply to Plaintiffs' Response to Motion to Dismiss**                    Page 3 of 7
**for Lack of Jurisdiction**
29057/29058/612260-3

the State wanted to reenact the statute in its original form, the Texas Legislature's session has recently concluded, and it is wholly speculative to assume that the next Legislature, which does not begin until January of 2021, and whose membership has not yet been elected, will choose to reverse its 2019 amendments to Chapter 2270.

Second, there is no evidence that the School Districts will take any action to require sole proprietors to certify that they do not boycott Israel. In fact, the School Districts have **never** even considered requiring sole proprietorships to certify that they do not boycott Israel as a condition of entering into contracts with the School Districts. Dkt. 95-1, pp. 12-13 (B. Champion Decl., ¶¶10-130; Dkt. 95-1, p. 20 (K. Rogers Aff., ¶¶10-13); *see also*, Dkt. 1 (No. 1:18-cv-01100), ¶28 (in which Plaintiffs acknowledge that the school districts did not have a policy or practice of requiring contractors to certify that they would not boycott Israel and that, but for the Act, the school districts would not include such a requirement for their contractors).[2]

Because Plaintiffs have not met the standard identified in *McCorvey*, their reliance on that case is unavailing. Plaintiffs have not demonstrated that they fall within any exception to the requirement that the Court dismiss a case which has become moot. Plaintiffs' claims against the School Districts are moot, and the Court must dismiss these claims.

**B.     Abdelhadi and Dennar Concede That the Preliminary Injunction Should be Vacated.**

Plaintiffs also failed to dispute the School Districts' argument that, because this case was

---

[2] Plaintiffs' argument is incredibly ironic. Without any evidence, Plaintiffs speculate, and invite the Court to speculate, that Chapter 2270 will be re-amended to re-enact the original 2017 version applying to sole proprietors. In late March of this year, Plaintiffs accused the School Districts of engaging in speculation when the School Districts urged the Court to stay the injunction proceedings pending the Legislature's imminent amendment of Chapter 2270 that would moot the case. Dkts. 65, 71. Plaintiffs' speculation was wrong. Seven (7) days after this Court's order granting Plaintiffs' preliminary injunction, Chapter 2270 was amended in precisely the manner the School Districts had anticipated. The Court should decline Plaintiffs' invitation to speculate about a hypothetical statutory re-enactment by a Legislature that will not be in session for more than a year and whose members have yet to be elected.

**KISD and LISD's Reply to Plaintiffs' Response to Motion to Dismiss**                          Page 4 of 7
**for Lack of Jurisdiction**
29057/29058/612260-3

mooted by the action of the Texas Legislature, and not by any action of the School Districts, the preliminary injunction order should be vacated. *Cf*. Dkt. 95, pp. 10-13; Dkt. 103. By failing to dispute, or even address this argument, Abdelhadi and Dennar have conceded that the preliminary injunction should be vacated.

## C.    The Court Does Not Have Jurisdiction Over a Request for Attorney's Fees Based on the Preliminary Injunction.

The Court should reject Plaintiffs' contention that this Court may retain ancillary jurisdiction to determine an award of attorneys' fees. Dkt. 103, p. 5.

Plaintiffs admit that, in light of the Texas Legislature's amendment to Chapter 2270, they are no longer required to certify that they do not boycott Israel. Dkt. 103, p. 4. For this reason, as explained above, Plaintiffs present the Court with no live controversy concerning their ability to contract with the School Districts, so their claims are moot. Consequently, the preliminary injunction provides the only possible basis for an award of attorney's fees in this litigation.[3] However, because the preliminary injunction is currently on appeal before the Fifth Circuit, this Court lacks jurisdiction to consider any award of attorney's fees in connection with the preliminary injunction.

"As a general rule, a district court is divested of jurisdiction on the filing of a notice of appeal with respect to any matters involved in the appeal." *Frye v. Anadarko Petroleum Corp.*, No. H-17-2289, 2018 WL 5921016, at *2 (S.D. Tex. Nov. 13, 2018) (citing *Alice L. v. Dusek*, 492 F.3d 563, 564–65 (5th Cir. 2007) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those

---

[3] The School Districts vigorously dispute the notion that any award of attorney's fees against them would be appropriate.

