UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **BAHIA AMAWI,** *et al.,*<br><br>          Plaintiffs,<br><br>vs.<br><br>**PFLUGERVILLE INDEPENDENT SCHOOL DISTRICT**; *et al*.<br><br>          Defendants. | Case No. 1:18-cv-01091-RP<br>Case No. 1:18-cv-01100-RP |

**AMAWI PLAINTIFF'S AND PLUECKER PLAINTIFFS' JOINT MOTION FOR DECLARATORY JUDGMENT**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 3

   A. The Material Facts Are Uncontested ............................................................................. 3

   B. This Court Has Already Resolved All Of The Necessary Issues Of Law To Grant Declaratory Relief .......................................................................................................... 5

      1. This Court Has Ruled That Plaintiffs Have Standing ................................................ 5

      2. This Court Has Determined As a Matter of Law That Texas's No Boycott of Israel Law Is Unconstitutional ............................................................................................. 6

         a) Political Boycotts Of Israel Are Protected Speech ......................................... 6

         b) H.B. 89 Is A Content- And Viewpoint-Based Restriction. ........................... 7

         c) H.B. 89 Is Not Narrowly Tailored To Serve Compelling State Interests ...... 7

         d) H.B. 89 Is An Unconstitutional Condition On Government Contract Work. .............. 8

         e) H.B. 89 Unconstitutionally Compels Speech ............................................. 10

         f) H.B. 89 Is Unconstitutionally Vague ........................................................... 10

      3. This Court Should Enter A Final Declaratory Judgment ....................................... 11

III. CONCLUSION ................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937) .................................................................................................... 6

*Alsager v. Dist. Court of Polk County, Iowa (Juvenile Div.)*,
  518 F.2d 1160 (8th Cir. 1975) ................................................................................... 12

*Baird v. State Bar of Ariz.*,
  401 U.S. 1 (1971) ...................................................................................................... 10

*Bd. of County Comm'rs, Wabaunsee County, Kan. v. Umbehr*,
  518 U.S. 668 (1996) ................................................................................................ 8, 9

*Carico Investments, Inc. v. Texas Alcoholic Beverage Com'n*,
  439 F. Supp. 2d 733 (S.D. Tex. 2006) ...................................................................... 12

*Concise Oil & Gas P'ship v. La. Intrastate Gas Corp.*,
  986 F.2d 1463 (5th Cir.1993) .................................................................................... 11

*Cramp v. Bd. of Pub. Instruction of Orange County, Fla.*,
  368 U.S. 278 (1961) .................................................................................................. 10

*Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*,
  824 F.3d 507 (5th Cir. 2016) ..................................................................................... 11

*Familias Unidas v. Briscoe*,
  544 F.2d 182 (5th Cir.1975) ................................................................................. 1, 12

*Lane v. Franks*,
  134 S. Ct. 2369 (2014) ................................................................................................ 8

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................... 5

*Meltzer v. Bd. of Pub. Instruction of Orange County, Fla.*,
  548 F.2d 559 (5th Cir. 1977) ...................................................................................... 5

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982) .................................................................................................... 6

*Perry v. Snidermann*,
   408 U.S. 593 (1972) .................................................................................................... 8, 9

*Powell v. McCormack*,
   395 U.S. 486 (1969) ......................................................................................................... 1

*Reed v. Town of Gilbert, Arizona*,
   135 S.Ct 2218 (2015) ....................................................................................................... 7

*Regan v. Taxation with Representation of Washington*,
   461 U.S. 540 (1983) ......................................................................................................... 9

*Robinson v. Hunt County, Texas*,
   921 F.3d 440 (5th Cir. 2019) ........................................................................................... 1

*Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*,
   759 F. Supp. 1216 (N.D. Tex. 1990) ............................................................................... 5

*Rumsfeld v. FAIR*,
   547 U.S. 47 (2006) ........................................................................................................... 6

*Texas v. Johnson*,
   491 U.S. 397 (1989) ......................................................................................................... 7

*United States v. Nat'l Treasury Employees Union*,
   513 U.S. 454 (1995) ......................................................................................................... 9

*United States v. Sindell*,
   53 F.3d 874 (8th Cir. 1995) ........................................................................................... 10

## I. INTRODUCTION

Pursuant to Rules 56 and 57 of the Federal Rules of Civil Procedure, the Amawi Plaintiff and the Pluecker Plaintiffs respectfully request that this Court issue a final declaratory judgment that H.B. 89, codified at Tex. Gov. Code § 227.001 et seq., and any "No Boycott of Israel" clause in any state or state agency contract is unconstitutional.[1]

