# UNITED STATES DISTRICT COURT

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| BAHIA AMAWI | Case No. 1:18-cv-01091-RP |
| Plaintiff, | |
| vs. | |
| PFLUGERVILLE INDEPENDENT SCHOOL DISTRICT; and | |
| KEN PAXTON, in his official capacity as Attorney General of Texas, | |
| Defendants. | |

## BAHIA AMAWI'S MOTION FOR ATTORNEYS' FEES AND COSTS

Amawi moves for attorneys' fees and additional costs under 42 U.S.C. § 1988(b).[1] The parties conferred on agreeing to fees as required by Local Rule CV-7(j) but no agreement was reached. The declaration of Justin Sadowsky contains the required certifications under Local Rule CV-7(j) and are supported by the declarations of Lena Masri, Gadeir Abbas, and Carolyn Homer. The affidavit of Lena Masri contains the certification required in support of the request for costs.

---

[1] Although Amawi is situated slightly differently from the *Pluecker* Plaintiffs, the arguments for each to obtain their fees are mostly the same. Thus, in order to limit duplication of effort for both counsel and the Court, Amawi explicitly incorporates the *Pluecker* Plaintiffs' Motion for Fees, including the supporting affidavit of reasonableness regarding rates.

## BACKGROUND

Amawi is a speech language pathologist who worked as an independent contractor for the Pflugerville Independent School District. In September 2018, Pflugerville informed Amawi that she would have to pledge not to boycott Israel in order to continue her contract. This pledge was mandated by Texas's Anti-BDS law.

In December 2018, Amawi filed this lawsuit and moved for a preliminary injunction. This case was then consolidated with the *Pluecker* case. Both Texas (through the Attorney General acting in his official capacity) and the various local defendants brought in by consolidation filed various motions to dismiss as well as various attempts to delay the case so that Texas could protect its unconstitutional Anti-BDS law by exempting the plaintiffs from its reach. All of these attempts were unsuccessful, in large part due to the work fighting them performed by Amawi's counsel.

Ultimately, there was a March 29, 2019 hearing on Amawi's motion for preliminary injunction and Defendants' related Motions to Dismiss. The hearing required live testimony. After the hearing, on April 25, this Court issued its decision denying the Motions to Dismiss and granting Plaintiffs' Motions for a Preliminary Injunction. The Court's decisions were based on its determination that the Anti-BDS law violated the First Amendment.

Then, on May 7, 2020, Texas passed a statute insulating the Anti-BDS law from judicial review. In relevant part, it exempted sole proprietorships and individuals like Plaintiffs from the requirement not to boycott Israel. It otherwise kept the law in place, inconsistent with this Court's constitutional analysis.

Defendants moved to stay the injunction pending appeal, which Amawi opposed and the Court denied. Then, based on the new law, Defendants moved to dismiss the case on

mootness grounds. Again, Amawi opposed this request, and the Court denied it. As Amawi argued and the Court agreed, the case was not moot under the "voluntary cessation" doctrine, as Defendants continued to defend the constitutionality of the Anti-BDS law and continued to enforce it against others.

The Fifth Circuit, in contrast to these rulings, did stay the injunction and ultimately ruled that the May 7 law, issued after the injunction was entered, mooted the case. During the course of appellate proceedings, Amawi moved for a permanent injunction based on the preliminary injunction analysis and the Court's finding of non-mootness, but—likely in light of the Fifth Circuit's stay of the initial injunction—the Court denied the request and stayed the case pending appeal.

Amawi now moves for attorneys' fees and costs under 42 U.S.C. § 1988(b).

## ARGUMENT

### I.     Amawi is a prevailing party for purposes of Section 1988(b)

As the Fifth Circuit explained in *Doe v. Marshall,* "a determination of mootness neither precludes nor is precluded by an award of attorneys' fees." 622 F.2d 118, 120 (5th Cir. 1980). Instead, "preliminary relief may serve to make a plaintiff a 'prevailing party' under the statute; the lawsuit need not proceed to completion." *Id.* (citations omitted). "All that is required is that the plaintiff obtain the primary relief sought." *Id.* (citations omitted).

Here, Amawi sought and received the preliminary relief at issue: a preliminary injunction against the anti-BDS law. It was the preliminary injunction that allowed Amawi to resume her work as a speech pathologist without signing a loyalty oath to a foreign country. Only after the preliminary injunction was initiated did Texas pass the law which removed

Amawi from being covered under the Act, mooting the case. Amawi is thus a prevailing party under *Marshall*.

## II. Amawi is entitled to fees for the entire proceedings, including appeal

Section 1983 states that a "prevailing party" is entitled to fees, rather than asserting that a party is entitled to fees for those claims upon which the party prevails. As explained in Section I, above, Amawi is a prevailing party under *Marshall*. She is thus entitled to all of her fees subject to reasonableness.

