IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Bahia Amawi, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 1:18-CV-1091-RP |
| | § | |
| Pflugerville Independent School District; and | § | *consolidated with:* |
| Ken Paxton, in his official capacity as | § | |
| Attorney General of Texas, | § | Civil Action No. 1:18-CV-1100-RP |
| *Defendants.* | § | |

**DEFENDANT ATTORNEY GENERAL PAXTON'S RESPONSE TO
PLAINTIFFS' MOTIONS FOR ATTORNEY'S FEES AND COSTS**

Plaintiffs in these consolidated cases—Bahia Amawi, represented by the CAIR Legal Defense Fund, and John Pluecker, Obinna Dennar, Zachary Adbelhadi, and George Hale, represented by the ACLU Foundation of Texas, Inc. ("Pluecker Plaintiffs")—seek an eye-catching award of attorney's fees and costs collectively totaling $845,830.66 for the work of the twelve attorneys and one paralegal who handled these matters. They seek this exorbitant amount in cases that involved no discovery, no final trial on the merits, and only one contested hearing.

Plaintiffs were not prevailing parties. They never obtained a final judgment in their favor, and the preliminary relief they won was stayed, and ultimately vacated, by the Fifth Circuit. As a general rule, a plaintiff who does not win a final judgment cannot claim prevailing party status. The Fifth Circuit has recognized a narrow exception, but this case is not one of those rare instances. Plaintiffs' motions should therefore be denied altogether.

In the alternative, the Court should significantly reduce any fees awarded because: (1) Amawi wrongly applies a lodestar multiplier to her calculation, (2) all Plaintiffs seek excessively high hourly rates, (3) all Plaintiffs seek recovery for non-compensable time, (4) all Plaintiffs seek their full rates for partially-compensable time, (5) the billing records that have been submitted are vague and block-billed,

1

and (6) the billing records reflect that Plaintiffs expended an excessive number of hours on multiple aspects of this case.

In May 2017, the Texas Legislature passed House Bill 89, which took effect on September 1, 2017. House Bill 89 prohibits the State of Texas from contracting with any company unless that company certifies that they will not boycott Israel during the term of the company's contract. TEX. GOV'T CODE § 2271.002. The term "company" originally included "sole proprietors." *See* Complaint, Doc. 1; *see also Pluecker et al. v. Paxton, et al.*, Case No. 1:18-cv-1100-RP, Doc. 1.

Plaintiffs are sole proprietors who sought contracts with governmental entities, and thus, were required to certify, in their capacities as sole proprietors, that they would not engage in the conduct that Chapter 2271 of the Texas Government Code proscribes.[1] On December 16, 2018, Plaintiff Bahia Amawi brought this suit against Attorney General Ken Paxton and the Pflugerville Independent School District, contending that House Bill 89 violates the First and Fourteenth Amendments. *See* Doc. 1. Two days later, Pluecker Plaintiffs filed suit raising virtually identical claims against Attorney General Paxton as well as two universities and two school districts. Plaintiffs then filed separate preliminary injunction motions to enjoin the enforcement of Chapter 2271. The Court consolidated the two cases, Doc. 22, and held a hearing on the motions for preliminary injunction on March 29, 2019. After the hearing, the Court granted Plaintiffs' motions for preliminary injunction on April 25, 2019. Doc. 82 at 56. Attorney General Paxton sought a stay of the Court's injunction, which the Court denied on May 8, 2020. *See* Docs. 83, 91.

Separately, the Texas Legislature had been at work for some time on an amendment to House Bill 89. On January 11, 2019, Representative Phil King introduced House Bill 793 in the House of

---

[1] House Bill 89 was previously codified at Chapter 2270 of the Texas Government Code. During the 2019 Legislative Session, it was re-designated at Chapter 2271, effective September 1, 2019. *See* Act of May 21, 2019, 86th Leg., R.S., ch. 467 (H.B. 4170), § 21.001(35), 2019 Tex. Sess. Law Serv. 908, 973.

Representatives, which expressly excluded sole proprietors from Chapter 2271's no-boycott requirement. Doc. 92 at 2. House Bill 793 passed unanimously in the House of Representatives on April 11, 2019, then passed the Senate by a supermajority on May 2, 2019, and was signed into law by Governor Abbott on May 7, 2019, upon which it took immediate effect. *Id.*

Attorney General Paxton and the state university defendants filed a motion to dismiss this case on mootness grounds the next day. *See id.* Defendants also sought a stay of the Court's injunction in the Fifth Circuit, which the Plaintiffs opposed. The Fifth Circuit granted the motion to stay the Court's injunction on May 28, 2019. Doc. 102. Plaintiffs later moved for a permanent injunction and declaratory judgment, Doc. 90, Doc. 110, Doc. 114, but the Court deferred ruling on any permanent relief in light of the Fifth Circuit's stay, Doc. 116. The Fifth Circuit ultimately issued a published opinion concluding that this action had become moot, and accordingly, vacating the preliminary injunction with instructions that the case be dismissed. *Amawi v. Paxton*, 956 F.3d 816, 822 (5th Cir. 2020).

Plaintiff Bahia Amawi, through her counsel, seeks $615,025 in fees and $5,319.06 in costs. Pluecker Plaintiffs, through their counsel, seek $224,266.50 in fees and $1,220.10 in costs.

**ARGUMENT**

I.   **Plaintiffs cannot claim prevailing party status.**

   A.   *Dearmore* **supplies the relevant framework.**

In order to be a "prevailing party" for fee-shifting purposes under Section 1988, a party must obtain a "material alteration of the legal relationship between the parties." *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (cleaned up). In the Fifth Circuit, when a plaintiff has only obtained interim relief, like a preliminary injunction, which is later vacated on mootness grounds, the plaintiff is considered the prevailing party only if three conditions are met. *See Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008); *see also Davis v. Abbott*, 781 F.3d 207, 217 (5th Cir. 2015) (applying the *Dearmore* test to a

request for attorney's fees when the plaintiffs had only obtained a preliminary injunction before their case was mooted). Specifically, the *Dearmore* test requires that:

> the plaintiff (1)…win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that *causes* the *defendant* to moot the action, which prevents the plaintiff from obtaining final relief on the merits.

*Dearmore*, 519 F.3d at 524 (emphasis added). The plaintiff "bears the burden of establishing entitlement to an award." *Davis*, 781 F.3d at 214.

