IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION


| | | |
|---|---|---|
| Amawi, et al. | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No.: 1:18-CV-1091-RP |
| | § | |
| Pflugerville I.S.D., et al. | § | |
| *Defendants.* | § | |


### ***PLUECKER* PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES PURUSANT TO 42 U.S.C. § 198**

# TABLE OF CONTENTS

I. The *Pluecker* Plaintiffs are prevailing parties, entitled to fees and costs. .............................. 1

   A. *Dearmore's* three-part test is inapplicable. ........................................................................... 1

   B. Regardless, Plaintiffs meet *Dearmore's* three factors. ......................................................... 1

   C. Plaintiffs are prevailing parties under *Petteway* ................................................................ 4

II. Plaintiffs' Requested Fees and Costs Are Reasonable ................................................................ 7

   A. *Pluecker* Plaintiffs' requested hourly rates are reasonable. ................................................. 7

   B. *Pluecker* Plaintiffs expended a reasonable number of hours. ........................................... 10

      1. The State's Objections to Clerical Work.................................................................... 10

      2. The State Mischaracterizes Client-Related Work ....................................................... 11

      3. Plaintiffs Should Get Full Fees On Fees. ................................................................... 11

      4. Plaintiffs' Entries are Discernable............................................................................. 12

      5. Plaintiffs' Fees Should Not Be Reduced for Excessive Billing. ................................... 13

      6. Plaintiffs are Entitled to Out-of-Pocket Expenses........................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Academy of Implant Dentistry v. Parker*,
 No. 1:14-cv-191-SS (W.D. Tex. Jan. 11, 2018) ........................................................................ 9

*Am. Bar Ass'n v. FTC*,
 636 F.3d 641 (D.C. Cir. 2011) ................................................................................................. 2

*Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*,
 919 F.2d 374 (5th Cir. 1990) .................................................................................................. 15

*Black Heritage Soc. v. City of Houston*,
 CIVA H-07-0052, 2008 WL 2769790 (S.D. Tex. July 11, 2008) ............................................ 4

*Black v. SettlePou, P.C.*,
 732 F.3d 492 (5th Cir. 2013) .................................................................................................... 7

*Blum v. Stenson*,
 465 U.S. 886 (1984) ............................................................................................................. 7, 8

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
 532 U.S. 598 (2001) ................................................................................................................. 4

*Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*,
 843 F.3d 583 (4th Cir. 2016) .................................................................................................... 2

*Chem. Producers & Distribs. Ass'n v. Helliker*,
 463 F.3d 871 (9th Cir. 2006) .................................................................................................... 2

*City of Austin v. Paxton*,
 943 F.3d 993 (5th Cir. 2019) .................................................................................................... 6

*City of San Antonio, Tex. v. Hotels.com, L.P.*,
 No. 5-06-CV-381-OLG, 2017 WL 1382553 (W.D. Tex. Apr. 17, 2017) .............................. 8, 9

*Creuzot v. Green*,
 3:17-CV-404-M-BK, 2019 WL 2746612 (N.D. Tex. June 13, 2019) ........................................ 4

*Cruz v. Hauck,*
    762 F.2d 1230 (5th Cir. 1985) ........................................................................ 11, 12

*Davis v. Abbott,*
    781 F.3d 207 (5th Cir. 2015) ............................................................................ 2, 12

*Davis v. Perry,*
    991 F. Supp. 2d 809 (W.D. Tex. 2014) ................................................................. 12

*Dearmore v. City of Garland,*
    519 F.3d 517 (5th Cir. 2008) ....................................................................... 1, 2, 3, 4

*Diffenderfer v. Gomez-Colon,*
    587 F.3d 445 (1st Cir. 2009) ................................................................................... 2

*Doe v. Marshall,*
    622 F.2d 118 (5th Cir. 1980) ................................................................................... 3

*Fralick v. Plumbers and Pipefitters Nat. Pension Fund,*
    2011 WL 487754 (N.D. Tex. Feb. 11, 2011) ......................................................... 12

*Gates v. Collier,*
    559 F.2d 241 (5th Cir. 1977) ................................................................................... 5

*Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.,*
    CV H-14-1368, 2020 WL 821879 (S.D. Tex. Feb. 19, 2020) ................................... 9

*Herbst v. Ryan,*
    90 F.3d 1300 (7th Cir. 1996) ................................................................................... 5

*Hoffman v. L & M Arts,*
    3:10-CV-0953-D, 2015 WL 3999171 (N.D. Tex. July 1, 2015) ................................ 9

*Johnson v. Sw. Research Inst.,*
    No. CV 5:15-297, 2019 WL 4003106 (W.D. Tex. Aug. 23, 2019) ............................ 8

*Jordahl v. Brnovich,*
    3:17-cv-08263-DJH (D. Ariz. 2018) ........................................................................ 6

*Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman*,
  237 F.3d 186 (3rd Cir. 2001)................................................................................ 2

