IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BAHIA AMAWI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-1091-RP |
| | § | |
| PFLUGERVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, et al., | § | *Consolidated with:* |
| | § | 1:18-CV-1100-RP |
| Defendants. | § | |

## <u>ORDER</u>

Before the Court are the Pluecker Plaintiffs' Opposed Motion for Attorneys' Fees Pursuant to 42 U.S.C. § 1988, (Dkt. 126); Bahia Amawi's Motion for Attorneys' Fees and Costs, (Dkt. 127); Defendant Attorney General Paxton's Response to Plaintiffs' Motions for Attorney's Fees and Costs, (Dkt. 134); Bahia Amawi's Reply in Support of Motion for Attorneys' Fees and Costs, (Dkt. 138); and the Pluecker Plaintiffs' Reply in Support of Motion for Attorneys' Fees Pursuant to 42 U.S.C. § 1988, (Dkt. 139). Having reviewed the briefs, the supporting documents, the record, and the applicable law, the Court issues the following order.

## I. BACKGROUND

This case concerned H.B. 89, a state law that prohibited governmental entities in Texas from contracting with companies, including sole proprietors, that boycott Israel.[1] The Plaintiffs—who were sole proprietors like, for example, a school speech language pathologist—challenged the constitutionality of the law. Bahia Amawi ("Amawi") filed her complaint on December 16, 2018 against Pflugerville Independent School District and Ken Paxton, in his official capacity as Attorney General of Texas. (Compl., Dkt. 1). John Pluecker, Obinna Dennar, Zachary Abdelhadi, and George

---

[1] Tex. Gov. Code § 2270.001 *et. seq.*

Hale (the "Pluecker Plaintiffs" or, together with Amawi, "Plaintiffs") filed their complaint a few days

later on December 18, 2018 against Ken Paxton, Board of Regents of the University of Houston

System, Trustees of the Klein Independent School District, Trustees of the Lewisville Independent

School District, and Board of Regents of the Texas A&M University System (together with Amawi

defendants, "Defendants"). (Compl., 1:18-cv-1100, Dkt. 1). Amawi filed a motion for preliminary

injunction on December 21, 2018, (Dkt. 8), and the Pluecker Plaintiffs filed a motion for preliminary

injunction on January 7, 2019, (Dkt. 14). The Court consolidated the cases in January 2019.

(Consolidation Order, Dkt. 22). On March 29, 2019, the Court held a hearing on the motions for

preliminary injunction, (Minute Entry, Dkt. 75), and issued its order granting the motions for

preliminary injunction on April 25, 2019, (Order, Dkt. 82). The Court enjoined Defendants from

enforcing the law or any "No Boycott of Israel" clause in any state contract. (*Id.* at 56).

On April 29, 2019 and May 2, 2019, Defendants[2] filed notices of appeal. (Dkts. 84, 87). On

May 7, 2019, the Texas Legislature amended the law to exclude sole proprietors, including Plaintiffs,

through H.B. 793 (the "Amendment"). On April 27, 2020, the Fifth Circuit issued an opinion

vacating this Court's preliminary injunction order because the Amendment "provided the plaintiffs

the very relief their lawsuit sought, and even assuming that [the law] is unconstitutional, the

defendants can do nothing more to ameliorate their claimed injury. The plaintiffs' complaint with

the defendants has been resolved, and in their favor. Consequently, this case is moot." (Fifth Circuit

Op., Dkt. 121, at 8–9). The Fifth Circuit remanded the case to this Court to enter judgment and left

open the question of attorney's fees. (*Id.* at 9) ("To be clear, this opinion leaves only attorney's fees

to be decided on remand.").

---

[2] Pflugerville Independent School District, which was unopposed to the proposed injunction, was not a party
to the appeal as Amawi had voluntarily dismissed it from the suit. (Notice of Voluntary Dismissal, Dkt. 98).

## II. DISCUSSION

Plaintiffs request attorney's fees under 42 U.S.C. § 1988, which provides that, in a Section 1983 case, a prevailing party may recover reasonable attorney's fees. 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."). The parties dispute whether Plaintiffs can be considered the prevailing party under Section 1988(b) and, if so, whether Plaintiffs may recover their requested fees and costs.

### A. Plaintiffs Are the Prevailing Party

The Supreme Court has stated that a plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–112 (1992)). A material alternation must have the "necessary judicial imprimatur." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001). Deciding whether that is met in this case is this Court's task.

Plaintiffs rely on several Fifth Circuit cases to support their claim for attorney's fees as the prevailing party. Amawi cites *Doe v. Marshall* for the general notion that "a determination of mootness neither precludes nor is precluded by an award of attorney's fees . . . [P]reliminary relief may serve to make a plaintiff a 'prevailing party' under the statute; the lawsuit need not proceed to completion." 622 F. 2d 118, 120 (5th Cir. 1980); (Amawi Mot., Dkt. 127, at 3). The Pluecker Plaintiffs compare the facts of this case to those of *Dearmore v. City of Garland*, 519 F.3d 517 (5th Cir. 2008). (Pluecker Pls. Mot., Dkt. 126-1, at 7). Dearmore filed a Section 1983 action against Garland, challenging the constitutionality of a city ordinance. *Dearmore*, 519 F.3d at 519. The district court granted Dearmore's motion for preliminary injunction and held that the ordinance was unconstitutional. *Id.* Following the court's order, counsel for Garland informed counsel for Dearmore that Garland planned to amend the ordinance to address the district court's order, which

Garland did soon after. *Id.* at 520. Garland notified the district court of the amendment and filed a motion to dismiss Dearmore's action as moot. *Id.* The court granted the motion to dismiss, found Dearmore was the prevailing party, and awarded him attorney's fees and costs. *Id.* On appeal, the Fifth Circuit held that Dearmore was the prevailing party and affirmed the award of attorney's fees. *Id.* at 526.