**KISD and LISD's Reply to Plaintiffs' Response to Motion to Dismiss**
**for Lack of Jurisdiction**
29057/29058/612260-3

Page 5 of 7

Case 1:18-cv-00091-RP  Document 106  Filed 08/22/19  Page 37 of 53

aspects of the case involved in the appeal.")).  The Fifth Circuit has recognized at least four exceptions to the general rule, but none of these exceptions apply here.  See *Id.*[4]

Because Plaintiffs' claims against the School Districts are moot and because the Court lacks jurisdiction over any claim for attorney's fees against the School District, the Court must dismiss Plaintiffs' claims against the School Districts.

**D.  Lewisville ISD and Klein ISD Will Be Entitled to an Award of Costs.**

Contrary to Plaintiff's unsupported assertions, and pursuant to Federal Rule of Civil Procedure 54(d)(1), the School Districts are entitled to an award of their costs in conjunction with this motion to dismiss for mootness, lack of standing, and lack of jurisdiction.  See *Three Expo Events, L.L.C. v. City of Dallas, Texas*, No. 3:16-cv-00513-D, 2017 WL 1955527 (N.D. Tex.), reversed on other grounds; *Three Expo Events, L.L.C. v. City of Dallas, Texas*, No. 3:16-cv-00513-D, Dkt. 137 (awarding costs to the defendant as part of a judgment dismissing the plaintiff's case on standing grounds).[5]

WHEREFORE, PREMISES CONSIDERED, Defendants Lewisville Independent School District and Klein Independent School District respectfully request the Court grant their Motion to Dismiss, dismiss with prejudice Abdelhadi and Dennar's claims against the School Districts, vacate Dkt. 82, tax all appropriate costs against Abdelhadi and Dennar, and for such other and further relief, general or special, at law or in equity, to which they may show themselves to be justly entitled.

---

[4] The four exceptions are: (1) "a district court retains jurisdiction over matters that are collateral to the appeal, such as the merits of a case when the appeal concerns a preliminary injunction;" (2) "a district court retains jurisdiction to entertain a motion to stay the judgment or order being appealed;" (3) "a district court retains jurisdiction over matters that aid in the appeal, such as making clerical corrections in previous orders;" and (4) "a district court retains jurisdiction to modify or enforce preliminary injunctions, including through civil contempt proceedings."  *Frye*, 2018 WL 5921016, at *2 (citations omitted).

[5] Lewisville ISD and Klein ISD recognize that the district court's decision in *Three Expo Events* was subsequently reversed by the Fifth Circuit because it found that the plaintiff had standing.  See *Three Expo Events, L.L.C. v. City of Dallas, Texas*, 907 F.3d 333 (5th Cir. 2018).  However, the district court's decision and judgment demonstrate that a district court properly awards costs to a defendant who prevails on standing grounds.

**KISD and LISD's Reply to Plaintiffs' Response to Motion to Dismiss**    Page 6 of 7
**for Lack of Jurisdiction**
29057/29058/612260-3

Respectfully submitted,


   /s/ Thomas P. Brandt

**THOMAS P. BRANDT**
  State Bar No. 02883500
  tbrandt@fhmbk.com
**FRANCISCO J. VALENZUELA**
  State Bar No. 24056464
  fvalenzuela@fhmbk.com
**LAURA O'LEARY**
  State Bar No. 24072262
  loleary@fhmbk.com


**FANNING HARPER MARTINSON**
  **BRANDT & KUTCHIN, P.C.**
Two Energy Square
4849 Greenville Ave., Suite 1300
Dallas, Texas 75206
(214) 369-1300 (office)
(214) 987-9649 (telecopier)

**COUNSEL FOR DEFENDANTS LEWISVILLE INDEPENDENT SCHOOL DISTRICT AND KLEIN INDEPENDENT SCHOOL DISTRICT**


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on all counsel of record through the Court's electronic filing system on June 10, 2019.


/s/ Thomas P. Brandt
**THOMAS P. BRANDT**

**KISD and LISD's Reply to Plaintiffs' Response to Motion to Dismiss**                    Page **7** of **7**
**for Lack of Jurisdiction**
29057/29058/612260-3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BAHIA AMAWI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-1091-RP |
| | § | |
| PFLUGERVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, et al., | § | *Consolidated with:* |
| | § | 1:18-CV-1100-RP |
| Defendants. | § | |

## ORDER

Before the Court in this consolidated action are two motions to dismiss filed by Defendants

Ken Paxton, in his official capacity as Attorney General of the State of Texas ("Texas"), (Dkt. 92),

and the Trustees of the Klein Independent School District and the Lewisville Independent School

District (the "School Districts") (collectively, "Defendants"), (Dkt. 95). Plaintiffs Bahia Amawi

("Amawi") and John Pluecker, Zachary Abdelhadi, Obinna Dennar, and George Hale (the "Pluecker

Plaintiffs") (collectively, "Plaintiffs") responded, (Dkts. 103, 104), and Defendants replied, (Dkts.