In a comprehensive, 56-page Order granting a preliminary injunction, this Court already held Texas's "No Boycott of Israel" law unconstitutional. Dkt. 82. The Court's reasoning reached the merits of the dispute at issue, and, without relying on any fact that is reasonably under dispute, found that H.B. 89 violated the First and Fourteenth Amendments. Further, this Court has already held that the 2019 legislative amendments to H.B. 89 do not deprive Plaintiffs of standing, and that the legislative changes "do[] not ameliorate the constitutional defects the Court identified in its order granting Plaintiffs preliminary relief. All it does is limit its reach to fewer companies." Dkt. 109 at 13. As such, this Court's prior holdings provide all that is necessary to issue final, declaratory relief.[2]

---

[1] Plaintiffs ask the Court to consider the Motion for Permanent Injunction (Dkt 90) concurrently with this motion. However, the analysis need not be the same. A declaratory judgment is relief distinct from injunctive relief and may be afforded even where injunctive relief is not available. *Robinson v. Hunt County, Texas*, 921 F.3d 440, 450 (5th Cir. 2019), *reh'g denied* (May 16, 2019) ("A party may pursue both injunctive and declaratory relief, and '[a] court may grant declaratory relief even though it chooses not to issue an injunction or mandamus.'") (quoting *Powell v. McCormack*, 395 U.S. 486, 499 (1969)); *Familias Unidas v. Briscoe*, 544 F.2d 182, 190 (5th Cir.1975) ("While a defendant may unilaterally act in such a manner as to cure the allegedly offensive conduct and foreclose the necessity for injunctive relief, that same unilateral action by the defendant may have no effect whatsoever on the necessity for declaratory judgment relief. Only when such unilateral action resolves or extinguishes all rights can the case or controversy be said to be no longer live and justiciable."). If the Court grants either motion, Plaintiffs will dismiss all of their other claims, which would render the judgment a final judgment, terminating this case for purposes of FRCP 54.

[2] Plaintiffs incorporate by reference the Motions and Replies in support of a Preliminary Injunction filed by them, Dkts. 8, 39, 40, and 18-cv-1100 Dkt. 14, their opposition to Plaintiffs'

1

Further, the continued enforcement of H.B. 89 by State entities against sole proprietors raises the urgency and necessity of final relief to clarify and settle the legality of H.B. 89. In August 2019, more than three months after Defendants represented to this Court that no plaintiff would ever be confronted with a No Boycott of Israel clause going forward, Plaintiff Obinna Dennar was again forced to forego an opportunity to judge at a debate tournament because the contract contained a No Boycott of Israel clause. Dennar Declaration. Mr. Dennar's experience was not an aberration; the inclusion of No Boycott of Israel clauses for contracts with sole proprietors (or the failure to recognize any exemption for sole proprietors) still appears to be prevalent. In fact, even today—more than five months after moving to dismiss this case based on a theory of mootness—the online Legal policies for both defendant school districts still include the No Boycott Certification and explicitly apply it to sole proprietors. Clay Declaration at ¶¶ 3-5, Exhs. 1-3. Other school districts also continue to enforce the No Boycott clause against sole proprietors. Bentley Declaration; Clay Declaration at ¶¶ 6-7, Exhs. 4-5. Numerous university contracts, including Defendant Texas A&M University Commerce, still include the language, as do many State contracts. Clay Declaration at ¶¶ 8-14, Exhs. 6-12 (university contracts); *id.*. at ¶¶ 15-19, Exhs. 13-17 (state agency contracts).

The propriety of a declaratory judgment is not dependent on this backdrop of continued enforcement of the "No Boycott of Israel" clause against sole proprietors. However, the persistent continuation of this unconstitutional policy underscores the need for a final judgment declaring the No Boycott of Israel clause illegal.

---

Motions to Dismiss, Dkts. 60, 61, 103, and 104, as well as the record at the Preliminary Injunction hearing, Dkts. 77 and 81.

## II.     ARGUMENT

### A.     The Material Facts Are Uncontested

The material facts necessary for this Court to issue a declaratory judgment are not in dispute. *See* Dkt. 81 Transcript at 6:24-25 (during the preliminary injunction hearing, the State conceded that there were no material facts in dispute for the Court to reach the issues that were before it, which included the constitutionality of H.B. 89). The challenged Act by its terms forces companies that wish to contract with the State or State agencies to certify that they do not boycott Israel. All of the Plaintiffs have been harmed by H.B. 89, either by being forced to forego a contract due to their inability to sign a "No Boycott of Israel" clause or by signing a "No Boycott of Israel" clause and foregoing their First Amendment right to participate in a boycott of Israel. These uncontested facts are all that is required for Plaintiffs' requested declaratory relief.