As explained by the Supreme Court, "[o]nce civil rights litigation materially alters the legal relationship between the parties, the degree of the plaintiffs overall success goes to the reasonableness of a fee award under *Hensley v. Eckerhart*," 461 U.S. 424 (1983). *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (cleaned up). Fees should only be reduced under *Hensley* when "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.*

Such an approach is consistent with Fifth Circuit precedent as well. In *Frew v. Traylor*, the Court held that a prevailing party is still a prevailing party for fees purposes for "postdecree work that proves unsuccessful." 688 Fed. App'x 249, 255 (5th Cir. 2017) (unpublished), *as revised* (Apr. 28, 2017). To be sure, the Court declined to decide fully "the extent to which 'prevailing party' status obtained in an early stage of a lawsuit continues to apply to unanticipated disputes arising later in the case." *Id.* at 256. But the logic of *Frew* applies plainly to mootness situations. By obtaining a preliminary injunction, this included "the opportunity to have the Court decide whether [relief] … should continue." *Id.* So too here. Plaintiffs had the right as prevailing party to have the courts decide when this case became moot, and should be entitled to fees as the "prevailing plaintiff" for that work. *See also Dowdell v. City of Apopka,*

*Fla.*, 698 F.2d 1181, 1191 (11th Cir. 1983) (fees should not "be dissected into 'winning' and 'losing' hours with the latter being non-reimbursable"); *Rodriguez v. Mech. Tech. Services, Inc.*, 12-cv-710, 2015 WL 8362931, at *4 (W.D. Tex. Dec. 8, 2015) (similar) (citations omitted).

So Amawi should only lose her right to fees for post-injunction work (primarily the Fifth Circuit appeal) to the extent that defending that appeal was unreasonable. *Farrar*, 506 U.S. at 114; *Frew*, 688 Fed. App'x at 257. But the actions of this Court and the Government make clear that Amawi's actions in the Fifth Circuit were reasonable. This Court declined to dismiss this case for mootness, finding that "Texas has continued to defend the constitutionality of a law it says no longer exists." Dkt. 109 at 11, and that "H.B. 793 does not ameliorate the constitutional defects the Court identified in its order granting Plaintiffs preliminary injunctive relief" because "[a]ll it does is limit its reach to fewer companies," id. at 13. And the Government defended the merits of the (still-unconstitutional) Anti-BDS decision before the Fifth Circuit, refusing to rely solely on mootness.

In light of those actions, it was perfectly reasonable for Amawi to continue to attack the constitutionality of Texas's Anti-BDS law on appeal and defend the Court's ruling. No hours should be deducted for such work. As the timesheets indicate, Amawi's counsel reasonably exerted 124.3 hours after Texas amended the Anti-BDS law, not including briefing this fee motion.

## III.    Amawi is entitled to "fees for fees"

"In the Fifth Circuit, '[i]t is settled that a prevailing plaintiff is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation.'" *Saldivar v. Rodela*, 894 F. Supp. 2d 916, 939 (W.D. Tex. 2012) (quoting *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) (Section 1988)). This is often called "fees for fees." *Id.* As the timesheets

indicate, Amawi's attorneys have reasonably exerted 43.4 hours on drafting the fee brief. This amount of time is reasonable in the context of a contested fees motion. *See Gray v. Ft. Worth Indep. Sch. Dist.*, 4:09-cv-225, 2011 WL 13233587, at *2 (N.D. Tex. May 31, 2011) (court can determine reasonableness of fee request, typically but not necessarily from billing records). Plaintiffs respectfully request the right to add additional time for any reply brief necessary or oral argument in litigating this motion.

## IV. Amawi Is entitled to $615,025 in fees

### A. Amawi's fee base is $246,010

Amawi retained CAIR Legal Defense Fund to represent her in this case. Sadowsky Affidavit at ¶¶ 7-8 and 12. (CAIR refers to the Council on American-Islamic Relations, a separate entity that CAIR Legal Defense Fund works closely with.) Amawi and CAIR Legal Defense Fund have a contingency agreement. Sadowsky Affidavit ¶ 12. Section 1988(b) does not limit or modify the entitlement or amount of fees allowed when plaintiff has a contingency-fee arrangement with its counsel. *Venegas v. Mitchell*, 495 U.S. 82, 87 (1990) (collecting cases). Rather, the "the lodestar model of hours reasonably expended compensated at reasonable rates" generally determines the fee regardless of the contractual agreement between Plaintiff and counsel. *Id.*

The CAIR Legal Defense Fund Attorneys who worked on this matter were Lena Masri, Gadeir Abbas, Justin Sadowsky[2], and Carolyn Homer. The hours spent on this matter by attorneys are set forth in the billing summaries attached. A summary of the reasonable