Pluecker Plaintiffs concede that the *Dearmore* test governs. *See* Doc. 126 at 3–4. Amawi does not. Indeed, she does not even cite *Dearmore* in her motion for attorney's fees and costs. Because Amawi did not brief or even cite *Dearmore*, she has forfeited any arguments that she is the prevailing party under the *Dearmore* test, which is binding on the parties and this Court.. *Cf. Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 796 (5th Cir. 2013) (finding waiver because a party citing *Dearmore* "ha[d] not engaged with any of" its requirements).

Amawi instead relies on a Fifth Circuit case from 1980 for the proposition that "a determination of mootness neither precludes nor is precluded by an award of attorney's fees." Doc. 127 at 3 (quoting *Doe v. Marshall*, 622 F.2d 118, 120 (5th Cir. 1980)). The Fifth Circuit stated in *Marshall* that "preliminary relief may serve to make a plaintiff a 'prevailing party' under the statute; the lawsuit need not proceed to completion. All that is required is that the plaintiff obtain the primary relief sought." 622 F.2d at 120.

Amawi cannot be correct that *Marshall* applies here. If that were true, the Fifth Circuit would have had no occasion to spell out in the three-factor test that it did in the *Dearmore* case.[2] *Dearmore*

---

[2] Even taking Amawi on her own terms, she did not obtain the "primary relief" she sought. Of course, she did seek and win a preliminary injunction, but that injunction was thereafter stayed and ultimately vacated. She also sought permanent injunctive relief, which she never obtained, as well as a declaration that would have voided House Bill 89 with respect to all government contracts in Texas. Doc. 1 at 9–10. The Court's preliminary injunction that declared House Bill 89 facially unconstitutional was vacated, and thus, she did not ultimately succeed in obtaining relief voiding House Bill 89 with respect to all contracts in Texas. Any state contract with

therefore governs because it is the Fifth Circuit's most express, clear guidance on prevailing party status in the circumstances presented here, as Pluecker Plaintiffs appropriately recognize. Doc. 126 at 3–4. Amawi is incorrect about *Marshall*'s applicability for another reason. The Fifth Circuit later cited *Marshall* in a 2003 opinion on attorney's fees. *See Murphy v. Fort Worth Indep. Sch. Dist.*, 334 F.3d 470, 471 (5th Cir. 2003) (quoting *Marshall* for the proposition that "a determination of mootness neither precludes nor is precluded by an award of attorney's fees. The attorney's fees question turns instead on a wholly independent consideration: whether plaintiff is a 'prevailing party.'"). But as Judge Oldham noted in a recent concurrence, "the Supreme Court has now told us" that the Fifth Circuit's statements in *Murphy* and *Marshall* are wrong: instead, "Plaintiffs' prevailing-party status is wholly dependent on whether they walk out the courthouse doors with an enforceable judgment." *Thomas v. Reeves*, 961 F.3d 800, 827–29 (5th Cir. 2020) (en banc) (Oldham, J., concurring) (citing *Sole*, 551 U.S. at 78). "[A] vacatur takes away whatever benefits were held by the winning party in the district court." *Id.* at 828.

Thus, the governing framework in the Fifth Circuit is that a party who wins a preliminary injunction that has been vacated on mootness grounds must satisfy *Dearmore* to claim prevailing party status.[3] As explained below, Plaintiffs cannot do so, and thus, are not prevailing parties.

### B. Attorney General Paxton did not moot Plaintiffs' action.

Two of the three *Dearmore* factors are not at issue: Attorney General Paxton does not, and could not, dispute that Plaintiffs won a preliminary injunction "based upon an unambiguous indication of probable success on the merits" of their claims. *Dearmore*, 519 F.3d at 524. Plaintiffs' claim to

---

a company required to sign the no-boycott provision under House Bill 793 continues to have that provision in effect. She therefore could not claim prevailing party status even if the Court were to agree with her characterization of *Marshall* as stating the relevant legal standard.

[3] Defendants preserve the argument—in line with Judge Oldham's concurrence in *Reeves*—that preliminary relief is never sufficient to make a plaintiff a prevailing party. *Smyth ex rel. Smyth v. Rivero*, 282 F. 3d 268, 277 (4th Cir. 2002) (holding preliminary injunctive relief is "an unhelpful guide to the legal determination of whether a party has prevailed"); *see also Davis*, 781 F.3d at 217 n.10 (noting the split with the Fourth Circuit); *Dearmore*, 519 F. 3d at 526 n.4 (splitting with the Fourth Circuit).

prevailing party status stumbles at the third element. Specifically, Plaintiffs fail to establish (1) that the *defendant*, Attorney General Paxton, mooted the action, and (2) that the preliminary injunction *caused* the amendment that mooted the action.

First, Attorney General Paxton did not moot this action. To satisfy *Dearmore*, a preliminary injunction must have caused *the defendant* to take steps to moot the case. 519 F.3d at 524. But it was indisputably the Texas Legislature that mooted Plaintiffs' claims by passing House Bill 793. *See Amawi*, 956 F.3d at 822 ("In short, H.B. 793's enactment provided the plaintiffs the very relief their lawsuit sought, and even assuming that H.B. 89 is unconstitutional, the defendants can do nothing more to ameliorate their claimed injury.").

A wealth of courts have held that the actions of the Legislature cannot be attributed to the Executive branch. *See, e.g.*, *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 649 (D.C. Cir. 2011) (holding that Congress's action mooting the case could not be attributed to the FTC); *see also U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 n.3 (1994) (noting the "implicit conclusion that repeal of administrative regulations cannot fairly be attributed to the Executive Branch when it litigates in the name of the United States"); *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 591 & n.7 (4th Cir. 2016) (following "sister circuits" and "distinguish[ing] the actions of an executive entity from those of the legislature" in considering whether to vacate a district court's judgment on appeal); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1131–32 (10th Cir. 2010); *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 452 (1st Cir. 2009); *Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 879-80 (9th Cir. 2006); *Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman*, 237 F.3d 186, 194–95 (3rd Cir. 2001) (Alito, J.). Plaintiffs seek fees from the defendant, Attorney General Paxton, not the Texas Legislature. Because Attorney General Paxton did not moot this case, Plaintiffs cannot recover attorney's fees against him.