*Martin v. Houston*,
  226 F. Supp. 3d 1283 (M.D. Ala. 2016) ............................................................. 2

*MidCap Media Fin., LLC v. Pathway Data, Inc.*,
  No. 1-15-CV-00060 AWA, 2018 WL 7890668 (W.D. Tex. Dec. 19, 2018)............. 8

*Mohammed v. Barr*,
  17-70686, 2019 WL 7503025 (9th Cir. Oct. 11, 2019)........................................ 5

*Murphy v. Fort Worth Indep. Sch. Dist.*, 3
  34 F.3d 470 (5th Cir. 2003)............................................................................ 1, 3

*OCA v. Greater Houston v. Texas*,
  No. 1:15-CV-679-RP (W.D. Tex. Jan. 30, 2017)................................................. 9

*Petteway v. Henry*,
  738 F.3d 132 (5th Cir. 2013)............................................................................. 4

*Planned Parenthood Sw. Ohio Region v. Dewine*,
  931 F.3d 530 (6th Cir. 2019)............................................................................. 5

*Ragan v. C.I.R.*,
  135 F.3d 329 (5th Cir. 1998)........................................................................... 12

*Rhodes v. Stewart*,
  488 U.S. 1 (1988) ............................................................................................ 5

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
  601 F.3d 1096 (10th Cir. 2010)......................................................................... 2

*Sierra Club v. Energy Future Holdings Corp.*,
  No. W-12-CV-108, 2014 WL 12690022 (W.D. Tex. 2014)................................... 8

*Staley v. Harris Cty., Tex.*,
  485 F.3d 305 (5th Cir. 2007)......................................................................... 1, 3

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
 513 U.S. 18 (1994) ................................................................................................ 2

*Vanderbilt Mortg. & Fin., Inc. v. Flores*,
 CIV.A. C-09-312, 2011 WL 2160928 (S.D. Tex. May 27, 2011) ........................................... 15

*Veasey v. Abbott*,
 No. 2:13-CV-193, (S.D. Tex. May 27, 2020) ........................................... 8, 9, 11, 12

*Watkins v. City of Arlington*,
 123 F. Supp. 3d 856 (N.D. Tex. 2015) ...................................................................... 4

*Whole Woman's Health v. Hellerstedt*,
 1:14-CV-284-LY (W.D. Tex. Aug. 9, 2019) ............................................................ 9

**Federal Statutes**

42 U.S.C. § 1988 ..................................................................................................... 1

**Texas Statues**

Texas Penal Code § 1.09 ........................................................................................ 5
Texas Penal Code § 39.015 .................................................................................... 5

# I.    The *Pluecker* Plaintiffs are prevailing parties, entitled to fees and costs.

Having prevailed on their preliminary injunction, the *Pluecker* Plaintiffs are prevailing parties entitled to attorneys' fees. *See Pluecker* Plaintiffs' Brief in Support of Motion for Attonreys' Fees Pursuant to 42 U.S.C. § 1988, Dkt. 126-1 ("Pltf. Br.") at 2-4; *Dearmore v. City of Garland*, 519 F.3d 517 (5th Cir. 2008); *Murphy v. Fort Worth Indep. Sch. Dist.*, 334 F.3d 470, 471 (5th Cir. 2003); *Staley v. Harris Cty., Tex.*, 485 F.3d 305 (5th Cir. 2007).

## A.    *Dearmore's* three-part test is inapplicable.

The State ignores *Murphy* and *Staley*, arguing only that Plaintiffs are not prevailing parties because they fail *Dearmore*'s three-part test.[1] Def. Resp. to Mot. For Attorney's Fees, Dkt. 134 ("Def. Br.") at 3-4. But the Fifth Circuit expressly limited the application of the *Dearmore* factors, stating that "the test we articulate here is only applicable in the limited factual circumstances" of that case. 519 F.3d at 526 n.4. Accordingly, although *Dearmore*'s holding that a "preliminary injunction, coupled with [defendant's] subsequent mooting of the case, is sufficient to establish prevailing party status," *id.* at 524, is instructive, its three-factor test is not applicable.[2]

## B.    Regardless, Plaintiffs meet *Dearmore's* three factors.

The three *Dearmore* factors come from this passage:

> Under these facts, to qualify as a prevailing party under § 1988(b) . . . the plaintiff (1) must win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits . . ., (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits.

*Id.* at 524. The State concedes that the first two factors of *Dearmore* are met, but contests the third

---

[1] The State also asserts that it preserves the argument that preliminary relief is never sufficient to establish prevailing party status. Def. Br. at 5 n.3. But this argument is clearly foreclosed by *Dearmore*.

[2] Contrary to the State's representation, the *Pluecker* Plaintiffs have never conceded the applicability of the three-factor test.

factor for two unconvincing reasons.