The Pluecker Plaintiffs argue that, like *Dearmore*, this Court's preliminary injunction order was an "unambiguous indication of probably success on the merits." Pluecker Pls. Mot., Dkt. 126-1, at 7) (quoting *Dearmore*, 519 F.3d at 524). "Further, the Legislature's amendment of H.B. 89 limited the scope of the law so it no longer applies [and] [b]ecause Plaintiffs no longer can be forced to sign 'No Boycott of Israel' certifications, they obtained the end result they sought in the litigation." (Pluecker Pls. Mot., Dkt. 126-1, at 7). Like *Dearmore*, "this is not a case in which the [defendant] voluntarily changed its position before judicial action was taken." (*Id.*) (quoting *Dearmore*, 519 F.3d at 525). The Pluecker Plaintiffs, however, do not urge this Court to adopt the test set out in *Dearmore* for determining whether a party qualifies as a prevailing party.

Moving on from *Dearmore*, the Pluecker Plaintiffs then rely on other Fifth Circuit cases to support their contention that a plaintiff is a prevailing party even when their claims have become moot. The Pluecker Plaintiffs discuss *Staley v. Harris County, Tex.* and *Doe v. Marshall*—which Amawi also raised—two cases that similarly involved a plaintiff's case becoming moot before the Fifth Circuit ruled on the case. *Staley*, 485 F.3d 305 (5th Cir. 2007); *Marshall*, 622 F. 2d 118. In *Staley*, the plaintiff obtained a district court order requiring a bible be removed from a county courthouse. 485 F.3d at 307. Days before oral argument on appeal, the county removed the entire monument and placed it in storage. *Id.* The Fifth Circuit, hearing the case en banc, held that the plaintiff's claim was moot and, citing *Marshall*, also held that the plaintiff was the prevailing party. *Id.* at 314. "Given our opinion today, Staley has obtained the primary relief she sought and therefore remains the prevailing

party. As a prevailing party, she is entitled to appropriate attorneys' fees." *Id.* (internal citations

omitted). Rounding out their argument, the Pluecker Plaintiffs point to *Murphy v. Fort Worth*

*Independent School District* in which a student's graduation mooted his appeal. 334 F.3d 470, 471 (5th

Cir. 2003). After citing *Marshall* for the proposition that a plaintiff who is the prevailing party may be

awarded attorney's fees, the Fifth Circuit held that the student, who had won a permanent

injunction, was "clearly the prevailing party" and entitled to attorney's fees under Section 1988. *Id.* at

471; *Murphy v. Fort Worth Indep. Sch. Dist.*, 258 F. Supp. 2d 569, 575 (N.D. Tex.), *vacated*, 334 F.3d 470

(5th Cir. 2003) (granting injunction).

     In response, Defendants argue that Plaintiffs were not prevailing parties because they "never

obtained a final judgment in their favor, and the preliminary relief they won was stayed, and

ultimately vacated, by the Fifth Circuit." (Defs. Resp., Dkt. 134, at 1). The Court finds Defendants'

contention that Plaintiffs must have obtained a final judgment to prevail for the purposes of an

award of attorney's fees wholly unsupported by the law. Indeed, their only attempt at support is with

a statement from a concurring opinion. (*Id.* at 5) (*Thomas v. Reeves*, 961 F.3d 800, 827–29 (5th Cir.

2020) (Oldham, J., concurring). On the contrary, the Fifth Circuit has repeatedly instructed that a

plaintiff can be the prevailing party without an enforceable final judgment. For example, in *Dearmore*,

the case that Defendants proclaim this Court should exclusively follow, the Fifth Circuit explained:

"Although an enforceable judgment on the merits and a court-ordered consent decree have

sufficient judicial *imprimatur*, these examples are not exclusive." *Dearmore*, 519 F.3d at 521. Plaintiffs

obtained an enforceable judgment when this Court granted the preliminary injunction. *Id.* at 524

("First, it is undisputed that the district court granted Dearmore a preliminary injunction—an

enforceable judgment—by court order . . . .").

     Defendants next contend that Plaintiffs only can be prevailing parties under the test set out

by the Fifth Circuit in *Dearmore*. (Defs. Resp., Dkt. 134, at 3–9). Defendants claim that the "Pluecker

Plaintiffs concede that the *Dearmore* test governs" and that, because Amawi "did not brief or even cite *Dearmore*, she has forfeited any arguments that she is the prevailing party under the *Dearmore* test, which is binding on the parties and this Court." (*Id.* at 4). Setting aside whether the *Dearmore* test is binding on the parties or this Court, Defendants' waiver argument is without merit. Amawi supports her argument for attorney's fees, and this Court will not impose a requirement here that Amawi must cite to a certain case in her initial motion or agree with Defendants' construction of the current state of the law on attorney's fees in this context. Moreover, Amawi, in her reply brief, explains that she "explicitly incorporate[d] the Pluecker Plaintiffs' Motion for Fees," which addresses *Dearmore*, in their motion for attorney's fees. (Amawi Mot., Dkt. 127, at 1).

In their replies, Plaintiffs counter that *Dearmore* is inapplicable. Amawi argues that *Dearmore* applies only "in the narrow circumstances of a fees claim against a post-injunction mootness of a 'municipal' defendant, although it provides 'guidance' in cases against the state, *Davis v. Abbott*, 781 F.3d 207, 216 (5th Cir. 2015). And because one panel of the Fifth Circuit cannot abridge a second panel's decisions, *Marshall* is still good law." (Amawi reply, Dt. 138, at 2) (citing *United States v. Walker*, 302 F.3d 322, 325 (5th Cir. 2002)). The Pluecker Plaintiffs argue that Defendants ignore *Murphy* and *Staley* and that the Fifth Circuit "expressly limited the application of the *Dearmore* factors, stating that the 'the test we articulate here is only applicable in the limited factual circumstances' of that case." (Pleucker Pls. Reply, Dkt. 138, at 7) (quoting *Dearmore*, 519 F.3d at 526 n.4). The Pleucker Plaintiffs view the *Dearmore* test as instructive but not applicable. (*Id.*).