105, 106). Having considered the parties' arguments, the evidence, and relevant law, the Court will

deny Defendants' motions to dismiss.

### I. BACKGROUND

In 2017, the Texas Legislature enacted House Bill 89, codified at Tex. Gov. Code § 2270.001

*et seq.* ("H.B. 89"). H.B. 89—which the bill's sponsor and the governor have referred to as the "anti-

BDS bill," (*see* Clay Decl., 1:18-CV-1100-RP, Dkt. 14-2, at 16–19)—prohibited state entities from

contracting with companies that "boycott Israel." It provided:

> A governmental entity may not enter into a contract with a company
> for goods or services unless the contract contains a written
> verification from the company that it:
>
> (1) does not boycott Israel; and

1

        (2) will not boycott Israel during the term of the contract.

Tex. Gov. Code § 2270.002.

        H.B. 89 defined the term "boycott Israel" to mean "refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict harm on, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory." Tex. Gov. Code § 808.001. It defined the term "company" to include "a for-profit sole proprietorship, organization, association, corporation, partnership, joint venture, limited partnership, limited liability partnership, or any limited liability company, including a wholly owned subsidiary, majority-owned subsidiary, parent company or affiliate of those entities or business associations that exist to make a profit." Tex. Gov. Code § 808.001.

        Plaintiffs in this consolidated action are five sole proprietors who sought to enjoin H.B. 89 because it allegedly violated their First and Fourteenth Amendment rights. Plaintiffs are all participants in or supporters of the "BDS" movement—calling for boycotts, divestments, and sanctions of Israel—which arose in response to Israel's occupation of Palestinian territory and its treatment of Palestinian citizens and refugees. (Abbas Decl., Dkt. 14-2, at 16–18; Clay Decl., 1:18-CV-1100-RP, Dkt. 14-2, at 6). On April 25, 2019, this Court preliminarily enjoined Defendants from enforcing H.B. 89 because, in part, Plaintiffs demonstrated that they would likely succeed on the merits of their claims that the statute violated the First Amendment. Twelve days later, the Texas Legislature amended H.B. 89. The new version of the bill, H.B. 793, makes three changes. First, it provides that "[c]ompany has the meaning assigned by Section 808.001, except that the term does not include a sole proprietorship." (H.B. 793, Dkt. 92-1, at 1). Second and third, it provides that it only applies to a contract (1) that "is between a governmental entity and a company with 10 or more full-time employees; and" (2) with "a value of $100,000 or more that is to be paid wholly or partly

from public funds of the governmental entity." (*Id.*). No other changes to H.B. 89 were made. (*See id.*).

The day after H.B. 793 was passed, Texas moved to dismiss this case. The School Districts filed their motion to dismiss the next day. Defendants move to dismiss this case because, they argue, the amended statute no longer applies to Plaintiffs—who are all sole proprietors—and so this case is now moot because Plaintiffs lack standing.[1] For the reasons below, the Court finds that this case is not moot.

## II. DISCUSSION

Article III of the Constitution restricts the jurisdiction of federal courts to "cases" and "controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). This case-or-controversy requirement "subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Generally, a case becomes moot when, after litigation has commenced, "any set of circumstances . . . eliminates [the] actual controversy" between the parties. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). But an exception to this general rule exists when a case is rendered moot by the voluntary cessation of allegedly unlawful conduct. In these circumstances, another general rule applies: "voluntary cessation of allegedly illegal conduct . . . does not make the case moot." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)). This is because "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). "Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter

---

[1] To the extent that the School Districts also argue that Plaintiffs Abdelhadi and Dennar lack standing because "KISD and LISD do not have, and have never had, policies prohibiting contracts with sole proprietors based on whether they boycott Israel," (Sch. Dist. Defs.' Mot. Dismiss, Dkt. 95, at 9; *see also* Sch. Dist. Defs.' Reply, Dkt. 106, at 4), the Court has already rejected this argument, (*see* Prelim. Inj. Order, Dkt. 82, at 20–22, 52–55).

relating to the exercise rather than the existence of judicial power." *Id.* Were it otherwise, "courts would be compelled to leave '[t]he defendant free . . . to return to his old ways.'" *Id.* n.10 (quoting *W. T. Grant Co.*, 345 U.S. at 632).