First, H.B. 89 prohibits state entities from contracting with companies that "boycott Israel." It provides that "[a] governmental entity may not enter into a contract with a company for goods or services unless the contract contains a written verification from the company that it:

- does not boycott Israel; and
- will not boycott Israel during the term of the contract."

Tex. Gov. Code § 2270.002; Dkt. No. 82 at 3.

The term "boycott Israel" is defined to mean "refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict harm on, or

3

limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory." Tex. Gov. Code § 808.001; Order, Doc. 82 at 3.

As this Court found, "it is indisputable that H.B. 89 targets participation in BDS campaigns." Dkt. No. 82 at 3 (relying on statements from Representative Phil King, the bill's sponsor, and Governor Gregg Abbott referring to H.B. 89 as the "anti-BDS bill."). Further, the State has admitted that H.B. 89 "espouses the State's policy of supporting Israel and takes the position that public funds will not be used to pay for companies that choose to engage in a boycott that is contrary to this policy." Dkt. 82 at 30 (citing Texas Resp. Mots. Prelim. Inj. Dkt. 25, at 19).

Finally, there is no dispute about the material facts necessary to show that Plaintiffs have been harmed by H.B. 89. Dkt. 82 at 15 ("Texas does not dispute that Plaintiffs suffered these harms . . ."). Four of the Plaintiffs—Amawi, Pluecker, Abdelhadi, and Dennar—were denied the opportunity to contract with a State agency because of their inability to sign a No Boycott certification. With respect to Amawi, this Court has heard her testify about her boycott and the contracting opportunity she lost as a result of her refusal to sign the No Boycott clause. *See* Dkt. No. 81 at 8-17. There are also no contested material facts regarding Pluecker's denial of contracting opportunities with the University of Houston due to his refusal to sign the No Boycott clause. Paxton's Answer, Dkt. No. 94 at ¶¶ 35, 36, 38, 39, 41; Pluecker Decl., Case No. 1:18-cv-1100-RP[3], Dkt. 14-6, ¶¶ 9-17. The same is true for Abdelhadi and Dennar. *See* ISD's Answer ¶¶ 69-70, 72-73 (Abdelahdi); Abdelhadi Decl., Dkt. 14-2, ¶¶ 9-13; ISD's Answer ¶¶ 53-55 (Dennar), Dennar Decl. Dkt. 14-4 , ¶¶ 6-8; *see also* Dkt. 70-1 at 19, 46 (Legal policies of Klein

---

[3] The Pluecker Plaintiffs' Motion for a Preliminary Injunction and accompanying evidence was filed in Case No. 1:18-cv-1100-RP prior to the two cases being consolidated.

4

ISD and Lewisville ISD reflecting requirement of No Boycott Certification). The final Plaintiff, Hale, was compelled to sign a "No Boycott of Israel" clause at the risk of losing his job. Paxton's Answer, Dkt. No. 94 at ¶¶ 82, 87, 94; Hale Decl., Dkt. 14-5, ¶¶ 11-19.

    **B.**    **This Court Has Already Resolved All Of The Necessary Issues Of Law To Grant Declaratory Relief**

        *1.*    *This Court Has Ruled That Plaintiffs Have Standing*

This Court's decisions already have established, as a matter of law, that Plaintiffs have Article III standing. In the Court's Order Granting Plaintiffs' Motion for a Preliminary Injunction, the Court held that Plaintiffs have established the requisite Article III standing because they all have suffered First Amendment injuries as a result of either being denied the ability to contract with State entities due to the No Boycott certification requirement or signing the contract and being forced to forego the ability to boycott Israel. The Court additionally held that Plaintiffs' injuries are directly attributable to the challenged law and that a favorable ruling from this Court would redress those injuries. ECF No. 82, 14-17. This is all that is necessary to establish Article III standing pursuant to *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Further, this Court has already held as a matter of law that changes to the No Boycott certification requirement by the 86th Texas Legislature do not render the case moot. ECF No. 109.