---

[2] It is immaterial that Sadowsky never entered an appearance in the district court. *See Ace Am. Ins. Co. v. Walters*, 12-cv-442, 2014 WL 523742, at *3 (S.D. Tex. Feb. 7, 2014) (collecting cases). Sadowsky did enter an appearance before the Court of Appeals.

value of the attorneys' time that CAIR Legal Defense Fund Attorneys exercised in this matter, and are requested in this motion, are as follows:

Lena F. Masri – 26.7 hours
Gadeir I. Abbas – 139.4 hours
Justin Sadowsky – 186.4 hours
Carolyn Homer – 128.5 hours
John Floyd – 8.5 hours
Chris Choate – 10 hours

TOTAL – 499.5 hours

CAIR Legal Defense Fund attorneys do not charge an hourly fee in their customary business, as CAIR Legal Defense Fund is a civil rights nonprofit. Sadowsky Affidavit ¶ 12. As explained above, this does not eliminate the fee requirement. Rather, it requires the Court to determine a reasonable hourly rate. CAIR Legal Defense Fund have used ACLU's declarant, Kevin Dubose, as well as their own co-counsel, John Floyd, to determine the appropriate rates.

Based on these declarants, the appropriate hourly rate for each attorney is:

Lena F. Masri (12-13 years of experience) - $550
Gadeir I. Abbas 8-9 years of experience) - $450
Justin Sadowsky (13-14 years of experience) - $550
Carolyn Homer (6-7 years of experience) – $450
John Floyd (24-25 years of experience) - $500
Chris Choate (14-15 years of experience) - $450

Multiplying a reasonable rate by the reasonable hours expended leads to the following base amount recoverable under the lodestar method:

Lena F. Masri – $550 x 26.7 = $14,685
Gadeir I. Abbas – $450 x 139.4 = $62,730
Justin Sadowsky – $550 x 186.4 hours = $102,520
Carolyn Homer – $450 x 128.5 hours = $57,825
John Floyd - $500 x 8.5 hours = $4,250
Chris Choate - $450 x10 hours = $4,500
TOTAL: $246,010

**B.      Amawi Should Receive a Lodestar Multiplier of 2.5**

The Western District of Texas uses a lodestar method to calculate fees in Section 1988

cases. *Doe v. Neal*, 14-cv-00102, 2015 WL 4508335, at *2 (W.D. Tex. July 24, 2015).

Determining the lodestar multiplier requires a determination of the following factors:

> 1) the time and labor required; (2) the novelty and difficulty of the issues; (3)
> the skill required to perform the legal service adequately; (4) the preclusion of
> other employment by the attorney because he accepted this case; (5) the
> customary fee for similar work in the community; (6) whether the fee is fixed
> or contingent; (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained; (9) the experience, reputation,
> and ability of the attorneys; (10) the undesirability of the case; (11) the nature
> and length of the professional relationship with the client; and (12) awards in
> similar cases.

*Id.*

### 1.      Time and labor required

In order to obtain a preliminary injunction, Amawi's counsel had to prepare and file

a complaint and a request for a preliminary injunction, beat back multiple dispositive and

nondispositive motions from the various Defendants, prepare for a preliminary injunction

hearing, and then travel to Austin for that hearing. Amawi then defended against post-

judgment motions, filed for summary judgment themselves, and defended the case (including

on the merits) in the Fifth Circuit.

The hours submitted to that time are reasonable considering the work performed. This

was a complex, precedent-setting case that was closely watched nationwide.   Amawi's

attorneys performed this work on an emergency basis and skillfully advocated for their client.

### 2.      Novelty of the difficult issues

Amawi adopts the *Pluecker* Plaintiffs' brief on this point in full. Notably, this was a case

of first impression in this Circuit. Only three district courts have decided the issue presented

by this case before, and those decisions both (a) involve challenged statutes with different language, and (b) are not unanimous in any event.

### 3. Skill required to perform the legal service adequately

Amawi adopts the *Pluecker* Plaintiffs' brief on this point in full. Amawi respectfully suggests that the skill required to litigate a First Amendment case of this level of importance is high. What was true for the ACLU as outlined in the Saldivar declaration is no less true for the same work performed by Amawi's counsel.

### 4. The preclusion of other employment

Amawi's counsel is a small but national civil rights litigation nonprofit, CAIR Legal Defense Fund. For most of the course of this litigation, the team was made up of the four lawyers who have submitted time in this case plus two staff attorneys. (One of those attorneys, Justin Sadowsky, came to CAIR in February 2019, shortly after this case was filed. At the same time, one of the two staff attorneys joined CAIR. Prior to their hire, CAIR only had four attorneys in their civil rights department. And since briefing before the Fifth Circuit has been completed, another attorney, Carolyn Homer has left CAIR.)