### C. The preliminary injunction did not cause House Bill 793 to pass.

Even if Attorney General Paxton is found to have been responsible for the passage of House Bill 793, which he should not be, the amendment was not *caused by* the Court's preliminary injunction. As an initial matter, a defendant may change its behavior without making the plaintiff a prevailing party. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001) ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur*…"). Thus, to satisfy *Dearmore*, a plaintiff must prove that the defendant's amendment would not have occurred without judicial intervention. *See Dearmore*, 519 F.3d at 525. Because House Bill 793's passage was not caused by the preliminary injunction, but was rather a voluntary change, plaintiffs cannot satisfy *Dearmore*.

The facts of *Dearmore* are instructive. There, the plaintiff won a preliminary injunction against the enforcement of a city law. *Dearmore*, 519 F.3d at 525–26. Immediately after the injunction was issued, the city told the plaintiff that it would be amending the law to address the court's concerns and moot the action. *Id.* The city did not produce any evidence that their amendment pre-dated the preliminary injunction, or that the amendment was already working its way through the legislative process when the injunction was issued. *Id.* The Fifth Circuit held that these facts satisfied the third prong of their test, reasoning that the city had no plans to alter its behavior absent court intervention. *Id.*

By contrast, Attorney General Paxton has introduced extensive evidence that House Bill 793 was well on its way to passage before the Court issued its injunction. House Bill 793 was introduced in the House of Representatives in January 2019, months before the preliminary injunction hearing in March. Doc. 92 at 2. It passed the House unanimously on April 11, nearly two weeks before the preliminary injunction was issued. *Id.* The content of House Bill 793 did not change after the preliminary injunction, nor have Plaintiffs offered any evidence that it would have failed in the Senate

absent judicial intervention, even though they bear the burden on this issue. The idea that the issuance of the preliminary injunction caused the bill's passage is especially implausible in light of the fact that it passed by overwhelming majorities. For all these reasons, the preliminary injunction did not cause the writing, introduction, or the passage of House Bill 793; rather, House Bill 793 was a voluntary change in the State's behavior that would have mooted the action with or without judicial intervention. Such a voluntary change in behavior does not satisfy the third prong of *Dearmore*. To the extent Plaintiffs argue that the *filing* of the lawsuits motivated the Legislature to pass House Bill 793—the only plausible contention they can raise in light of the timeline discussed above—the Supreme Court has flatly rejected the catalyst theory as grounds for recovery of fees. *See Buckhannon*, 532 U.S. at 605. For all of these reasons, Plaintiffs fail the *Dearmore* test. They are not prevailing parties and are not entitled to fees and costs under section 1988.

## II. Plaintiffs never obtained a ruling that required Attorney General Paxton to alter his behavior towards them.

There is another, independent reason that Plaintiffs cannot claim prevailing party status: they never obtained a judgment that changed Attorney General Paxton's behavior towards them. The Fifth Circuit has explained that every plaintiff must prove the following elements to obtain fees:

> (1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered.

*Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013). The relief that the Court entered did not alter the legal relationship between any Plaintiff and Attorney General Paxton, nor modify Attorney General Paxton's behavior in a way that directly benefited any Plaintiff.

"A declaratory judgment . . . . will constitute relief, for purposes of § 1988, if, and only if, it affects the behavior of the *defendant* toward the plaintiff." *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (per curiam) (emphasis added). In *Rhodes*, two prisoners challenged the denial of their requests to subscribe

to a magazine. *Id.* at 2. The district court agreed and granted declaratory relief against the prison. *Id.* at 2–3. But before the court's relief issued, one prisoner died, and the other was paroled. *Id.* at 3. Despite this fact, the district court awarded attorney's fees, and the Sixth Circuit affirmed. The Supreme Court summarily reversed. Because the plaintiffs were no longer subject to prison rules, "[a] modification of prison policies on magazine subscriptions could not in any way have benefited" them. *Id.* at 4. The declaratory judgment therefore "afforded the plaintiffs no relief whatsoever," meaning they were not prevailing parties. *Id.*

Plaintiffs seek attorney's fees exclusively from Attorney General Paxton. But the contracts or proposed contracts at issue did not involve the Attorney General. And Plaintiffs advanced no argument that the Attorney General demonstrated any intent to enforce House Bill 89 with respect to those contracts or any other contract any Plaintiff was considering to sign. *Cf. City of Austin v. Paxton*, 943 F.3d 993, 1001–02 (5th Cir. 2019) (even when a government official "*has* the authority to enforce" a challenged statute, a plaintiff still must show the official "is likely to do [so] here."). Accordingly, Plaintiffs cannot claim prevailing party status.

## III.     Plaintiffs may only recover *reasonable and necessary* fees.

Even if the Court disagrees with the arguments above and finds that Plaintiffs are prevailing parties, Plaintiffs must still prove that their requests are reasonable and that the fees were necessary to achieve the results obtained. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Fifth Circuit follows a two-step process in making this determination. First, the court calculates the "lodestar" amount by "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 192 (5th Cir. 1999). Second, the Court considers whether the lodestar should be adjusted upward or downward, depending on the circumstances of the case, and the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

The party seeking an award of attorney's fees under the lodestar method bears the burden of justifying any fee award. *See Saizan v. Delta Concrete Prods. Co., Inc.,* 448 F.3d 795, 799 (5th Cir. 2006). And because any fee award here will ultimately be paid by the State's taxpayers, this Court must exercise particular caution. As one court has explained:

> When claims for attorney's fees are brought against the government, courts should exercise special caution in scrutinizing the fee petition. This is because of the incentive which the [agency's] deep pocket offers to attorneys to inflate their billing charges and to claim far more as reimbursement [than] would be sought or could reasonably be recovered from most private parties.

*Harvey v. Mohammed*, 951 F. Supp. 2d 47, 54–55 (D.D.C. 2013) (citation omitted); *see Ctr. for Biological Diversity v. Norton*, No. 04-0156 (JDB), 2005 WL 6127286, at *1 (D.D.C. Jan. 26, 2005) ("Courts must review fee applications carefully to ensure that taxpayers only reimburse prevailing parties for reasonable fees and expenses that contributed to the results achieved . . . .").