First, the State argues *Dearmore*'s third factor is not met because the Legislature mooted the action, not the defendant Attorney General. This argument is refuted by *Davis v. Abbott,* 781 F.3d 207 (5th Cir. 2015),[3] where the Court examine the third *Dearmore* factor after the Texas Legislature adopted an interim plan to satisfy the requirements of a preliminary injunction. Although the Legislature was not a named defendant, the Fifth Circuit held that this legislative action satisfied the third *Dearmore* factor. *Id.* at 217.[4]

No case cited by the State supports the distinction between the Attorney General and the Legislature precluding prevailing party status. Instead, the State's cases all concern mootness and vacatur.[5] However, the Fifth Circuit has squarely held that vacatur due to mootness is a separate inquiry from whether a party is entitled to fees, because "[t]he attorneys' fees question turns instead

---

[3] Because *Ex Parte Young* requires that an official of the State be named, Defendant's attempt to distinguish between the Attorney General and the Legislature should be rejected. *Martin v. Houston*, 226 F. Supp. 3d 1283, 1289 (M.D. Ala. 2016) ("Houston argues that the repeal was the handiwork of the Alabama Legislature and that he, a representative of a separate branch of government, played no part in the repeal process. Therefore, he continues, this case is 'no different from a case where, say, one of the parties has died.' Hogwash. This lawsuit is another chapter in the legal fiction penned by *Ex parte Young*. The Eleventh Amendment bars a direct suit against the State itself, leaving Houston as the only party against whom Martin can seek to vindicate his rights . . . [C]ouching a legislative repeal as an external cause of mootness would allow a state government to dodge judicial review willy-nilly, simply by repealing challenged laws.") (citations omitted).

[4] *Davis* noted that the *Dearmore* test "is only applicable in the limited factual circumstances" that the court confronted in *Dearmore*. 781 F.3d at 217. It therefore treated the test merely as "persuasive guidance." *Id.*

[5] The State cites: *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 452 (1st Cir. 2009) (vacating as moot, but finding plaintiffs were prevailing parties entitled to attorneys fees); *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 649 (D.C. Cir. 2011) (discussing mootness and vacatur); *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 n.3 (1994) (discussing vacatur); *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 591 & n.7 (4th Cir. 2016) (discussing vacatur); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1131–32 (10th Cir. 2010) (discussing vacatur); *Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 879-80 (9th Cir. 2006) (discussing vacatur); *Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman*, 237 F.3d 186, 194–95 (3rd Cir. 2001) (discussing vacatur).

on a wholly independent consideration: whether plaintiff is a 'prevailing party.'" *Staley*, 485 F.3d at 314 (quoting *Doe v. Marshall*, 622 F.2d 118, 120 (5th Cir. 1980)).

Even if the State were correct that this distinction mattered, that would further demonstrate the *Dearmore* test is inapplicable. *See Dearmore*, 519 F.3d at 526 n. 4 ("[The test] only applies when a plaintiff obtains a preliminary injunction based on an unambiguous indication of probable success on the merits, which causes the defendant to moot the action, thereby preventing the plaintiff from obtaining final relief on the merits."). The State suggests that some external event, not an action by the Defendant, has mooted the action. Under the State's logic, the case would be much closer to *Murphy*, where a student won an injunction permitting him to return to his home school, but graduated while appeal was pending, mooting the case. Although mootness was caused by an external event (graduation), the Court held that "[t]he plaintiff is clearly the prevailing party," and entitled to attorney's fees. *Murphy,* 334 F.3d at 471. Thus, even if an external event caused the case to become moot, Plaintiffs are still prevailing parties under *Murphy*.

Second, the State argues *Dearmore*'s third prong is not met because Plaintiffs have not shown that the preliminary injunction "caused the [State] to moot the action, which prevent[ed] the plaintiff from obtaining final relief on the merits." 519 F.3d at 524. However, after the preliminary injunction issued, the State immediately amended H.B. 89 in response, which prevented Plaintiffs from attaining final relief on the merits. No more is required.

In *Dearmore*, as here, the defendant disputed that the preliminary injunction caused the changed action. *Id.* at 524 ("The City contends that it changed its position by amending the offending provision of the Ordinance voluntarily, not because the preliminary injunction required it to do so."). However, the Court required only that the change *post-dates* the preliminary injunction. "[T]his preliminary injunction, coupled with the City's subsequent mooting of the case,

is sufficient to establish prevailing party status." *Id*. In finding the factor met, the Court distinguished *Dearmore* from *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.,* 532 U.S. 598 (2001), on which the State relies, and noted that "this is not a case in which the City voluntarily changed its position before judicial action was taken." *Dearmore*, 519 F.3d at 525. The court noted that if the City had changed the ordinance *prior to* the preliminary injunction, the analysis would be different. *Id*. at 525 ("[I]f the City had mooted the case through amending the Ordinance before the court granted the preliminary injunction, then *Dearmore* could not qualify as a prevailing party").