*Dearmore* is not binding on this Court, as Defendants claim. The Fifth Circuit carefully and thoughtfully set out the test in *Dearmore*, making clear that it was not setting out a new test for all cases. The *Dearmore* Court notably narrowed the application of its test to the facts of that case: "Under these facts, to qualify as a prevailing party under §1988(b), we hold that . . . ." 519 F.3d at 524. As if that was not sufficiently clear, the Fifth Circuit continued: "We note that the test we

articulate here is only applicable in the limited factual circumstances described above." *Id.* at 526 n.4. The facts of this case are different. For example, Plaintiffs did not sue a municipality about a city ordinance like the plaintiff in *Dearmore.* That fact alone creates uncertainty about whether the third prong of the *Dearmore* test could be applied here.

That said, the Court will apply *Dearmore* as a general framework. The parties agree that Plaintiffs meet the first two prongs of the test: (1) the plaintiff "must win a preliminary injunction" and (2) "based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff." *Id.* at 524. Defendants state that "[t]wo of the three *Dearmore* factors are not at issue: [we do] not, and could not, dispute that Plaintiffs won a preliminary injunction 'based upon an unambiguous indication of probable success on the merits' of their claims." (Defs. Resp., Dkt. 134, at 5) (quoting *Dearmore*, 519 F.3d at 524). Because the parties recognize that Plaintiffs satisfy the first two parts of the *Dearmore* test, the Court focuses its inquiry on the third prong—that the preliminary injunction "causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits." *Id.*

Defendants raise two arguments: "Plaintiffs fail to establish (1) that the *defendant*, Attorney General Paxton, mooted the action and (2) that the preliminary injunction *caused* the amendment that mooted the action." (Defs. Resp., Dkt. 134, at 6). Defendants state that the Texas Legislature mooted Plaintiffs' claims by passing the Amendment and that the Texas Legislature's action cannot be attributed to the executive branch. (*Id.*). While this Court agrees with the general contention that actions of a legislature cannot always be attributed to the executive branch, this Court finds Defendants' attempt to differentiate between the Texas Attorney General and the Texas Legislature ill-conceived in this circumstance. Defendants further argue that "Plaintiffs seek fees from . . .

Attorney General Paxton, not the Texas Legislature. Because Attorney General Paxton did not moot this case, Plaintiffs cannot recover attorney's fees against him."

Their argument highlights why *Dearmore*'s third prong does not neatly fit on the facts of this case. In *Dearmore*, the plaintiff sued the City of Garland, an entity which encompasses its city council that, like the Texas Legislature, passed the offending ordinance and then modified the ordinance to remove the offending portion. Challenging a state law requires more than a suit against the state. Instead, Plaintiffs in this case properly sued Attorney General Paxton, the state actor who could enforce an unconstitutional law. Defendants cannot now try to play "gotcha" and claim Plaintiffs were required to sue one entity (the Attorney General) to reach the merits and an entirely different entity (perhaps the State or the Legislature) to be awarded attorney's fees. Defendants know that Plaintiffs were required to sue Attorney General Paxton, not the State or the Legislature, under *Ex Parte Young* and cannot point the finger at the Texas Legislature at this juncture of litigation to avoid the consequences of Plaintiffs having won a preliminary injunction.[3] To allow Defendants to create that loophole could mean that the State of Texas would never pay attorney's fees even when the other side prevailed.

Defendants' position is also not supported by Fifth Circuit law. In *Davis v. Abbott*, the Fifth Circuit considered the issue of attorney's fees in a case brought against the State of Texas and Attorney General Paxton about a redistricting plan. 781 F.3d 207 (5th Cir. 2015). On appeal, the parties disputed who was the prevailing party. *Id.* at 213–20. Looking at one set of claims in the case,

---

[3] *See Martin v. Houston*, 226 F. Supp. 3d 1283, 1289 (M.D. Ala. 2016) ("Houston argues that the repeal was the handiwork of the Alabama legislature and that he, a representative of a separate branch of government, played no part in the repeal process. Therefore, he continues, this case is 'no different from a case where, say, one of the parties has died.' Hogwash. This lawsuit is another chapter in the legal fiction penned by *Ex parte Young* . . . . The Eleventh Amendment bars a direct suit against the State itself, leaving Houston as the only party against whom Martin can seek to vindicate his rights. . . . [C]ouching a legislative repeal as an external cause of mootness would allow a state government to dodge judicial review willy-nilly, simply by repealing challenged laws.").

the Fifth Circuit looked to the *Dearmore* test, noting that while it was only applicable in limited factual circumstances, it provides "persuasive guidance for resolving the unique fee issue presented here." *Id.* at 217. Concluding that the plaintiffs satisfied the third prong, the Fifth Circuit stated: "The district court's implementation of the interim [redistricting] plan caused Texas to repeal its 2011 plan and to adopt the interim plan in its place, thereby mooting the lawsuit and preventing Plaintiffs from obtaining final relief on the merits of their claims." *Id.* The court made no distinction between the Texas Attorney General and the Texas Legislature. Instead, for the specific purpose of determining whether a plaintiff is a prevailing party in a case against the state, the Fifth Circuit attributed the Legislature's actions to the State and to Attorney General Paxton.

Defendants' second argument also fails. Defendants contend that this Court's preliminary injunction did not cause the Amendment to pass because the Amendment was a voluntary change. Defendants claim that because the Amendment process was underway before this Court preliminarily enjoined Defendants from enforcing H.B. 89, the Amendment pre-dates this Court's order. (Defs. Resp., Dkt. 134, at 7–8). This Court declines Defendants' invitation to rule that starting the process to change a law means that the passage of a law was not caused by a preliminary injunction. The Court agrees that the timeline here is not as cut-and-dried as it was in *Dearmore*, where Garland initiated its plan to amend its city ordinance after the preliminary injunction.[4] 519 F.3d at 520 ("Following the issuance of these orders on November 3, 2005, counsel for the City informed counsel for Dearmore that he did not need to post the bond necessary to enforce the preliminary injunction because the City planned to amend the Ordinance to address the district court's order."). In this case, Defendants began their efforts to modify the law after the lawsuit was filed and before the preliminary injunction issued. (Defs. Resp., Dkt. 134, at 7) (stating that H.B. 793

---

[4] This difference in the facts between these two cases further illustrates that the third prong of *Dearmore*'s test does not fit perfectly in a suit against a state versus a city.

was introduced in the House of Representatives in January 2019). The question, however, is not—
and should not be—when a defendant begins any effort to modify the offending law. If it were, then
every governmental defendant could avoid a potential attorney's fees award by starting the
amendment process after a lawsuit is filed and then only going through with the amendment in the
event of a preliminary injunction. *See Staley*, 485 F.3d at 313 (rejecting a similar strategy with respect
to mootness) ("Harris County proceeded on its own volition to remove the monument only days
before oral argument, and now it seeks advantage of its conduct, asking us to hold the case moot
and vacate the district court judgment against it."). This Court instead will look to the operative facts
for the timeline: the lawsuit was filed, Plaintiffs won a preliminary injunction, Defendants passed the
Amendment.