Defendants are therefore incorrect when they argue that this case is moot because "Plaintiffs would not be able to bring suit today." (Tex. Mot. Dismiss, Dkt. 92, at 4; *see also* Sch. Dist. Defs.' Mot. Dismiss, Dkt. 95, at 10). Standing is not the same thing as mootness, and "the description of mootness as 'standing in a time frame' is not comprehensive." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Thus, the Texas Legislature's voluntary amendment to H.B. 89 does not "automatically" deprive the Court of jurisdiction over a challenge to the constitutionality of that legislation. *Habetz v. La. High Sch. Athletic Ass'n*, 842 F.2d 136, 137 (5th Cir. 1988). The Fifth Circuit, moreover, has specifically rejected the argument that repealing an ordinance means there is "no longer a live controversy with respect to the constitutionality of the repealed ordinance." *Cooper v. McBeath*, 11 F.3d 547, 550 (5th Cir. 1994). Instead, the court instructed that *Aladdin's Castle*, 455 U.S. 283 (1982), is the precedent "squarely applicable" to determining whether an amendment to a law renders a challenge to that law moot. *Cooper*, 11 F.3d at 550.

In *Aladdin's Castle*, the City of Mesquite, Texas, had passed an ordinance governing coin-operated amusement establishments. 455 U.S. at 286. Section 5 of the ordinance prohibited licensees from allowing children younger than 17 years of age to use the coin-operated devices unless accompanied by a parent or legal guardian. *Id.* Section 6 directed the City's chief of police to consider whether licensees had "connections to criminal elements." *Id.* Aladdin's Castle sought to open a coin-operated amusement establishment in a shopping mall but proposed to permit unattended children under the age of seven to use its devices. *Id.* The City accommodated this proposal; it exempted Aladdin's Castle from Section 5 of the ordinance. *Id.* However, after Aladdin's entered into a long-term lease to open its establishment, the chief of police determined that its

parent corporation had ties to criminal elements. *Id.* Aladdin's license application was therefore

denied under Section 6. *Id.* Aladdin's then brought suit in Texas state court. *Id.* The state court

enjoined the ordinance, finding that it was unconstitutionally vague, and ordered the City to issue

Aladdin's Castle a license. *Id.*

Less than a month after the City issued the license, it amended the ordinance by reinstating

the 17-year age requirement and defining the term "connections with criminal elements" in greater

detail. *Id.* Aladdin's Castle brought suit in the Northern District of Texas to enjoin the new

ordinance. *Id.* at 288. The court enjoined the "connections with criminal elements" restriction but

upheld the age restriction; the Fifth Circuit affirmed the former holding and reversed the latter. *Id.*

On appeal to the Supreme Court, the Court was faced with "[a] question of mootness . . . raised by

the revision of the ordinance that became effective while the case was pending in the Court of

Appeals. When the court decided that the term 'connections with criminal elements' was

unconstitutionally vague, that language was no longer a part of the ordinance." *Id.*

The Supreme Court held that the case was not moot. *Id.* at 289. It began by recognizing that

the "well[-]settled" principle "that a defendant's voluntary cessation of a challenged practice does

not deprive a federal court of its power to determine the legality of the practice." *Id.* The Court

further reasoned that the City's "repeal of the objectionable language would not preclude it from

reenacting precisely the same provision if the District Court's judgment were vacated." *Id.* The City

had already "followed that course"—it reenacted the age restriction requirement, which it had

"reduced for Aladdin," "in obvious response to the state court's judgment." *Id.* Because "there w[as]

no certainty that a similar course would not be pursued if" the more recent amendments "were

effective to defeat federal jurisdiction," the Court held that it "must confront the merits of the

vagueness holding." *Id.*

As an initial matter, Texas argues that *Aladdin's Castle* does not apply to this case. (Tex.

Reply, Dkt. 105, at 2–5). It relies on a Fourth Circuit case for the proposition that *Aladdin's Castle* is

"generally limited to the circumstance, and like circumstances, in which a defendant openly

announces its intention to reenact precisely the same provision held unconstitutional below." (Tex.

Reply, Dkt. 105, at 3 (internal quotation marks omitted) (quoting *Valero Terrestrial Corp. v. Paige*, 211

F.3d 112, 116 (4th Cir. 2000) (citing *Aladdin's Castle*, 455 U.S. at 289 n.11))). The Court disagrees.