Plaintiffs' standing to seek declaratory relief is coextensive with their Article III standing. *See Meltzer v. Bd. of Pub. Instruction of Orange County, Fla.,* 548 F.2d 559, 568–70 (5th Cir. 1977), *on reh'g*, 577 F.2d 311 (5th Cir. 1978) ("The Declaratory Judgment Act's limitation to 'cases of actual controversy' has regard to the constitutional provision in Article III and is operative only in respect to controversies which are such in the constitutional sense, the word

5

'actual' being one of emphasis rather than of definition"); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 759 F. Supp. 1216, 1232-33 (N.D. Tex. 1990) *aff'd in part, rev'd in part on other grounds*, 960 F.2d 1286 (5th Cir. 1992) ("The Court's authority to grant declaratory relief pursuant to the Declaratory Judgment Act extends to the Article III limits on the Court's authority to adjudicate disputes") (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937)). Accordingly, Plaintiffs have standing to seek declaratory relief.

### 2. This Court Has Determined As a Matter of Law That Texas's No Boycott of Israel Law Is Unconstitutional

In its Order granting Plaintiffs' preliminary relief, the Court reached the merits of the arguments regarding the constitutionality of forcing contractors with the State to sign a "No Boycott of Israel" clause and squarely determined that such a requirement is facially unconstitutional. Accordingly, this Court already has determined as a matter of law that Texas's No Boycott of Israel law is unconstitutional.

#### a) Political Boycotts of Israel Are Protected Speech

First, the Court held that political boycotts of Israel constitute protected speech under the First Amendment, and that this case is controlled by *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), and not by *Rumsfeld v. FAIR*, 547 U.S. 47 (2006). ECF. No. 82 at 23-24 ("*Claiborne*, not *FAIR* governs this case."). "*Claiborne* deals with political boycotts; *FAIR*, in contrast, is not about boycotts at all. The Supreme Court did not treat the *FAIR* plaintiffs' conduct as a boycott: the word 'boycott' appears nowhere in the opinion, the decision to withhold patronage is not implicated, and *Claiborne*, the key decision recognizing that the First Amendment protects political boycotts, is not discussed." *Id.* Accordingly, the Court concluded that "Plaintiffs' BDS boycotts are speech protected by the First Amendment." *Id.* at 29.

6

b)   H.B. 89 Is A Content- and Viewpoint-Based Restriction.

The Court also held that H.B. 89 constitutes impermissible content- and viewpoint-based discrimination. "If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). The Court held that "BDS boycotts express a view on a matter of serious public concern," *id.* at 30, and that H.B. 89 discriminates against such speech on the basis of its content and viewpoint. "It is a content-based restriction because it singles out speech about Israel, not any other country. And it is a viewpoint-based restriction because it targets only speech 'intended to penalize, inflict harm on, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory.'" ECF No. 82 at 31.

c)   H.B. 89 Is Not Narrowly Tailored To Serve Compelling State Interests

Because H.B. 89 discriminates on the basis of viewpoint and content, the Court observed that it is "presumptively unconstitutional," and therefore could be justified only if it were "narrowly tailored to serve compelling state interests.'" *Id.* at 32 (quoting *Reed v. Town of Gilbert, Arizona*, 135 S.Ct 2218, 2231 (2015)).

The Court held that H.B. 89 does not serve any compelling State interests, rejecting three proffered justifications from the State. First, the Court rejected the State's argument that H.B. 89 is a "standard anti-discrimination measure" that prohibits discrimination on the basis of national origin. Relying on "H.B. 89's plain text, the statements surrounding its passage, and Texas's briefing" the Court held that the statute is a "viewpoint-based restriction intended not to combat discrimination on the basis of national origin, but to silence speech with which Texas disagrees.'

7

*Id.* at 33. In reaching this conclusion, the Court noted that the text of the statute does not refer to national origin, nationality or any such characteristic. The statute does not even prohibit discrimination against Israeli individuals or entities so long as those entities or individuals are not doing business in Israel. Accordingly the Court held, "[t]he statute's plain text makes its purpose obvious: to prevent expressive conduct critical of the *nation* of Israel, not discriminatory conduct on the basis of Israeli *national origin*." *Id.*

The Court also held that H.B. 89 is not narrowly tailored. But it initially observed that "[b]ecause H.B. 89 is not justified by any compelling state interest, n*o amount of narrowing application* will preserve it from constitutional attack." *Id.* at 36 (emphasis added). In rejecting Defendants' claim of narrow tailoring to promote an anti-discrimination interest, the Court noted that H.B. 89 prohibits boycotts of Israel even where those boycotts are based not on national origin but on political disagreement and, in fact, H.B. 89 prohibits political protests against even non-Israeli companies that happen to do business in Israel. Accordingly, the Court held that "H.B. 89 is overbroad in its restriction of protected speech." *Id.* at 37.

        d)       H.B. 89 Is An Unconstitutional Condition On Government Contract Work.