To take any case, CAIR attorneys must necessarily choose not to utilize their resources in other cases. This is no less true for CAIR as it is for the ACLU or any other nonprofit. The resulting diversion of resources have damaged not only CAIR's ability to obtain fees for that work but has also taken away from other work CAIR could have done to advance CAIR's core mission of protecting the civil rights of Muslim Americans more difficult.

### 5. The customary fee for similar work in the community

Amawi adopts the *Pluecker* Plaintiffs' brief on this point in full. The customary fee for similar work is established by the *Pluecker* Plaintiffs' declarant, Kevin Dubose. Note that this

fee is based on a guarantee of receiving compensation for services provided, which CAIR Legal Defense Fund did not have in this case.

### 6. Whether the fee is fixed or contingent

Amawi adopts the *Pluecker* Plaintiffs' brief on this point in full. To the extent this factor is given weight, Amawi's contingency arrangement—particularly in light of the lack of potential damages other than attorneys' fees—suggests an upwards adjustment.

### 7. Time limitations imposed by the client or the circumstances

Amawi does not believe this factor has significant weight one way or another.

### 8. The amount involved and the results obtained

Amawi adopts the *Pluecker* Plaintiffs' brief on this point in full. Respectfully, the issue involved was free speech constitutional rights, which are invaluable. And the results obtained were clear and unambiguous: Amawi obtained a preliminary injunction against enforcement of the unconstitutional Anti-BDS law at issue, which was then followed by Texas repealing the law as it applied to Amawi.  Not only is Amawi back to work, but because of her—and this Court's comprehensive intervention—thousands of Texans who would have had to sign these illegal loyalty oaths no longer have to.

### 9. The experience, reputation, and ability of the attorneys

As the affidavits indicate, Amawi's attorneys at the Counsel on American-Islamic Relations have substantial experience, reputation, and ability.  Lena Masri and Gadeir Abbas have spent their entire careers defending the constitutional rights of Muslim-Americans. Justin Sadowsky clerked for a federal appellate judge and has worked at large law firms. John Floyd and Chris Choate are established practitioners with a highly regarded practice.  Other

than her two years at CAIR, Carolyn Homer has spent her entire career at major law firms, with a substantial First Amendment practice.

### 10.    The undesirability of the case

Amawi adopts the *Pluecker* Plaintiffs' brief on this point in full. Amawi notes that there were no potential damages at issue in this case other than attorneys' fees, in a case against the government on issues of constitutional importance, involving a controversial and unpopular political position. The case would be undesirable to any private attorney seeking to profit from the case.

### 11.    The nature and length of the professional relationship with the client

Amawi does not believe this factor has significant weight one way or another.

### 12.    Awards in similar cases

Amawi adopts the *Pluecker* Plaintiffs' brief on this point in full. Amawi is otherwise not aware of awards in similar cases.

Overall, a x2.5 multiplier is appropriate for this case.

Amawi thus requests a total of $615,025 in fees.

## V.    Amawi is Entitled to Costs

All reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone, are plainly recoverable in section 1988 fee awards because they are part of the costs normally charged to a fee-paying client. Whether these expenses are reasonable is committed to the sound discretion of the trial judge." *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990) (Citations omitted).

Amawi has incurred significant filing, travel, and admission fee costs in pursuing this case. These costs are reasonable in light of the litigation and the preliminary injunction/motion to dismiss hearing.

Plaintiffs seek the following costs:

Docket and PHV Fees: $700

Other admissions fees: $256

Transcript fees: $129

Printing costs: $87.58

Airline travel fees: $2967.36

Hotels: $459 459

Incidental travel: $721.11

**TOTAL: $5319.06**

As the Masri affidavit also states, those costs were necessary incurred in this litigation. As the Masri affidavit further states, those costs were reasonable.

## CONCLUSION

The Court should award Amawi $615,025 in fees and $5,319.06 in costs for a total of $620,344.06 The Court should also add Amawi any reasonable fees necessary to file a reply in support of this Motion.

Dated: July 6, 2020

**CAIR LEGAL DEFENSE FUND**

/s/ Lena F. Masri
  Lena F. Masri (D.C. Bar No. 1000019) α
    lmasri@cair.com
  Gadeir I. Abbas (VA Bar No. 81161) α *
    gabbas@cair.com
  453 New Jersey Ave., SE
  Washington, DC 20003
  Phone: (202) 742-6420
  Fax:   (202) 488-0833

α *Admitted pro hac vice*

\* *Licensed in VA, not in D.C.*
  *Practice limited to federal matters*

**JOHN T. FLOYD LAW FIRM**

John T. Floyd (TX Bar No. 00790700)
  jfloyd@johntfloyd.com
Christopher M. Choate (TX Bar No. 24045655)
  choate@johntfloyd.com
4900 Woodway Dr., Ste. 725
Houston, TX 77056
Phone: (713) 224-0101
Fax: (713) 237-1511