## A. Amawi is not entitled to a lodestar multiplier.

Amawi seeks a 2.5 lodestar multiplier. Doc 127 at 11. As indicated above, the lodestar adjustment is determined by applying the 12 *Johnson* factors to the case. These factors are: (1) time and labor required; (2) novelty and complication of the issues; (3) skill required; (4) whether the attorney had to refuse other work to litigate the case; (5) attorney's customary fee; (6) whether fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) attorney's experience, reputation, and ability; (10) whether the case was "undesirable;" (11) the nature and length of relationship with the clients; and (12) awards in similar cases. *Id.* at 717–19. However, "[m]any of these [*Johnson*] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate…and should not be double-counted." *Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998). This makes enhancing a lodestar award a "rare" and "exceptional" circumstance, as there is a strong

presumption that the lodestar amount is already the reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 548, 554 (2010).

Amawi has not shown that a standard lodestar calculation would neglect any of the *Johnson* factors or otherwise be insufficient, and therefore she is not entitled to an enhancement. Indeed, Amawi makes no showing at all that a multiplier is appropriate except to go through the *Johnson* factors and then state that a "a 2.5x multiplier is appropriate in this case." Doc. 127 at 11. If anything, the *Johnson* factors counsel *against* a multiplier and in favor of a reduction, as explained in more depth below.

In particular, the "results obtained" factor counsels strongly against an upward multiplier because the ultimate result that Amawi obtained was vacated on appeal, and she was unsuccessful in her efforts to convince the Fifth Circuit not to vacate the injunction on mootness grounds. And the other *Johnson* factors do not favor an upward multiplier. This was not an unpopular, difficult or novel case. Indeed, Plaintiffs acknowledge that several other courts dealt with the same issues as this one. Two district courts enjoined similar laws before either of these cases were even filed. *See Jordahl v. Brnovich*, 336 F. Supp. 3d 1016 (D. Ariz. 2018); *Koontz v. Watson*, 283 F. Supp. 3d 1007 (D. Kan. 2018). And courts in this district frequently hear constitutional challenges to state laws, *e.g.*, *infra* at 15. Plaintiffs have not shown that this matter is more novel or complex than any of those other matters. Amawi has not come close to meeting her burden of a multiplier and that request should thus be denied.[4]

### B. Plaintiff's requested hourly rates are excessive and should be reduced.

As the fee applicants, Plaintiffs bear the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable

---

[4] Attorney General Paxton also disagrees that this case was undesirable, *contra* Doc. 127 at 11. Numerous amici filed briefs in support of Plaintiffs in the Fifth Circuit, demonstrating that this is not a case that would have been undesirable to private attorneys because it is controversial or unpopular.

skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Here, Plaintiffs fail to carry their burden of establishing the reasonableness of their proposed hourly rates for their counsel.

### 1. Amawi's proposed rates are unreasonable and excessive.

In her motion and supporting declarations, Amawi cites the Washington D.C. USAO *Laffey* matrix to calculate the proposed hourly rates for her attorneys. *See* Docs. 127-1-127.6. The burden is on the plaintiff as the fee applicant to produce satisfactory evidence that her requested rates are in line with those prevailing in the community. *McClain v. Lufkin Industries, Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum*, 465 U.S. at 896 n.11). The Court should refrain from using the USAO matrix because Amawi has not shown that she is entitled to hourly rates in the District of Columbia and because Amawi has not shown that the rates are in line with hourly rates in Austin—the relevant legal community.

Section 1988 fees are to be calculated according to prevailing market rates in the relevant community. *Blum*, 465 U.S. at 895. In general, the "relevant community" for purposes of determining prevailing market rates is the district in which the case was filed. *See McClain*, 649 F.3d at 381. When it is necessary, however, for plaintiffs to retain an attorney from outside the district to ensure that their interests are adequately represented, the attorney's "home" jurisdiction is the relevant community. *Id.* at 382 ("[W]here out-of-district counsel are proven to be necessary to secure adequate representation for a civil-rights plaintiff, the rates charged by that firm are the starting point for the lodestar calculation."). This case was filed in the Western District of Texas, and Amawi has not provided any evidence that hiring out-of-district counsel was necessary to protect her interests. The Pluecker Plaintiffs were represented by very competent Texas counsel, and presumably, Amawi could have found similarly qualified counsel in Texas to represent her. Accordingly, the "relevant community" for calculating a reasonable hourly rate is the Western District of Texas.

The *Laffey* matrix provides average market rates for attorneys in the D.C. metropolitan area.[5] In calculating the *Laffey* matrix, the Department of Justice (DOJ) does not consider hourly rates of attorneys from the Western District of Texas, and it does not provide reasonable hourly rates for markets other than D.C. In fact, although the matrix is maintained by the DOJ, even the DOJ has not adopted it for use in other markets.[6] Because the *Laffey* matrix does not take average rates from the relevant legal community into account, it cannot provide a reasonable hourly rate for the work done in this case.[7]

As the fee applicant, Amawi bears the burden of producing satisfactory evidence that her requested rates are aligned with prevailing market rates in the Western District of Texas. *See United States v. Cmty. Health Sys., Inc.*, 2015 WL 3386153, at *8 (S.D. Tex. May 4, 2015), aff'd sub nom. *U.S., ex rel., Cook-Reska v. Cmty. Health Sys., Inc.*, 641 F. App'x 396 (5th Cir. 2016). Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. *Blum,* 465 U.S. at 896 n.11. Mere testimony that a given fee is reasonable is not sufficient. *See Hensley*, 461 U.S. at 439 n.15.

Amawi requests hourly rates of $450 to $550. Doc 127 at 7. The declarations provided to support those proposed rates under the *Laffey* matrix do not provide sufficient evidence that such rates are reasonable. Instead, the declarations are merely conclusory in stating that hourly rates in the Western District of Texas are in line with those provided by the matrix. *See, e.g.,* Doc 127-1 at 3 (Sadowsky Declaration); Doc 127-2 at 3 (Masri Declaration). The declarations also fail to cite any case from the Western District of Texas in which a similar hourly rate was awarded in a similar lawsuit.

---

[5] *See* USAO Matrix 2015-2019, *available at* https://www.justice.gov/usao-dc/file/796471/download (last accessed July 30, 2020).

[6] *Id.* at n.1.

[7] Even if the Court were to apply the *Laffey* matrix, Amawi's proposed rates would still be excessive. Multiple attorneys seek to recover at rates beyond what the matrix provides as reasonable. *See, e.g.,* Doc 127-1 at 3 (Sadowsky Declaration) (*Laffey* rate: $483-$510; proposed rate: $550).