Numerous cases hold that a change in the Defendant's actions after a preliminary injunction satisfies *Dearmore*'s third prong. *See. Creuzot v. Green*, 3:17-CV-404-M-BK, 2019 WL 2746612, at *2 (N.D. Tex. June 13, 2019), report and recommendation adopted, 3:17-CV-404-M-BK, 2019 WL 2743794 (N.D. Tex. July 1, 2019) (third prong met where "Defendant ended his registration of the domain names after the Court entered the preliminary injunction, which mooted Plaintiff's ACPA claims and prevented Plaintiff from obtaining final relief on the merits"); *Watkins v. City of Arlington*, 123 F. Supp. 3d 856, 869–70 (N.D. Tex. 2015) (third prong satisfied where "[s]everal months later, Arlington amended Section 15.02 and filed its Notice of Question of Mootness."); *Black Heritage Soc. v. City of Houston*, CIVA H-07-0052, 2008 WL 2769790, at *5 (S.D. Tex. July 11, 2008) (third prong satisfied where change to Ordinance is "subsequent" to TRO).

C.     **Plaintiffs are prevailing parties under *Petteway***

The State also asserts that Plaintiffs must meet a separate prevailing party test set forth in *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013). The State argues that Plaintiffs are not prevailing parties under *Petteway* because this Court's injunction did not modify the Attorney General's behavior in a way that benefited the Plaintiffs. Def. Br. at 8.

Plaintiffs obtained an injunction that prevented the enforcement of an unconstitutional law against all defendants, including the Attorney General, the state official charged with enforcing state laws and specifically those with respect to state funds. Texas Penal Code §§ 1.09 and 39.015. An injunction against the Attorney General ensured that relief was statewide—an issue important to Plaintiffs, independent contractors who were not limited to contracting with any particular state agency. *See e.g.* 1:18-CV-1100, Dkt. No. 14-4 at ¶¶ 9-10 (Dennar noting he was subjected to anti-BDS contracts from multiple schools in compliance with statewide policy).

The ability of Plaintiffs to recover attorneys' fees awards after obtaining injunctive relief against a representative of the government is well-established law. *See Gates v. Collier,* 559 F.2d 241, 243 (5th Cir. 1977) (attorneys' fees recoverable against state officials in their official capacity including Governor); *Sims v. Amos*, 336 F.Supp. 924, 340 F.Supp. 691 (M.D.Ala.1972), *aff'd*., 409 U.S. 942 (affirming district court award of attorneys' fees against governor, attorney general, legislators, and the secretary of state).[6]

The State cites no case holding that plaintiffs are not prevailing parties where they are awarded injunctive relief against a state enforcement agency and that injunction prevents enforcement of an unconstitutional law directly affecting the plaintiffs. Instead, the State relies on *Rhodes v. Stewart,* 488 U.S. 1 (1988), a case concerning a magazine subscription for prison inmates, in which one plaintiff died and the other was released from custody **before the court afforded any relief**. *Id.* at 3. The district court entered a declaratory judgment, but because neither

---

[6] *See also Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 540 (6th Cir. 2019), *cert. denied sub nom. Yost v. Planned Parenthood*, 19-677, 2020 WL 3578683 (U.S. July 2, 2020) (awarding attorneys' fees against attorney general for preliminary injunction that was later mooted out); *Mohammed v. Barr*, 17-70686, 2019 WL 7503025, at *4 (9th Cir. Oct. 11, 2019) (awarding attorneys' fees against Attorney General Barr); *Herbst v. Ryan*, 90 F.3d 1300, 1301 (7th Cir. 1996) (affirming attorneys' fee award against defendants including Attorney General).

plaintiff was still in prison, the Court determined that Plaintiffs could not be prevailing parties. *Id.* at 4. Here, the facts are not analogous. When this Court issued its preliminary injunction, the Plaintiffs were all alive and able to benefit from the injunction.

The State's only other case, *City of Austin v. Paxton*, 943 F.3d 993, 1001–02 (5th Cir. 2019), concerns the application of the *Ex Parte Young* sovereign immunity exception to the Attorney General under the particular facts of that case. Because the State has never asserted that the Attorney General had sovereign immunity, or that *Ex Parte Young* would not apply, it has waived those arguments. The State's new position—that the Attorney General has nothing to do with the BDS law—is contradicted by the position the Attorney General took on behalf of the University Defendants, where he argued that the University Defendants were improperly named because they were just enforcing a law coming from above. Dkt. No. 24 at 7. The Court should reject the State's gamesmanship—pointing the finger upwards in the chain of decision-makers at the preliminary injunction stage, but, here, attempting to point back down to the Universities.

This case is also factually distinguishable from *City of Austin*. There, the Court found that the Attorney General had no connection to the law in question. 943 F.3d 993. But here, the Attorney General actively advised state agencies about how to implement and enforce the law[7], filed an amicus brief in another State to defend that State's Anti-BDS law[8], and defended not just himself but also the University Defendants in this action.