Courts in the Fifth Circuit have held that a defendant's action after a preliminary injunction,
like the one taken here, satisfies the causal element. *See, e.g., Dearmore*, 519 F.3d at 524 ("[T]his test
grants prevailing party status only when the defendant moots the plaintiff's action in response to a
court order, not just in response to the filing of a lawsuit."), 525–26 ("[T]he district court's grant of
the preliminary injunction directly caused the City to amend the offending portion of the Ordinance,
thereby mooting the case and preventing Dearmore from obtaining final relief on the merits.");
*Davis*, 781 F.3d at 217 ("The district court's implementation of the interim plan caused Texas to
repeal its 2011 plan and to adopt the interim plan in its place, thereby mooting the lawsuit and
preventing Plaintiffs from obtaining final relief on the merits of their claims."); *Creuzot v. Green*, No.
3:17-CV-404-M-BK, 2019 WL 2746612, at *2 (N.D. Tex. June 13, 2019), report and
recommendation adopted, No. 3:17-CV-404-M-BK, 2019 WL 2743794 (N.D. Tex. July 1, 2019)
("Defendant ended his registration of the domain names after the Court entered the preliminary
injunction, which mooted Plaintiff's ACPA claims and prevented Plaintiff from obtaining final relief
on the merits."). Defendants passed the Amendment after this Court issued the preliminary

injunction; it was not a voluntary action taken before the Court ruled. Plaintiffs satisfy the third

requirement under *Dearmore*.[5]

Finally, Defendants argue that Plaintiffs are not prevailing parties because "they never

obtained a judgment that changed Attorney General Paxton's behavior towards them." (Defs. Resp.,

Dkt. 134, at 8). Defendants cite to *Petteway v. Henry*, 738 F.3d 132 (5th Cir. 2013), which was decided

after *Dearmore*, and press the Court to find that Plaintiffs are not the prevailing party for "another,

independent reason." (Defs. Resp., Dkt. 134, at 8). In *Petteway*, the Fifth Circuit considered whether

the plaintiffs were prevailing parties in a voting rights case against Galveston County. *Id.* Like the

*Dearmore* panel, the *Petteway* panel relied heavily on *Buckhannon*, 532 U.S. 598, a Supreme Court case

that addressed the requirements for establishing prevailing party status. In *Buckhannon*, the Supreme

Court held that "to achieve prevailing party status, a party must achieve some judicially sanctioned

relief that either creates or materially alters a legal relationship between the parties." *Petteway*, 738

F.3d at 137 (citing *Buckhannon*, 532 U.S. at 604). "Building on *Buckhannon*, [the Fifth Circuit] has

established three requirements that must be satisfied for a plaintiff to demonstrate prevailing party

status: (1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the

legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a

way that directly benefits the plaintiff at the time the relief is entered." *Id.* (citing *Dearmore*, 519 F.3d

at 521). Defendants contend that Plaintiffs fail to satisfy the second and third requirements. (Defs.

Resp., Dkt. 134, at 8–9).

Defendants attempt to support their contention by relying on *Rhodes v. Stewart*, 488 U.S. 1

(1988) for the proposition that Plaintiffs did not obtain relief. (*Id.*). This Court also fails to see how

---

[5] To the extent Defendants are arguing that this Court should divine the Texas Legislature's intent at each stage of the Amendment's legislative process, Defendants have not cited to a Fifth Circuit case that places a burden on Plaintiffs to demonstrate through legislative history a nexus between this Court's preliminary injunction and the Amendment.

*Rhodes* applies in this case. Before the district court in *Rhodes* afforded any relief to the plaintiffs, both prisoners, one of them died and the other was released. 488 U.S. at 2. When this Court entered its preliminary injunction, Plaintiffs were all alive and able to benefit from the injunction. As Plaintiffs explain, the injunction against Attorney General Paxton "ensured that relief was statewide—an issue important to Plaintiffs, independent contractors who were not limited to contracting with any particular state agency." (Pluecker Pls. Reply, Dkt. 139, at 11) (citing, *e.g.*, 1:18-cv-1100, Dennar Decl., Dkt. 14-4, at 5) (Plaintiff Dennar noting that he was subjected to a "No Boycott of Israel" certification at another school and then had to forgo contract work at all other Texas public high schools to avoid being subjected to the certification again). Under *Petteway*, Plaintiffs are prevailing parties because they obtained a preliminary injunction that prevented Attorney General Paxton from enforcing an unconstitutional law.[6]

### B. Plaintiffs Can Partially Recover Their Claimed Fees

Having held that Plaintiffs are the prevailing party, this Court decides whether Plaintiffs requested fees and costs are reasonable. The Fifth Circuit uses a two-step process to calculate attorney's fees. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). First, a court calculates a "lodestar" figure "by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Id.* In so doing, the court considers whether the attorneys demonstrated proper billing judgment by "writing off unproductive, excessive, or redundant hours." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir.

---

[6] Defendants also present a second argument: that the contracts or proposed contracts "did not involve the Attorney General" and "Plaintiffs advanced no argument that the Attorney General demonstrated any intent to enforce House Bill 89 with respect to those contracts or any other contract any Plaintiff was considering to sign." (Defs. Resp., Dkt. 134, at 9) (citing *City of Austin v. Paxton*, 934 F.3d 993, 1001–02 (5th Cir. 2019)). This argument makes little sense. First, *City of Austin* pertained to sovereign immunity, not attorney's fees. Second, Defendants continue to try to deflect and point the finger at others; this time at university defendants who Defendants argued, in a motion to dismiss, were merely complying with a law they were obligated to follow. Defendants cannot impliedly take on potential culpability in one stage of litigation and then deny the same potential culpability in another stage to suit their interests.