Although the Court in *Aladdin's Castle* noted that the City of Mesquite had announced its intent to

reenact the challenged ordinance if the district court's judgment was vacated, it did so in a footnote

and nowhere indicated that such an express announcement is a necessary condition to invoke the

voluntary cessation exception to mootness. *See Aladdin's Castle*, 455 U.S. at 289 n.11. The City's

announcement was one of several factors considered by the Court but the only one relegated to a

footnote. *Id.* That footnote, moreover, is prefaced by the word "indeed." *Id.* If anything, this context

suggests that the Supreme Court did not place much weight on the City's statement—at least lesser

weight than the factors enumerated in the body of the Court's opinion, and certainly not the

dispositive weight given to it by the Fourth Circuit. This Court does not read *Aladdin's Castle* to

establish a precondition to the voluntary cessation exception to mootness through this footnote.

Accordingly, following the Fifth Circuit's guidance in *Cooper* that *Aladdin's Castle* is the "squarely

applicable" precedent to determine whether an amendment to a law renders a challenge to that law

moot, 11 F.3d at 550, the Court will determine whether Defendants have satisfied the test for

mootness applied in *Aladdin's Castle*.

The test is a "stringent" one. *Friends of the Earth*, 528 U.S. at 189. A case may (but not must)

become moot by voluntary cessation *if* (1) it is "absolutely clear that the allegedly wrongful behavior

could not reasonably be expected to recur, and (2) any "interim relief or events have completely and

irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631; *see also Aladdin's*

*Castle*, 455 U.S. at 289 n.10. "When both conditions are satisfied, it *may* be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Davis*, 440 U.S. at 631. Defendants bear a "formidable burden" in meeting this standard. *Friends of the Earth*, 528 U.S. at 190. Defendants have not satisfied either condition.

### A. Condition 1: Absolutely Clear that the Alleged Harm Will Not Recur

First, it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 189. On this point, the Court agrees with the Southern District of Texas's decision in *Pro-Life Cougars v. University of Houston*, 259 F. Supp. 2d 575 (S.D. Tex. Mar. 13, 2003). That case also involved a First Amendment challenge purportedly mooted by voluntary cessation. The plaintiffs claimed that the University of Houston's speech policy ("the First Policy") was an unconstitutional discrimination against student expression on campus deemed "potentially disruptive." *Id.* at 577. Plaintiffs "applied for a permit to display their pro-life 'Justice For All Exhibit'" on Butler Plaza, but their request was denied. *Id.* at 578. Plaintiffs sued the University, arguing in part that the speech policy was a prior restraint, and the court enjoined the enforcement of the policy. *Id.* at 579. The day after the court issued its injunction, the University formally approved a "Second Policy," which "had been under study and in preparation for some months before it was adopted." *Id.* at 579–80.[2] The Second Policy banned *all* student expressive activity from Butler Plaza. *Id.* at 580. The University argued that the Second Policy therefore did not

---

[2] In response to Amawi's argument that Texas passed H.B. 793 "solely to avoid the Court's" injunction of H.B. 89, (Amawi Resp., Dkt. 104, at 5), Texas emphasizes that H.B. 793 was filed in the Texas House of Representatives well before the Court issued its injunction, (Tex. Reply, Dkt. 105, at 4). This fact is immaterial to the question of mootness; it is relevant to whether vacatur is an appropriate remedy *after* mootness has been found. *Nat'l Black Police Ass'n v. D.C.*, 108 F.3d 346, 351 (D.C. Cir. 1997) (finding that the presumption against vacatur is inappropriate "if there is no evidence indicating that the legislation was enacted in order to overturn an unfavorable precedent"); (*see* Amawi Resp., Dkt. 104, at 5 (citing *id.*)). In any event, the Court notes that *Pro-Life Cougars* also considered an amended policy that was considered for months before it was adopted following the court's injunction, and that court found that the case before it was not moot.

discriminate against the plaintiffs' expression, and accordingly, their "constitutional challenge to the First Policy [was] moot." *Id.*

The *Pro-Life Cougars* court recognized that this mootness issue mirrored the one addressed by the Supreme Court in *Aladdin's Castle. Id.* The court pointed to the "well-settled rule" articulated by the Fifth Circuit in *Cooper* that "a constitutional challenge to a policy does not become moot when the policy is amended or when the policy is repealed." *Id.* at 581 (citing *Cooper*, 11 F.3d at 550). The purpose of this rule, the court further recognized, "is to prevent a defendant from later re-adopting an unconstitutional policy that had been rendered moot by an amendment." *Id.* Accordingly, the court concluded that *Cooper* and *Aladdin's Castle* applied to the mootness issue presented for reasons substantially similar to those presented by this case:

> On the one hand, Defendants argue that the challenge to the First Policy is moot, but on the other, they continue vigorously to defend the constitutionality of the First Policy. As they have stated in the past and continue to argue . . . Defendants did not and do not concede the unconstitutionality of the [First Policy]. Moreover, following the Court's Order of Preliminary Injunction, Defendants filed an appeal to the Fifth Circuit Court of Appeals challenging the Court's prior ruling and defending the constitutionality of the First Policy Defendants now contend they will not re-adopt. Defendants' persistent defense of the constitutionality of the First Policy, and the power of the University to re-enact it, prevents the Court from finding that the constitutional question is moot.

*Id.*;[3] *accord McCorvey v. Hill*, 385 F.3d 846, 849 n.3 (5th Cir. 2004) ("[A]n exception to mootness exists where there is evidence, or a legitimate reason to believe, that the state will reenact the statute or one that is substantially similar.").

Defendants' actions in this case mirror the University's in *Pro-Life Cougars*. They continue to defend the constitutionality of H.B. 89 and have appealed this Court's injunction to the Fifth Circuit. (*See* Mot. Stay, Dkt. 83 (arguing that the Court erred in concluding that Plaintiffs were likely to

---

[3] The Fifth Circuit, in a *per curiam* opinion, acknowledged and did not contravene these findings on appeal. *See Pro-Life Cougars v. Univ. of Houst.*, 67 F. App'x 251, at *1 (5th Cir. 2003).

succeed on the merits of their constitutional challenges to H.B. 89); Not. of Appeal, Dkt. 84).

Plaintiffs also argue that H.B. 793 "neither eliminates the Anti-BDS Act altogether," "remove[s] or

alter[s] any of the offending provisions of the law" identified by the Court in its order enjoining H.B.

89, nor "cease[s] Texas's punishment of protected speech." (Amawi Resp., Dkt. 104, at 3–4;

Pluecker Pls.' Resp., Dkt. 103, at 4).[4] The Court finds that Texas's persistent defense of H.B. 89's

constitutionality, and the Texas Legislature's reenactment of its likely unconstitutional requirements

in H.B. 793, means it is not "absolutely clear" that, if this case is mooted, the Texas Legislature will

not amend the anti-BDS law to once again include Plaintiffs. *See Friends of the Earth*, 528 U.S. at 189;

*accord Aladdin's Castle*, 455 U.S. at 289 (considering that "[t]here is no certainty that" the city would

not "reenact[ ] precisely the same" objectionable provision if the "most recent amendment[s]" to its

ordinance "were effective to defeat federal jurisdiction").

    Texas argues that this case is nevertheless moot because the Attorney General, not the Texas

Legislature, is a party to this case, and the Attorney General does not have the power to reenact

H.B. 89. (Tex. Reply, Dkt. 105, at 4). It is true that in *Pro-Life Cougars*, the defendant itself had the

power to re-adopt the policy it continued to defend. *See* 259 F. Supp. 2d at 581. But the test for

mootness does not turn on whether the party defending the constitutionality of a repealed policy is

the same party holding the power to re-adopt that policy. The inquiry is whether it is "absolutely

clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Davis*, 440

U.S. at 631. That the Attorney General has no power to reenact H.B. 89 is immaterial to this inquiry.

    Texas's argument, moreover, incorrectly conflates the determination of whether a case is

moot with the proper remedy *after* a case has become moot. Texas relies on *Hall v. Louisiana* for the

proposition that a case should be mooted when the party responsible for mootness is not a party to

---

[4] These allegations, particularly in light of *Pro-Life Cougars*, contradict Defendants' argument that Plaintiffs "offer[ ] no support" for the argument that the Texas Legislature will reinstate H.B. 89. (*See* Tex. Reply, Dkt. 105, at 5; Sch. Dist. Defs.' Reply, Dkt. 106, at 3–4). In any event, it is Defendants' burden, not Plaintiffs', to show that it is "absolutely clear" that the complained-of conduct will not recur. *Friends of the Earth*, 528 U.S. at 190.