The Court also held that H.B. 89 unconstitutionally conditions government contract work on the sacrifice of First Amendment rights. "[C]itizens do not surrender their First Amendment rights by accepting public employment." *Lane v. Franks*, 134 S. Ct. 2369, 2374 (2014). The "modern 'unconstitutional conditions' doctrine holds that the government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech' even if he has no entitlement to that benefit." *Bd. of County Comm'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 674 (1996) (quoting *Perry v. Snidermann*, 408 U.S. 593, 597 (1972)).

8

The Court observed that "this doctrine applies to government contractors" like those at issue here. ECF No. 82 at 38 (citing *Umbehr*, 518 U.S. at 678–80; *Perry*, 408 U.S. at 597 (the unconstitutional conditions doctrine applies "regardless of the public employee's contractual or other claim to a job")).

In evaluating the unconstitutional conditions claim, the Court determined that because H.B. 89 is a "preemptive restriction on the speech of numerous potential speakers, a stricter form of the *Pickering* [balancing] test applies." *Id.* at 38 (*citing United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 467–68 (1995) ("*NTEU*"). The Court rejected Defendants' argument that H.B 89 should be evaluated under the cases dealing with government subsidies, *e.g. Regan v. Taxation with Representation of Washington*, 461 U.S. 540 (1983), and held that a government contract was a benefit and not a subsidy. ECF No. 82 at 40 (citing *Umbehr*, 518 U.S. at 672-73).

Under the *NTEU* test, the government must "'show that the interest of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by [the restricted] expressions 'necessarily impact on the actual operation of the government.'" *Id.* at 39 (citing *NTEU*, 513 U.S. at 468). Accordingly, the government "must do more than simply posit the existence of the disease sought to be cured . . . It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *NTEU*, 513 U.S. at 475. The Court found that the government had failed to carry this burden, and, thus, held that H.B. 89 "imposed an unconstitutional condition on public employment by requiring contractors to cease and refraining from engaging in constitutionally protected speech." ECF No. 82 at 40.

e)   H.B. 89 Unconstitutionally Compels Speech

The Court also held that H.B. 89 unconstitutionally compels speech by requiring contractors to reveal whether they boycott Israel and certify that they do not boycott Israel. The Court found that by forcing individuals to certify that they do not boycott Israel, H.B. 89 unconstitutionally "inquire[s] about a man's views or associations solely for the purpose of withholding a right or benefit because of what he believes," *id.* at 41 (citing *Baird v. State Bar of Ariz.*, 401 U.S. 1, 7 (1971)). The Court also found that the First Amendment prevented Texas from compelling the political or ideological message that contractors do not boycott Israel. *Id.* at 42 (citing *United States v. Sindell*, 53 F.3d 874, 878 (8th Cir. 1995); *Associated Builders & Contractors of Se. Texas*, 2016 WL 8188655, at *9 (E.D. Tex. Oct. 24, 2016)).

f)   H.B. 89 Is Unconstitutionally Vague

Finally, this Court held that H.B. 89 is impermissibly vague. A law is unconstitutionally vague when it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Cramp v. Bd. of Pub. Instruction of Orange County, Fla.*, 368 U.S. 278, 287 (1961).

The Court found that H.B. 89 violates this principle for two reasons. First, the law's catch-all provision that boycotting Israel includes "taking any action that is intended to penalize, inflict harm on, or limit commercial relationships specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory" could be read to apply to political speech intending to persuade others to economically boycott Israel, or to other First Amendment activity, such as purchasing art at a Gaza liberation fair. ECF No. at 82 43-44.

Second, the law's vagueness is exacerbated by its carve-out for refusals to deal with Israel motivated by undefined "ordinary business purposes." *Id.* at 44-45. As the Court noted it is not clear how a contractor "can ensure its actions comply with H.B. 89's no-boycott certification requirement after entering into a contract with the State." *Id.* at 45. Indeed, one possible reading of the statute is that contractors with the State may not decline to purchase Israeli products unless they conjure a justification that would meet the amorphous "ordinary business purposes" standard.