The only lawsuit Amawi mentions in support of the proposed rates took place in D.C., and the court assigned an hourly rate 14% lower than what Amawi proposes here. Doc 127-6 at 3. Finally, Amawi has only produced declarations from her own attorneys, who are all seeking to recover fees from this action. Because Amawi has only provided conclusory testimony from interested parties, she has not established that their proposed rates are reasonable for the Western District of Texas. *See Blum,* 465 U.S. at 896 n.11 (requiring evidence "in addition to the attorney's own affidavits").

A reasonable hourly rate for Plaintiffs' attorneys should utilize the hourly rates in the State Bar's Hourly Fact Sheet as an initial reference. *See, e.g., Alvarez v. McCarthy*, 2020 WL 1677715, at *6 (W.D. Tex. April 6, 2020) ("The Court will use the State Bar Fact Sheet to gauge the reasonableness of Plaintiff's rates."); *Halprin v. Fed. Deposit Ins. Corp.*, 2020 WL 411045, at *7 (W.D. Tex. Jan. 24, 2020) (taking judicial notice of State Bar's 2015 hourly rate fact sheet and using it to calculate a reasonable hourly rate). In 2015, the median hourly rate for all attorneys in Austin-Round Rock was $300.[8] The median hourly rate in Austin-Round Rock was $340 for appellate attorneys, $200 for personal litigation attorneys, and $300 for labor & employment attorneys.[9] Because Amawi's proposed hourly rates far exceed local medians on the State's Fact Sheet, the Court should reduce her award.

### 2. Pluecker Plaintiffs' hourly rates are also excessive and should be reduced.

Pluecker Plaintiffs similarly request hourly rates from $450 to $650 for their attorneys and $150 for their paralegal. Doc 126-2 at 12. Like Amawi, Pluecker Plaintiffs' declarations do not justify such a high hourly rate. Their declarations are conclusory in stating that the proposed rates are reasonable. *See, e.g.,* Doc 126-2 (Saldivar Declaration). They do not provide any evidence that similar work commands similar hourly fees from paying clients, nor do they cite any examples of courts

---

[8] *Hourly Fact Sheet*, STATE BAR OF TEXAS, at 8; https://www.texasbar.com/AM/Template.cfm?Section=Archives&Template=/CM/ContentDisplay.cfm&ContentID=34182 (last accessed August 7, 2020).
[9] *Id.* at 9, 12.

awarding that range of fees in similar cases. *See, e.g.*, Doc 126-3 (Dubose Declaration) (claiming that Austin attorneys typically charge certain rates without providing any evidence or specific billing examples). Finally, like Amawi, Pluecker Plaintiffs have only provided declarations from their own attorneys, all of whom are seeking to recover from this action. Accordingly, Pluecker Plaintiffs have failed to justify their proposed hourly rates.

\* \* \*

Bearing in mind that a reasonable rate must "be adequate to attract competent counsel," yet should not be what "lions at the bar may command," *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990), Defendant proposes an hourly rate of **$375** for all attorneys[10] and **$100** for Pluecker Plaintiffs' paralegal. This is a reasonable figure that reflects awards that this very Court has awarded in other civil rights litigation.

To give two recent examples, this Court approved rates of $250, $300, and $400 (based on the attorneys' varying degrees of experience) in a challenge to a provision of the Texas Election Code. *See OCA Greater Houston v. Texas*, No. 1:15-cv-679-RP (W.D. Tex.), Doc. 73 at 6. In another matter, Judge Yeakel awarded a $400 hourly rate to all attorneys in the *Whole Woman's Health* litigation. *See Whole Woman's Health v. Hellerstedt*, No. 1:14-cv-284-LY (W.D. Tex.), Doc. 297 at 28; *see also Am. Academy of Implant Dentistry v. Parker*, No. 1:14-cv-191-SS (W.D. Tex.), Doc. 109 at 7 (awarding hourly rates of $400, $350, and $275); *Davis v. Perry*, 2014 WL 172119, at \*2 ("District courts in Texas have held that paralegal hourly rates between $60 and $200 are reasonable."). Accordingly, a rate of $375 an hour for attorneys and $100 an hour for paralegals is reasonable considering the skill of Plaintiffs' attorneys, the results obtained, and the novelty of the legal issues presented.

---

[10] Given that all of the attorneys in this case are experienced counsel, awarding different rates for the different attorneys who appeared in this case is unnecessary. *Cf. Whole Women's Health*, *supra* (finding an hourly rate of $400 reasonable for all attorneys who appeared in the case).

### C. Plaintiffs did not expend a reasonable number of hours on this case.

"The starting point for determining a lodestar fee award is the number of hours "'reasonably expended on the litigation.'" *Hensley,* 461 U.S. at 433. A court is not only required to determine whether the total hours claimed are reasonable, but also whether particular hours claimed were "reasonably expended." *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 325 (5th Cir. 1995). In order to obtain attorney's fees from Attorney General Paxton, Plaintiffs' counsel must meet their burden of justifying their fee award and proving that they exercised billing judgment. *See Saizan,* 448 F.3d at 799; *see also Hensley,* 461 U.S. at 434, 437 ("'[B]illing judgment'" is to be exercised "with respect to hours worked," consistent with the requirement that "'[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.'"). Because Plaintiffs have failed to exercise billing judgment, the Court should reduce their award accordingly, as discussed *infra*.

### 1. Plaintiffs cannot recover for clerical work.

The Court must review the fee requests and not award fees for "purely clerical or secretarial tasks" regardless of who performs them. *Role Models Am., Inc. v. Brownlee,* 353 F.3d 962, 973 (D.C. Cir. 2004) (citing *Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10 (1989)) (denying fees for time spent by associate and legal assistant for filing briefs). A task is purely clerical when it does not involve *substantive* legal work. *Multi-Moto Corp. v. ITT Commercial Finance Corp,* 806 S.W.2d 560, 570 (Tex. App.—Dallas 1990, writ denied).

Amawi's billing records charge roughly 48 hours for tasks such as filing documents and reviewing case notifications.[11] These are non-substantive clerical tasks and plaintiffs cannot recover for time spent on them. *See Martinez v. Refinery Terminal Fire Co.,* 2016 WL 4594945, at *6 (S.D. Tex.