---

[7] *See, e.g.* Lindsay Ellis, *Texas campus free speech is a political priority. A no-boycott Israel law, then, gives some pause,* Houston Chronicle, May 31, 2018, https://www.houstonchronicle.com/news/houston-texas/houston/article/In-Texas-campus-free-speech-is-a-priority-A-12955558.php; *At Least One Artist Lost A Job When UH Required Vendors to Vow Not To Boycott Israel*, Glasstire, May 16, 2018, https://glasstire.com/2018/05/16/at-least-one-artist-lost-a-job-when-uh-required-vendors-to-vow-not-to-boycott-israel/.

[8] *Jordahl v. Brnovich*, 3:17-cv-08263-DJH (D. Ariz. 2018), Dkt No. 32-1.

## II.     Plaintiffs' Requested Fees and Costs Are Reasonable

*Pluecker* Plaintiffs meet their burden of providing sufficient evidence of the reasonableness and necessity of their attorneys' fees, using lodestar and substantial billing judgment.[9] When the applicants have carried their burden of showing reasonable rates and hours, the resulting lodestar fee is presumed to be reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) ("There is a strong presumption of the reasonableness of the lodestar amount.")

### A.     *Pluecker* **Plaintiffs' requested hourly rates are reasonable.**

The State agrees the "relevant community" for calculating a reasonable hourly rate is the Western District of Texas. Def. Br at 12. The State does not dispute the level of experience, skill and reputation of Plaintiffs' counsel, referring to them as "very competent." *Id*. The only question is whether Plaintiffs' evidence and case law supports their proposed hourly rates.

*Pluecker* Plaintiffs request hourly rates ranging from $450 to $650 for their attorneys and $150 for their paralegal. Pl. Br. at 6. The State claims that Plaintiffs have provided no support for their requested rates, but Plaintiffs' declarations show these rates are within the range of prevailing Austin rates for federal court litigators of comparable skill and experience. *See* Declaration of Kevin Dubose In Support of *Pluecker* Plaintiffs' Motion for Attorneys' Fees, Dkt. 126-3 ("Dubose Decl.") at ¶ 12-13 (based on his firm's billing rates in the Austin area the requested rates are *below* the prevailing community rate in Austin, describing rates for litigators of comparable skill and experience in the range of $400 to $1,000 and $125 to $250 for paralegals); Declaration of Edgar Saldivar In Support of *Pluecker* Plaintiffs' Motion for Attorneys' Fees, Dkt. 126-2 ("Saldivar

---

[9] Although the State collectively addresses the *Pluecker* Plaintiffs' and Plaintiff Amawi's requests, *Pluecker* Plaintiffs reply only to the State's objections to *Pluecker* Plaintiffs' request.

Decl.") at ¶ 44 (detailing experience and background of *Pluecker* Plaintiffs' attorneys and noting requested hourly rates are within range of what federal courts in Western District have determined to be reasonable for similarly complex cases). Evidence including an affidavit of the attorney performing the work and an affidavit about rates actually billed and paid in similar lawsuits is considered satisfactory. *See Blum*, 465 U.S. at 896 n. 11.[10]

The State ignores the cases demonstrating that the requested rates are reasonable in the Western District. *See* Pl. Br. at n.3. Specifically, *Pluecker* Plaintiffs cited a commercial litigation case in the Western District, where the court found hourly rates between $325 and $755 to be reasonable. *See MidCap Media Fin., LLC v. Pathway Data, Inc.*, No. 1-15-CV-00060 AWA, 2018 WL 7890668, at *3 (W.D. Tex. Dec. 19, 2018). Plaintiffs also cited an employment discrimination case in this District which found reasonable attorneys' fee rates up to $585. *See Johnson v. Sw. Research Inst.*, No. CV 5:15-297, 2019 WL 4003106, at *7 (W.D. Tex. Aug. 23, 2019). In addition, other courts in the Western District have approved higher hourly rates. *See, e.g., City of San Antonio, Tex. v. Hotels.com, L.P.*, No. 5-06-CV-381-OLG, 2017 WL 1382553, at *11 (W.D. Tex. Apr. 17, 2017) (finding rate of $625 to be reasonable in a class action for collection of hotel occupancy taxes); *Sierra Club v. Energy Future Holdings Corp.*, No. W-12-CV-108, 2014 WL 12690022 at *6 (W.D. Tex. 2014) (finding hourly rates ranging from $220 to $925 fell "within the market range"). More recently, the Southern District of Texas, Corpus Christi Division, awarded rates as high as $600 for voting rights litigation. *See Veasey v. Abbott*, No. 2:13-CV-193, (S.D. Tex. May 27, 2020), Doc. 1211 at 52.