1996). The plaintiff has the burden of showing the reasonableness of the hours billed and proving the exercise of billing judgment. *Id.* at 770. "[T]he lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). "[T]he lodestar looks to '[t]he prevailing market rates in the relevant community.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 195 (1984)). The "prevailing market rate" is the rate charged by attorneys of "comparable experience, skill, and reputation." *Blum*, 465 U.S. at 892 n.5. There is a strong presumption that a fee calculated using the lodestar method is reasonable. *Perdue*, 559 U.S. at 552.

After calculating the lodestar, the court may increase or decrease it based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). Those factors are: (1) the time and labor required by the litigation; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the awards in similar cases. *Johnson*, 488 F.2d at 717–19).

The Pluecker Plaintiffs request attorney's fees of $251,271.00 based on 508.23 hours spent by their attorneys and paralegal. (Pluecker Pls. Mot., Dkt. 126-1, at 8; Saldivar Suppl. Decl., Dkt. 139-1, at 1). They seek hourly rates ranging from $150 for their sole paralegal to $450–650 for their six attorneys based on their legal expertise and resources and the market rates in Austin. (Saldivar Decl., Dkt. 126-2, at 12–13). Defendants argue that Plaintiffs fail to justify their "high" hourly rates.

(Defs. Resp., Dkt. 134, at 14). Defendants characterize Mr. Saldivar's declaration as conclusory and contend that the Pluecker Plaintiffs lack "any evidence that similar work commands similar hourly fees from paying clients, nor do they cite any examples of courts awarding that range of fees in similar cases." (*Id.* at 14–15). Not so.

The Pluecker Plaintiffs support their requested hourly rates with Mr. Kevin Dubose's declaration and Mr. Edgar Saldivar's declaration. Mr. Dubose, a 40-year litigator and partner at Alexander Dubose & Jefferson LLP, declares that the requested rates are "below the prevailing community rate in Austin for federal court litigators of comparable skill and experience." (Dubose Decl., Dkt. 126-3, at 1, 4). Mr. Dubose continues that "lawyers of the caliber of the lawyers in this case" command hourly rates as high as $700–1000 and as low as $400–600, depending on years of experience. (*Id.*). He also states that he and his co-counsel "exercised billing judgment by writing down or writing off over 160 hours and $82,141 of legal services (at lodestar rates)." (*Id.*). Finally, Mr. Dubose deems the time spent by counsel "to be appropriate to the novel and complex issues presented, to the stakes involved, to the excellent reputation of attorneys affiliated with the ACLU of Texas and the ACLU Foundation, to the high quality of the work product produced, to the well-prepared oral argument presented during the preliminary injunction hearing, and to the results obtained." (*Id.*).

Mr. Saldivar, a Senior Staff Attorney with the ACLU Foundation of Texas ("ACLU of Texas"), similarly states that this case, which "involves complex constitutional issues and has been highly resource-intensive to litigate" and "could not have been brought without the legal expertise and resources contributed" by counsel. (Saldivar Decl., Dkt. 126-2, at 12). He declares that the Pluecker Plaintiffs are entitled to an hourly rate "consistent with the market in which they practice and where this court is located, namely, the Austin area." (*Id.*). Based on information from Mr. Dubose and based on his own private practice experience, Mr. Saldivar finds the rates "fair and

reasonable, and below the prevailing Austin rates for federal court litigators of comparable skill and experience . . . and within range of what federal courts in the Western District have determined to be reasonable for similarly complex cases." (*Id.* at 13).

The Court finds that Plaintiffs' hourly rates close to reasonable, considering the prevailing market rates in the community. In light of the Pluecker Plaintiffs' counsel's experience litigating in federal court and litigating constitutional claims combined with their strong educational backgrounds and robust support for their hourly rates, the Court concludes that their rates are just slightly high for the Austin market. The Court will reduce each of the Pluecker Plaintiffs' hourly rates by 20%. That finding comports with hourly rates approved by this Court in other constitutional matters that were litigated starting several years before this case (and thus when market rates were likely lower). *See, e.g.*, *OCA-Greater Houston v. Texas*, No. 1:15-cv-679 (W.D. Tex. Jan. 30, 2017) (Dkt. 73) (awarding $250–400 hourly rate requested by plaintiff); *Whole Woman's Health v. Hellerstedt*, No. 1:14-cv-284 (W.D. Tex. Aug. 9, 2019) (Dkt. 297) (awarding $400 blended hourly rate). The Court agrees with the Pluecker Plaintiffs that it need not apply a blended rate in this case. (Pluecker Pls. Reply, Dkt. 139, at 15).

Amawi requests attorney's fees of $615,025 based on 499.5 hours of work and a 2.5 multiplier based on the *Johnson* factors. The Court finds that Amawi is not entitled to a multiplier. While the Court disagrees with some of Defendants' characterizations of the how the *Johnson* factors should be applied in this case, the Court agrees that Amawi has failed to show that the lodestar calculation would produce a result that is not presumptively reasonable. Having considered the time and labor required, the novelty and difficulty of the issues, the required skill and expertise, whether other employment was precluded, the customary fee, the time limitations imposed, the results obtained, the attorneys' experience, reputation, and ability, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases, the Court will

neither decrease nor increase the award. *See Johnson*, 488 F.2d at 717–19; *see also Walker v. U.S. Dept. of Housing & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996) (citing *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992) (excluding the sixth factor regarding whether the fee was fixed or contingent from consideration)).