the case. (*See* Tex. Mot. Dismiss, Dkt. 92, at 5 (citing *Hall v. Louisiana.*, <u>884 F.3d 546, 553</u> (5th Cir. 2018)); Tex. Reply, Dkt. 105, at 4 (same)). But *Hall* is not about whether a case is moot. Instead, the issue presented in that case was whether vacatur was the appropriate remedy for mootness; the mootness issue itself was not before the court. *See* <u>884 F.3d at 548</u>. When the Fifth Circuit acknowledged that "the appeal was mooted by action of the Louisiana legislature, which is not a party to th[e] suit," it did so in the context of determining whether the "equitable tradition of vacatur" counseled in favor of using that remedy so as best to dispose of a moot case "in [a] manner most consonant with justice." *Id.* at 552–53 (internal quotation marks and citations omitted). *Hall*, therefore, offers no guidance about when a case becomes moot; it is about what to do after that determination has been made. Indeed, the other case Texas cites, *Staley v. Harris County, Texas*, <u>485 F.3d 305</u> (5th Cir. 2007), makes this distinction explicit. There, the court recognized that "the Supreme Court [has] stepped back from the 'automatic' vacatur that almost invariably had *followed* a finding of mootness on appeal," and so a party seeking vacatur after a case has been found moot must still demonstrate an "equitable entitlement to the extraordinary remedy of vacatur." *Id.* at 310–11 (emphasis added) (citing *U.S. Bancorp Mortg. Co. v. Bonner Mail P'ship*, <u>513 U.S. 18, 26</u> (1994)).

Thus, it does not matter at this stage, as Texas argues, that the Attorney General had no "fault" in amending H.B. 89. (*See* Tex. Reply, Dkt. 105, at 4 (citing *Hall*, <u>884 F.3d at 553</u>)). The inquiry is whether it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, <u>528 U.S. at 189</u>. Whether anyone is at fault for the voluntary amendment of an allegedly unconstitutional law has nothing to do with this inquiry.

Finally, Defendants rely on *Fantasy Ranch Inc. v. City of Arlington, Texas*, for the general proposition that "statutory changes that discontinue a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." <u>459 F.3d 546, 564</u> (5th Cir. 2006) (quoting *Valero*, <u>211 F.3d at 116</u>). But Defendants

take this statement out of context. The Fifth Circuit, in making this statement, was addressing the fact that Fantasy Ranch's only argument that its claims were not moot was that the City of Arlington "might one day amend the ordinance to reenact the offending provisions." *Id.* Standing alone, this argument was insufficient to support Fantasy Ranch's position because "the *mere* power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists." *Id.* (quoting *Nat'l Black Police Ass'n v. D.C.*, 108 F.3d 346, 349 (D.C. Cir. 1997) (emphasis added)). Here, by contrast, Texas continues to defend H.B. 89's constitutionality both in this Court and in the Fifth Circuit, despite its amendment by H.B. 793. These facts go farther than a bald assertion that Texas *merely* has the power to reenact a challenged law; they suggest at least that it is not "absolutely clear" Texas will not re-adopt the law. *Pro-Life Cougars*, 259 F. Supp. 2d at 381.

In sum, the Court agrees with the reasoning in *Pro-Life Cougars*. Defendants continue to defend the constitutionality of H.B. 89, in this Court and on appeal to the Fifth Circuit, and the Texas Legislature has in H.B. 793 reenacted all the requirements this Court found likely to be constitutionally defective in H.B. 89. Texas has argued that (1) the Texas Legislature, not the Attorney General, is the entity that would reenact H.B. 89, and (2) challenges to laws amended by legislative action are generally moot. With respect to the former argument, that difference, without more, is irrelevant to the test for mootness by voluntary cessation. And with respect to the latter argument, the general statement Texas cites addresses an argument that the mere power to reenact legislation is insufficient to defeat a mootness challenge. But here, Texas has continued to defend the constitutionality of a law it says no longer exists. (*See* Tex. Reply, Dkt. 92, at 6 (citing *Sw. Ctr. for Biological Diversity v. Bartel*, 409 F. App'x 143, 145 (9th Cir. 2011))).

For these reasons, the Court finds that Defendants have not met their "formidable burden" to show it is not "absolutely clear" that, if this case is mooted, the Texas Legislature will not amend

the anti-BDS law to once again include Plaintiffs. *See Friends of the Earth*, 528 U.S. at 189. Texas has therefore failed to satisfy the first condition for mootness by voluntary cessation.