Accordingly, the Court found that H.B. 89 "does not give a person of ordinary intelligence a 'reasonable opportunity to know what is prohibited' with the 'greater degree of specificity" required by the First Amendment." *Id.* at 46. Further, "[i]t also fails to "provide[] explicit standards for those applying [it] to avoid arbitrary and discriminatory applications." *Id.* Thus, the Court held that H.B. 89 is unconstitutionally vague.

### 3.    This Court Should Enter A Final Declaratory Judgment

Based on the conclusions of law discussed above, this Court should enter a declaratory judgment that H.B. 89, codified at Tex. Gov. Code § 227.001 et seq., and any "No Boycott of Israel" clause in any state or state agency contract is unconstitutional.

"A determination of whether to grant declaratory relief is within the district court's discretion." *Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016). The principal criteria for issuing a declaratory judgment are "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Concise Oil & Gas P'ship v. La. Intrastate Gas Corp.*, 986 F.2d 1463, 1471 (5th Cir.1993) (quoting 10A Charles Alan Wright, Arthur R. Miller & M. Kane).

Here, entering a declaratory judgment will meet those criteria. A declaratory judgment will "serve a useful purpose in clarifying and settling the legal relations in issue" because it will establish that Tex. Gov. Code § 227.001, and any "No Boycott of Israel" clause is unconstitutional, which is the principal contested issue between the parties. Further, a declaratory judgment will afford relief from the controversy giving rise to the proceeding, because it will establish that Defendants' efforts to force Plaintiffs to choose between their livelihoods and their First Amendment rights are unlawful. *Familias Unidas*, 544 F.2d at 191 (holding that a "a declaratory judgment [is] appropriate on the issue of the constitutionality of the past application" of a statute); *Alsager v. Dist. Court of Polk County, Iowa (Juvenile Div.)*, 518 F.2d 1160, 1165 (8th Cir. 1975)) (finding declaratory relief appropriate to determine constitutionality of state statute); *Carico Investments, Inc. v. Texas Alcoholic Beverage Com'n*, 439 F. Supp. 2d 733, 736 (S.D. Tex. 2006) ("An allegation of the denial of rights guaranteed under specific constitutional provisions raises a question appropriate for review under the Declaratory Judgment Act.").

### III.   Conclusion

Plaintiffs request that this Court issue a declaratory judgment that H.B. 89, codified at Tex. Gov. Code § 227.001 et seq., and any "No Boycott of Israel" clause in any state or state agency contract is unconstitutional.

>                            Respectfully submitted,
>
>                            */s/ Edgar Saldivar*
>                            Edgar Saldivar, TX Bar No. 24038188
>                            Thomas Buser-Clancy, TX Bar No. 24078344
>                            Andre Segura, TX Bar No. 24107112**
>                            Adriana Piñon, TX Bar No. 24089768
>                            ACLU Foundation of Texas, Inc.

12

P.O. Box 8306
Houston, TX 77288
Telephone: (713) 325-7011
Fax: (713) 942-8966
esaldivar@aclutx.org
tbuser-clancy@aclutx.org
asegura@aclutx.org
apinon@aclutx.org

Brian Hauss**
Vera Eidelman**
American Civil Liberties Union Foundation
Speech, Privacy & Technology Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
Fax: (212) 549-2654
bhauss@aclu.org
veidelman@aclu.org

Kevin Dubose**
Alexander, Dubose, Jefferson & Townsend
1844 Harvard Street
Houston, TX 77008
Telephone: (713) 522-2358
Fax: (713) 522-4553
kdubose@adjtlaw.com

ATTORNEYS FOR PLUECKER PLAINTIFFS
**Admitted *pro hac vice*

Lena F. Masri
Gadeir I. Abbas
Carolyn M. Homer
CAIR Legal Defense Fund
453 New Jersey Ave., SE
Washington, DC 20003
Telephone: (202) 742-6420
Fax: (202) 488-0833
lmasri@cair.com
gabbas@cair.com
chomer@cair.com

> John T. Floyd
> Christopher M. Choate
> John T. Floyd Law Firm
> 4900 Woodway Dr., Ste. 725
> Houston, TX 77056
> Telephone: (713) 224-0101
> Fax: (713) 237-1511
> jfloyd@johntfloyd.com
> choate@johntfloyd.com
>
> ATTORNEYS FOR AMAWI PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on November 4, 2019, this document will be filed via the Court's ECF system, which will serve electronic notice on all counsel of record.

> */s/ Edgar Saldivar*
> Edgar Saldivar