---

[11] Defendant has attached a chart listing all of Amawi's time entries followed by the State's objections, if any, to those entries. *See* <u>Exhibit A</u>. Likewise, Defendant objected to Pluecker Plaintiffs' time entries in <u>Exhibit B</u>. The objections in those charts supplement the objections stated herein.

Sept. 2, 2016) ("Examples of clerical tasks include calendaring, printing, filing, obtaining information about court procedures, and delivering pleadings.").

### 2. Plaintiffs cannot recover for business development.

Pluecker Plaintiffs incurred at least 5.7 hours and Amawi incurred 2.6 hours in business development. These fees consisted of tasks such as contacting and recruiting potential clients. These types of tasks are appropriately termed business development and are not compensable as they were not reasonable and necessary for the prosecution of the suit. The Texas Disciplinary Rules demand that a legal fee be charged only for legal services. The San Antonio Court of Appeals has indicated that legal services are services performed or rendered *on behalf of a client. Lee v. Daniels & Daniels*, 264 S.W.3d 273, 281 (Tex. App.—San Antonio 2008, pet. denied). Because business development fees are not services performed or rendered on behalf of a client, they are not considered legal services and as such are not compensable.

### 3. Plaintiffs cannot recover their full hourly rates for travel time.

Amawi seek to recover for approximately 59.5 hours spent traveling.[12] Time spent for travel should not be billed at the same hourly rate sought for active legal work and should be reduced by fifty percent. *See Hopwood v. State of Tex.,* 999 F. Supp. 872, 914 (W.D. Tex. 1998) *aff'd in part, rev'd in part sub nom. Hopwood v. State of Texas*, 236 F.3d 256 (5th Cir. 2000) (reducing fees for travel time by fifty percent); *Bd. of Supervisors of La. State Univ. v. Smack Apparel*, 2009 WL 927996, at *6 (E.D. La. Apr. 2, 2009) ("[T]ravel time ... in the Fifth Circuit is usually compensated at 50% of actual time."). Plaintiffs, however, have billed for travel at their full hourly rate. With respect to those 59.5 hours,

---

[12] Many of the entries that list "travel" are block-billed, and therefore, it is difficult to determine how much time counsel spent on travel compared with the other work described. This response has not attempted to divvy out the time between travel and non-travel. As the fee applicant, Amawi has the burden of showing the reasonableness of the time spent and the division of time between fully compensable and partially compensable tasks.

they should only be compensated at a rate of 50%, which here would be half of the $375 rate that Attorney General Paxton proposed above, or $187.50.

### 4. Plaintiffs cannot recover at their full rate for preparing fees motions.

Plaintiffs collectively seek to recover for approximately 100 hours of work preparing their motions for fees. As an initial matter, a court can, in its discretion, decide that fees on fees are not warranted. *See Schneider v. Cty. of San Diego*, 32 F. App'x 877, 880 (9th Cir. 2002). Moreover, "[f]ee applications do not typically involve novel or complex legal issues and the fees claimed for preparing them will be reduced if excessive." *Prater v. Commerce Equities Mgmt. Co., Inc.*, 2008 WL 5140045, at *7 (S.D. Tex. Dec. 8, 2008); *see, e.g., Lewallen v. City of Beaumont*, 2009 WL 2175637, at *9 (E.D. Tex. July 20, 2009) (finding that 81.55 hours for the fee application was excessive and reducing the bill for such work to 20 hours).

The Fifth Circuit has held that an attorney should not request his normal billing rate preparing a motion for fees. *See, e.g., Leroy*, 906 F.2d at 1079 ("Certainly, the base rate for time spent on computing and enforcing attorney's fees should be less than that allowed for professional services rendered primarily on the merits."). Accordingly, the Court should reduce the hourly rates for the roughly 100 hours that Plaintiffs have spent preparing their attorney's fees motion by 20% of what Attorney General Paxton has proposed is a reasonable rate.

### 5. Plaintiffs' award should be reduced for vague and block-billed entries.

In support of their fee request, Plaintiffs' counsel must detail the work performed with enough specificity to allow a court to determine the reasonableness of the hours claimed. *See Hensley*, 461 U.S. at 433; *Ragan v. Comm'r*, 135 F.3d 329, 335 (5th Cir. 1998) (counsel seeking fee award cannot merely submit a broad summary of work performed and the hours logged, but rather must present "adequate evidence of the hours spent on the case and that those hours were reasonably expended."). Courts may reduce or eliminate hours that are "vague or incomplete," *see League of United Latin American*

*Citizens v. Roscoe Indep. Sch. Dist.,* 119 F.3d 1228, 1233 (5th Cir. 1997), or contain block-billing. *Edmond v. Oxlite Inc.,* 2005 WL 2458235, at *4 (W.D. La. Oct. 5, 2005). "Litigants take their chances when submitting [vague] fee applications, as they provide little information from which to determine the 'reasonableness' of the hours expended on tasks vaguely referred to as 'pleadings,' 'documents,' or 'correspondence' without stating what was done with greater precision." *La. Power*, 50 F.3d at 327; *Leroy*, 906 F.2d at 1080 (eliminating hours where the task descriptions are "not illuminating as to the subject matter" or are "vague as to precisely what was done").

Similarly, a fee award cannot extend to "block-billed" time entries where attorneys group several different tasks into one time entry "because it prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended." *See Fabela v. City of Farmers Branch, Tex.*, 2013 WL 2655071, at *7 n.14 (N.D. Tex. June 13, 2013). Block billing is disfavored because the required reasonableness determination is difficult to make when the court cannot accurately determine the amount of time spent on any particular task. *Martinez v. Refinery Terminal Fire Co.*, 2016 WL 4594945, at *5 (S.D. Tex. Sept. 2, 2016).

Recognizing that some law firms bill clients on a daily basis by block-billing, a reduction in fees claimed rather than excluding all of the time may be appropriate. *See Edmond*, 2005 WL 2458235, at *4; *see Hensley,* 461 U.S. at 433 (district court may reduce award where documentation of hours is inadequate); *see, e.g., Johnson–Richardson v. Tangipahoa Parish School Bd.*, 2013 WL 5671165, at *4 (E.D. La. Oct. 15, 2013) (30% reduction for block billing, citing *Verizon Business Global LLC v. Hagan*, 2010 WL 5056021, at *5 (E.D. La. Oct. 22, 2010) (citing cases showing that reductions for block billing between 15% and 35% have been found reasonable), *vacated on other grounds*, 467 F. App'x 312 (5th Cir. 2012).