---

[10] Plaintiffs need not provide testimony of outside counsel, as declarations from their own counsel are sufficient to support a fee request. *See, e.g., Halprin v. Federal Deposit Insurance Corporation*, 5:13-CV-1042-RP, 2020 WL 411045, *7 (W.D. Tex. Jan. 24, 2020) (court found hourly rates reasonable based on declaration of fee applicant's "primary attorney" who explained attorneys' and paralegals' rates and experience).

The State proposes rates of $375 for all counsel, regardless of qualifications and experience, and $100 for paralegal work. Def. Br. at 15. It bases these rates in part on the 2015 State Bar of Texas Fact Sheet. *Id.* at 14. None of the practice areas in the Fact Sheet expressly cover civil rights litigation. Additionally, it is based on only a 12.5% attorney response rate. *See Veasey.* No. 2:13-CV-193, Doc. 1211 at 26-27. Further, although some courts have used this survey, they often enhance rates based on the circumstances of each case. *See Hoffman v. L & M Arts*, 3:10-CV-0953-D, 2015 WL 3999171, at *3 (N.D. Tex. July 1, 2015) (using the 2013 Hourly Fact Sheet to justify an hourly rate of $810); *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, CV H-14-1368, 2020 WL 821879, at *10 (S.D. Tex. Feb. 19, 2020) (copyright infringement case, considering the Fact Sheet and awarding rates up to $600). The Fact Sheet is a mere starting point, and courts must consider the particular issues of the case before arriving at a reasonable rate. *See City of San Antonio, Tex.*, 5-06-CV-381-OLG, 2017 WL 1382553, at *9-11 (acknowledging the Fact Sheet and awarding rates up to $625).

The State's cases are also unavailing. In *OCA v. Greater Houston v. Texas*, No. 1:15-CV-679-RP (W.D. Tex. Jan. 30, 2017), Doc. 73 at 6, this Court awarded the rates requested by counsel based on a rate schedule submitted by the plaintiffs. In *Whole Woman's Health v. Hellerstedt*, 1:14-CV-284-LY (W.D. Tex. Aug. 9, 2019), Doc. 297 at 28, the plaintiffs sought a lodestar based on out-of-market rates that resulted in a blended rate of $744; the court awarded a blended rate of $400 (still higher than what the State proposes here). Here, *Pluecker* Plaintiffs' proposed lodestar is based on community rates and would result in a blended rate of $494.30, which is well within ranges of rates found reasonable in the Western District. Further, applying a blended rate is unnecessary in this case, where Plaintiffs have submitted sufficient evidence to enable this Court to determine the number of hours performed by each attorney. *See Am. Academy of Implant*

*Dentistry v. Parker*, No. 1:14-cv-191-SS (W.D. Tex. Jan. 11, 2018), Doc. 109 at 5-7 (declining to award blended rate requested by defendants when records enabled court to determine number of hours attributable to each attorney and awarding the full rates requested by plaintiffs). Accordingly, *Pluecker* Plaintiffs have met their burden of producing satisfactory evidence that the requested rates are aligned with the prevailing market rates.

**B.      *Pluecker* Plaintiffs expended a reasonable number of hours.**

Plaintiffs seek a fee award based on a total of 508.23 hours (456.03 as set forth in the original motion, and 52.2 hours on Reply), arrived at after writing off a significant portion of their work. Saldivar Decl. at ¶ 40 and Ex. 8; Dubose Decl. at ¶ 14. This covers solely the time they expended through the preliminary injunction hearing, their motion for attorneys' fees, and this reply.[11] Saldivar Decl. at ¶ 34; Pl. Brief at 5. To establish the amount of time expended in this litigation is reasonable, Plaintiffs produced "billing time records . . . that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. The State's scattershot objections should be rejected.

**1.      The State's Objections to Clerical Work**

*Pluecker* Plaintiffs did not bill for and do not seek fees for "purely clerical or secretarial tasks." Def. Br. at 16-17. The State objects to three entries as clerical, seemingly because they are related to filing briefs. However, all of these entries are non-clerical: Plaintiffs' paralegal time billed as, "Review, edit and filing of motion for extension of time" (1.0 hour) and "Complaint and summons review, edit, and filing" (4.0 hours), as well as an entry Mr. Buser-Clancy billed as

---

[11] Plaintiffs seek 52.2 hours, valued at $26,950, for time expended on replying to the State's response. *See* Supplemental Declaration of Edgar Saldivar in Support of *Pluecker* Plaintiffs' Motion for Attorneys' Fees ("Suppl. Saldivar Decl.") (attached and incorporated here) at ¶ 2-3 and Ex. 1.

"Prepare preliminary injunction and component parts for filing" (3.3 hours). Reviewing, editing, and finalizing documents to prepare them for filing are not clerical tasks.