Amawi's counsel, through declarations, requests hourly rates of $450–550. *See* Amawi Mot., Dkt. 127, at 7) (listing the hourly rates for each attorney). Amawi relies on the U.S. Attorney Office's Fees Matrix to support its billing rates. (*See, e.g.*, Floyd Decl., Dkt. 127-3, at 2) ("The current U.S. Attorneys Office *Laffey* matrix for the District of Columbia uses a $572.00 hourly rate for an attorney with my experience for 2018, a $572.00 hourly rate for an attorney with my experience in 2019, and a $595.00 hourly rate for an attorney with my experience in 2020. . . . My rate for this case was $500.00 per hour . . . ."). The U.S. Attorney Office's Fees Matrix is prepared to "evaluate requests for attorney's fees in civil cases in District of Columbia courts. . . . The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia." The United States Attorney's Office District of Columbia, USAO Attorney's Fees Matrix—2015–2021, The United States Department of Justice, https://www.justice.gov/usao-dc/page/file/1305941/download. As Defendants contend, Amawi has not shown that she is entitled to hourly rates in the District of Columbia. Amawi states, however, that she is "familiar with the Austin legal market and with rates Texas lawyers typically charge in metropolitan areas of the state." (Floyd Decl., Dkt. 127-3, at 1). Considering Amawi's less strong support for their hourly rates and market rates in Austin, the Court finds that Amawi's requested hourly rates should be reduced by 30% and again notes that the resulting fees comport with this Court's fee awards in similar cases.

The Court further finds that the number of hours expended was reasonable with notable exceptions. Included in their hours worked are Amawi's 43.4 hours spent on her attorney's fees motion, (Compile CAIR Attorney Hours, Dkt. 127-1, at 13), and the Pluecker Plaintiffs' 56.7 hours

spent on their attorney's fees motion, (Pluecker Pls. Mot., Dkt. 139, at 18; Edgar Saldivar Statement of Fees, Dkt. 126-2, at 37–38). In the Pluecker Plaintiffs' reply, they add 52.2 hours spent on their reply brief. (Pluecker Pls. Reply, Dkt. 139, at 16). While many attorney's fees motions do not involve novel or complex issues, the briefing in this case on attorney's fees was complex and, in parts, novel, and the Court would anticipate that all the parties spent a significant amount of time preparing their briefing. This is especially true here where Defendants mounted a vigorous opposition to the award of attorney's fees. The Court finds that the hours spent preparing briefing for the attorney's fees motions and the Pluecker Plaintiffs' reply are reasonable.

Defendants urge the Court to reduce the hours claimed by Plaintiffs, complaining that Plaintiffs attempt to inappropriately recover for clerical work like filing, business development, travel time, vague and block-billed time entries, excessive billing, and work that was not successful. First, Defendants argue Plaintiffs' time spent on filing documents and reviewing case notifications cannot be recovered. (Defs. Resp., Dkt. 134, at 16–17). The Pluecker Plaintiffs do not defend time spent filing documents but state that "[r]eviewing, editing, and finalizing documents to prepare them for filing are not clerical tasks." (Pluecker Pls. Reply, Dkt. 139, at 16–17). Amawi did not submit time from its paralegal or legal assistants who performed clerical work in the case, saying that "Amawi ate that time." (Amawi Reply, Dkt. 138, at 7). Yet, Defendants seek to eliminate 48 hours of Amawi's time. While there are occasional time entries that contain clerical duties like filing a document, (*see, e.g.*, Homer Hours, Dkt. 127-6, at 6) (12/16/2018, 0.7 hours, "Finalize and file complaint"), those time entries also include attorney work like revising a court document (*see, e.g.*, 1/29/2019, 12.2 hours, "Revise, finalize and file reply in support of preliminary injunction"). Defendants, without support, also seek to exclude time entries involving correspondence between attorneys or between attorneys and the Court. (*See* Defs. Objs. to Timekeeping Entries (Amawi), Dkt. 134-1, at 7–8). The

Court finds that it will reduce each time entry that includes in its description the filing of a court document by 10% to account for unrecoverable clerical time.

Defendants argue Plaintiffs impermissibly request an attorney fee award for business development. (Defs. Resp., Dkt. 134, at 17). Specifically, the Pluecker Plaintiffs incurred at least 5.7 hours and Amawi incurred 2.6 hours in business development, according to Defendants. (*Id.*). Plaintiffs' time was not business development; it was time spent investigating their potential claims and witnesses. (*See* Saldivar Decl., Dkt. 126-2, at 9) (describing time spent early on building their case). Plaintiffs' counsel are employees of nonprofit organizations or pro bono counsel who do not charge their clients for legal representation. (*See, e.g., id.* at 10) ("Because there are many more potential clients who need our services than we are able to represent, and because we do not charge our clients, there is no economic incentive for lawyers affiliated with the ACLU to do any more work on this (or any) case than is necessary to serve the interests of our clients."). The Court rejects Defendants' argument that Plaintiffs try to recover time spent on business development.

Defendants quibble with how Plaintiffs prepare their time entries, arguing that their award should be reduced for vague and block-billed entries. (Defs. Resp., Dkt. 134, at 18–20). Defendants identify time entries as vague or block-billed, (*id.* at 20; *see, e.g.,* Defs. Objs. to Timekeeping Entries (Amawi), Dkt. 134-1, at 1; *see, e.g.,* Defs. Objs. to Timekeeping Entries (Pluecker Pls.), Dkt. 134-2, at 1). Defendants, however, do not explain how any of Plaintiffs' entries are vague, whether block-billed or not. Defendants still claim that the Court should reduce Plaintiffs' overall fee awards by 10%, also with no explanation as to how they arrived at the proposed 10% reduction. (Defs. Resp., Dkt. 134, at 20). Having reviewed the time entries submitted by Plaintiffs, the Court finds they are

not vague, even when block-billed, and sufficiently detailed for the Court to determine whether the time spent was reasonable for the tasks completed.[7]