### B. Condition 2: Complete and Irrevocable Eradication of the Alleged Harm

Because a case *may* be moot by voluntary cessation only if Texas satisfies *both* conditions for mootness, the Court's inquiry could end here. *Davis*, 440 U.S. at 631. Nevertheless, in an abundance of caution, the Court will address the second requisite condition to moot a case by voluntary cessation—whether any "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.*

Defendants also fail to satisfy this condition. Plaintiffs have argued that H.B. 89 "punishes the exercise of free speech rights protected by the First Amendment, chilling those rights." (Amawi Resp., Dkt. 104, at 4). It does not matter, as Defendants contend, that the statute no longer applies to Plaintiffs. (*See* Tex. Reply, Dkt. 105, at 1; Sch. Dist. Defs.' Mot. Dismiss, Dkt. 95, at 9). The Supreme Court has "long . . . recognized" an exception to general mootness principles in the First Amendment area because "the First Amendment needs breathing space and . . . statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma*, 413 U.S. 601, 611–12 (1973) (citations omitted). Thus:

> As a corollary, the Court has altered its traditional rules of standing to permit . . . in the First Amendment area . . . challenge[s] [to] a statute not because [litigants'] own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression. . . . The consequence of [this] departure from traditional rules of standing in the First Amendment area is that any enforcement of a statute thus placed at issue is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.

*Id.* at 612–13.

H.B. 793 does not ameliorate the constitutional defects the Court identified in its order granting Plaintiffs preliminary injunctive relief. All it does is limit its reach to fewer companies. Accordingly, Defendants have neither argued nor produced evidence showing that the amendments to H.B. 89 "completely and irrevocably eradicated the effects of the" constitutional violations Plaintiffs allege: that H.B. 89 (1) is an impermissible content- and viewpoint-based restriction on protected expression; (2) imposes unconstitutional conditions on public employment; (3) compels speech for an impermissible purpose; and (4) is void for vagueness. *Davis*, 440 U.S. at 631; (*see* Prelim. Inj. Order, Dkt. 82, at 22–46). Those harms remain in H.B. 793.[5] Plaintiffs still have standing to challenge the statute, at the very least, "not because [Plaintiffs'] own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression," *Broadrick*, 413 U.S. at 612. And in any event, Plaintiffs *own* rights of free expression are still allegedly violated. The Court has found that Defendants have failed to show that it is "absolutely clear" that Texas's anti-BDS law will not apply expressly to Plaintiffs in the future. (*See* Part II(A), *supra*). This means that Plaintiffs' speech remains chilled. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (constitutional right to freedom of expression is "penalized and inhibited" if the government "*could* deny a benefit to a person because of his constitutionally protected speech or associations") (emphasis added).

Defendants have thus failed to satisfy the second condition for mootness by voluntary cessation. *Davis*, 440 U.S. at 631. Accordingly, Defendants have not shown that either condition of the applicable test for mootness is satisfied here. The Court therefore finds that Defendants have

---

[5] Defendants' reliance on *Fantasy Ranch* is also misplaced for this reason. That case involved an amendment that "addresse[d] all the issues raised by Fantasy Ranch's pre-amendment complaint." 459 F.3d at 564. Here, however, H.B. 793 addresses none of the grounds on which Plaintiffs have argued H.B. 89 is unconstitutional.

failed to meet their "formidable burden" to show that Plaintiffs lack a "cognizable interest in the final determination of" this litigation. *Id.* The Court will deny Defendants' motions to dismiss.

## III. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Texas's motion to dismiss, (Dkt. 92), and the School Districts' motion to dismiss, (Dkt. 95), are **DENIED**.

**SIGNED** on July 23, 2019.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

14

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

August 22, 2019

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

        No. 19-50384
        Bahia Amawi v. Pflugerville Indep Sch Dist, et al
                USDC No. 1:18-CV-1091
                USDC No. 1:18-CV-1100


The court has granted the motion to supplement the record in this
case.  The originating court is requested to provide us with a
supplemental electronic record consisting of the documents
outlined in the attached motion, within 15 days.  Counsel is
reminded that any citations to these documents must cite to the
supplemental electronic record.


                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Shea E. Pertuit, Deputy Clerk
                        504-310-7666

Mr. Michael Abrams
Mr. Thomas Phillip Brandt
Ms. Jeannette Clack
Mr. John Thomas Floyd III
Mr. Brian Hauss
Mr. Kyle Douglas Hawkins
Ms. Carolyn M. Homer
Ms. Lena F. Masri
Ms. Laura Dahl O'Leary
Ms. Adriana Cecilia Pinon
Mr. Edgar Saldivar
Mr. Andre Segura
Mr. Francisco J. Valenzuela