Plaintiffs' billing records contain many vague and block-billed entries, making a determination of reasonableness difficult. The following instances of vague or block-billed entries are representative

of the issues that merit an **overall reduction of 10%** from Plaintiffs' awards, *see, e.g., Sun Trust Mortgage, Inc. v. AIG United Guar. Corp.*, 2013 WL 870093, at *14 (E.D. Va. Mar. 7, 2013) (20% reduction "for block billing and for the inconsistent time descriptions")

- 10/31/18; Saldivar; 3.1 hours; "Correspondence with clients re facts and declarations in preparation of complaint and motion for preliminary injunction. Draft, review and revise complaint."
- 12/19/2018; Saldivar; 6.2 hours; "Review and edit draft Motion for Preliminary Injunction; conference call with legal team to discuss timing of filing of motion for permanent injunction; review and assess legal strategy.
- 11/12/2018; Dubose; 1.2 hours; "Begin review and revision of draft of Complaint; exchange e-mails with E. Saldivar about timing of edits and arranging conference call."
- 12/21/18; Homer; 9.3 hours; "Revise, finalize and file preliminary injunction papers; initiate waiver and scheduling communications with counsel."
- 3/29/19; Homer; 15.6 hours; "Present evidence at preliminary injunction hearing; travel back to Washington, D.C."

*See also* Ex. A, Ex. B (listing other instances of block-billing or vague entries). For these reasons, Attorney General Paxton requests an overall reduction in the fee award by 10% because of Plaintiffs' vague and block-billed entries.

### 6. Plaintiffs' fees should be reduced for excessive billing.

Although the district court is not required to "achieve auditing perfection," or act as a "green-eyeshade accountant," *DeLeon v. Abbott*, 687 F. App'x 340, 343 (5th Cir. 2017) (citation omitted), '[t]he district court's task is not only to ensure that 'the total hours claimed are reasonable,' but also that the 'particular hours claimed were reasonably expended." *Id.* at 345–46 (Elrod, J., concurring in part and dissenting in part). Plaintiffs expended unreasonable hours in the following ways:

- Counsel for Amawi expended approximately 52 hours in drafting the complaint, and then spent around 34 hours drafting the motion for preliminary injunction. There was significant overlap between those two filings, *compare* Doc. 1 (Complaint), with Doc. 8-2 (memorandum in support of preliminary injunction) and much of the work, including background research, that went into the complaint could have gone into the preliminary injunction motion.
- Counsel for Amawi spent roughly 44 hours responding to Attorney General Paxton's motion to dismiss. The issues involved in the motion to dismiss and the preliminary injunction were virtually identical, as the Court acknowledged

in its order granting the injunction and denying the motion to dismiss. *See* Doc. 82 at 49.

- Counsel for Amawi, Lena Masri, spent 15.5 hours traveling to and attending the preliminary injunction hearing, despite the fact that she did not present argument or witnesses and Amawi was already represented by Gadeir Abbas and Carolyn Homer at the hearing. Because Ms. Masri was a passive observer, this time should not be compensated. *See, e.g.*, *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982) (courts should exclude hours from the fee award for time "spent in the passive role of an observer while other attorneys performed.").

- Counsel for Amawi billed approximately 5 hours to work related to her claims against Pflugerville Independent School District. That work did not involve Attorney General Paxton and is therefore non-compensable.

- Six different attorneys for Pluecker Plaintiffs spent upwards of 210 hours on their complaint and preliminary injunction motion (it is hard to determine how much time was spent on which specific task, given the block-billing issues discussed above and noted in Defendant's objections). That is excessive and duplicative, especially given the detailed nature of the complaint. Much of the work on one could have and should have carried over to the other.

- Counsel for Pluecker Plaintiffs spent roughly 54 hours responding to Attorney General Paxton's motion to dismiss, which again, should have involved issues that counsel already researched in multiple other filings, including their reply in support of the preliminary injunction motion.

In line with precedent reducing fee awards for excessive billing, Defendant **proposes a 15% overall reduction** from Plaintiffs' award.[13] *See, e.g.*, *Trimper v. City of Norfolk*, 58 F.3d 68, 76–77 (4th Cir. 1995) ("reducing allowable hours because of overstaffing . . . falls soundly within the district court's proper discretion."); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179–80 (4th Cir. 1994) (reducing fees by 30% due to "excessive nature and unreasonable redundancy of plaintiff's work"); *Ellis v. Varney*, 2005 WL 1009634, at *5–6 (Mass. Super. Ct. Mar. 22, 2005) (reducing attorney's fees for spending excessive time on tasks, such as spending "in excess of 46 hours, and possibly as much as 69 hours" on "preparation of motions for summary judgment and for a preliminary injunction, 24

---

[13] Although Pluecker Plaintiffs indicated that they exercised billing judgment, the fact that they still claim the hours discussed above indicates excessive billing practices for which a 15% reduction would be appropriate. Moreover, Plaintiffs did not provide evidence of which specific hours they deducted in using reasonable billing judgment, and thus, neither the Court nor Defendant can review to assess whether reasonable billing judgment was actually used.

hours spent in preparation for argument on those motions, and 7.5 hours spent by counsel on the day of the argument itself.").

**D. Amawi's fees should be reduced for work that was not successful.**

Pluecker Plaintiffs do not seek to recover for fees associated with litigating the appeal of this matter, but Amawi does, asking for an award of 91.5 hours for that work. Doc. 127-1 at 13. She also asks for 10.9 hours in fees for preparing the motions for declaratory judgment and permanent injunction. But one of the *Johnson* factors is the "results obtained," and Amawi was wholly unsuccessful in the appeal of this case. *See Hensley*, 461 U.S. at 435–36 (cautioning that awarding the full lodestar to a plaintiff who achieves "only partial or limited success" may result in excessive fees, even where the plaintiff's successful and unsuccessful claims are "interrelated, nonfrivolous, and raised in good faith"); *id.* at 440 (noting that, even if a plaintiff obtained "significant relief," a "reduced fee award is appropriate if the relief . . . is limited in comparison to the scope of the litigation as a whole").