### 2. The State Mischaracterizes Client-Related Work

*Pluecker* Plaintiffs' counsel did not engage in "business development" in this case. Def. Br. at 17. Time spent meeting with clients was part of counsel's effort to investigate facts and assess the strength of fact witnesses, research the viability of potential claims, and prepare drafts of prospective pleadings and declarations. *See* Saldivar Decl. at ¶ 33. Plaintiffs' counsel are employees of non-profit organizations or pro bono counsel who do not and have not charged any of their clients for legal representation. *Id.* at ¶ 35-36. Because Plaintiffs' counsel have no economic incentive to recruit more clients, none of their time constituted "business development." *See Veasey*, No. 2:13-CV-193, Doc. 1211 at 48 (rejecting State's objection to time spent contacting and interviewing prospective clients as business development when it is expended to evaluate and strengthen existing claims with additional facts and fact witnesses who may become parties).

### 3. Plaintiffs Should Get Full Fees On Fees.

Prevailing parties are entitled to recover reasonable fees for time spent establishing a fee claim. *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) ("It is settled that a prevailing plaintiff is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation."). The State proposes significantly reducing Plaintiffs' proposed time for work on its fees motion by 20% (to which they would also apply an additional 10% and 15% reduction as explained below). However, the State has vigorously contested every point of Plaintiffs' request for fees, including Plaintiffs' right to recover as prevailing parties—forcing Plaintiffs to delve into merits briefing on prevailing party status—a task that is "neither simple nor mechanical." *See Veasey*, No. 2:13-CV-193, Doc. 1211 at 42-43 (finding time spent on fee requests compensable at

full value). *Pluecker* Plaintiffs initially sought 56.7 hours for their fees motion. Saldivar Decl. at Ex. 8. Plaintiffs have now worked an additional 52.2 hours, valued at $26,950, on the Reply to counter the State's objections to the quantity and quality of the time billed and whether they are entitled to fees. *Cruz*, 762 F.2d at 1234 (failing to compensate for time spent on a reply improperly dilutes the attorney's fee award); Suppl. Saldivar Decl. at Ex. 1 (timesheet on time expended for Reply). In the exercise of billing judgment, *Pluecker* Plaintiffs have written off 11.6 additional hours expended on this Reply. Suppl. Saldivar Decl. at ¶ 2 and Ex. 2 (billing judgment timesheet).

### 4. Plaintiffs' Entries are Discernable.

The State objects to alleged vague entries and block-billing. However, block billing is only objectionable to the extent it prevents the court from determining the reasonableness of the time spent on a particular task. "A reduction for block billing is not automatic." *See Davis v. Perry*, 991 F. Supp. 2d 809, 836 (W.D. Tex. 2014), supplemented, CIV. SA-11-CA-788, 2014 WL 172119 (W.D. Tex. Jan. 15, 2014) and *rev'd sub nom. Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015) (citing *Fralick v. Plumbers and Pipefitters Nat. Pension Fund*, 2011 WL 487754 (N.D. Tex. Feb. 11, 2011) at *5). Here, none of allegedly problematic entries reflect a day-long undivided block of time with a single, nondescript label, as contemplated by impermissible block-billing. The State certainly has not demonstrated a sufficient number of non-discernable entries to justify an across-the-board 10% reduction in time. *See* Suppl. Saldivar Decl. at ¶ 5 and Ex. 4.

Plaintiffs' time entries are discernable, not vague; they allow the Court to determine whether the time spent was reasonable for the task(s) completed. *See* Saldivar Decl. at Ex. 8; Suppl. Saldivar Decl. at Ex. 1 and Ex. 4; *see generally, Veasey*, No. 2:13-CV-193, Doc. 1211 at 47 (rejecting State's allegations of any impropriety or excess in the identified time entries as block-billed); *Ragan v. C.I.R.*, 135 F.3d 329, 336 (5th Cir. 1998) (accepting a summary, as opposed to

an itemization, stating the hours billed and by whom where it was obvious the attorney had participated extensively in the case).

### 5. Plaintiffs' Fees Should Not Be Reduced for Excessive Billing.

The State seeks a 15% across-the-board reduction in time for what it asserts is excessive billing and asks that this reduction be applied *on top of* the 10% reduction for block billing discussed above. Def. Br. at 23. The State's loose math and effort to compound across-the-board reductions against Plaintiffs' reasonable time expenditure is improper and duplicative in nature, especially considering that Plaintiffs, in the exercise of billing judgment, have voluntarily applied percentage discounts to avoid the potential for duplication.

The State's reasoning for seeking this reduction fails to withstand scrutiny. The State asserts that the number of attorneys who worked and the time spent on the complaint and preliminary injunction motion was excessive because some of the work on the complaint could have been used for the Preliminary Injunction. Def. Br. at 21. But the State provides no basis for claiming that the combined number of hours was excessive. The preliminary injunction motion was not duplicative of the complaint—most obviously the preliminary injunction motion provided extensive legal analysis concerning four different ways in which the Act violated the First and Fourteenth Amendment—and the Court ultimately embraced each of the Plaintiffs' theories in its opinion. Dkt. No. 82; 1:18-CV-1100, Dkt. 14.