Defendants assert that Plaintiffs' fees should be reduced for excessive billing. For example, Defendants believe that because Amawi spent 52 hours preparing the complaint, and there would be "significant overlap" between the complaint and the motion for preliminary injunction, it was excessive for Amawi to spend 34 hours drafting the motion for preliminary injunction. (Defs. Resp., Dkt. 134, at 20). Defendants ask for a 15% overall reduction from Plaintiffs' award. (*Id.* at 21). Plaintiffs respond that the case required "complicated legal research on issues of first impression," (Amawi Reply, Dkt. 138, at 11), and that the "preliminary injunction motion was not duplicative of the complaint—most obviously the preliminary injunction motion provided extensive legal analysis concerning four different ways in which the Act violated the First and Fourteenth Amendment— and the Court ultimately embraced each of the Plaintiffs' theories in this opinion," (Pluecker Pls. Reply, Dkt. 139, at 19). The Court agrees. Plaintiffs' counsel took "special care to avoid overlap" in their work and "divided tasks and issues to the maximum extent possible." (Saldivar Decl., Dkt. 126-2, at 10). In addition, as noted above, Amawi did not seek her paralegal's time spent on the case, and the Pluecker Plaintiffs, exercising billing judgment, reduced "certain hours that may have appeared excessive;" omitted "multiple compensable time entries for meetings with co-counsel;" decided not to bill multiple attorneys for attending the same call, meeting, or hearing; reduced or omitted "time entries for tasks such as reading and responding to correspondence;" omitted all time entries for some ACLU of Texas personnel who also worked on the case; and omitted "all time entries for briefing the mootness issue before the Fifth Circuit." (*Id.* at 11). The Pluecker Plaintiffs also "excluded all hours for time spent traveling to and from court appearances or other relevant

---

[7] For example, for the analysis above about clerical work, the Court was able to easily discern which time entries contained a clerical task.

litigation events" and already "applied an across the board 10% reduction in time to account for the potential that work was duplicative of work done by CAIR, who represent Plaintiff Amawi, or that the work was necessitated by an argument made by a party not subject to this fees motion." (*Id.*). The Pluecker Plaintiffs additionally "excluded any time billed for correspondence or meetings with counsel affiliated with CAIR attorneys, as well as reduced by 50% any time billed for oral argument at the preliminary injunction hearing to account for any possible duplication of time." (*Id.* at 11–12). In the end, the Pluecker Plaintiffs wrote off 160.71 hours of time. Given Plaintiffs' efforts to exercise billing judgment and thoughtfully reduce their fee requests to avoid duplication and clerical work, the Court finds that Plaintiffs' fees are not excessive.

Defendants contend Amawi cannot recover full hourly rates for travel time. According to Defendants, Amawi seeks to recover "approximately" 59.5 hours spent traveling. (Defs. Resp., Dkt. 134, at 17). Amawi concedes that a district court has the discretion to reduce travel time but objects to the 50% rate reduction proposed by Defendants. (Amawi Reply, Dkt. 138, at 8–9; Defs. Resp., Dkt. 134, at 17–18). In its discretion, the Court determines that it will reduce Amawi's hourly rate for attorney travel time. The Court finds that Amawi's hourly rates for travel shall be reduced by 50%.

Defendants finally argue that Amawi's request for fees while litigating the case on appeal should be rejected because she achieved "only partial or limited success." (Defs. Resp., Dkt. 134, at 22) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Amawi claims she is entitled to attorney's fees for work done after obtaining the preliminary injunction. (Amawi Mot., Dkt. 127, at 4–5). She argues that her actions during the appeal were reasonable because "the Government defended the merits of the (still-unconstitutional) Anti-BDS decision before the Fifth Circuit, refusing to rely solely on mootness." (*Id.* at 5). The Court agrees that Amawi's actions during the pendency of the appeal were not unreasonable but also finds that her results were not wholly successful thus

rendering the full lodestar excessive. The Court reduces Amawi's 91.5 hours spent on the appeal by half to 45.75 hours.

To ensure accuracy, the Court will order the parties to submit a joint proposed order, in accordance with this Order, setting out the attorney's fees to be awarded to the Pluecker Plaintiffs and Amawi.

### C. Plaintiffs May Partially Recover Costs

Plaintiffs seek an award of their costs incurred in this litigation. Amawi asks for $5319.06 in costs consisting of docket and pro hac vice fees ($700), other admission fees ($256), transcript fees ($129), printing ($87.58), airline travel ($2967.36), hotels ($459), and "incidental travel" ($721.11). (Amawi Mot., Dkt. 127, at 12). The Pluecker Plaintiffs ask for $1220.10 in costs consisting of the complaint filing fee ($400), pro hac vice fees ($400), car rental ($157.96), and hotel ($262.14).

A district court generally has wide discretion in awarding expenses or costs; however, this discretion is not unfettered. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). The Court's discretion in taxing costs against an unsuccessful litigant is limited to the following recoverable costs:

    (1)    Fees of the clerk and marshal;

    (2)    Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

    (3)    Fees and disbursements for printing and witnesses;

    (4)    Fees for exemplification and copies of papers necessarily obtained for use in the case;

    (5)    Docket fees under section 1923 of this title; and

    (6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Although a district court may decline to award costs listed in the statute, it may

not award costs omitted from the statute. *See Crawford*, 482 U.S. at 441–42; *Coats v. Penrod Drilling*

*Corp.*, 5 F.3d 877, 891 (5th Cir. 1993). In addition, "all reasonable out-of-pocket expenses, including

charges for photocopying, paralegal assistance, travel, and telephone, are plainly recoverable in fee

awards under 42 U.S.C. § 1988 because they are part of the costs normally charged to a fee-paying

client." *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 380

(5th Cir. 1990).

     Defendants dispute Plaintiffs' costs because Plaintiffs failed to seek taxable costs by

submitting a bill of costs. (Defs. Resp., Dkt. 134, at 24). Defendants are correct that a "party

awarded costs shall prepare and file a proposed bill of costs." W.D. Tex. Loc. R. CV-54(a).

However, the Court rejects Defendants' line of reasoning that Plaintiffs' costs should be deemed

waived because "they did not follow the proper procedure for seeking taxable costs." (Defs. Resp.,

Dkt. 134, at 24).