Amawi argued vigorously that House Bill 793 did not moot the case or warrant vacatur of the Court's injunction. She even tried to obtain a permanent injunction in this Court while this matter was on appeal and asked the Fifth Circuit to abate the proceedings to allow the Court to enter the requested permanent injunctive relief. That gambit failed. The Fifth Circuit declined to stay the appellate proceedings, this Court refused to issue permanent injunctive relief, and ultimately, the Fifth Circuit rejected Amawi's arguments on appeal. For these reasons, Amawi should not collect any of the fees she is claiming for the work on appeal or on the permanent injunction motion. At an absolute minimum, at least 80% of those hours should be reduced in light of the results that followed.

* * *

The following summarizes the total amounts that the Court should reduce from Plaintiffs' award of attorney's fees:

**AMAWI**

➢ **Total hours for which fees are sought:** 499.5 hours

➢ **Reduction of 25% (10% for block billing, 15% for excessive fees):** 374.63 hours

➢ **Reduction of 102.4 hours for work on appeal and permanent injunction:** 272.23 hours

➢ **Reduction of 48 hours for clerical work:** 224.23

➢ **Reduction of 2.6 hours for business development:** 221.63 hours

➢ Calculate 59.5 travel hours at 50% of State's proposed rate

➢ Calculate 43.4 hours on motion for attorney's fees at 80% of State's proposed rate

- **118.73 hours** at full rate x $375 (State's proposed rate) = $44,523.75

- **59.5 travel hours** x $187.5 (50% of State's proposed rate) = $11,156.25

- **43.4 hours on motion for attorney's fees** x $300 (80% of State's proposed rate) = $13,020

  <u>**Total award: $68,700**</u>

* * *

**PLUECKER PLAINTIFFS**

➢ **Total hours for which fees are sought for attorney work:** 434.88 hours

➢ **Reduction of 25% (10% for block billing, 15% for excessive fees):** 326.16 hours

➢ **Reduction of 5.7 hours for business development:** 320.46

➢ Calculate 55.6 hours on motion for attorney's fees at 80% of State's proposed rate

- **264.86 hours at full rate** x $375 (State's proposed rate) = $99,322.50

- **55.6 hours on motion for attorney's fees** x $300 (80% of State's proposed rate) = $16,680

- **21.15 hours for Christopher Clay (paralegal)** x $100 = $2,115

  <u>**Total award: $118,117.50**</u>

**IV.    Plaintiffs have not substantiated, and thus should not recover, their costs.**

In addition to seeking attorney's fees, Plaintiffs also seek taxable and non-taxable costs. As an initial matter, however, neither Amawi nor Pluecker Plaintiffs have properly sought taxable costs through a Bill of Costs as required in this district. *See* Local Rule CV-54. They have combined their taxable and non-taxable costs, which is not appropriate. Accordingly, because they did not follow the proper procedure for seeking taxable costs, those costs are waived and should not be recovered. *See, e.g., Vanderbilt Mortg. & Fin., Inc. v. Flores*, 2011 WL 2160928, at *7 (S.D. Tex. May 27, 2011) ("Rule 54(d) contains two separate provisions for costs. To request taxable costs, the prevailing party must file a bill of costs with the clerk. Taxable costs are taxed by the clerk rather than the court. The categories of taxable costs are circumscribed by 28 U.S.C. Section 1920. By contrast, nontaxable costs are recoverable on a motion to the court under Rule 54(d)(2) along with attorney's fees.") (cleaned up, citations omitted)).

In addition, Plaintiffs did not submit any documentation substantiating their taxable or nontaxable costs. Plaintiffs bear the burden to prove the reasonableness of "each dollar, each hour, above zero" in their fee request. *Mars v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986). Plaintiffs cannot recover expenses where counsel failed to attach receipts. *See, e.g., Portillo v. Cunningham*, 872 F.3d 728, 742 (5th Cir. 2017) (rejecting a fee application supported only by an attorney's affidavit that asserted entitlement to a particular sum in conclusory fashion); *e.g., Thabico Co. v. Kiewit Offshore Services, Ltd.*, No. 2:16-CV-427, 2017 WL 4270743, at *4 (S.D. Tex. Sept. 26, 2017) (declining to reimburse Westlaw charges where no bill or receipt was attached).

Amawi claims nearly $5,319.06 in costs, including approximately $3,000 in airline travel fees, $459 in hotel costs, and $721.11 in incidental travel (including several hundred dollars in "per diem" fees, Doc. 127-2 at 7, dated well after the preliminary injunction hearing, without any explanation).

No receipts are attached for any of these costs.[14] Likewise, Pluecker Plaintiffs request $1,220.10 in costs but do not substantiate those costs with receipts. Because Plaintiffs have not provided any supportive documentation to justify their costs, the Court cannot ascertain whether the costs are reasonable and necessary for the results achieved in this lawsuit. *See Hensley*, 461 U.S. at 433. Should Plaintiffs submit documentation in their reply, Defendants request to review this documentation and brief the Court on the reasonableness and necessity. Accordingly, the Court should not award Plaintiffs any of the costs they seek.

## CONCLUSION

Plaintiffs' motions for attorney's fees and costs should be denied. Alternatively, any award they receive should be reduced substantially, as indicated above.

---

[14] Amawi and Pluecker Plaintiffs also seek to recover *pro hac vice* and Fifth Circuit admission fees, but time dedicated to motions for admission *pro hac vice* "are an expense that an attorney pays for the privilege of practicing law in a district and should not be taxed to a plaintiff simply because a defendant chooses to be represented by counsel not admitted to practice in the district." *Lofton v. McNeil Consumer & Specialty Pharm.*, 2011 WL 206165, at *1 (N.D. Tex. Jan. 4, 2011), report and recommendation adopted, 2011 WL 208391 (N.D. Tex. Jan. 21, 2011) (agreeing with the courts that have concluded that *pro hac vice* fees are not recoverable). Indeed, this Court has rejected the argument that *pro hac vice* fees are recoverable. *See OCA-Greater Houston*, *supra*, at 7 n.6.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/   Michael R. Abrams*
MICHAEL R. ABRAMS
Texas Bar No. 24087072
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512-463-2120
Fax: 512-320-0667
Michael.Abrams@oag.texas.gov

***Counsel for Attorney General Paxton***

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served upon Plaintiffs' counsel of record through the Court's electronic filing system on August 10, 2020.

/s/ *Michael R. Abrams*
MICHAEL R. ABRAMS