The State also claims that Plaintiffs spent too much time responding to the State's Motion to Dismiss because that Motion was duplicative of the preliminary injunction briefing. Def. Br. at 21. If the motions were duplicative, the State was responsible for wasting the Court's and the parties' time with duplicative briefing, and Plaintiffs should not be penalized for responding to what was filed, especially when the consequence of not thoroughly responding—dismissal of

Plaintiffs' case—was so extreme. Regardless, Plaintiffs spent less than 55 hours responding to a dispositive motion, which is more than reasonable, not excessive, given the stakes.

More generally, as explained in Plaintiffs' declarations, this case was strategically staffed to efficiently, clearly, and effectively present complex constitutional claims on behalf of four distinct individuals, explaining the details of each set of unique facts, in the difficult effort to secure a preliminary injunction against a state statute. Saldivar Decl. at ¶ 38. The State employed every possible attack and defense to question Plaintiffs' constitutional arguments and facts regarding standing and irreparable harm. Plaintiffs' pleadings were not copy-and-paste jobs. Plaintiffs' counsel took special care to avoid overlap and overstaffing, divided tasks and issues for efficiency, such as motion practice, correspondence, and oral argument, and designated a senior staff attorney and a staff attorney to co-lead and handle the litigation, relying on co-counsel when their expertise was needed. *Id.*

Plaintiffs' declarations and timesheets covering the period through the motion for attorneys' fees provide more than sufficient details on the propriety of their 508.23 hours expended through this reply. *See* Saldivar Decl. at ¶ 40 and Ex. 8; Suppl. Saldivar Decl. at Ex. ¶ 2 and Ex. 1. These records show the date, timekeeper, hours, and narrative description of the work counsel and paralegal performed. Saldivar Decl. at Ex. 8; Suppl. Saldivar Decl. at Ex. 1. If anything is excessive about Plaintiffs' billing practices, it is the billing judgment applied out of abundance of caution to avoid any perception that time spent to secure a preliminary injunction was unproductive, excessive, or redundant.[12] Saldivar Decl. at ¶ 39; *see also* Suppl. Saldivar Decl. at

---

[12] The State complains that Plaintiffs have not provided proof of their write offs, but Plaintiffs documented the 10% write off plainly, *see* Saldivar Decl. Ex. 8, and provided further detailed description of their other write offs. *See id.* at ¶ 39; Suppl. Saldivar Decl. at Ex. 2.

Ex. 2. Moreover, Plaintiffs have written off at least 172.31 hours of billable time through this reply to which they might otherwise be entitled. Suppl. Saldivar Decl. at Ex. 2.

### 6.    Plaintiffs are Entitled to Out-of-Pocket Expenses.

"All reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone are plainly recoverable in section 1988 fee awards because they are part of the costs normally charged to a fee-paying client." *Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). A motion for section 1988 attorneys' fees suffices to cover Plaintiffs' requests for out-of-pocket expenses. *See id.* at 381. The State has no authority for its assertion to the contrary; the case it cites, *Vanderbilt Mortg. & Fin., Inc. v. Flores*, CIV.A. C-09-312, 2011 WL 2160928 (S.D. Tex. May 27, 2011), is not a section 1988 award case.

*Pluecker* Plaintiffs initially requested out-of-pocket expenses of $1,220.10 for the complaint filing fee, car rental expense for the preliminary injunction hearing, hotel charges, and *pro hac vice* fees. Saldivar Decl. at Ex. 7. However, in the exercise of further billing judgment, they no longer seek to recover *pro hac vice* fees of $400. Suppl. Saldivar Decl. at ¶ 4. *Pluecker* Plaintiffs now seek only $820.10 in total expenses. *Id.* at Ex. 3 (receipts for expenses).

Respectfully submitted,

*/s/ Edgar Saldivar*
Edgar Saldivar, TX Bar No. 24038188
Thomas Buser-Clancy, TX Bar No. 24078344
Andre Segura, TX Bar No. 24107112**
ACLU Foundation of Texas, Inc.
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 325-7011
Fax: (713) 942-8966
esaldivar@aclutx.org
tbuser-clancy@aclutx.org
asegura@aclutx.org

Brian Hauss**
Vera Eidelman**
American Civil Liberties Union Foundation
Speech, Privacy & Technology Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
Fax: (212) 549-2654
bhauss@aclu.org
veidelman@aclu.org

Kevin Dubose**
Alexander, Dubose, Jefferson & Townsend
1844 Harvard Street
Houston, TX 77008
Telephone: (713) 522-2358
Fax: (713) 522-4553
kdubose@adjtlaw.com

ATTORNEYS FOR *PLUECKER* PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that this Reply in Support of Motion for Attorneys' Fees Pursuant to 42 U.S.C.

§ 1988 was served upon counsel of record through the Court's electronic filing system on

September 3, 2020.


*/s/ Edgar Saldivar*
Edgar Saldivar