     Defendants continue that Plaintiffs failed to submit documentation substantiating their costs

and failed to meet their burden of proving reasonableness. (*Id.*). In their reply, the Pluecker Plaintiffs

withdraw their request to recover pro hac vice fees of $400, (Pluecker Pls. Reply, Dkt. 139, at 21),

and submit receipts for their travel expenses, (Receipts, Dkt. 139-1, at 15–17). Those receipts show

their car rental ($157.96) and hotel ($262.14). (Receipts, Dkt. 139-1, at 15–17).[8] The Court finds

those costs are reasonable—the receipt shows that the Pluecker Plaintiffs rented the car for March

28 and 29, 2019, and that they booked three rooms at the Extended Stay America Austin

---

[8] In their response, Defendants "request to review this documentation and brief the Court on the reasonableness and necessity . . . [s]hould Plaintiffs submit documentation in their reply." (Defs. Resp., Dkt. 134, at 25). Defendants do not claim that car rental and hotel expenses are not recoverable costs, only that they want to review them for reasonableness; however, after the Pluecker Plaintiffs submitted documentation with their reply, Defendants did not file a motion for leave to file a sur-reply to brief the Court on its reasonableness and necessity. In any event, this Court could properly determine whether to tax those costs to Defendants without the receipts.

Downtown for one night on March 28, 2019—for counsel to attend the preliminary injunction hearing held in this case on March 29, 2019. (Receipts, Dkt. 139-1, at 15–17). The Pluecker Plaintiffs booked an inexpensive hotel in Austin; this is not a case in which a rental car was used for something other than a court proceeding; and courts routinely find similar costs reasonable. *See Structural Metals, Inc. v. S & C Elec. Co.*, No. SA-09-CV-984-XR, 2013 WL 3790450, at *6 (W.D. Tex. July 19, 2013) ("[T]he rental car does not appear to have been obtained for the primary purpose of or necessary to transporting Mr. Bray to and from the airport and to and from trial in his capacity as a witness."); *see, e.g., Sparling v. Doyle*, No. EP-13-CV-323-DCG, 2014 WL 12489989, at *4 (W.D. Tex. Oct. 22, 2014) (finding $111.04 for hotel for one person and $106.99 for rental car in El Paso in 2014 was reasonable). The Court therefore awards the Pluecker Plaintiffs their travel costs of $420.10. The Court also awards the Pluecker Plaintiffs their complaint filing fee of $400.00. 28 U.S.C. § 1920.

Amawi submitted an itemized list of its costs as an exhibit to the declaration of Lena Masri, the National Litigation Director for CAIR Legal Defense Fund. (Costs, Dkt. 127-2, at 7). Ms. Masri declares that she reviewed the costs spreadsheet, had seen all of the receipts on file, and certified that all the costs listed were reasonably incurred representing Amawi in this case. (Masri Decl., Dkt. 127-2, at 3). The costs are pro hac vice fees ($300); complaint filing fee ($400); fees related to court admission ($256); transcript fee ($129); printing and copying ($87.58); hotel ($458); car rental ($109.18); parking ($16); air travel ($2967.36); per diem ($300); and other travel listed as mileage, parking, airplane wifi, and ground transportation ($295.93). The Court awards Amawi her complaint filing fee of $400, transcript fee of $129, and printing and copying expenses of $87.58. 28 U.S.C. § 1920. The Court disallows Amawi's pro hac vice and court admission fees totaling $656 because generally those are expenses paid by an attorney for the privilege of practicing law in this Court. *Midland Nat'l Life Ins. Co. v. Santana-Ayala*, No. 5:19-CV-00591-JKP, 2020 WL 33598, at *5 (W.D.

Tex. Jan. 2, 2020); *Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07CV568-HSO-RHW, 2011 WL 6699447, at *14 (S.D. Miss. Dec. 21, 2011) ("To the extent that [amount] either represents attorney court admission fees, such expenses constitute general overhead or operating costs, rather than an expense traditionally billed to a client."). Defendants object to the remaining travel expenses because Amawi did not submit receipts and cite *Portillo v. Cunningham*, 872 F.3d 728, 742 (5th Cir. 2017), in which the Fifth Circuit rejected an attorney's fees and costs award because the only support was an attorney affidavit that asserted entitlement in a conclusory fashion, and *Thabico Co. v. Kiewit Offshore Servs., Ltd.*, No. 2:16-CV-427, 2017 WL 4270743, at *4 (S.D. Tex. Sept. 26, 2017), in which the Southern District of Texas declined to award Westlaw charges when "there were no bills or receipts attached and nothing to suggest that these are not charges for services included in a subscription to the service that would be incurred by the attorneys, regardless of use"). Those cases are not applicable here.

Amawi supported her request for travel expenses with an itemized list of expenses and Ms. Masri's declaration that said she reviewed the list of expenses and the corresponding receipts. The Court finds Amawi's travel expenses reasonable, with an exception. Amawi's counsel stayed one night in a hotel the night before the preliminary injunction hearing, (Costs, Dkt. 127-2, at 7) (showing the date as "3/28/2019"). Amawi's counsel traveled from Washington, D.C., Detroit, and Chicago to represent Amawi at the preliminary injunction hearing. (*Id.*). And, Amawi's counsel incurred other travel expenses related to a rental car, parking, and meals that were reasonable. (*Id.*); *see Sparling*, 2014 WL 12489989, at *4. The Court disallows the "Change fee for flight – Carolyn Homer" for $367.00. (*Id.*). Without more information, the Court will not tax an airline change fee to Defendants. That change fee may have been justified or may have been merely for the convenience of Ms. Homer. The Court awards Amawi total costs of $4396.05.

### III. CONCLUSION

**IT IS ORDERED** that the Pluecker Plaintiffs' Opposed Motion for Attorneys' Fees Pursuant to 42 U.S.C. § 1988, (Dkt. 126), is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Bahia Amawi's Motion for Attorneys' Fees and Costs, (Dkt. 127), is **GRANTED IN PART AND DENIED IN PART**.

The Pluecker Plaintiffs shall recover: (1) attorney's fees from Defendants in accordance with this Order and in an amount set out in this Court's forthcoming order and (2) costs from Defendants in the amount of $820.10. Amawi shall recover: (1) attorney's fees from Defendants in accordance with this Order and in an amount set out in this Court's forthcoming order and (2) costs from Defendants in the amount of $4396.05.

**IT IS FINALLY ORDERED** that the parties shall confer and file a proposed order on or before **April 14, 2021** on the amount of attorney's fees that shall be awarded by this Court to Amawi and the Pluecker Plaintiffs in accordance with this Order.

**SIGNED** on March 31, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE